IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CR 05-1849 JH |
| ) | |
| DANA JARVIS, *et al.*, ) | |
| ) | |
| Defendant. ) | |

**MOTION FOR RELEASE ON CONDITIONS**

COMES NOW Defendant Dana Jarvis, by and through his counsel of record and pursuant to 18 U.S.C. section 3142, files this motion requesting a hearing on the issue of release from custody pending the trial of this matter. In support, he states the following:

1. The defendant is charged in the Indictment with offenses which carry mandatory minimum sentences upon conviction. As a result, the United States, by Assistant U.S. Attorney James Braun, opposes this motion.

2. The defendant recognizes that a rebuttable presumption exists in the statute that if there is probable cause to believe the defendant has committed an offense which carries a mandatory minimum sentence of ten years or more, there is no combination of conditions which will reasonably ensure the defendant's presence when needed and the safety of the community. Probable cause is presumed once an Indictment is filed. However, case law has interpreted the presumption as shifting the burden of <u>production</u> and not <u>persuasion</u> to the defendant. *See, e.g., United States v. Rueben*, 973 F.2d 580 (5th Cir. 1992), *cert. denied*, 504 U.S. 940 (1993); *United States v. Dillon*, 938 F.2d 1412 (1st Cir. 1991); *United States v. Rodriguez*, 950 F.2d 85, 88 (2nd Cir. 1991); *United States v. Strickland*, 932 F.2d 1353 (10th Cir. 1991); *United States v. Dominguez*, 783 F.2d 702 (7th

1

Cir. 1986); *United States v. Hazime*, 762 F.2d 34 (6th Cir. 1985). The burden of production requires the defendant to produce "some credible evidence" showing reasonable assurance of appearance and/or lack of danger to the community, *United States v. Carbone*, 793 F.2d 559 (3rd Cir. 1986). Factors relevant to this inquiry are listed in 18 U.S.C. section 3142(g). Once a defendant produces such evidence, the Court may still consider the presumption, provided the government is not excused from carrying its burden of persuading the Court that the defendant is a flight risk and/or a danger to the community by clear and convincing evidence. *See United States v. Quartermaine*, 913 F.2d 910, 916 (11th Cir. 1990); *Stricklin*, 932 F. 2d at 1354; *Dillon*, 938 F.2d at 1416. This motion will provide a significant amount of information which constitutes credible evidence which should assure the Court that conditions of release can be fashioned to ensure Mr. Jarvis' appearance and the safety of the community.

    3. Detaining a presumptively innocent individual cannot be taken lightly. "[T]here is a small but identifiable group of particularly dangerous defendants as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons. It is with respect to this limited group of offenders that the courts must be given the power to deny release pending trial….[Only when there is a] strong probability that a person will commit additional crimes if released" is the community interest in safety sufficiently compelling to overcome a criminal defendant's right to liberty. 1996 U.S.C.C.A.N. 3189.

    4. The clear and convincing standard of proof is described in 30 Am. Jur. 2d Evid. Section 1167 as follows: witnesses to a fact must be found credible, and that the

facts to which they have testified are distinctly remembered and the details thereof narrated exactly and in due order, so as to enable the trier of facts to come to a clear conviction without hesitancy of the truth of the precise facts in issue. *United States v. Bell*, 673 F. Supp. 1429 (E.D. Mich. 1987). In *United States v. Gray*, 651 F. Supp. 432 (W.D. Ark. 1987), on the other hand, concluded that it meant that the court did not haveto be "plumb sure" that no set of conditions will protect the public, so long as it was "pretty sure". Under either definition, the facts and circumstances of this case and defendant are such that the government cannot meet its burden.

     5. Mr. Jarvis was convicted of a misdemeanor offense in Tucson 26 years ago and successfully completed a probationary term. He was convicted of another misdemeanor seven years ago and successfully completed a probationary term. He has also been convicted of several motor vehicle violations which resulted in fines. Although he was indicted by a federal grand jury for felony drug offenses some 21 years ago, the charges were dismissed without trial. His prior record would result, if convicted in this case, in a designation of criminal history category I, the lowest such category under the United States Sentencing Guidelines.

