IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CR. No. 05-1849 JH |
| ) | |
| DANA JARVIS, et al. ) | |
| ) | |
| Defendant. ) | |

**UNITED STATES' REPLY TO RESPONSE TO MOTION
FOR PROTECTIVE ORDER FILED ON OCTOBER 11, 2005**

The United States replies to the response filed by Defendant Dana Jarvis on October 11, 2005. (Doc. 215). The response lacks both factual and legal support.

**INTRODUCTION AND PROCEDURAL BACKGROUND**:

Contemporaneous with the response to the United States' Motion for Protective Order, Cliff McIntrye Esq. filed an entry of appearance on behalf of Dana Jarvis for the "limited purpose of litigating forfeiture issues only." On October 17, 2005, the United States filed a motion for hearing under Fed.R.Crim.P. 44 because Mr. McIntrye has represented co-defendant Cathy Fitzgerald from the inception of this case, and substantial potential exists for a conflict of interest.

Prior to filing the Motion for Protective Order, the United States sought and obtained the position of Judith Rosenstein, counsel of record for Mr. Jarvis. Ms. Rosenstein stated that she agreed in principal that the rent proceeds should be preserved, but objected to designation of the U.S. Marshal's Service as holder of the funds. To date, no suggestion of an alternative custodian has been submitted. In

contrast to counsel's earlier stated position, the response filed by Mr. McIntrye simply opposes the motion for protective order on the merits.

It has came to the attention of the United States Attorney's office that certain individuals, including Mr. McIntrye, have contacted Jay Lambros recently.  Mr. Lambros is one of the principals of the Lessee, Harlow's on the Hill, L.L.C.  During these contacts, Mr. Lambros was asked to deposit rent proceeds into a bank account.

As set forth in the motion for protective order, there is an underlying mortgage on the real property held by First State Bank New Mexico.  If Mr. Jarvis is convicted, the real property and liquor license must be forfeited if they constitute proceeds of drug trafficking or money laundering or if they facilitated those crimes.  See 21 U.S.C. § 853(a).  Under these circumstances, there is no incentive for Mr. Jarvis to pay the mortgage, which would affect substantial property rights of innocent third parties.  Hence, a protective order is both reasonable and necessary.

## AUTHORITIES

Defendant's response is replete with incorrect statements of the law and its application.

### DEFENDANT IS NOT ENTITLED TO PRETRIAL HEARING ON THE MERITS OF THE FORFEITURE

Defendant proclaims, without citation to any authority, that he is entitled to a pretrial adversarial hearing on the issue of whether the assets named in the Indictment are subject to forfeiture.  (Deft's Motion ¶ 3).  Due process does not automatically require a pretrial hearing on release of assets and a defendant may not simply ask for one.  United States v. Jones, 160 F.3d 641, 647 (10th Cir. 1998).  In Jones, the Tenth

Circuit set forth two burdens a defendant must meet to obtain a pretrial hearing on the continued restraint of forfeitable assets. First, he must establish the he lacks assets, other than those restrained, to retain counsel and to provide living expenses. Id. If a defendant fails to persuade the Court on this point, then a due process pretrial hearing is not warranted. Id. Second, the defendant must make a *prima facie* showing that the grand jury erred in determining the assets are traceable to the underlying offense. Id. Only after a defendant satisfies both initial burdens may a district court conduct an adversarial hearing at which the government must meet its burden of proof regarding the restrained assets. Id. Defendant's bare demand for a hearing is not sufficient.

Furthermore, Jones does not apply to the leased real property because there is no order restraining the property. The United States has filed a notice of *lis pendens* on the real property.[1] A notice of *lis pendens* merely serves as constructive notice to prospective purchasers and encumbrancers that the property is in litigation and that the government claims an interest in the property subject to the eventual outcome to the lawsuit. See Superior Construction Inc. v. Linnerooth, 712 P.2d 1378, 1381 (N.M. 1986). A *lis pendens* is a way for the government to preserve its rights in potentially forfeitable property without the need of a hearing and without affringing upon the interest holders due process rights. United States v. James Daniel Good Real Property, 510 U.S. 43, 58 (1993). *Lis Pendens* do not constitute a restraint or taking, and thus, they do not implicate due process rights or warrant a pretrial hearing for release. United States v. Register, 182 F.2d 820, 836-37 (11th Cir. 1999); Aronson v. City of Akron, 116

---

[1] For that matter, notices of *lis pendens* have been filed on all real property subject to forfeiture in this case. None of the real property has been restrained.

F.3d 806, 811-12 (6th Cir. 1997). Therefore, the *lis pendens* on the real property are not subject to release.

The liquor license also has not been restrained. The United States originally seized it pursuant to a proper seizure warrant. However, upon learning that the lessee had invested substantial resources in reliance upon using the license, the United States agreed to the lessee's use of the license pending further order of this Court. The proposed protective order would allow continued maximization of the benefits of the license.

