IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                                                          CR No. 05-1849 JH

DANA JARVIS,

        Defendant.

## MOTION FOR RELEASE OF FUNDS

Defendant Dana Jarvis, and respectfully request that this Court grant a hearing pursuant to United States v. Jones, 160 F.3d 641, 649 (10th Cir. 1998) and issue an Order releasing his property in Mora County, listed at p.12(i) of the Indictment in this matter.

## BACKGROUND

Mr. Jarvis is charged in a multi-defendant, multi-count indictment revolving around alleged distribution of marijuana. The case has been declared "complex" and an extended discovery and briefing schedule has been entered by this Court. Mr. Jarvis is facing a possible mandatory sentence of 30 years if convicted on all counts. Under these circumstances, it is imperative that Mr. Jarvis is able to present the kind of defense he wishes. Effectively all of Mr. Jarvis's property has been restrained through the Indictment and *lis pendens* filed in this matter.

This Court recently granted the Order withdrawing Mr. Jarvis's court appointed attorney from the case. At the same time, this Court declined to hear a motion to release funds presented by Mr. Jarvis's prospective private attorneys. Since that time, Mr. Jarvis has been appointed new counsel through the Criminal Justice Act. That undersigned counsel properly presents the issue of release of assets and request for a hearing on Mr.

Jarvis's behalf. Specifically, Mr. Jarvis requests that his property in Mora be released so that he may use it to obtain the counsel of his choice[1].

As will be discussed, there is no logical reason why the specific property should be subject to seizure. The property was purchased long before the alleged illegal activity in this case is said to have taken place. No allegedly tainted funds were used to purchase the property. Therefore, the seized property could only be viewed as "substitute" assets. As will be discussed, while the government may seek "substitute assets" for forfeited funds, such substitute assets are not subject to being restrained without an actual conviction and forfeiture order.

## ARGUMENT

**I.     The Restrained Property is a "Substitute Asset"**

In the Indictment, the government seeks to have forfeited all property resulting from the commission of the alleged crimes. Indictment at p.7. Forfeitable assets include all real or personal property *involved in* the underlying offense and all property traceable to such property. 18 U.S.C. § 982(a)(1) (emphasis added). See also 21 U.S.C. § 853(a)(property subject to criminal forfeiture). The Indictment specifically lists property believed to be such forfeitable assets on pp.7-10. The property in question here is not included within this section of the Indictment.

The crimes in the Indictment are alleged to have taken place from approximately September 2002 through August, 2005. Indictment at p.1. The property in Mora, at p.12(i) was obtained by Mr. Jarvis long before the allegations of any wrongdoing began. He purchased the property in full, with no mortgage, in 1972. Therefore, the property in

---

[1] This is the property more specifically described in the Indictment at p.12(i).

question is not a "forfeitable" asset, but a "substitute" one.  The government recognizes this as it specifically lists this and other properties as substitute assets under 21 U.S.C. § 853(p).  Indictment at 10.   The law provides that if, upon conviction, forfeitable assets are unreachable by the government, a court shall order the forfeiture of substitute assets. 21 U.S.C. § 853(p).  Section 853(p) provides:

>  If any of the property described in subsection (a) as a result of any act or omission of the defendant -
>
>> (1) cannot be located upon the exercise of due diligence;
>>
>> (2) has been transferred or sold to, or deposited with, a third party;
>>
>> (3) has been placed beyond the jurisdiction of the court;
>>
>> (4) has been substantially diminished in value; or
>>
>> (5) has been commingled with other property which cannot be divided without difficulty; the court shall order the forfeiture of any other property of the defendant up to the value of any property described in paragraphs (1) through (5).  21 U.S.C. § 853(p).

As the government is seeking over forty-nine million dollars ($49,000,000.00) as alleged proceeds of illegal activity, Indictment at 8, it is reasonable to assume that the government believes that the properties obtained prior to the alleged illegal activity may be subject to forfeiture under this "substitute assets" provision to replace those forfeitable proceeds in the event of a conviction.  However, as is explained in the next section, there is no legal basis for the pretrial restraint of substitute assets without a conviction and forfeiture order.

