**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

**vs.**                                                                                          **CR No. 05-1849 JH**

**DANA JARVIS,**

        **Defendant.**

**EMERGENCY SEALED PETITION TO HALT U.S. MARSHALS SERVICE
TRANSFER OF DEFENDANT JARVIS FROM RCC TO TORRANCE COUNTY**

        Comes now the Defendant, Dana Jarvis, through counsel, Joe M. Romero, Jr., and hereby respectfully requests the Court prohibit the U.S. Marshals Service from transferring Mr. Jarvis from the Regional Correctional Center [hereinafter "RCC"] to the Torrance County Detention Center in Estancia, New Mexico for the purpose of pre-trial detention pending trial, or, if such transfer has already occurred, requesting this Court order the U.S. Marshall's Service to return Mr. Jarvis to RCC from Torrance County. In support thereof, Mr. Jarvis states:

        **I.**        **BACKGROUND**

        This Court recently granted Defendant Jarvis' *Motion For Reconsideration of Order Denying Motion To End Unconstitutional Conditions of Confinement*. *See Order* [*Doc. No.* 654]; *Defendant's Motion* [*Doc. No.* 499]. In its Order, the Court noted that Defendant Jarvis had been held in continuous administrative segregation for more than six months. *Doc. No.* 654 at ¶ 2, FN 1. In rendering its decision, the Court found "sufficient evidence to demonstrate that the current conditions of administrative segregation [were] interfering with his Sixth Amendment right to prepare his defense

with the effective assistance of his counsel." *Doc. No*. 654 at ¶ 3. Specifically, the Court was persuaded by 1) "undisputed evidence in the record" that the limitations placed on Defendant Jarvis' telephone privileges interfered with his Sixth Amendment right to effective assistance of counsel *Doc. No.* 654 at ¶ 3, and 2) "uncontradicted" evidence that the Defendant Jarvis' conditions of confinement impaired his mental ability to meaningfully participate in preparing his own defense. *Doc. No*. 654 at ¶ 4. The Court also noted that it was the government's intention to "keep Defendant in administrative segregation for the foreseeable future, *despite the fact that it does not intend to charge Defendant for the alleged crime that is the basis of his segregation*." [Doc. No. 654 at ¶ 4](emphasis added).

On August 21, 2006, the Court granted Mr. Jarvis' motion wherein it ordered that "Defendant be transferred from administrative segregation to the general population at the Regional Corrections Center, with the same rights as all other inmates in that general population." [Doc. No. 654 at ¶ 7]. Mr. Jarvis was just beginning to adjust to his return to general population when, on Friday, September 1, 2006, Defense Counsel was indirectly notified by way of a copy of a letter sent by the U.S. Attorney's Office to the U.S. Marshals Service that the government had requested that Mr. Jarvis be transferred from RCC to a facility where his telephone calls can be "effectively monitored."

On Tuesday morning, September 5, 2006, Defense Counsel learned that Mr. Jarvis had already been moved from general population to the U.S. Marshals Service holding cell in anticipation of his transfer to Torrance County. This decision was made over a holiday weekend without notice to this Court or input from Defense Counsel upon the bare assertions by the U.S. Attorney's Office that it was "impossible" for the

government to effectively monitor Mr. Jarvis' telephone calls at RCC in comparison to "another facility . . . such as Torrance County." The United States Attorney's Office and the United States Marshall's Service are aware that Mr. Jarvis strongly opposes his transfer from RCC. Mr. Jarvis respectfully seeks the immediate intervention of this Court to determine whether this move at the *ex parte* demand of the United States violates the intent or letter of this Court's Order moving Mr. Jarvis out of over six months segregation only fifteen days ago, in the face of this Court's findings of impairment of Mr. Jarvis' Sixth Amendment rights to counsel by the previous actions of the United States.

## II.      CURRENT SITUATION

### a. The United States' Alleged Basis for Requiring Mr. Jarvis' Transfer

In its August 31, 2006 correspondence to the U.S. Marshals Service, the U.S. Attorney's Office asserts that it is unable to effectively monitor Mr. Jarvis' telephone calls at RCC system. However, the government has made no showing that this is actually the case or that another facility can offer a different system that will assist the government in this matter. This is the sole basis given by the government to seek a unilateral move of a defendant whose conditions of pre-trial confinement have been the subject of extensive litigation, which only recently was resolved by this Court's order.

The government asserts an inability to monitor Mr. Jarvis' calls from his present facility, yet Defense Counsel is in possession of numerous compact discs of discovery that contain Mr. Jarvis' monitored conversations made during his detention at RCC – conversations monitored by the government in its attempt to secure evidence against Mr. Jarvis regarding the alleged hit man plot. At the minimum within the unique posture of this complex case, the concerns of the government need to be evaluated by this Court and

3

tested in balance against the requirements of the Defendant's constitutional rights. Such a pre-transfer hearing is the minimum that Mr. Jarvis seeks.

