






IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**THE UNITED STATES OF AMERICA,**

    **Plaintiff,**

    **vs.**                                                         **No. CR 05-1849 JH**

**DANA JARVIS, et al.,**

    **Defendants.**

**AFFIDAVIT OF ALBERT MARES, INVESTIGATOR,
IN SUPPORT OF
DEFENDANTS' JOINT MOTION TO DISMISS THE FORFEITURE
ALLEGATION, OR,
IN THE ALTERNATIVE,
MOTION FOR A BILL OF PARTICULARS PURSUANT TO
FED. R. CRIM. P. 7(c)(1), 7(c) (2), 7(f) & 12(b)(3)(B)**

STATE OF NEW MEXICO    )
                                      ) ss.
COUNTY OF BERNALILLO  )

    I, Albert Mares, do swear and affirm the following:

    1.    I am the CJA appointed investigator for Defendant Dana Jarvis in the above titled case.

    2.    On June 20th I was told by Court Appointed paralegal on this case, Sharon Hawk, Esq., that we would be allowed to look at the physical documentary evidence on June 27 and 28, 2006. I later learned that there were actually three days going to be allowed and the times were from 9:00 am to 12:00 pm and 1:30 pm 4:00 pm each day.

3.  I was prepared to use the time I had and went to look at the evidence on the June 27, 2006. Although I got there at 9:00 am, I didn't get into see the evidence until about 9:20 am.

4.  I was taken to a room where there were numerous boxes and items (see photos, Exhibit A) of items I was told were evidence in this case. Present were AUSA Mr. Braun, Agent Stark and another agent whose name I do not recall. Mr. Braun did not stay long but one or both of the Agents were present at all times.

5.  The agents were professional and told me that I could look through the boxes and gave me some gloves to wear. One thing I did not see that would have been helpful was a table to place open boxes or packets of evidence on. The boxes were all on tables but there was no space to lay out items, as reflected in the photos.

6.  As I began to look through the boxes, I realized that most boxes had in them numerous separate packages which were labeled separately from the box itself and that each of those packages contained from one to dozens to hundreds of other items or papers. Because I knew I could not possibly look through them all, I asked if I could photograph the boxes. An agent contacted AUSA Braun and asked permission and I was allowed to take the photos attached as Exhibit A. As I looked through boxes, agents would open or unseal what I asked to be opened or unsealed but I had to make a choice to look randomly as there was insufficient time to look through the overwhelming majority of the packages as time would now allow each and every item to be opened.

7.  When I expressed my amazement as to all the items in evidence, I was also told that the items the government was using were already copied and the defense

2

attorneys had them. It was my impression that while some of the discovery was copied, the vast majority was not.

8.   Seeing how many boxes, packages and items were there, I realized that there was no way I was going to get to look at, examine and document the contents of all the evidence in only one day. At one point, I told one of the agents that it was ok and I would be back the next day. I was told that I could not come back the next day and this would not work. I was told the days had been separated in blocks as to allow all the attorneys individual blocks of time to view the evidence and the days following would be for the other co-defendants' attorneys.

9.   With that, I continued and was only able to literally look at the labels the government had placed on each package and reconcile the government labels with the actual contents as best I could. I worked through lunch and felt that I had until 4:00 pm. The agents remained and had brought their lunch. At about 1:45 I was told that I would have to complete my work since the agents had other commitments. I then began to rush through what I was doing. Toward the end boxes, I only listed the boxes and not the contents until one of the agents told me I could say a bit longer and I was then able to go and list the individual packets again, but the "viewing" of evidence ended at about 2:30 pm.

10.  In retrospect, I only had about 5.5 hours to do what is literally impossible to do in that amount of time - which is to review each package to determine it's content and potential exculpatory and or evidentiary value to the case.

11.  I did bring this to the attention to Mr. Jarvis' defense team and was asked to estimate how long it would take to really take time and properly review the evidence.

12. Based on what I saw I would estimate, in order to properly review all the evidence, it would conservatively take a week to actually determine what evidence exists. It would then be up to the expert witnesses on the defense team to determine how much time would be needed to analyze the financial and other data contained in the withheld evidence, unless the United States provided copies to the defense such that the defense could make their review in their own offices.

_____
Albert Mares, Investigator

SUBSCRIBED AND SWORN TO before me this 6th day of October, 2006, by Albert Mares.

_____
NOTARY PUBLIC

My commission expires: 3/26/09

4