IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.   Criminal No. 05-1849 JH

DANA JARVIS,

        Defendant.

**DEFENDANT DANA JARVIS' REPLY TO THE UNITED STATES RESPONSE TO DEFENDANT'S MOTION TO EXTEND DEADLINE FOR FILING WIRETAP RELATED MOTIONS [ Doc. 768]**

Defendant Dana Jarvis, by and through counsel, Joe M. Romero, Jr. and Jody Neal-Post, hereby replies to the United States' Response to his Motion for an Order extending the deadline of October 20, 2006 for all wiretap related motions in this complex case. In reply, Defendant Jarvis states as follows:

1.    Defendant Jarvis substantially agrees with the United States' Response at paragraph 1, with the exception of the United States' characterization of whether suppression motions are "wire tap related motions." The evidence in this case is overwhelmingly wire tap evidence or derivative of wire tap evidence, such as evidence obtained pursuant to warrants relying at least in part upon wire taps or derivative wire tap information in the underlying search warrant affidavits. *See e.g. Exhibit A, Sample Warrant Excerpt.* Because of this inextricable interweaving of wire tap evidence into the search warrant affidavits, as well as intercepted communications being the basis of traffic stops resulting in seized evidence, virtually all suppression motions are "wiretap related motions."

2.    Again, Defendant Jarvis largely agrees with the United States at ¶2. Undersigned counsel, Ms. Neal-Post, did decide it would be an unnecessary waste of budget resources to write suppression motions by the October 20, 2006 deadlines, and a ruling on the wiretap discovery motion *is* likely an

indirect rather than direct effect "on other suppression motions." However, where Mr. Jarvis disagrees is that these concerns and the issue of the service of the United States response discussed at Response, p.2, n.3 are "specious."

This is a complex case. The designation of complex case acknowledges the problems in applying standard scheduling plans, and even suggests phased discovery may be necessary. *See e.g. Dist of New Mexico Civil Justice Expense and Delay Reduction Plan*, A(2)(a)(3)(b)(3). Discovery has fallen out of sequence in the present case, a common occurrence in complex cases, with the motions deadline for suppression motions falling *before* the main discovery motion on wiretap evidence was decided by this Court and well before all wiretap discovery was received by the defendants, as defendants received yet more wiretap discovery just this week. Defense counsel had to make a decision considering the constitutional rights of the defendant against the reality of budgeting constraints and determined it would be a waste of resources of counsel and this Court to prematurely submit suppression motions. If the Court disagrees with this decision by Mr. Jarvis' counsel, counsel would request the Court direct its displeasure to his counsel, rather than penalizing the Defendant by denying him leave to file his critical suppression motions.

To illustrate counsels' paradox: Mr. Jarvis might have submitted a suppression motion of the stop, search and seizure of a vehicle owned by him out of state. If the information upon which the stop of the vehicle was made included direct wiretap information, or derivative wiretap information, the Motion necessarily proceeds in its analysis differently depending on whether this Court has suppressed the wire-tap information or not. If wire tap information was suppressed, the motion might begin analysis at the traffic stop validity, rather than as a *Terry* stop being based upon legitimate "tip" information. Whether the tap stays in or falls out for other searches likely determines whether arguments of independent intervening source or inevitable discovery are made.

Filing of suppression motions before not only the wiretap discovery motion is decided and production made, but before this Court enters its eventual ruling on the Defendants' joint wire tap suppression motion would require Mr. Jarvis to anticipate every possible argument with the tap information in *and* out. Such complex briefing would also waste judicial resources as requiring the Court to excise arguments made irrelevant by Court order subsequent to the writing of the motions. With over 25 searches, the number of suppression motions legitimately filed by Mr. Jarvis, at the extreme, could be equivalent to the number of searches. *See Exhibit B, Sampling of Searches*. Even presented in the most efficient fashion, post- decision on the joint wiretap suppression motion, this is an enormous defense burden in writing, and an enormous judicial burden in evaluating. Motions written in the alternative with tap information in *and* out would be practically impossible.

