IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cr. No. 05-1849 JH |
| | ) | |
| DANA JARVIS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

UNITED STATES' RESPONSE TO
"DEFENDANTS' JOINT REPLY TO THE GOVERNMENT'S
RESPONSE TO THE DEFENDANTS' JOINT MOTION TO COMPEL
DISCOVERY RELATED TO THE INTERCEPTION OF ELECTRONIC
COMMUNICATIONS, OR, IN THE ALTERNATIVE, A MOTION TO RECONSIDER
THE COURT'S PARTIAL DENIAL OF THE DEFENDANTS' MOTION" (DOC. 770)

COMES NOW the United States of America, by and through David C. Iglesias, United States Attorney for the District of New Mexico, and James R.W. Braun, Assistant United States Attorney for said District, and hereby responds to "Defendants' Joint Reply to the Government's Response to the Defendants' Joint Motion to Compel Discovery Related to the Interception of Electronic Communications, Or, in the Alternative, a Motion to Reconsider the Court's Partial Denial of the Defendants' Motion" (Doc. 770).[1]

---

[1] Because the defendants' reply brief is styled in the alternative as a motion to reconsider, the United States has not sought leave of the court to file this "surreply/response."

A.   BACKGROUND.

On July 16, 2006, the defendants filed a "Joint Motion to Compel Discovery Related to the Interception of Electronic Communications" (Doc. 573). The United States timely filed its response to the defendants' motion on August 2, 2006. (Doc. 614).[2] Although counsel of record for all of the individual defendants were served with the response, the United States inadvertently failed to serve attorney Scott Davidson.[3]

In late September, 2006, Mr. Davidson called undersigned counsel to check on the status of the United States' response. Undersigned counsel informed Mr. Davidson that the response had already been filed, but that it might not have been served on him. Undersigned counsel suggested that Mr. Davidson pull the United States' response up on the district court's web site and decide whether he wished to file a reply.[4]

Because an order had not yet been entered on the defendants' motion when Mr. Davidson became aware of the United States' response having been filed, any harm from

---

[2] Because undersigned counsel was on leave, another AUSA sought an extension from attorney Scott Davidson to file the response. Undersigned counsel, however, had intended to draft and timely file the response. The United States did not seek an extension of time from the court.

[3] Mr. Davidson was appointed under the Criminal Justice Act to represent defendant Russell Trujillo, (*see* Doc. 407), whom attorney Penni Adrian had also been appointed to represent. Mr. Davidson is apparently representing all defendants with appointed counsel, however, as "associate counsel for defendants represented by court-appointed for purpose of this and certain other motions." (Doc. 573 at 24).

[4] Although Mr. Davidson now complains that he still "has not been served with a copy of the government's response to the discovery motion," (Def. Reply Brf. at 3), he did not object to undersigned counsel's suggestion at the time.

2

the United States' failure to serve Mr. Davidson could have been easily cured if he had simply filed an unopposed motion for leave to file an untimely reply brief. The court at that point would have been on notice that briefing was not complete, and the order likely would not have issued until the defendants had filed their reply. Inexplicably, however, Mr. Davidson chose not to act until *after* the court entered its order on October 24, 2006, nearly a month later. (*See* Def. Reply Brf. at p. 3).

Nevertheless, the United States does not oppose the defendant's filing a motion to reconsider in place of a reply brief so that they could make any argument they would have been entitled to make in a reply brief.[5] In their motion, however, the defendant's go far beyond the purpose of a reply brief, making arguments for the first time that they failed to make in their motion with regard to categories 3, 5, 6, 8, 12, 14, and 17.[6] These arguments would not have been proper in a timely reply brief, and should not be allowed at this stage. Moreover, because these arguments could have, and should have, been made in the defendants' initial motion, the court should not entertain them in a motion to reconsider. *See United States v. Sims*, 252 F.Supp.2d 1255, 1260-61 (D.N.M. 2003) (listing the circumstances under which a motion to reconsider can be granted and noting that "[a] motion to reconsider 'is not a second chance for the losing party to make its

---

[5]As a reply brief, the defendants' pleading violates D.N.M.LR-Cr. 47.9, which provides that reply briefs must not exceed twelve pages.

[6]In their motion, the defendants failed to cite any authority in support of their request for items in categories 2, 3, 5, 6, 8, 9, 10, 11, 12, 14, 15, and 17.

strongest case or to dress up arguments that previously failed'") (citation omitted). And in any event, the court ruled on the merits of each of the defendants' requests, properly denying their requests for items in categories 3, 5, 6, 8, 12, 14, and 17. Thus, the defendants' motion should be summarily denied with respect to those categories.

