IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cr. No. 05-1849 JH |
| | ) | |
| DANA JARVIS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

UNITED STATES' RESPONSE TO DEFENDANTS' JOINT MOTION
TO SEVER COUNTS I AND III ON GROUNDS OF
MISJOINDER UNDER FEDERAL RULE OF CRIMINAL PROCEDURE 8 AND
PREJUDICIAL JOINDER UNDER FEDERAL RULE OF CRIMINAL PROCEDURE 14

COMES NOW the United States of America, by and through David C. Iglesias, United

States Attorney for the District of New Mexico, and James R.W. Braun, Assistant United States

Attorney for said District, and hereby responds to the Defendants' "Joint Motion to Sever Counts

I and III on Grounds of Misjoinder Under Federal Rule of Criminal Procedure 8 and Prejudicial

Joinder Under Federal Rule of Criminal Procedure 14." (Doc. 723).[1]

INTRODUCTION

On August 23, 2005, a federal grand jury in the District of New Mexico returned a

twenty-six count indictment in this case against twenty-one defendants. On April 25, 2006, the

grand jury returned a superseding indictment against the remaining defendants and eight

additional defendants, for a total of twenty-two defendants. All twenty-two defendants were

charged in Count 1 with Conspiracy to Distribute 1000 Kilograms and More of Marijuana, in

---

[1] Defendant Greg Hill has joined this motion (Doc. 764) and his additional arguments are
addressed below.

violation of 21 U.S.C. § 846.  Ten of those defendants were also charged in Count 3 with

conspiracy to launder money, in violation of 18 U.S.C. § 1956(h).  Since the return of the

superseding indictment, four more defendants have pled guilty, so that eighteen defendants

remain.  Exactly half of those defendants are charged in both Count 1 and Count 3.

ARGUMENT

## I.  Proper  Joinder of Offenses Under Fed. R. Crim. P. Rule 8

When multiple defendants are joined in one in indictment, whether there is one charge or

many, proper joinder is governed by Fed. R. Crim. P. Rule 8(b).  *United States v. Eagleston*, 417

F.2d 11, 14 (10th Cir. 1969).[2]  *See also United States v. Riebold* 557 F.2d 697, 707 (10th Cir.

1977) (holding two defendants and eighty-four counts were properly joined in one indictment

because "[w]here evidence overlaps and the offenses are similar...joinder of offenses is proper).[3]

That rule states:

> The indictment or information may charge 2 or more defendants if they are
> alleged to have participated in the same act or transaction or in the same series of
> acts or transactions constituting an offense or offenses. Such defendants may be
> charged in one or more counts together or separately and all of the defendants
> need not be charged in each count.

Fed. R. Crim. P. Rule 8(b).  The statutory language is clear:  if the defendants are alleged to have

violated the law together, they, and all their interrelated offenses, can be charged together, even if

---

[2] This is the rule in the Tenth Circuit.  The defendant's discussion of proper joinder under
Rule 8(a) and the split among circuits as to whether to apply Rule 8 (a) or 8(b) is extraneous and
irrelevant to the disposition of this motion.

[3] While *Riebold* does reference a short span of time between offenses, there the offenses
were separately occurring substantive offenses, which occurred close in time to each other.  The
counts challenged here are lengthy conspiracies, which, while occurring over a long period of
time, occurred concurrently and are, therefore, not in contradiction to *Riebold*.

2

each defendant did not participate in every single offense.

In *Eagleston*, two defendants were joined in an indictment charging two counts of transporting stolen vehicles in interstate commerce and one count of transporting stolen goods in interstate commerce. One of the defendants was charged with all three counts, which the court found was permissible in one indictment. However, the court found that the second defendant was improperly joined because he was not involved in the third count, and that count was not related whatsoever to the two counts with which he was charged. "Under Rule 8(b) when there is a joinder of defendants and offenses totally unconnected, there is no room for judicial discretion and the court must grant severance." *Eagleston* at 14 (citations omitted).

In *United States v. Cardall*, 885 F.2d 656 (10th Cir. 1989), the court considered the proper joinder of twelve defendants, located in different states, in a forty-nine count indictment. The court found joinder is proper where "...the indictment clearly allege[s] an ongoing series of *interconnected* illegal transactions amounting to the operation of a criminal enterprise. The fact that some defendants were not involved in each aspect of the overall enterprise [does] not require severing them or the charges against them." *Id*. at 668. The specific charges in the indictment were for mail fraud, wire fraud, interstate transportation of money taken by fraud, concealment of funds belonging to a bankrupt estate, racketeering activities and RICO conspiracy. The court further found that because the transportation counts required proof that the money was fraudulently acquired, the evidence of fraud would be admissible at a severed trial on the transportation counts and, therefore joinder was proper. *Id*.

