IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                            Criminal No. 05-1849 JH

DANA JARVIS,

        Defendant.

**DEFENDANT DANA JARVIS' REPLY TO THE UNITED STATES RESPONSE TO DEFENDANT'S MOTION FOR DISCLOSURE AND PRODUCTION OF CONFIDENTIAL/COOPERATING WITNESSES [ Doc. 767]**

      Defendant Dana Jarvis, by and through counsel of record, hereby replies to the United States' Response to his Motion. In Reply, Defendant Jarvis states as follows:

      1.     Counsel for the Defendant and the AUSA have been in an extended dialogue regarding which disclosures the United States will make in response to the Defendant's[1] Motion regarding confidential/cooperating witnesses (hereinafter CWs). The position of the United States as to each category of Defendant request is indicated thereafter, and reflects correspondence from the United States as of December 20, 2006.

      2.     The United States in its Response at page 5 has agreed to disclose the identity of each cooperating witness[2] it intends to call at trial, the witnesses' criminal histories, if any; consideration the CW received or will receive from the United States in relation to this case, if applicable; the witnesses' plea agreements, if applicable; and any history of substance abuse, if known to the United States. Such disclosures will be made according to the scheduling order, no later than 90 days before trial. The

---

[1] The Motion should have been correctly titled "Defendant Jarvis' Motion" rather than, as the United States points out, "Defendants' *Joint* Motion."
[2] The Defendant's Motion referred interchangeably to cooperating witnesses and confidential sources, and this Reply wishes to clarify that all information sought relates only to cooperating witnesses who will testify at trial.

Defendant agrees that these are required disclosures subject to the scheduling order.

    3.    The United States has further agreed in correspondence dated December 14, 2006 and confirmed current as of December 20, 2006, to provide, by January 10, 2007:

- a. "any information in its possession regarding a government witness's history of mental illness";
- b. regarding FBI 320s and DEA 6s not already disclosed and containing contradictory and or exculpatory statements, the United States agrees to provide "the portions of any such reports that contain *Brady/Giglio* material";
- c. as to cooperating defendants' plea hearings in this case and in the related cases of CW 1 and CW 9, the United States will release transcripts of plea hearings;
- d. transcripts of testimony in other proceedings of testifying CWs "which related] to the subject matter as to which the witness has testified";
- e. "'rap sheets' for each CW who has a criminal history." The United States further agrees to respond to further requests of the defendants for additional information regarding a particular conviction to allow for effective cross-examination regarding that conviction, if the defense makes specific request at that time;
- f. regarding witnesses interviewed as part of this investigation, the United States will produce any negative inculpatory statements, or such statements "as can be reasonably interpreted to be exculpatory as to Jarvis," although the United States was not aware of any such statement as of December 14, 2006;
- g. regarding favorable witnesses, the United States denies any obligation to disclose such information and was unaware of such information as of December 14,

2

        2006, but will disclose in like fashion as to its disclosure position on negative inculpatory witnesses, at (f) above;

h. reports of interviews of all testifying CWs conducted during the course of this investigation/prosecution, although the United States' position is that no legal authority requires this disclosure;

i. *Brady/Giglio* information known to the United States on any government witnesses, although the United States represents most government witnesses do not have such information in their personnel files; and

j. pre-sentence report for CW 1 (already completed) and for other CWs to the extent that they contain *Brady/Giglio* and to the extent they are completed prior to trial for cooperating defendant witnesses, although the United States sees the completion of such reports unlikely before trial.

4. The Defendant also asserts, however, that he is still entitled to other impeachment and exculpatory information, although he admittedly did not provide this Court with an itemized and specific request in his original Motion. The Defendant acknowledges the general impropriety of expanding the scope of a Motion in a Reply and the United States' objection already lodged thereto via correspondence from the United States dated December 7, 2006. Recognizing the United States' objection, as well as the United States' continued cooperation, the Defendant does not object to a sur-reply should the United States choose to file one if out of court resolution is not reached in all areas.

