IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cr. No. 05-1849 JH |
| ) | |
| DANA JARVIS, et al., ) | |
| ) | |
| Defendants. ) | |

UNITED STATES' SURREPLY
TO DEFENDANT DANA JARVIS'S REPLY TO THE
UNITED STATES' RESPONSE TO "DEFENDANTS' JOINT MOTION
FOR DISCLOSURE AND PRODUCTION OF CONFIDENTIAL INFORMANTS"

COMES NOW the United States of America, by and through David C. Iglesias, United States Attorney for the District of New Mexico, and James R.W. Braun, Assistant United States Attorney for said District, and hereby submits its surreply to defendant Dana Jarvis's reply to the United States' response to the "Defendants' Joint Motion for Disclosure and Production of Confidential Informants" (Doc. 722).[1]

Jarvis is ostensibly seeking impeachment information under *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and their progeny, on the cooperating witnesses ("CWs") who will testify on behalf of the government at trial.

---

[1] In his reply, Jarvis narrows the scope of his motion to cover only the cooperating witnesses who will testify at trial. The United States has agreed to provide the defense with the identity of each testifying CW by January 10, 2007. Thus, *Roviaro v. United States*, 353 U.S. 53, 59 (1957), which governs disclosure of an informant's identity, is inapplicable.

The United States has agreed to provide Jarvis with the impeachment evidence to which he is entitled under *Brady/Giglio* so that he may effectively cross-examine those CWs. Jarvis, however, is asking the court to go beyond *Brady/Giglio* and order the United States to produce categories of material that do not necessarily even contain impeachment evidence. In his reply brief, Jarvis is now asking for, among other things, "agent records and or notes made by agents while working with any testifying CW,"[2] "CW correctional records," and "[p]ersonnel files of any government witness who may testify as a CW,"[3] (Def. Reply at 7), without regard to whether those records, notes, or files actually contain impeachment evidence. This is the epitome of a fishing expedition. As the Tenth Circuit stated in *United States v. Muse*, 708 F.2d 513 (10th Cir. 1983), "[i]t is to be kept in mind that it was [impeachment] evidence defendants were entitled to, not the personnel files as such." This same logic applies to all of the above-referenced material requested by Jarvis – it is not the personnel files, agent notes, or correctional records Jarvis is entitled to, but any impeachment evidence that might be contained therein. As noted above, the United States has already agreed to provide Jarvis with the impeachment evidence to

---

[2] In support of this request, Jarvis cites only to the case of *United States v. Pelullo*, 105 F.3d 117 (3rd Cir. 1997). That case does not, however, stand for the proposition that the defense is entitled to all notes made by an agent while "working with" a CW. The agent's notes at issue in *Pelullo* contained information that contradicted a CW's testimony, and that was not contained in the agent's report of interview with the CW. The United States does not dispute its obligation to disclose such evidence in this case. Jarvis, however, is requesting discovery of agents' records or notes of interviews in this case regardless of whether they contain such contradictory material.

[3] All of the CWs in this case are civilian witnesses, not government agents with personnel files. The United States therefore reads Jarvis's reply to request the personnel files of government agent witnesses.

which he is entitled under *Brady/Giglio*.[4]

Specifically with regard to Jarvis's request for "CW correctional records," the United States has agreed to provide Jarvis with a "rap sheet" which lists the criminal history of each testifying CW who has a criminal record. For the single CW who has had a presentence report prepared in connection with this case, the United States has also agreed to disclose any portion of the presentence report that contains *Brady/Giglio* evidence. Jarvis has not established that he is entitled to anything more.[5] The United States is not required to affirmatively obtain any of the underlying records related to a CW's prior convictions (or any other "correctional records") for disclosure to Jarvis.

