IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    *Plaintiff,*

vs.                                                 CR No. 05-1849 JH

DANA JARVIS,

    *Defendant.*

**UNITED STATES' RESPONSE DEFENDANT JARVIS' MOTION
TO SUBSTITUTE *RES* FOR REAL PROPERTY AND LIQUOR LICENSE**

**INTRODUCTION**

The United States opposes this motion.

On August 30, 2006, the United States filed a Motion for Interlocutory Sale of the real property at 3523 Central NE, Albuquerque, NM and liquor license 2599. [Doc. 664]. The net proceeds from that sale would have been substituted for the property subject to forfeiture. Jarvis objected. [Doc. 689]. The Court requested that the parties attempt to reach an interim solution possibly involving leasing the property. The parties were unable to do so.

On September 1, 2007, Jarvis filed a notice of appeal of the court's denial of his motion to release or quash the *lis pendens* filed against his real property in Mora County. [Doc. 666]. On February 6, 2007, Jarvis moved for and obtained a stay of all non-ministerial proceedings related to him pending the Tenth Circuit's resolution of his appeal. [Docs. 895, 924]. The Tenth Circuit heard oral argument on May 10, 2007, but

has not yet issued an order on the appeal.

Despite the stay of proceedings, and with no citation to authority allowing him to proceed, Jarvis now moves the court to permit a sale and allow him to pay taxes and other personal obligations and debts from the sale proceeds.

Jarvis, without consulting with the United States, apparently entered into an "exclusive right to sell contract" with a broker. The contract, dated March 31, 2007, was mailed to the facility where Jarvis is housed on March 26, 2007. The mailing included a bank check dated March 6, 2007 in the amount of $70.00 payable to the New Mexico Alcohol and Gaming Division. Copies of the contract documents are attached hereto.

Jarvis and the putative buyer, Fork and Dagger, Inc., apparently entered into a purchase agreement on April 2 or 4, 2007. This agreement was not provided to United States prior to the instant motion being filed on May 1, 2007.[1]

## ARGUMENT

The gist of defendant's argument is that the property is subject to waste- which is somehow the fault and/or responsibility of the government- and that therefore he is free to sell the property under terms he deems appropriate. In Jarvis' opinion, waste occurred because the United States created barriers to communication between Jarvis and his previous lessee, Mr. Lambros. In reality, the business failed because Mr. Lambros had over-extended himself and did not generate income sufficient to meet the terms of the lease. The United States did not assume custody of the property and had

---

[1] An earlier version of a purchase proposal from Fork and Dagger was provided to the United States by Jarvis' counsel on December 28, 2006. The United States declined to agree to a private sale excluding other potential buyers.

no role in the management of it.

Jarvis' inappropriately relies upon *United States v. James Daniel Good Real Property*, 510 U.S. 43 (1993), for the proposition that he is entitled to rents from the property to pay his expenses until a forfeiture judgment is entered. *Good*, however, involved the due process implications of a seizure of real property in the absence of exigent circumstances. Since *Good*, several circuit courts have held that lost rental income could serve as a measure of damages during improper seizure. The United States did not seize real property in this case. Therefore, *Good* and its progeny have no application. The proper legal authorities are the statutes and rules governing interlocutory sale of property subject to forfeiture.

Statutory authority for interlocutory sales of property in criminal cases is found first in 21 U.S.C. § 853(e), the general provision for protective orders:

> Upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of the property... for forfeiture...

The criminal forfeiture statute applicable to this case incorporates civil forfeiture provisions, through 21 U.S.C. § 853(j), which provides:

(j) Applicability of civil forfeiture provisions

Except to the extent that they are inconsistent with the provisions of this section, the provisions of 21 U.S.C. § 881(d) shall apply to criminal forfeiture under this section.

The civil forfeiture provision, 21 U.S.C. § 881(d), incorporates the provisions of law related to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs laws. *See* 19 U.S.C. § 1602 *et. seq.* The customs laws authorize the court to order interlocutory sale of property upon application by the

United States Attorney. *See* 19 U.S.C. §1612(a).