     6. Mr. Jarvis has resided in New Mexico for 33 of his 55 years. He first purchased property in this state at age 22 and still owns that property. He has subsequently purchased other properties in this state and as a result has a significant investment in New Mexico. He is a registered voter in this state and has been for over 20 years. In addition, he has owned businesses in Santa Fe and Albuquerque, and has filed federal and NM income tax returns for 25 years. He has paid property and business taxes in NM for a like period of time.

7. In addition, Mr. Jarvis has been active in the community. For several years in the 1990's, Mr. Jarvis operated a video business in Santa Fe. He is a Certified Legal Video Specialist, who obtained a yearly contract from the State of New Mexico to collect voter information which he computerized and converted to video for viewing at the Capitol building and for distribution to the media. The company made a video for the Vietnam Veterans of America which earned him a national award for the best "self-help" video at that organization's annual convention several years ago. A video he made as a volunteer for the San Juan Pueblo assisted the Pueblo in obtaining a $100,000 federal grant to help ensure the teaching of the Tewa language and traditional dances to Pueblo youth. Finally, Mr. Jarvis made videos for New Mexico's Court Appointed Special Advocate (CASA) for presentation to children and their parents as a means to diverting family members from criminal courts.

8. Mr. Jarvis has three children, all of whom were born in this state and still reside here. The children range in age from one year to 19 years. He had regular contact with all three children and has been the primary care taker for the youngest child while the child's mother worked. As a result of his incarceration, Mr. Jarvis cannot care for or support his children (in violation of court orders), thereby creating serious disruption to their lives and causing financial hardship to the mothers of the children. The middle child attends high school in Santa Fe. When the police searched the child's home, he was thrown to the ground and handcuffed (age 15). Mr. Jarvis is also a substitute father for his 12 year old nephew by marriage. That child, the son of a co-defendant in this case, was also taken to the ground and handcuffed when his mother was arrested and their home searched. Mr. Jarvis is extremely close to his children and deserting them would

be anathema to him.  In addition, Mr. Jarvis has been unable to complete the settlement of his mother's estate as a result of his incarceration.

      9.  Regarding the allegations in the Pre-Trial Services report of failure to appear, the situation involved three motor vehicle tickets which have since been paid in full. While Mr. Jarvis was residing temporarily in Tucson, the trailer in which he was staying caught fire and was destroyed, along with the court notice and the calendar on which the court date was noted.  Mr. Jarvis was injured in the fire and spent the next six weeks in the hospital on medication.  During this time, the court date passed and a warrant for failure to appear was issued.  Upon release from the hospital, the tickets were paid and the warrant quashed.  Regarding the allegation that Mr. Jarvis used a false name, an individual named Todd Ward sold Mr. Jarvis the home in Bernalillo where he was residing when arrested.  Mr. Ward bragged about having a friend in the state Motor Vehicle Division and that he was able to get any type of document as a result.   Because of his bragging, Mr. Jarvis cut off the friendship and was later contacted by representatives of the DMV about a license with his photo and Mr. Ward's name.  Mr. Jarvis denied any knowledge or participation in manufacturing, obtaining or use of the license and continues to deny same now.  No criminal charges resulted.

      10.  There were statements contained in discovery and made on the record that Mr. Jarvis' whereabouts were unknown for a significant period of time.  The court should note that beside voting and paying taxes in his own name, when Mr. Jarvis applied for a liquor license for his Albuquerque business several years ago, he was fingerprinted at the FBI office in Albuquerque.

      11.  Because of his continued custody, Mr. Jarvis' health has suffered.  He missed

a follow-up visit to his physician regarding a broken wrist.  He has been unable to return to his dentist to complete work started and his was recently advised by the jail dentist that his gums are growing around several posts in his lower jaw which will necessitate additional surgery.  Because he was not allowed to retrieve his prescription eye glasses at the time of arrest, he has been unable to read his discovery and the lack of a computer means he is unable to view the numerous discs which contain the meat of the case.  Because the government has frozen virtually all of his assets prior to any conviction or adversarial review of the evidence, Mr. Jarvis is unable to fulfill his legal obligations regarding child support, mortgages and taxes, and will be unable to post a monetary or property bond.  There is no doubt that he is being severely penalized without the government being required to prove that he committed any offense.