## 21 U.S.C. § 853(d) CREATES A REBUTTABLE PRESUMPTION THAT CERTAIN PROPERTY IS SUBJECT TO FORFEITURE

Despite the narrow scope of the motion for protective order, defendant contends that 21 U.S.C. § 853(d) erects a bar to forfeiture of all assets named in the Indictment, including the real property and liquor license, because Jarvis acquired them before the dates of the Indictment. (Response ¶ 1). This is not an accurate statement of the facts. As demonstrated above, defendant is not entitled to test the forfeiture allegation on the merits at this stage of the proceedings. Moreover, his reliance on § 853(d) is misplaced.

The statute provides as follows:

> (d) Rebuttable presumption
> There is rebuttable presumption at trial that any property of a person convicted of a felony under this subchapter or subchapter II of this chapter is subject to forfeiture under this section if the United States establishes by a preponderance of the evidence that -
> (1) such property was acquired by such person during the period of the violation . . . or within a reasonable time after such period; and
> (2) there was no likely source for such property other than the violation . . .

As can be readily gleaned from the plain language of the statute, § 853(d) creates a rebuttable presumption that the property is forfeitable if it was acquired during or soon after the period defendant committed the crime. The statute does not shield property acquired before the dates alleged in an indictment from forfeiture.

Defendant ignores types of property that 21 U.S.C. § 853(a) requires be forfeited:

(1) any property constituting, or derived from, any proceeds the person obtained directly or indirectly, as a result the violation;
(2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such violation; and
(3) any of defendant's interest in, claims against, and property or contractual, rights affording a source of control over a continuing criminal enterprise. (CCE).

The language of § 853(a) is mandatory. Proceeds, facilitating property and property affording a source of control over a CCE must be forfeited. Defendant is charged with engaging in a CCE, and the evidence will show that defendant's property facilitated illegal activity. The date of property acquisition is not an element for forfeiture under either statutory prong.

Defendant also ignores that the indictment seeks forfeiture under 18 U.S.C. § 982(a)(1) because the property was involved in offenses or is traceable to property involved in offenses in violation of 18 U.S.C. §§ 1956 and 1957 (money laundering). The date of acquisition is not an element for property involved in a money laundering offense.

Both the real property and the liquor license are forfeitable as drug proceeds in any event. As set forth in the affidavit for seizure of the liquor license, investigation revealed that Jarvis purchased Club Rhythm and Blues for the purpose of laundering drug proceeds and obtained a business permit for the club in June 2002. He signed a

5

purchase agreement for the liquor license in February 2003. Documentary evidence revealed structured payments from Jarvis to the Club designed to disguise or conceal drug proceeds. According to one witness, Jarvis eventually closed the Club because it was costing him $10,000 per month. The now unsealed affidavit is attached hereto for the Court's review. The infusion of drug proceeds into the business both gave the appearance of legitimacy to the proceeds and kept the business operating. The property and the liquor license are traceable to drug proceeds and are integral to the rental agreement between the Harlow's on the Hill and Jarvis, which agreement generates the rent. Hence, the rental payments are subject to forfeiture and must be preserved in the event of a conviction.

## SUBSTITUTE ASSETS ARE SUBJECT TO PRETRIAL RESTRAINT.

Defendant advances the anticipatory argument that the real property and liquor license are subject to forfeiture as substitute assets and that substitute property cannot be restrained. The Indictment, however, names the real property and liquor license as directly forfeitable property having a nexus to the underlying criminal charge and neither is under restraint. Therefore, defendant's argument is specious. Assuming *arguendo* that the real property, liquor license and/or the rental proceeds are deemed substitute property, they are subject to pretrial restraint.

If property that has a nexus to the underlying criminal charge is unavailable for specified reasons, substitute assets are subject to forfeiture as follows:

> (p) Forfeiture of substitute property
> (1) in general
> Paragraph (2) of this subsection shall apply, if any property described in subsection (a), as a result of any act or admission of the defendant -
> (A) cannot be located upon the exercise of due diligence;

(B) has been transferred or sold to, or deposited with, a third party;
(C) has been placed beyond the jurisdiction of the court;
(D) has been substantially diminished in value; or
(E) has been commingled with other property which cannot be divided without difficulty.
(2) Substitute property
In any case described in subparagraphs (A) through (E) of paragraph 1, the court shall order the forfeiture of any other property of the defendant up to the value of any property described in subparagraphs (A) through (E) of paragraph 1, as applicable.

The statutory authority for the pretrial restraint of forfeitable assets is 21 U.S.C. § 853(e). This section allows the court to enter a restraining order or take other action to preserve property described in § 853(a) for forfeiture upon the filing of an Indictment alleging that the property is subject to forfeiture. Contrary to defendant's contention, substitute assets are forfeitable assets within the ambit of § 853(a).