**II.     Substitute Assets are Not Subject to Restraint Without a Conviction**

The statute which provides authority for the restraint of assets is very clear in what assets can and cannot be restrained. Specifically:

> (e) Protective orders
>
> (1) Upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property described in subsection (a) of this section for forfeiture under this section--

21 U.S.C. § 853(e)(1).

21 U.S.C. § 853(a) specifically deals with "property subject to criminal forfeiture." Assets that fall within section (a) as forfeitable, can be restrained. However, there is no similar provision for assets that fall within section (p) substitute assets. Section 853(e)(1) specifically refers to the property described in subsection (a) and does not refer to property described in subsection (p). Therefore, there is no statutory basis from which to restrain the Mora property at this time. In re Assets of Martin, 1 F.3d 1351 (3rd Cir. 1993) (substitute assets not subject to pre-conviction restraint); United States v. Floyd, 992 F.2d 498 (5th Cir. 1993) (same); United States v. Ripinsky, 20 F.3d 359 (9th Cir. 1994) (same); United States v. Field, 62 F.3d 246 (8th Cir. 1995) (same). At least one district in the Seventh Circuit agrees. United States v. Federal Security Inc., 1998 U.S. Dist. LEXIS 9159 (E.D. Ill. 1998) (same). While the Second Circuit once allowed for the restraint of such assets, United States v. Regan, 858 F.2d 115 (2nd Cir. 1988), it has since reconsidered that decision. United States v. Gotti, 155 F.3d 144 (2nd Cir. 1998) (limiting Regan to its facts and finding pretrial restraint of substitute assets not

4

permitted); see also United States v. Razmilovic, 419 U.S. F.3d 134 (2nd Cir. 2005). While the Tenth Circuit has not directly addressed the issue, it does appear to understand the difference between immediately "forfeitable" and future "substitute" assets, providing language supportive of the no pretrial restraint position:

> An asset cannot logically be both forfeitable and a substitute asset. To allow such an anomaly would render the substitute assets provision meaningless. Assets involved in or traceable to the offense are forfeitable once the requisite nexus is established. *See* 18 U.S.C. § 982(a). The substitute assets provision allows the forfeiture of other assets not already forfeitable when the forfeitable asset is unavailable due to some act or omission of the defendant. United States v. Bornfield, 145 F.3d 1123, 1139 (10th Cir. 1998).

The Fourth Circuit remains the lone circuit which allows for pretrial restraint, In Re Billman, 915 F.2d 916 (4th Cir. 1990), and its reasoning is unpersuasive[2]. The Fourth Circuit is in direct conflict with all of the other circuits that have addressed this issue, as well as the explicit legislative history of the Act. In order to come to the conclusion that the Fourth circuit has, this Court would have to "graft onto the language of section 853(e) a reference to section (p) that does not exist in the statute." Field, 62 F.3d at 249.

As the Fifth Circuit explained in Floyd:

> Whatever the ultimate soundness of Billman, we are not persuaded that it can fairly support the contended-for restraint of property. We find that the statute controlling the restraint before us plainly states what property may be restrained before trial. Congress made specific reference to the property described in § 853(a), and that description does not include substitute assets. Congress treated substitute assets in a different section, § 853(p). To allow the government to freeze Floyd's untainted assets would require us to interpret the phrase "property described in subsection (a)" to mean property described in subsection (a) and (p). 992 F.2d at 502.

---

[2] District Judge William P. Johnson has recently sided with the minority in his Memorandum Opinion and Order in United States v. Ayala, Cr. No. 03-568 WJ (Docket No. 265) (Dec. 18, 2003). Of note, in that case Judge Johnson found the defendant's statements about the unavailability and value of other assets he owned to not be credible. Id. at 7-8. Of course, the decision of a district judge is not binding upon the Court in this case, particularly when it is contrary to the weight of federal appellate authority.