### b. Mr. Jarvis' Arguments Against Transfer

The transfer of Mr. Jarvis from RCC to Torrance County, or any other facility, further from geographic access with his counsel, will once again impair Mr. Jarvis' Sixth Amendment right to counsel. This Court has already affirmed its authority to monitor whether pre-trial conditions of confinement are adversely affecting Mr. Jarvis' ability to prepare his defense. *See Doc.* 373, p. 4. In this same Order, this Court directed the parties to "notify the Court if they are unable to fully resolve this matter in the future." *Id.*

Despite the Order of this Court that the Parties are to dialogue regarding Mr. Jarvis' conditions of confinement and notify the Court if agreement cannot be reached, the government instead chose to unilaterally transfer Mr. Jarvis to an other detention facility. This transfer will most certainly have deleterious effects on Defendant Jarvis' Sixth Amendment Rights, especially in light of this Court's findings that previous acts of the government have already caused prejudicial constitutional impairment.

Mr. Jarvis is scheduled for trial April 10, 2007. This Court found the preparation of Mr. Jarvis' defense was constitutionally hampered during the over six month pre-trial incarceration in segregation that already occurred. The practical effect of this six month impairment is that Mr. Jarvis is not as prepared as he would have been for a quickly approaching trial, a prejudice to his constitutional rights unambiguously caused by the government. This previous prejudice is a critical factor for this Court's attention if the integrity and fundamental fairness of these proceedings is to remain unassailable.

This Court's budgeting of costs and expenses for this complex defense was projected based upon defense team access to Mr. Jarvis in Albuquerque.  A move further from counsels' access will unnecessarily divert time from that remaining to prepare Mr. Jarvis' criminal defense, simply in counsel and defense team travel time alone. Each client visit is estimated to take an additional 2-3 hours if the transfer to Torrance County is allowed, hours previously budgeted for actual legal work rather than transportation. These hours are compounded when considered as the defense preparation time of each attorney, a paralegal, and the investigator.  Mr. Jarvis reasonably prefers to review all filings on his behalf pre-filing if possible, and drive time alone to Torrance County would virtually eliminate this participation of the Defendant in his own defense.  Furthermore, the attendant travel time and phone costs to maintain defense contact alone will require yet another diversion of defense counsel time into administrative budgeting for submission of a revised budget, while the clock ticks down to trial.

Mr. Jarvis' transfer to another facility will interfere with and likely destroy Mr. Jarvis' psychotherapist/client relationship with his current therapists. The current mental health experts are believed to be employees of Mr. Jarvis' current site of incarceration, RCC.  His mental health therapists testified for this Court that Mr. Jarvis has been adversely affected by the government's previous segregation of him for months on end, and to conclude thus, the therapists had to first establish a working relationship with Mr. Jarvis.  A transfer is expected to terminate this working therapeutic relationship. Compromising such established relationship is an unnecessary risk of impeding the defendant's constitutional right to participate in his own defense, when this case has already been dangerously prejudiced thus far.

The evidence already adduced established that Mr. Jarvis' six month segregation caused deterioration in his mental health, which acts to impair his ability to assist his counsel. Any transfer at this juncture will only serve to interrupt an established therapist/patient relationship necessary to restore Mr. Jarvis to his pre-segregation state, and necessary to protect his constitutional right to a fundamentally fair proceeding.

This case has been designated as a complex case and has voluminous discovery that requires close contact, in person and by telephone, between the defense team and Mr. Jarvis. Transferring Mr. Jarvis to a facility located approximately 60 miles from Albuquerque will unnecessarily impair Defendant's access to counsel and his realization of the protections of the various attendant constitutional rights guaranteed to a defendant in the criminal process.

WHEREFORE, Defendant Jarvis respectfully requests that the U.S. Marshals Service be halted from transferring him from RCC to Torrance County, or any other facility, upon the government's aforementioned request.

Mr. Jarvis further requests that a hearing be held to adduce a factual basis justifying any transfer of the Defendant, such that this Court retains its proper role of monitoring the pre-trial conditions of confinement of Mr. Jarvis.

Respectfully submitted

By: *Electronically Filed*
_____
Joe M. Romero, Jr.
Attorney for Mr. Jarvis
1905 Lomas Blvd. NW
Albuquerque, NM 87104
(505) 843-9776

I hereby certify that a true and correct copy of the foregoing pleading was mailed to opposing counsel this 5th day of September 2006.

*Electronically Filed*

_____
JOE M. ROMERO, JR.