3. Mr. Jarvis respectfully and simply disagrees with the United States that the Government's request for a wiretap related motion response extension as detailed at Response, p. 3, ¶ 3 differs from Mr. Jarvis' request here. Instead, Mr. Jarvis continues to maintain that the logic presented by the United States and accepted by this Court in its order at Doc. 650 was sound and merely the same treatment Mr. Jarvis seeks here, that it makes sense to allow the United States to respond all at once to wiretap related motions. The United States simply seeks to draw lines through their own well conceived logic now that the Defendant seeks to adopt that governmental reasonableness and have it applied to him.

4. The United States suggests at p. 3, ¶ 4 that what Mr. Jarvis should have sought was leave "to file any motion to suppress non-wiretap evidence that is solely the fruit of the wiretaps after a ruling on the motion to suppress the wiretap evidence." Mr. Jarvis will not quibble with the United States' rewording of his request, nor is it entirely inaccurate. Mr. Jarvis seeks to do just this, but he also seeks to file his suppression motions without writing in the alternative, as detailed above at ¶ 2. Counsel on both sides and this Court share the responsibility of meeting the constitutional parameters of a fundamentally

3

fair proceeding in as economical a fashion as possible. The flexibility of the complex case designation allows this Court to adjust scheduling to accomplish all these objectives in whatever manner the Court decides best meets the needs of this particular case.

5.     The remedy suggested by the United States at its ¶ 5, that simply an assertion "in the motion that if the court suppresses the wiretaps, then that evidence should also be suppressed as fruit of the wiretaps," Such generalized statements in argument have already been rejected by this Court as inadequate, most recently in this Court's initial wiretap discovery order at Doc. 733. The organizational level of complexity required to fully present a suppression motion is impossible to meet without specificity, as a suppression motion is a fact intensive sequence where each sequential act informs as to the constitutional significance of the subsequent act. No one here relishes the potential volume of suppression motions necessary for Mr. Jarvis' effective representation subsequent to the Court's determination of the joint wiretap suppression motion, but even worse would be the writing of motions mooted by a decision rendered subsequently. The worst outcome of all is the looming specter of a constitutionally flawed and reversible result if simple prophylactic measures are rejected now.

6.     In *Waller v. Georgia*, the United States Supreme Court noted the importance of suppression motions and hearings in the criminal process, stating "Suppression hearings are often as important as the trial itself." *Waller v. Georgia*, 467 U.S. 39, 46, 81 L. Ed. 2d 31, 104 S. Ct. 2210 (1984). *United States v. Prieto-Villa* explains further that "[t]he government's case may turn upon the confession or other evidence that the defendant seeks to suppress, and the trial court's ruling on such evidence may determine the outcome of the case. In many cases, the suppression hearing [is] the only trial, because the defendants thereafter plead[]guilty pursuant to a plea bargain." *United States v. Prieto-Villa*, 910 F.2d 601, 610 (9th Cir. 1990)(internal citations omitted), *citing Waller*, 467 U.S. at 47. Clearly, denial of this continuance in the face of Mr. Jarvis' legitimate grounds would equate to constitutional error, as a denial

of the right to present his defense. Just as clearly, this is avoidable.

7. Defendant Jarvis points out his revised prayer, adopting the United States' reformulation of the appropriately precise request as discussed at ¶ 4 above. The most efficient case management would indeed be to continue the suppression motion deadline until 30 days after entry of this Court's Order on the joint wiretap suppression motion, which is the revised remedy Mr. Jarvis now seeks.

**WHEREFORE**, Defendant Dana Jarvis respectfully requests that that Court continue the deadlines for any wiretap related motions, including suppression and any motions which rely on wiretap data as a factual or legal basis, until at least 30 days after a ruling is entered upon the Joint Defendants Wiretap Suppression Motion, or such extension as this Court deems most appropriate in the interests of safeguarding the Defendant's constitutional rights and promoting judicial economy in this complex case.

Respectfully Submitted

*Electronically filed 11/10/06*
By: _____
Joe M. Romero, Jr.
Attorney for Defendant Jarvis
1905 Lomas NW
Albuquerque, NM 87104
(505) 843-9776

*Electronically filed 11/10/06*
By: _____
Jody Neal-Post
Attorney for Defendant Jarvis
317 Amherst SE
Albuquerque, NM 87106
(505) 268-7263

I hereby certify that a true and correct copy of the foregoing was mailed to opposing counsel, AUSA James Braun and Stephen Kotz, on November 10, 2006.

*Electronically filed 11/10/06*
_____
Joe M. Romero, Jr.