## II.   DISCUSSION.

The only proper arguments in the defendants' reply are with regard to categories 13 and 16, which the defendants' had addressed in their motion. Overall, the defendants' requests can be broken down broadly into two types:

> 1) Discovery relating to the truthfulness/sufficiency of the affidavits submitted in support of the wiretap applications. This type of discovery includes category 13, along with categories 3, 5, 6, 8, and 12.
>
> 2) Discovery relating to the conduct of the wiretap interceptions. This type of discovery includes category 16, along with categories 14 and 17.

The United States addresses each type of discovery below.

### i.   Type 1 – Categories 3, 5, 6, 8, 12, and 13.

As to the first type, the defendants continue to misapprehend the discovery to which they are entitled. While the defendants go to great lengths in their motion to show how the requested discovery *might* be helpful to them, they have not established that it actually is helpful. Merely because the defendants can recite reasons for wanting the requested discovery does not mean they are entitled to it, and for the majority of the

defendants' requests, they cite to no authority in support of their requests.[7]  As discussed below, the defendants are not entitled to the requested discovery.

In the affidavits submitted in support of the wiretap applications in this case, DEA Special Agent Richard Stark described in detail the alternative investigative techniques that had been tried without success, or that were unlikely to succeed if attempted.  The defendants are asking this court to grant them essentially open-file discovery so that they can determine whether SA Stark either omitted material information from or included false information in his affidavits.  (*See, e.g.,* Def. Reply Brf. at 9 (regarding Category 5, "...the failure to conduct such an investigation prior to the wiretap application would cast doubt on the credibility of the affiant ..."); *Id.* at 12 (regarding Category 12, "[t]his, in turn, pertains to the question of necessity for the Title III wiretaps as well as to the credibility of the Affiant and the need for a *Franks* hearing"); *Id.* at 15 (regarding Category 13, "[i]f these techniques were successful or were insufficiently employed, then a *Franks* hearing may be necessary to determine whether or not the affiant made material omissions or material misrepresentations in the affidavit ...").  The defendants are not

---

[7]For example, throughout their reply brief, the defendants assert that law enforcement obtains certain types of documents as a "traditional, ordinary investigative technique[]."  (*See* Def. Reply Brf. at p. 8 (net worth records); *Id.* at p. 9 ("these [financial] analyses and reports are routinely generated"); *Id.* at p. 11 (obtaining telephone records "is a normal, traditional investigative technique..."; *Id.* at p. 12 (obtaining criminal history records "is a traditional investigative technique).  Whether these assertions are true or not, simply because law enforcement routinely obtains certain types of documents during an investigation does not *ipso facto* entitle the defense to those documents.

entitled, however, to expanded discovery aimed at challenging the statements in SA Stark's affidavits without at least making a substantial preliminary showing that his statements are untrue.  *See United States v. Wilson*, 1997 WL 377184 (9th Cir. 1997) ("Appellant also appeals from the district court's refusal to examine, or to let him examine, the reports on which the wiretap application (including the wiretap affidavit of [the agent]) was based.  If appellant doubted the veracity of the affidavit, he could have asked for a *Franks [v. Delaware*, 438 U.S. 154 (1978)] hearing") (second set of brackets in original) (unpublished); *United States v. Harding*, 273 F.Supp.2d 411, 430 (S.D.N.Y. 2003) ("Absent [making a substantial preliminary showing that he is entitled to a *Franks* hearing concerning whether the agent knowingly or with reckless regard for the truth made material false statements or omissions in his search warrant affidavit, the defendant] is not entitled to wide-ranging discovery to canvass for evidence in support of his motion to suppress").  They have not made such a showing, and their requests should therefore be denied.