The defense claims that Counts 1 and 3 were improperly joined and should be severed because not all of the defendants charged in Count 1 are charged in Count 3 and there is "no

3

logical connection between the offenses alleged in these two counts." (Def. Mot. at p. 10). This assertion is without merit. "It is the nature of large scale drug dealings that means will be needed to conceal the source of considerable illegal proceeds. Laundering is thus integral to [this] type of distribution conspiracy." *United States v. Bolinger*, 796 F.2d 1394, 1408 (11th Cir. 1986). *See also United States v. Ross*, 190 F.3d 446 (6th Cir. 1999) (same).

Indictments should be read "as a whole and interpreted in a common-sense manner." *United States v. Kilpatrick*, 821 F.2d 1456, 1462 (10th Cir. 1987). This is not a case where the defendants and counts charged are totally unrelated. Unlike *Eagleston*, all of the counts charged in this case are logically interrelated. This case is analogous to *Cardall*. Here, twenty-two defendants were charged in a twenty-six count indictment arising from a lengthy, large-scale interstate drug and money laundering enterprise. The indictment clearly describes on its face not only the illegal drug trafficking conspiracy, but the manner in which the organization transported and laundered the proceeds of that conspiracy. The charges logically implicate "*interconnected illegal transactions amounting to the operation of a criminal enterprise." Cardall*, 885 F.2d 646. That some of the defendants were not involved in all of the activities does not indicate improper joinder, nor require severance, of defendants or counts.

Further, after belaboring the jury instructions for both counts, the defense then claims that the proof for each is wholly distinct. To prove the money laundering count, the United States will have to present evidence of specified unlawful activity and its proceeds. The only other illegal activity generating proceeds and charged in this case is the drug trafficking conspiracy. It is disingenuous of the defendants to claim "[t]he government *might* argue that the money laundering conspiracy and the marijuana distribution conspiracy are inextricably intertwined. It

*might* contend that the unlawful activity in Count III is the marijuana distribution conspiracy, and the proceeds of the distribution conspiracy were used and concealed, as alleged in Count III." (Def. Mot. at p. 7) (emphasis added).  That is precisely the United States' theory of this case, as is clear from a common-sense reading of the indictment.  The drugs and the money *are* inextricably related.  Joinder of Count 1 and County 3 in one indictment and trial is proper because the charges and proof thereof are interrelated. Severance will result in lengthy, duplicitous trials and presentation of evidence for this court, is unnecessary, and should be denied.

## II.  Rule 14 Discretion to Sever for Prejudice

"There is a preference in the federal system for joint trials of defendants who are indicted together....They promote efficiency and 'serve the interests of justice' by avoiding the scandal and inequity of inconsistent verdicts." *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (citing *Richardson v. Marsh*, 481 U.S. 200, 209 (1987)).  However, the rules also provide that "[i]f it appears that a defendant or the government is prejudiced by joinder of...defendants...for trial together, the court *may*...grant a severance of defendants or provide whatever other relief justice requires."  Fed. R. Crim P. Rule 14 (emphasis added).

The courts do not look upon severance lightly, however.  It "is a matter of discretion and not of right."  *United States v. McConnell*, 749 F.2d 1441, 1444 (10th Cir. 1984).  "Rule 14 does not require severance even if prejudice is shown; rather it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro* at 538-539.  "[T]he trial court must weigh the prejudice to [the] defendant caused by joinder against the...important considerations of economy and expedition....[T]he defendant must bear a heavy burden of

5

showing...that the joinder...causes actual or threatened deprivation to an individuals's right to fair

trial." *McConnell* at 1444-1445 (citations omitted).

> a.  Prejudice to a Defendant Who Might Want to Testify On One Count But Not Others

The defense claims that joinder of Count 1 with Count 3 prejudices any of the defendants

charged in both counts who might wish to testify on one count, but remain silent as to the other.

The defense has failed to meet the requirements for severance on this issue as set forth in *United*

*States v. Valentine*, 706 F.2d 282, (10th Cir. 1983).  There the court stated:

> [N]o need for a severance exists until the defendant makes a convincing showing
> that he has both important testimony to give concerning one count and strong need
> to refrain from testifying on the other. In making such a showing, it is essential
> that the defendant present enough information-regarding the nature of the
> testimony he wishes to give on one count and his reasons for not wishing to testify
> on the other-to satisfy the court that the claim of prejudice is genuine and to
> enable it intelligently to weigh the considerations of "economy and expedition in
> judicial administration" against the defendant's interest in having a free choice
> with respect to testifying.