5. In support of Mr. Jarvis' additional requests, Mr. Jarvis suggests that this Court has overriding constitutional obligations pursuant to the Fifth and Sixth Amendments to ensure the Defendant due process in a fundamentally fair trial with full panoply of opportunity to confront his accusers. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963). These constitutional requirements, coupled with

the discretion of flexibility in this case by virtue of its complex case designation, not only allow, the Defendant would argue, but *require* this Court to consider this now more specific request to ensure all *Giglio* and *Brady* information existing to be disclosed. *See* , *e.g., Dist of New Mexico Civil Justice Expense and Delay Reduction Plan*, A(2)(a)(3)(b)(3) (acknowledging the problems in applying standard scheduling plans in complex cases); *see also  U.S. Department of Justice Memorandum* dated October 19, 2006 regarding *Brady & Giglio* disclosures, *attach as Ex. A.* (supporting reasoned disclosures to the end of ensuring a fair trial) (hereinafter "*DOJ Memorandum*").

### Argument & Authorities

The present case will be tried primarily on the testimony of cooperating witnesses. Perhaps one of the best compilations of case law touching on the use of informants and cooperating witnesses and the inherent problems with these witnesses is in *United States v. Bernal-Obeso*:

> Thus, we have decided on balance not to prohibit, as some have suggested, the practice of rewarding self-confessed criminals for their cooperation, or to outlaw the testimony in court of those who receive something in return for their testimony. Instead, we have chosen to rely on (1) the integrity of government agents and prosecutors not to introduce untrustworthy evidence into the system, *Berger v. United States*, 295 U.S. 78, 88 (1935), *United States v. Agurs*, 427 U.S. 97 (1976); (2) trial judges and stringent discovery rules to subject the process to close scrutiny, *United States v. Heath*, 260 F.2d 623, 626 (9th Cir. 1958); (3) defense counsel to test such evidence with vigorous cross examination, *Davis v. Alaska*, 415 U.S. 308, 316 (1974) ("Cross examination is the principle means by which the believability of a witness and the truth of his testimony are tested."), *United States v. Butler*, 567 F.2d 885, 890 (9th Cir. 1978); and (4) the wisdom of a properly instructed jury whose duty it is to assess each witness's credibility and not to convict unless persuaded beyond a reasonable doubt of the accused's guilt. *On Lee v. United States*, 343 U.S. at 757. To quote the Supreme Court, "The established safeguards of the Anglo-American legal system leave the veracity of a witness to be tested by cross-examination, and the credibility of his testimony to be determined by a properly instructed jury." *Hoffa v. United States*, 385 U.S. 293, 311-12; *see also United States v. Cervantes-Pacheco*, 826 F.2d 310, 315 (5th Cir. 1987*), cert. denied sub nom Nelson v. United States*, 484 U.S. 1026 (1988) ("An informant who is promised a contingent fee by the government is not disqualified from testifying in a federal criminal trial.").
>
> Because we have made this choice, it is essential that relevant evidence bearing on the credibility of an informant-witness be timely revealed (1) to defense counsel as required by *Giglio*, and (2) to the ultimate trier of fact, unless clearly cumulative or attenuated. *See*

*Fed. R. Evid.* 403; *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

> By definition, criminal informants are cut from untrustworthy cloth and must be managed and carefully watched by the government and the courts to prevent them from falsely accusing the innocent, from manufacturing evidence against those under suspicion of crime, and from lying under oath in the courtroom. . . . Because the government decides whether and when to use such witnesses, and what, if anything, to give them for their service, the government stands uniquely positioned to guard against perfidy. . . . Accordingly, we expect prosecutors and investigators to take all reasonable measures to safeguard the system against treachery. This responsibility includes the duty as required by *Giglio* to turn over to the defense in discovery all material information casting a shadow on a government witness's credibility.

*United States v. Bernal-Obeso*, 989 F.2d 331, 333-35 (9th Cir. 1993) (internal parallel and other citations omitted).