In addition to the above-referenced material, Jarvis is also asking for any FBI and DEA reports that contain "contradictory and or exculpatory statements," and "[p]olygraph results of any testifying and cooperating witness if such become available." (Def. Reply at 7). With regard to the first request, the United States has already agreed to provide Jarvis with the portion of any such reports that contain *Brady* or *Giglio* material. Jarvis is

---

[4]In this regard, it is also important to remember that *Brady* did not create a "general constitutional right to discovery in a criminal case." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Moreover, Jarvis's request for such broad discovery is based on a faulty premise, that this case "will be tried primarily on the testimony of cooperating witnesses." (Def. Reply at 4). To the contrary, the case against the defendants will be based on substantial evidence in addition to cooperating witness testimony, including intercepted telephone conversations between the defendants and others, seized drug proceeds, seized marijuana, and seized documents.

[5]The one case cited by Jarvis in support of his request, *United States v. Alvarez*, 358 F.3d 1194 (9th Cir. 2004), dealt with the disclosure of CW presentence reports that were prepared in relation to the pending case. *Alvarez* does not provide support for a defense request for presentence reports and other documents pertaining to a CW's unrelated criminal convictions.

entitled to nothing more under the law.  With regard to the second request, the United States does not anticipate that any of its witnesses will be subjected to a polygraph test in relation to this case.  If, however, a government witness is hereafter subjected to a polygraph test in relation to this case, the United States will forward the results of any such test to the court for an *in camera* determination of whether it must be disclosed to the defense.

Finally, in his reply brief, Jarvis expands upon his request "to interview any confidential witness pre-trial whom the United States intends to call at trial."  (Def. Reply at 7).  In support of this request, Jarvis quotes a portion of *Muse* in which the court discusses "'the government's refusal to disclose the identity of a confidential informant.'"  *Id.*, citing *Muse*, 708 F.2d at 514.  That is not the case here, as the United States has agreed to disclose the identity of each of the CWs who will testify at trial.

Jarvis then asserts that "a number of unpublished district court cases within the Tenth Circuit demonstrate Courts do order such interviews," (Def. Reply at 7), but he cites to only one such case.  In that case, *United States v. Juarez-Lozano*, 1998 U.S. Dist. LEXIS 9808 (D. Kan. 1998), the district court ordered the United States to disclose the identity of its informant and, without analysis or citation to any authority, further ordered that "[i]f the informant is going to testify at trial, then the government *should* also make the informant available for defense counsel to interview some time prior to the informant's direct testimony."  (Emphasis added).  While that order required the United

States to make the informant available for an interview, it did not require the informant to actually agree to be interviewed.  This is an important distinction, as the Tenth Circuit has clearly held that "[a] witness in a criminal case has the right to refuse to be interviewed." *United States v. Pinto*, 755 F.2d 150, 152 (10th Cir. 1985).  The Tenth Circuit has only approved of a court-ordered witness interview in a criminal case where it was to remedy government interference with a witness's choice of whether to speak to the defense.  *See United States v. Carrigan*, 804 F.2d 599, 602-04 (10th Cir. 1986).  Because there has been no such interference in this case, Jarvis's request must be denied.[6]

    WHEREFORE, for the foregoing reasons, the United States respectfully requests that the court deny Jarvis's "Motion for Disclosure and Production of Confidential Informants."

                                                        Respectfully submitted,

                                                         DAVID C. IGLESIAS
                                                         United States Attorney

                                                         */s/ James R.W. Braun*

                                                         JAMES R.W. BRAUN
                                                         Assistant U.S. Attorney
                                                         P.O. Box 607
                                                         Albuquerque, NM   87103
                                                         (505) 346-7274

---

[6] Based on Jarvis's request for interviews of the testifying CWs, the United States intends to send a letter to the attorneys for those CWs (and directly to the few CWs who are not represented by counsel) informing each CW that the defense has requested to interview the CW and that it is the CW's choice of whether to agree to such an interview.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the ___ day of _____, 2007, I filed the foregoing pleading electronically through the CM/ECF system, which caused Joe Romero, Jr., and Jody Neal-Post, counsel of record for defendant Dana Jarvis, to be served by electronic means.

*/s/ James R.W. Braun*

JAMES R.W. BRAUN
Assistant U.S. Attorney