Further, effective December 1, 2006, the Supplemental Rules of the Federal Rules of Civil Procedure apply to forfeiture actions *in rem* arising from a federal statute. *See* Supp.R. A(1)(B). Therefore, the Supplemental Rules apply to forfeiture actions arising under the customs laws and apply to this case through 21 U.S.C. §§ 853(j) and 881(d).

Supplemental Rule G(7), effective December 1, 2006, sets forth the procedures and requirements for an interlocutory sale of property:[2]

> **(7) Preserving, Preventing Criminal Use, and Disposing of Property; Sales.**
>
> **(a) Preserving and Preventing Criminal Use of Property.** When the government does not have actual possession of the defendant property the court, on motion or on its own, may enter any order necessary to preserve the property, to prevent its removal or encumbrance, or to prevent its use in a criminal offense.
>
> **(b) Interlocutory Sale or Delivery.**
>
> **(I) Order to sell.** On motion by a party or a person having custody of the property, the court may order all or part of the property sold if:
>
> (A) the property is perishable or at risk of deterioration, decay, or

---

[2] Criminal forfeitures are governed in part by Fed..R.Crim.P 32..2. On April 27, 2007, the Advisory Committee proposed that Rule 32.2 be amended to provide that the interlocutory sale of property in a criminal forfeiture case will be in accordance with Supplemental Rule G(7). The intent is to conform criminal rules with civil rules on mechanical and technical issues. The pertinent pages of the proposed amendment and Committee Notes are attached. While the proposed Rule itself is not binding on the Court, it reflects the Committee's view that existing procedures should be compiled into one rule.

   injury by being detained in custody pending the action;

   (B) the expense of keeping the property is excessive or is disproportionate to its fair market value;

   (C) the property is subject to mortgage or to taxes on which the owner is in default; or

   (D) the court finds other good cause.

**(ii) Who Makes the Sale.** A sale must be made by a United States agency that has authority to sell the property, by the agency's contractor, or by any person the court designates.

**(iii) Sale Procedures.** The sale is governed by 28 U.S.C. §§ 2001, 2002, and 2004, unless all parties, with the court's approval, agree to the sale, aspects of the sale, or different procedures.

**(iv) Sale Proceeds.** Sale proceeds are a substitute res subject to forfeiture in place of the property that was sold. The proceeds must be held in an interest-bearing account maintained by the United States pending the conclusion of the forfeiture action.

**(v) Delivery on a Claimant's Motion.** The court may order that the property be delivered to the claimant pending the conclusion of the action if the claimant shows circumstance that would permit sale under Rule G(7)(b)(I) and gives security under these rules.

**(c) Disposing of Forfeited Property.** Upon entry of a judgment of forfeiture, the property or proceeds from selling the property must be disposed of as provided by law.

Application of the standards in Supplemental Rule G dictates that Jarvis' motion be denied.

First, the Rule G(b)(ii) contemplates that the sale be made by the appropriate United States agency, its contractor or a person the Court designates. In this case, the US Marshals Service is the appropriate agency rather than a broker contracted in secret by the defendant.

Second, sale is governed by 28 U.S.C. §§ 2001, 2002, and 2004, unless all parties, with the court's approval, agree to different procedures. The United States does not agree to abandon procedural safeguards in the statutes and simply proceed under the terms of the real estate purchase agreement negotiated by Jarvis and Fork and Dagger. There has been no appraisal or other review of the agreement to assure that the purchase price reflects fair market value, and the property has not been made available to all prospective purchasers. Moreover, Article X of the agreement provides for an exorbitant 10% real estate commission to brokers the United States did not approve. The industry standard is substantially less.

Third, while legitimate liens against the property may be paid from sale proceeds, the Rule does not provide for payment of Mr. Jarvis's personal taxes or other debts and obligations. The United States must hold the proceeds in an interest bearing account pending final resolution of the case.