      12.  The defense proffers Jon A. Marr as a third party custodian.  Mr. Marr is a retired monk and Abbot of the Episcopal Church and is a home owner and businessman in Santa Fe.  He has known the defendant for his entire life, having baptized him, performed marriage ceremonies for Mr. Jarvis' two older sisters and officiated at the funerals of the defendant's grandparents.  Abbot Marr has indicated to the undersigned his understanding of the functions of a third party custodian and his willingness to perform that service for the Court on behalf of Mr. Jarvis.  His home contains a spare bedroom and bath which he is willing to provide for Mr. Jarvis.  Abbot Marr has also committed to allowing Mr. Jarvis to become employed with his business, Braemar Kennels, also in Santa Fe.  The Abbot's residence address is 906-B Old Las Vegas Highway, Santa Fe, NM 87505 and his telephone numbers are (home) 505-466-8900 and (business) 505-466-2222.  He looks forward to speaking with a Pre-Trial Services Officer

about his qualifications as a third party custodian.

      13.  The factors noted in section 3142(g) include not just the nature and circumstances of the offense, but the weight of evidence, the nature and characteristics of the defendant and the nature and seriousness of the danger to the community should the defendant be released.  The offense, while serious, concerns the distribution of marijuana.  There are no allegations of violence, use of firearms or threats of any kind.  The case appears to rely heavily on wiretapped conversations and informants.  The interpretation of conversations can be "spun" and informants are notoriously unreliable, as they may be working off charges or paid for the information desired, as in this case.  In any event, Mr. Jarvis is entitled to the presumption of innocence, despite the potential sentence if convicted.  There is little doubt that the illegal substance alleged in this case is relatively innocuous when compared to other drugs, such as methamphetamine and cocaine base and when compared to a lawful substance: alcohol .  Marijuana has been cultivated for over 6,000 years and has been found to be highly beneficial for those suffering the effects of chemotherapy and glaucoma, unlike the aforementioned substances.

      14.  This defendant clearly has significant ties to the state of New Mexico based on length of residence, employment and participation in the community (voting, paying taxes, property ownership and business, volunteer work and contracts with governmental agencies) for several decades.  There is scant information regarding substance abuse by Mr. Jarvis.  The PTS report relies on a vague statement from Mr. Jarvis' former wife, from whom he has been apart for the last 12-13 years.  Undersigned counsel spoke personally to the ex-wife, who stated that she no knowledge of his daily activities *vis a vis* substance abuse and stated that Mr. Jarvis is a good father who supports his children.

There is no history of violence, an insignificant prior record and other than as explained above, no history of failure to appear in court. In fact, it should be noted that the failure to appear was for tickets, and there is no evidence that Mr. Jarvis ever failed to appear in court regarding the 1984 federal Indictment (later dismissed). Mr. Jarvis was not on any type of court supervision at the time of the allegations contained in the current Indictment.

      15. There should be little doubt that based on the above information, conditions of release can be fashioned that will reasonably assure the defendant's presence in court when needed and the protection of the public.

      WHEREFORE, Defendant Dana Jarvis respectfully requests the Court schedule a hearing, grant this motion and set conditions of release.

Respectfully submitted,

I hereby certify that a true copy of this pleading was faxed to AUSA J. Braun and US Pre-trial Services on this 10th day of October, 2005.

JUDITH A. ROSENSTEIN
P.O. Box 25622
Albuquerque, NM 87125-5622
(505) 341-9464 (telephone)
(505) 797-8086 (facsimile)
jrosenstein7@cybermesa.com

ELECTRONICALLY FILED

_____   _____
Judith A. Rosenstein                 Judith A. Rosenstein
                                     Attorney for Defendant