In construing a statute, a court's overriding purpose is to determine Congressional intent. Chickasaw Nation v. United States, 208 F.3d 871, 878 (10th Cir. 2000). To determine a statute's plain meaning, a court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole. Id.

21 U.S.C. § 853 was enacted by Congress as part of the Criminal Forfeiture Act of 1984. See Pub.L. 98-473, § 303, 98 Stat. 2044. Prior to the enactment of § 853, criminal forfeiture was obtained pursuant to the Racketeer Influenced and Corrupt Organization (RICO) statute, 18 U.S.C. § 1961 et seq., or the Continuing Criminal Enterprise (CCE) statute, 21 U.S.C. § 848. See S.Rep. No. 98-225, at 193 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3376. These statutes did not authorize the government to forfeit property that a criminal defendant disposed of in anticipation of the

7

criminal proceedings.  Id. at 195, reprinted in 1984 U.S.C.C.A.N. at 3378.  Thus, when Congress enacted the Criminal Forfeiture Act of 1984, it amended RICO's criminal forfeiture procedure to address its deficiencies and created 21 U.S.C. § 853, which "is, in nearly all respects, identical to the RICO criminal forfeiture statute as amended." Id. at 198, 209, 198 reprinted in 1984 U.S.C.C.A.N. at 3381, 3392.

Congress included a relation-back provision - 21 U.S.C. § 853(c) - which governs third-party transfers.  Section 853(c) provides that "all right, title and interest in property described in subsection (a) of this section vests in the United States upon the commission of the act giving rise to forfeiture under the section.  Section 853(c) does not limit application of the relation back principle to tainted property.  United States v. McHan, 345 F.3d 262 (4th Cir. 2003).

Likewise, the mandatory language of Section 853(p) does not distinguish between tainted and substitute property:  "If any of the [tainted] property *described in subsection (a)* of this section . . . [has been placed beyond the reach of a forfeiture] . . ., the court shall order the forfeiture of any other property of the defendant up to the value of [the tainted] property that is nonavailable for forfeiture.  This section expressly equates substitute property with tainted property when the tainted property is unavailable for forfeiture." Id.

The authorities defendant relies upon hold that substitute assets are not subject to pretrial restraint because § 853(e)(1)(A) does not refer to § 853(p).  See United States v. Rapinsky, 20 F.3d 395, 362-63 (9th Cir. 1994); United States v. Floyd, 992 F.2d 498, 501 (5th Cir. 1993).

8

The purpose of § 853(e)(1)(A), however, is to preserve assets and assure the availability of property pending disposition of the criminal case. United States v. Jones, 160 F.3d at 647 (citing S. Rep. No. 98-225 at 202, 204, 1984 U.S.C.C.A.N. at 2285, 3387). Moreover, Congress enacted 21 U.S.C. § 853(o) to eliminate any doubt about the construction of the statute by instructing that the statute by "liberally construed to effectuate its remedial purposes." The remedial purpose of both the relation-back provision, and the substitute property provision is to thwart the defendant's effort to avoid the impact of a criminal forfeiture. United States v. McHan, 345 F.3d. 262, 271 (4th Cir. 2003). See also, In re Billman, 915 F.2d 916, 921 (4th Cir. 1990) (a defendant cannot thwart the operation of forfeiture laws by transferring assets to a third person who does not qualify as a bona fide purchaser for value) and United States v. Regan, 858 F.2d 115 (2nd Cir. 1989).

Although the language of § 853(e)(1)(A) does not refer to property described in § 853(p), this does not preclude application of § 853(e) to subsection (p) property. The language of § 853(p) equates substitute property with property described in § 853(a). See McHan, 345 F.3d at 271. To effectuate the remedial purposes of § 853, subsection (e)(1)(A) must be read in conjunction with § 853(p) to preserve availability of substitute assets pending trial. Id. See also United States v. Roybal, et al., Criminal Number 03-568 WJ, mem. opinion and order, (December 18, 2003) (Doc. 265). Therefore, substitute property may be restrained prior to trial.

        Respectfully submitted,

        DAVID C. IGLESIAS
        United States Attorney

        ***Electronically filed on October 25, 2005***

        STEPHEN R. KOTZ
        Assistant U.S. Attorney
        P. O. Box 607
        Albuquerque, New Mexico  87103-0607
        (505) 346-7274, Ext. 1464

I hereby certified that a
copy was faxed/mailed to counsel
for defendant, Dana Jarvis,
Judith Rosenstein and Cliff McIntrye, Esq.,
on 25th day of October, 2005

/s/
STEPHEN R. KOTZ
Assistant U.S. Attorney