The Third Circuit agreed, noting:

> We believe that Floyd correctly interpreted the statutory pretrial restraint provisions as applied to substitute property. We further believe that Billman did not explain adequately why the pretrial restraint provisions' clear limitation to subsection (a) assets was furthered by treating subsection (m) substitute assets as though they were subsection (a) assets. In our view, Billman's conclusion cannot be reconciled with the normal rule of statutory interpretation that a court does not look to the purpose of a statute when the meaning is clear on its face. In Re Assets of Martin, 1 F.3d at 1359.

The court went further in its analysis, stating:

> We, like the Floyd court, find the plain language of the statute so clearly dispositive that ordinarily we would not consider legislative history. However, in light of the circumstance that our result conflicts with Billman, we have examined the legislative history, which demonstrates, were there any doubt, that the Floyd court's reading of the statutory language is correct. Id .

After an extensive review of the legislative history, including a Senate Report on an earlier similar version of the Act that specifically states "the restraining order provision applies only to [subsection (a)] property. It may not be applied with respect to other assets that may ultimately be ordered forfeited under the substitute assets provision," quoting Senate Report 97-520, 97th Cong., 2d Sess (1982), the court concluded:

> This legislative history unequivocally establishes that Congress meant what it said in limiting pre-conviction and pre-indictment restraints to subsection (a) property. Contrary to the conclusions in Billman and Regan, Congress had no purpose of allowing pretrial restraints of all assets, including substitute assets, that ultimately might be forfeitable. Rather, Congress clearly intended to exclude substitute assets from property subject to preliminary restraints.  Id at 1360.

In order to conclude that 21 U.S.C. § 853(e)(1) allows for the pretrial restraint of substitute assets, this Court would be forced to both: 1) ignore the specific and unambiguous statutory limitation allowing only the restraint of "property subject to

6

criminal forfeiture," as defined in § 853(a), and 2) ignore the legislative history which supports the unambiguous statutory language. That plainly would be contrary to well-established rules of statutory interpretation.

### III. These Funds are Necessary for Representation.

Mr. Jarvis has no assets other than those restrained by the government. Mr. Jarvis wants to hire private counsel of his choosing but cannot do so without adequate funds to cover the considerable costs associated with this matter. Mr. Jarvis is requesting that, at a minimum, the substitute assets, which are improperly retrained in this case, be released so that he may fund his defense.

Due process "requires a district court to conduct a post-restraint pre-trial hearing before continuing to freeze assets if a defendant needs the assets for reasonable legal fees and living expenses and makes a *prima facia* showing that the grand jury erred in determining the assets are traceable to the underlying offense." United States v. Jones, 160 F.3d 641, 649 (10th Cir. 1998). As has been discussed, not only is the property at question not traceable to the underlying offense, the government has not even claimed it is, listed it as a "substitute asset" pursuant to 18 U.S.C. §853(p). Indictment at p.10. Furthermore, it is clear that Mr. Jarvis has no unrestrained assets from which to hire his chosen attorneys. Therefore, Mr. Jarvis is entitled to a hearing unless this Court should decide to enter an Order in his favor based on his Motion.

### CONCLUSION

Wherefore, for the foregoing reasons, Defendant Dana Jarvis respectfully requests that a hearing be held on this matter and that this Court issue an Order releasing the property at issue.

                                      Respectfully submitted

                                      *Electronically Filed 2/3/06*

By:   _____

                                      Joe M. Romero, Jr.
                                      Attorney for the Defendant
                                      1905 Lomas Blvd. NW
                                      Albuquerque, NM 87104
                                      (505) 843-9776

I hereby certify that a true and correct copy of the foregoing pleading was mailed to opposing counsel this 3rd day of February, 2006.

*Electronically Filed 2/3/06*

_____
JOE M. ROMERO, JR.