In the event the court wishes to address the merits of each of the defendants' requests, however, the United States discusses them in turn below.

        a        <u>Category 3.</u>

The defendants assert that they are entitled to "law enforcement agencies' policies regarding the use of contract personnel in the wiretap process,"because it "is material to the question of necessity for the extension of the wiretap and also relevant to the question

of minimization of interceptions in this wiretap." (Def. Reply Brf. at 6). The defendants fail to explain precisely how the use of contract personnel to monitor the wiretaps has anything to do with whether the wiretaps were necessary or properly minimized. Second, law enforcement agencies' policies regarding evidence retention, (*see Id.*), have absolutely nothing to do with the question of necessity or proper minimization of intercepted calls. Third, the defendants' desire to learn whether "budgetary concerns" motivated the government's decision to seek a wiretap in this case, (*see Id.* at 7), is not material to an issue before this court. Finally, the only wiretap applications that are relevant at this stage are those that were actually executed. Nevertheless, to the extent "courtesy copies" of the affidavits were submitted to the approving judges in advance, it was only to allow the judges to review the affidavits at their leisure. The judges were not asked to comment on or make substantive revisions to the affidavits, and none of the judges did so. Those "courtesy copies" were not retained by the United States.

      b.    <u>Category 5.</u>

As noted in the United States' May 22, 2006, letter to Scott Davidson, attached to the defendants' motion (Doc. 573) as Attachment B, the United States has produced relevant financial documents that were obtained by the government during the course of the investigation and prosecution of this case. If a certain type of financial record is absent, the defendants are free to make whatever inference they wish about the "absence

of such records" in their motion to suppress the wiretaps.[8]

      c.      Category 6.

Read literally, this request encompasses virtually every report prepared during the course of this investigation. (*See* May 8, 2006, letter from Scott Davidson, Attachment A to Doc. 573). In their reply brief, however, the defendants focus their request on "reports of financial analyses." (Def. Reply Brf. at 9). As the United States noted in its letter to Mr. Davidson (Attachment B), and as the court ruled in its order, (Doc. 733 at 2), such reports are not subject to production under Rule 16.

Moreover, contrary to the defendants' assertion, such "reports of financial analyses" are far from "easily obtained." (*Id.*) Indeed, because a complete analysis of the financial aspect of the Jarvis organization depended on the analysis of records seized from members of the organization after the conclusion of the wiretaps, coupled with records obtained from financial institutions and elsewhere, a final financial report has yet to be completed by the assigned agents. Needless to say, then, a financial analysis had not been completed prior to or during the course of the wiretap interceptions. Therefore, this

---

[8]Without citation to any authority, the defendants assert that "in law enforcement investigations of drug trafficking organizations and money laundering, obtaining net worth records is one of the traditional, ordinary investigative techniques." (Def. Reply Brf. at 8). Although this relates more to the merits of a necessity argument, the government is at a loss to determine what exactly the defendants are referring to by the term "net worth records" which the defendants assert are easily obtainable. In reality, financial institutions can generally only provide agents with transactional records (e.g., bank statements, loan documents, etc.), which do not in and of themselves show a target's "net worth."

request should also be denied as moot.[9]

        d.        <u>Category 8.</u>

The information requested in category 8 should be included on the compact disc containing information responsive to category 4 (pen register records), which has already been provided to the defense. In any event, as with the pen register records, the United States will work with the defendants to provide them with the toll records that they seek. Therefore, this request should be denied as moot.

        e.        <u>Category 12.</u>

The defendants request criminal records "of the individuals referred to [in] the affidavit" in part because they might reveal that a potential cooperator existed who could have provided agents with additional information on the Jarvis organization. (Def. Reply Brf. at 12-13). As noted in SA Stark's initial affidavit, however, agents used cooperating sources during the investigation, but believed that the use of such sources would not help agents achieve all of the goals of the investigation. (March 3, 2005, affidavit of SA Stark, at pp. 38-40, attached hereto as Exhibit 1). SA Stark further noted that "[a]gents have not yet identified any individuals (other than the cooperating sources of information) considered likely to provide information on the Jarvis DTO [drug trafficking organization] without revealing the investigation to its members," (*Id.* at 40). Finally, SA

---

[9]As noted in the United States' May 22, 2006, letter (Attachment B), to the extent any such report constitutes an expert witness summary under Rule 16(a)(1)(G), it will be disclosed no later than 45 days prior to trial pursuant to the stipulated scheduling order.

Stark noted that even if such a person was discovered and interviewed, they would likely not provide sufficient information to achieve the goals of the investigation, and they might compromise the investigation. (*Id.* at 41). Thus, the defendants' stated reason for requesting these documents is unavailing. Moreover, the defendants' argument that people on probation or parole have an incentive to cooperate with law enforcement applies to *anyone* who might have had information on the Jarvis organization, not just "the individuals referred to [in] the affidavit." (Def. Reply Brf. at 12).