*Id*. at 291 (citations omitted).  The defense has not indicated any particular defendant who wishes

to testify on one count while remaining silent on another, let alone presented enough information

regarding the testimony in order for the court to weigh competing considerations.  This claim of

prejudice is completely speculative and therefore must be denied on this issue.

> b.  Multiple Conspiracies v. Single Conspiracy

The defense states that "...prejudice may result if the evidence show that there was not a

single conspiracy, but multiple conspiracies."  (Def. Mot. at pp. 10-11).  It goes on to present a

series of hypothetical conspiracies that might be included in this case.  This is all speculative.

The superseding indictment charges, and the United States asserts that the evidence will

establish, the existence of one conspiracy to distribute marijuana and one related conspiracy to

launder money.  As discussed above, these counts are properly joined because they are

interrelated.  If, however, the evidence reveals at trial that there are multiple conspiracies instead,

the court will have two choices before it.  This was the situation in *Wilkett v. United States*, 655

F.2d 1007 (10th Cir. 1981), where the court found:

> When...a single conspiracy has been charged and the evidence shows the existence
> of two separate conspiracies, there are at least two courses open to the Court...(1)
> the trial may continue against all defendants, with cautionary instructions to the
> jury regarding multiple conspiracies, or (2) when the prejudice to some defendants
> from the spill-over evidence or the possibility of guilt by association cannot be
> cured by cautionary instructions, the Court may require the government to elect
> against which defendants it chooses to proceed and the remainder are severed for
> separate trial.

*Id.* at 1010 (citing United States v. Butler, 494 F.2d 1246 (10th Cir. 1974)).  This unsupported

speculation simply does not require severance at this time.

c.  "Empirical Evidence"

Perhaps because the law is so clearly against them, the defense turns away from the

established law to argue what they believe the law should be.  Specifically, the defense spends a

great deal of time espousing the findings published in the recent  article, Andrew D. Leipold &

Hossein A. Abbassi, *The Impact of Joinder and Severance on Federal Criminal Cases: An

Emperical Study*, 59 Vand. L. Rev. 349 (March 2006).  The authors compiled data from over

375,000 cases over five years, controlling for several factors, and argued that the result of joinder

of multiple counts in a single indictment results in a nine percent increase in the rate of

conviction.  *Id*. at 383.  The defense urges this court to consider these findings as evidence that

the joinder in this case is sufficiently prejudicial as to require severance.

The article is contrary to the law by its own admission.  Further, this article itself states

precisely the reasons why it must be disregarded in deciding severance issues in a particular case. This is the first study of its kind and therefore no other studies exist to validate its findings. *Id*. at 362. "As with most empirical studies, the validity is...hostage to the limits on the data." *Id*. at 384. In discussing these limits, the authors admit that they did not control for strength of evidence as it pertains to conviction rates. "...[T]he number of counts and defendants may increase as the strength of the evidence increases, meaning that case quality, not prejudice from a consolidated trial, is the explanatory variable." *Id*. at 385. Further, the authors "...could not account for individual defendant characteristics that might have influenced the trial outcomes...that would explain why certain defendants are joined and convicted more often...[and] while it would be improper to assume that these characteristics have an effect, we cannot rule it out, leaving the calculations...incomplete." *Id*.

Even if the statistics in this study are completely accurate, not only is "guilt personal," *Korematsu v. United States*, 323 U.S. 214, 243 (1944), so also is each case before the court individual. The court has discretion to sever in each case, and therefore must evaluate the specific charges and circumstances to make a proper determination. It would be improper for the court to grant more weight to statistics presented in one single study, whose incompleteness its authors freely admit, rather than the binding law and specific circumstances of this particular case. This study, while it may present interesting issues to ponder and study further, does not establish actual prejudice in this case and therefore should not be considered in the disposition of this motion.

d.  Efficiency

The defense argues that "...there are considerable inefficiencies to trying everyone, and

every count jointly...necessitat[ing] the presence of all 22 defendants, and at least as many

defense lawyers,...[requiring] the least culpable defendant and his or her lawyer to be present

when extraneous evidence is presented regarding other counts and/or other defendants."  (Def.

Mot. at p. 16).  Since the superseding indictment was issued in this case, four of the twenty-two

defendants have pled guilty and it is anticipated that more defendants will plead in the

intervening time before trial.  Moreover, two of the remaining eighteen defendants are fugitives.