Information going to the credibility of cooperating witnesses comes in an expansive array of materials, considerably broader in categories that the United States has already agreed to disclose. While "items of information viewed in isolation" may not point up inconsistencies in the Government's necessary proof of any element of a charged crime or appear to establish an affirmative defense, if the information cumulatively either establishes or "casts substantial doubt upon the accuracy of any evidence" the Government intends to rely upon, such isolated or cumulative evidence ought be disclosed. *See DOJ Memorandum*, at C(1)-(4).[3]

Sources of evidence containing information relevant to the credibility of witnesses are vast and may be less than obvious. In the infamous Chicago El Rukn racketeering cases, the Court therein described some of the more unusual sources of information elicited at hearing which contain critical information underlying the credibility assessments of a jury, the bedrock of the jury's function in trial:

> The hearing revealed that substantial evidence reflecting adversely on the reliability and biases of the El Rukn inmate witnesses was not disclosed to defense counsel before or during Trial Two: drug use while in custody as protected government witnesses; disciplinary actions and non-enforcement of disciplinary measures; failure to conduct routine drug testing after October 1989; permissive and lax security measures, giving El

---

[3] The cited DOJ Memorandum is not meant to be construed as binding authority. It is cited as a reasonable, learned statement of what the United States understands its role as prosecutors to constitutionally require of United States attorneys in ensuring fair trials.

> Rukn inmate witnesses access to internal prosecution memoranda, drugs, sex and unlimited free telephone calls; and various gifts, including cash, clothing, "walkman" radios, food, cigarettes and beer.

*United States v. Doyle*, 121 F.3d 1078, 1083 (7th Cir. 1997).[4]

In a case such as this, which will turn primarily on the credibility of un-indicted co-conspirators and former co-defendants now turned government informants, the observation of United States Circuit Judge Stephen S. Trott, while serving as an Associate Attorney General at the Department of Justice, ought be heeded as a starting point for the determination of the disclosures necessary to ensure a fair evaluation of the credibility of the Government's informants at trial:

> Criminals are likely to say and do almost anything to get what they want, especially when what they want is to get out of trouble with the law. This willingness to do anything includes . . . lying, committing perjury, manufacturing evidence, soliciting others to corroborate their lies with more lies, and double-crossing anyone with whom they come into contact. . . . A drug addict can sell out his mother to get a deal; and burglars, robbers, murderers and thieves are not far behind.

The Hon. Stephen S. Trott, *Words of Warning for Prosecutors Using Criminals as Witnesses*, 47 Hastings L. J. 1381, 1383 (1996), originally in Stephen Trott, *Prosecution of Public Corruption Cases*, 117-18, (Feb. 1988), U.S. Dept. of Justice. Because of these well recognized problems which can be inherent in the use of informant testimony and the expected prominence of such evidence in the United States' Case in Chief, discovery related to witness credibility is of the utmost importance in this case.

Mr. Jarvis therefore makes these additional requests regarding confidential witnesses who will testify at trial, to the extent the following contain *Giglio, Brady, Giles* and/or *Jencks* materials relative to any cooperating witness and are consistent with the DOJ policy memorandum of October 19, 2006. The Defendant requests the United States perform a reasonable search of the materials in its possession, whether possession is actual or constructive by virtue of being in the possession or knowledge of a cooperating federal and or state agency, *see Kyles v. Whitley*, 514 U.S. 419, 437 (1985), and disclose the

following:

    a.    Agent records and or notes made by agents while working with any testifying CW (*See United States v. Pelullo*, 105 F.3d 117, 122-23 (3rd Cir. 1997);

    b.    FBI 320s & DEA 6's not already disclosed containing contradictory and or exculpatory statements(*United States v. Johnson*, 2006 U.S. Dist. LEXIS 62841, *5 (D. Kan. 2006)(*Attch. as Ex. B*);

    c.    CW correctional records, including probation & parole, & sentencing reports (*See United States v. Alverez*, 358 F.3d 1194, 1208-09 (9th Cir 2004)); and

    d.    Personnel files of any government witness who may testify as a CW (*United States v. Muse*, 708 F.2d 513, 516-17 (10th Cir. 1983).

    e.    Polygraph results of any testifying and cooperating witness if such become available, which the United States represents it is presently unaware of (*Jacobs v. Singletary*, 952 F.2d 1282, 1287-89 (11th Cir. 1992); *but see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995)(per curium)).