While the United States does not oppose an interlocutory sale of the property in principle, the sale must involve at a minimum the active participation of the U.S. Marshal's Service and appropriate safeguards to assure fair market value, reasonable sales commissions, if appropriate, and equal treatment of prospective purchasers.

Finally, an order lifting the stay of proceedings must be entered for the purpose of effectuating a sale, if supported by appropriate authority and law.

Respectfully submitted,

LARRY GÓMEZ
Acting United States Attorney

STEPHEN R. KOTZ
Assistant United States Attorney
Post Office Box 607
Albuquerque, NM 87103
(505) 346-7274

I HEREBY CERTIFY that on the 17th day May, 2007.
I filed the foregoing electronically through the CM/ECF system.

AND I FURTHER CERITFY that on such date I served the foregoing on the following non-CM/ECF Participants by mail:

Joe M. Romero, Jr.
Attorney for Dana Jarvis
1905 Lomas Blvd. NW
Albuquerque, NM 87104

Jody Neal-Post,
Attorney for Dana Jarvis
317 Amherst SE
Albuquerque, NM 87106

_____
STEPHEN R. KOTZ
Assistant U.S. Attorney

## EXCLUSIVE RIGHT TO SELL CONTRACT

IN CONSIDERERATION of the services to be performed by VINCE MARCHIONDO REAL ESTATE and LIQUOR LICENSE BROKERAGE, Hereinafter called BROKER; I, DANA JARVIS, hereinafter called OWNER, hereby grant unto BROKER, the Exclusive Right to Sell that certain Real Property, situated in the County of Bernalillo, City of Albuquerque, New Mexico, commonly known as "Harlows on the Hill", located at 3523 Central Avenue, N.E., Albuquerque, New Mexico 87110, together all improvements thereon, including the building, land, furniture, fixtures, signs, equipment and New Mexico Dispenser Liquor License No. 2599

OWNER hereby grants VINCE MARCHIONDO REAL ESTATE and LIQUOR LICENSE BROKERAGE, the Exclusive Right to Sell the same for the price of SEVEN HUNDRED TWENTY FIVE THOUSAND DOLLARS ($725,000.00), on the following terms.
ALL CASH, plus food and liquor inventory at wholesale cost

This Contract shall continue irrevocably until December 31, 2007.

OWNER agrees to pay a commission in the amount of TEN PERCENT (10%), plus applicable gross receipts tax on said commission upon the occurrence of any of the following events:

1. If prior to the termination of this Contract, Broker or any of its Agents secures a Purchaser at the above price or terms or any other price or terms acceptable to Owner,
2. If prior to the termination of this Contract, the said property is sold, exchanged or leased by Broker, or any other person or entity, including the Owner, or
3. If at any time up to 180 days following the termination of this Contract, the said property is sold, exchanged or leased to nay person or entity who prior to the termination of this Contract, either inspected or was shown the property during the term of this Contract and whose name Broker submitted to Owner, in writing, or was personally introduced to Owner by Broker, as a prospective purchase or lessee.

This Listing Contract cannot be terminated or cancelled prior to its expiration date without the written consent of Vince Marchiondo Real Estate and Liquor License Brokerage. representation of any value is made by reason of this paragraph.

In cash Earnest Money Deposit is forfeited, one-half of same shall be retained by or paid to Broker as its compensation, and one-half to Owner, provided that Broker's portion Of any forfeiture shall not exceed the amount of the above named commission.

However, if a dispute arises as to whether or not there is a forfeiture, then payment shall not be automatic, and such distribution shall be made only after all the concerned parties agree.

Owner authorizes Broker herein, to advertise in any manner or method, and in any medium as it deems appropriate.

Owner agrees that Broker shall not be responsible for maintenance of the premises, nor shall Broker be responsible or liable for any loss of personal of real property due to vandalism, theft, or any other damages whatsoever.

The undersigned, Owner and Broker agree that they will not discriminate against any prospective purchaser because of sex, religion, race, creed, color, physical handicap or natural origin.