In support of their request, the defendants also assert that the telephone calls of any target who was in jail would have been recorded, thereby negating any need for a wiretap on their phones. As the defendants are well aware, however, with one exception,[10] none of the targets whose phones were subject to interception (Dana Jarvis, Ayla Jarvis, George Ripley, Jorge Ortiz-Moffett, or Ralph Greene) were in custody during the course of the wiretap interceptions. Furthermore, the relevant criminal history of each person who was expected to be intercepted was detailed in each SA Stark's affidavits. (*See, e.g.,* March 3, 2005, affidavit of SA Stark, at pp. 6-10, attached hereto as Exhibit 2). If any listed target had been in jail at the time the affidavit was submitted, that fact would have been noted in the affidavit.

    f.  <u>Category 13.</u>

The defendants continue to seek to make an end-run around Rule 16 to obtain

---

[10]Dana Jarvis was detained in Valencia County for a few hours on April 19, 2005, after being arrested on an outstanding warrant.

agents' surveillance reports by calling them "surveillance log[s] or record[s]." Whatever term is used, however, the fact is that DEA agents memorialize the surveillance that they conduct in reports. Those reports are not subject to production under Rule 16.[11]

        ii.       <u>Type 2 – Categories 14, 16, and 17.</u>

As to the second type of discovery, the defendants have been provided with what they need to determine whether the wiretaps were conducted in accordance with Title III. They have been provided with recordings of all of the intercepted calls and the line sheets for those calls. Moreover, the court has already ordered the government to produce the ten-day reports submitted to the district judges during the course of the interceptions. Those reports contain a list of, *inter alia*, the total number of calls intercepted and the number of calls minimized during a given reporting period.

In Category 16, however, the defendants argue that they are entitled to minimization training records in order to determine whether the government made "reasonable and sufficient efforts to comply with Title III's strict minimization requirements." (Def. Reply Brf. at 19). In Category 14, the defendants also argue that sign-in sheets might "reveal an unusually large number of individuals in the wiretap room," which *could have* resulted in distractions that thereby caused the monitors to fail

---

[11] Nevertheless, the United States has provided the defense with hundreds of pages of surveillance reports that are relevant to the charges in this case. (*See, e.g.,* "Report Re: Surveillance of Ralph Greene conducted on July 8, 2005," attached hereto as Exhibit 3).

to properly minimize.[12] Whatever training and instructions the monitors may have received, and whatever distractions they *may* have encountered, will not answer the only relevant question: whether the government *actually* complied with Title III's minimization requirements. These types of documents will not help the defendants or this court in determining whether the wiretaps were properly conducted; at best, they might help to answer the question of *why* a wiretap was not properly conducted, a question that is not relevant to these proceedings.

    Respectfully submitted,

    DAVID C. IGLESIAS
    United States Attorney

    */s/ James R.W. Braun*

    JAMES R.W. BRAUN
    Assistant U.S. Attorney
    P.O. Box 607
    Albuquerque, NM   87103
    (505) 346-7274

---

[12] With regard to Category 17, the defendants argue that they are entitled to the requested reports because they show "the percentage of calls that were incriminating, and the number of persons whose conversations were intercepted." (Def. Reply Brf. at 23). Because the United States has already provided the defendants with copies of all of the intercepted calls, however, the defendants are already in possession of this information.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing pleading was mailed on this 20th day of November to the following counsel of record:

Joe Romero, Jr., and Jody Neal-Post, Attorneys for Dana Jarvis
John F. Robbenhaar, Attorney for Ayla Jarvis
Jason Bowles, Attorney for George Ripley
Zubair Aslamy, Attorney for David Reid
Kari Converse, Attorney for Greg Hill
Stephen D. Aarons, Attorney for Matthew Hotthan
Timothy Padilla, Attorney for Manuel Gil
Ann Steinmetz, Attorney for Mary Cannant
Robert Cooper, Attorney for Adrian Sanford
Gregory D. D'Antonio, Attorney for Benjamin Swentnickas
Robert Gorence, Attorney for Dennis Wilson
Charles S. Aspinwall, Attorney for John Nieto
Roberto Albertorio, Attorney for Lloyd Montoya
John Samore, Attorney for Melania Kirwin
Kenneth A. Gleria, Attorney for Holly Bruner
Todd B. Hotchkiss, Attorney for Dakota Fitzner
Rudolph B. Chavez, Attorney for Rafal Mistrzak
Scott M. Davidson, Esq.

*/s/ James R.W. Braun*

JAMES R.W. BRAUN
Assistant U.S. Attorney