It is unknowable at this juncture exactly which and how many defendants will actually choose to

go to trial.  While it may become necessary, at a date closer to trial, to evaluate the efficient

management of the trial of a large number of defendants, to sever on this issue now would be

speculative and premature.

       Further, there is no prejudice to the defendant when "[a]ll of the evidence admitted at the

joint trial could properly [be] admitted at a separate trial to show the nature of the drug

distribution scheme in which [the defendant] was an active participant." *United States v.*

*Gbemisola*, 225 F.3d 753, 761 (D.C. Cir. 2000).  In that case, the court found that despite the

mid-trial dismissal of the conspiracy count of the indictment, the trial court did not abuse its

discretion by refusing to sever the defendants because the evidence made it clear that the

defendants were involved in a common scheme, even if there had never been a conspiracy. *Id.* at

760.  *See also Schaffer v. United States*, 362 U.S. 511, 514-515 (1960) (holding that there was no

prejudice from joint trial following dismissal of conspiracy county because "proof of the over-all

operation of the scheme [was] competent as to all counts.").

       Here, just like *Gbemisola*, all of the defendants are alleged to have participated in a

common scheme to distribute drugs which resulted in laundering of the proceeds.  Even if the

counts were severed, the United States would be required to prove the drug conspiracy at the money laundering conspiracy trial, and evidence of the money laundering would be relevant to the drug trafficking. Therefore, even if the argument weren't premature, there would exist no reason to sever on the premise of efficiency because to do so would require the United States to present the same case multiple times, rather than in one comprehensive trial.

III.  Additional Arguments of Defendant Hill

In joining this motion, Defendant Hill essentially adds that his involvement was temporally and geographically disparate from his co-defendants' and that there is a possibility of multiple conspiracies rather than one single one. Neither of these assertions present facts which require either severance.

In order to prove a defendant's culpability as a co-conspirator, the United States must prove the existence of the conspiracy, "... that the defendant knew at least the essential objectives of the conspiracy, and...knowingly and voluntarily became a part of it." *U.S. v. Fox*, 902 F.2d 1508, 1514 (10th Cir. 1990) (citations omitted). A co-conspirator will be liable for all the reasonably foreseeable acts of his co-conspirators once he joins the conspiracy and until he does something to disavow his affiliation and leave the conspiracy. *See Pinkerton v. United States*, 328 U.S. 640, 646-647 (1946). The time or location of the defendant's participation is irrelevant if he knowingly and voluntarily became a member of the overall conspiracy. Further, the precedent cited above illuminates that limited participation does not require severance.

As for multiple conspiracies, as discussed in detail above, the United States asserts that the evidence will show the existence of one conspiracy to distribute marijuana and one related conspiracy to launder money and that these counts are properly joined because they arise out of a

common scheme or plan.  *See* Fed. R. Crim. P. Rule 8(b).  If however, the evidence reveals at

trial that there are multiple conspiracies instead, the court may issue cautionary instructions or

sever at this time.

CONCLUSION

WHEREFORE, for the foregoing reasons, the United States respectfully requests that the

Court deny the defendants' motion.

Respectfully submitted,

DAVID C. IGLESIAS
United States Attorney

*ELECTRONICALLY FILED*

JAMES R.W. BRAUN
Assistant U.S. Attorney
P.O. Box 607
Albuquerque, NM   87103
(505) 346-7274

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true copy of the foregoing pleading was mailed on this 15th day of December 2006 to the following counsel of record:

Joe Romero, Jr., and Jody Neal-Post, Attorneys for Dana Jarvis
John F. Robbenhaar, Attorney for Ayla Jarvis
Jason Bowles, Attorney for George Ripley
William Kirchner and Walter B. Nash, Attorneys for David Reid
Kari Converse, Attorney for Greg Hill
Stephen D. Aarons, Attorney for Matthew Hotthan
Timothy Padilla, Attorney for Manuel Gil
Ann Steinmetz, Attorney for Mary Cannant
Robert Cooper, Attorney for Adrian Sanford
Gregory D. D'Antonio, Attorney for Benjamin Swentnickas
Robert Gorence, Attorney for Dennis Wilson
Charles S. Aspinwall, Attorney for John Nieto
Roberto Albertorio, Attorney for Lloyd Montoya
John Samore, Attorney for Melania Kirwin
Todd B. Hotchkiss, Attorney for Dakota Fitzner
Rudolph B. Chavez, Attorney for Rafal Mistrzak
Scott M. Davidson, Esq.

*/s/ James R.W. Braun*

JAMES R.W. BRAUN
Assistant U.S. Attorney

12