Finally, Mr. Jarvis seeks to interview any confidential witness pre-trial whom the United States intends to call at trial. As "the government's refusal to disclose the identity of a confidential informant may violate a defendant's due process rights," it is essential that, countervailing security concerns aside, the United States should err on the side of disclosure. *United States v. Muse*, 708 F.2d 513, 514 (10th Cir. 1983), *citing Gaines v. Hess*, 662 F.2d 1364 (10th Cir. 1981); *DOJ Memorandum*, p.2, and at (B)(1), citing *Kyles*. "The government must use reasonable efforts to produce an informant so that a defendant may interview him or use him as a witness," when the Court orders such availability. *Muse*, 708 F.2d at 514. A number of unpublished district court cases within the Tenth Circuit demonstrate Courts do order such interviews. *See, e.g., United States v. Juarez-Lozano*, 1998 U.S. Dist. LEXIS 9808, *2 (D. Kan. 1998) ("The court ruled that the government should disclose the identity of the confidential informant to defense counsel 10 days prior to trial. If the informant is going to testify at trial, then the government should also make the informant available for defense counsel to interview some time prior to the

---

**4** It should be noted that the El Rukn cases discuss the issue of discovery in the context of allegations of prosecutorial misconduct, allegations neither relevant nor applicable here.

informant's direct testimony."))(*Attch. as Ex. C*).

The Defendant recognizes that the United States is entitled to present legitimate evidence which may preclude the Court from ordering disclosure of any of the admittedly large variety of evidence related to confidential informants he seeks, including denying the Defendant's request for pre-trial interviews. However, such is a fact and circumstance sensitive determination on the part of this Court within the framework of the characteristics of this particular case, which may require this Court's time in hearing, if the United States and Mr. Jarvis are unable to resolve all categories of requests.

In light of the lack of specificity in the Defendant's original Motion, the Defendant would have no objection to a sur-reply filed by the United States as to any disclosure the Defendant has requested that the Parties do not resolve out of court.

**WHEREFORE**, Defendant Dana Jarvis respectfully requests that that Court order the United States to produce the identities of any confidential witnesses it intends to call at trial and such *Brady, Giglio* and other information consistent with the cited DOJ memorandum that the United States has in its actual or constructive possession as herein requested by the Defendant to test such witnesses' credibility, such that the Defendant is reasonably and timely apprised of the evidence comporting with due process and his rights of confrontation to ensure he receives a fair trial.

The Defendant further requests leave to interview any cooperating witness the United States intends to call at trial, should this Court find that no other interests such as witness security will be unduly burdened by this recognition of the Defendant's constitutional rights, and as this Court deems most appropriate in the interests of safeguarding the Defendant's rights and promoting judicial economy in this complex case.

                                              Respectfully Submitted:

                                              *Electronically filed 12/20/06*

By:    _____

           Joe M. Romero, Jr.
           Attorney for Defendant Jarvis
           1905 Lomas NW
           Albuquerque, NM 87104
           (505) 843-9776

           *Electronically filed 12/20/06*

By:    _____

           Jody Neal-Post
           Attorney for Defendant Jarvis
           317 Amherst SE
           Albuquerque, NM  87106
           (505) 268-7263

I hereby certify that a true and correct copy of the foregoing was mailed to opposing counsel, AUSA James Braun on December 20, 2006.

*Electronically filed 12/20/06*
_____
Joe M. Romero, Jr.