ADDITIONAL PROVISIONS: _____

Owner understands that upon written acceptance by Owner of an offer to purchase or lease said property, Broker shall not submit to Owner any other offers unless or until the purchase or lease agreement shall have been terminated in writing.

OWNER ACKNOWLEDGES THAT THIS TRANSACTION MAY INVOLVE IMPORTANT LEGAL, TAX AND ACCOUNTING CONSIDERATIONS. OWNER AGREES THAT WITH REGARD TO LEGAL, TAX AND ACCOUNTING MATTERS, THAT OWNER WILL RELY UPON HIS OWN ATTORNEY AND ACCOUNTANT, AND IN NO EVENT RELY UPON BROKER, ITS AGENTS OR EMPLOYEES, CONCERNING THESE MATTERS.

Owner hereby authorizes the release of all financial information regarding the herein described property to the Broker, Title Companies and Appraisers requesting the information.

I/we as Owner of the aforementioned property have read and understand the Agreement And agree to the terms and conditions thereof. Owner certifies that to the best of Owner's Knowledge, the information in this contract, provided by Owner, regarding said property is correct.

OWNER: DANA JARVIS                           3-31-07
                                             DATE

In consideration of the above, Broker agrees to use diligence in procuring a Purchaser.

_Vincent C. Marchiondo_                      3-31-07
Vincent C. Marchiondo                        Date

Bill Richardson
GOVERNOR

Gary Tomada
Director

LRilan Martinez
Deputy Director

2550 Cerrillos Rd. Santa Fe, NM 87505
PO Box 25101 Santa Fe, NM 87504-5101
(505) 476-4875   Fax (505) 476-4595
www.rld.state.nm.us/agd

_____ Fee $20.00
_____ Late Fee $50.00

## Voluntary Temporary Suspension of Operation of a Liquor License Form

Business Name (DBA)_____ Liquor License #_____
Date of Request _____ Effective Date of Suspension _____
Suspension request for (Start Date) _____ (End Date) _____
Note: If no date is entered, approval will be granted for 90 days.
Reason for Suspension: (supporting documentation must be attached) _____
Requested By (Please Print) First_____ Last _____
Signature (must be owner of record or attorney for owner) _____
Copy of request to be mailed to First _____ Last _____
Address _____ City _____ State _____ Zip _____

Section 60-6B-7 NMSA 1978 provides that all liquor licenses shall be continuously operated during customary hours and days of operation for that type of license.

If a licensee ceases operation of the licensed business for more than 10 continuous customary business days, he shall notify the Director in writing within 5 days of cessation of business by filing a Voluntary Temporary Suspension application, together with a $20 processing fee. An additional late fee of $50 shall accompany any request made later than 5 days after cessation of business or expiration of any previously granted suspension. Only the licensee, or the licensee, or the licensee's attorney, shall sign the request.

Upon request of a Voluntary Suspension application, the Director may grant a temporary suspension in the operation of the license for a period deemed appropriate by the Director. Approval of a request for suspension of the license is not, however, automatic and in no event will a suspension request be granted unless the licensee provides the Director with a valid reason for such suspension accompanied by supporting documentation, a plan outlining proposed efforts the licensee will take to ensure the prompt resumption of operation of the license and a good faith estimation by the licensee stating when operation of the license can be expected to resume.

A suspension request will not be granted unless all outstanding renewal fees have been paid prior to the request for suspension. In addition, during the period of any suspension, all renewal fees that may become due must also be paid. The licensee is also prohibited from purchasing alcohol or obtaining special dispenser permits during any period of suspension

When a licensee desires to place the license into operation, whether prior to the expiration of the time pursuant to a suspension request or at the expiration of the time granted pursuant to a suspension request, the licensee shall notify the Director in writing of the date operation of the license will begin.

Failure to comply with Section 60-6B-7 of the Liquor Control Act may be grounds for revocation or cancellation of the license. _____

Alcohol & Gaming Use Only:
Approved _____ Disapproved _____ Date first suspension began _____
Beginning Date _____ Ending Date _____
By _____ Date _____

ALBUQUERQUE NM 871

28 MAR 2007 PM 1 F



5 0
/05

Torrance County Detention Facility
MR Dana Jarvis #65187
P O Box 837
Estancia, New Mexico
                87016

87016+0000

FROM : MICHELLE D COA          FAX NO. : 5053945194          Mar. 28 2007 11:27PM P1

**USbank**

**OFFICIAL CHECK**        No. 526593858

DATE: MARCH 06, 2007

AY        SEVENTY DOLLARS AND 00 CENTS

$ 70.00

O THE
RDER OF:  NEW MEXICO ALCOHOL AND GAMING DIVISION

URPOSE/REMITTER: DANA JARVIS

ocation: 8419

*Cathy Lockwyn*
AUTHORIZED SIGNATURE

⑆526593858⑆ ⑈091500053⑉016001057825⑈

MAR 28 '07 13:45          5053945194          PAGE.01

MEMO TO:   Members, Criminal Rules Advisory Committee

FROM:      Professor Sara Sun Beale, Reporter

RE:        Forfeiture Rules

DATE:      March 20, 2007


    As reported at the October meeting in Florida, the subcommittee chaired by Judge Mark Wolf has been reviewing the rules governing criminal forfeiture to determine whether changes are needed to clarify the procedures and reflect current practice. The other members of the subcommittee were Judge Jones, Professor King, Ms. Brill, Mr. McNamara, and the representatives from the Department of Justice (including several of the Department's forfeiture specialists).

    The subcommittee was greatly aided by the efforts of the Department of Justice and Mr. David Smith, who has written extensively on forfeiture. Mr. Smith, who represented the National Association of Criminal Defense Lawyers, participated in the subcommittee's conference calls, and he and the Department of Justice prepared a series of letters that analyzed a wide variety of issues, developing the opposing arguments and ultimately working to identify issues on which agreement might be possible.

    In the subcommittee's view, the attached proposals represent consensus provisions that incorporate current practices, providing a helpful roadmap in a highly complex area. Although we heard proposals for more fundamental changes (including proposals to reconsider changes made in 2000), the subcommittee chose not to try to break new ground.

    This item is on the agenda for the April meeting in Brooklyn.

1  **Rule 32.2(b)(6) and (7)**

2

3  (6) Notice of the Order of Forfeiture.

4

5  (A) If the court issues an order directing the forfeiture of specific property, the

6  government must publish notice of the order and send such notice to any person who

7  reasonably appears to be a potential claimant with standing to contest the forfeiture of the

8  property in the ancillary proceeding.

9

10  (B) The notice must describe the forfeited property, state the times under the

11  applicable statute when a petition contesting the forfeiture must be filed, and [the] name

12  [and the contact information for] the government attorney to be served with the petition.

13

14  (C) Publication must take place as described in Supplemental Rule G(4)(a)(iii) of the

15  Federal Rules of Civil Procedure, and may be by any of the means described in

16  Supplemental Rule G(4)(a)(iv). No publication of the notice is necessary if any of the

17  exceptions in Supplemental Rule G(4)(a)(i) apply.

18

19  (D) Notice sent to potential claimants may be sent in accordance with Supplemental

20  Rules G(4)(b)(iii)-(v) of the Federal Rules of Civil Procedure.

21

22  (7) Interlocutory Sale.

183

1   <u>At any time before entry of a final order of forfeiture, the court may order the</u>

2   <u>interlocutory sale of property alleged to be forfeitable in accordance with Supplemental Rule</u>

3   <u>G(7) of the Federal Rules of Civil Procedure.</u>

**Committee Note**

These provisions are based upon the civil forfeiture provisions in Supplemental Rule G of the Federal Rules of Civil Procedure, which are also incorporated by cross reference. The amendment governs such mechanical and technical issues as the manner of publishing notice of forfeiture to third parties and the interlocutory sale of property, bringing practice under the Criminal Rules into conformity with the Civil Rules.

18