**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

**vs.**

                                          **CR No. 05-1849 JH**

**DANA JARVIS,**

        **Defendant.**

**DEFENDANT JARVIS' REPLY TO THE UNITED STATES' RESPONSE [Doc. 970] TO HIS MOTION FOR LEAVE TO SUBSTITUTE *RES* FOR REAL PROPERTY &  LIQUOR LICENSE NUMBER 2599**

        Comes now the Defendant, Dana Jarvis, through counsel, Joe M. Romero, Jr. and Jody Neal-Post, and hereby replies to the United States' Response to his Motion for Court approval of a substitution *res* for the real property known as Harlow's and liquor license No. 2599, to prevent the properties of the Defendant from wasting pre-trial.    Mr. Jarvis states as follows.

**I.  Introduction**

        The United States presents it's "my way or the highway" position against Mr. Jarvis' proposed property sale as if the matter is one solely within the confines of prosecutorial discretion. It is not. It is not even within the discretion of this Court to enter an Order which has the effect of allowing or encouraging the waste of the potentially forfeitable property at issue.

        In *United States v. Monsanto*, the United States Supreme Court, interpreting the discretion afforded the District Court pursuant to 18 U.S.C. § 853(e)(1)(a) stated:

> Thus, § 853(e)(1)(A) is plainly aimed at implementing the commands of § 853(a) and *cannot sensibly be construed to give the district court discretion to permit the dissipation [waste] of the very property that § 853(a) requires be forfeited upon conviction....*
>
> ...Whatever discretion Congress gave the district courts in §§ 853(e) and 853(c), that discretion must be cabined by the purposes for which Congress created it: 'to preserve the availability of property for forfeiture.'

*United States v. Monsanto,* 491 U.S. 600, 612-13 (1989)(emphasis added). Surely if the Court operating within statutory parameters does not have the discretion to allow property to waste, the Court cannot have greater discretion to allow what is otherwise prohibited where the United States does not even rely on a statutory grant of authority.

Here, the United States has encouraged waste of the Harlow's property by refusing to agree to lease terms subsequent to the filing of its Motion attempting to force sale of the property [Doc. 664], and is so now impeding the sale of the same property by insisting on terms external to its duty to "to preserve the availability of property for forfeiture."

Mr. Jarvis requests this Court enter its Order effectuating the purposes of § 853, preserving the property potentially subject to forfeiture in the manner of a substitute *res*. This is all the more so necessary in the face of the weaknesses in the United States' choice of restraint-in-fact of the property and the absence of binding authority in law for the actions proposed by the United States.

## II. Legal Argument & Authorities

### A. The United States Presents No Binding Authority in Support of its Position

As the United States has previously done in these proceedings in relation to the Mora properties, the United States is again presenting persuasive, non-binding legal authorities *as if* they are binding precedent.

The United States asserts that "[t]he proper legal authorities are the statutes and rules governing interlocutory sale of property subject to forfeiture." *Doc.* 970, p. 3. The government's argument proceeds directly to 21 U.S.C. § 853(e), "the general provision for protective orders." *Id.* However, the United States, this Court and Mr. Jarvis all agreed at the November 4, 2006 hearing that the then-existing protective order entered pursuant to 853(e) was moot due to a change in circumstances. The United States has not sought relief pursuant to 853(e) here. Section 853(e) and case law interpreting it is not binding here.

The government's argument is a species of the issue presently on collateral order appeal in this case at the Tenth Circuit, wherein the United States argued throughout the district court proceedings *persuasive* federal law regarding "restraint" of property, only to concede in its Tenth Circuit briefing that it was state law that applied to the *lis pendens* therein. *United States Aplee's Br.* at p. 13 ("The United States did not seek an order restraining the substitute property under § 853(e). Therefore the notices of *lis pendens* cannot be considered a restraint as a matter of federal statute."); *see also id*. at 18 ("If the *lis pendens* were restraints at all, they were restraints under state law, not a restraint imposed by the district court under §853(e)."). The United States did not deny this concession during oral arguments.

3

Now the government's argument is that a complex interplay of federal statutes, many applying to civil *in rem* proceedings and some not even yet adopted as law, *require* the outcome the United States seeks of a sale on its terms or no terms. The authority cited by the United States, commencing again from the fictional starting point *as if* this were a 853(e) proceeding is therefore, and at best, merely persuasive. Even were this the government's 853(e) motion, *Monsanto* would prohibit this Court from granting its approval of any government proposal that directly or indirectly allows the property to waste, as contrary to congressional intent to preserve potentially forfeitable property.

### B. The Lis Pendens is a Facially & Substantively Invalid Cloud on the Property Title

The *lis pendens* recorded against the real property here is facially invalid as to material matters. On its face, the *lis pendens* states the real property at issue was "criminally indicted." *See Doc* 203, *Pt.* 3, p. 2. It was not. The Defendant owner was criminally indicted and the property shows on the superceding indictment as it is required notice of forfeiture for sentencing purposes, should the property owner, Mr. Jarvis, be convicted of any crime for which forfeiture is available to the United States. *Fed. R. Crim. P.* 7(c)(2) and 32.2.

*Lis pendens* statutes, especially in the context of disfavored forfeiture, are to be strictly construed as they allow for an extrajudicial encumbrance upon property. In *TPM Holdings,* the court required strict compliance with *lis pendens* statutes, stating both that "a *lis pendens* applicant [must] turn square corners," and that there are

> obvious dangers inherent in a *lis pendens* scheme that allows a party to wield this considerable power without prior application to any court, and with no judicial assessment of the merits of the underlying suit.

4

> The purpose of a *lis pendens* is to notify potential purchasers that there is pending litigation that may affect title to real property and that the purchaser will take subject to the judgment. This cloud on title can impair the marketability of the property. Under the New Hampshire statute, as in many states, this can be done without resort to a court, under specified circumstances. *The resulting danger of abuse has led courts to require strict compliance with lis pendens statutes. E.g., S. Utsunomiya Enters., Inc. v. Moomuku Country Club*, 75 Haw. 480, 866 P.2d 951, 963 (Haw. 1994); *E & E Hauling, Inc. v. County of DuPage*, 77 Ill. App. 3d 1017, 396 N.E.2d 1260, 1266, 33 Ill. Dec. 536 (Ill. App. Ct. 1979).

*TPM Holdings v. Intra-Gold Indus.*, 91 F.3d 1, 4-5 (1st Cir. 1996)(emphasis added).

Courts have, in fact, equated *lis pendens* to nuclear war in the context of property disputes:

> A report on the proposed legislation by the Real Property Law Section of the State Bar observed that a *lis pendens* was called 'the 'nuclear weapon' of property disputes, because the practical effect of filing a *lis* [*pendens*] is to make the affected property unmarketable as long as the *lis* [*pendens*] remains of record. Moreover, a *li*[*s*] *pendens* can be filed without a prior judicial review, and it is at present very difficult to 'expunge' (i.e., remove) a *lis* [*pendens*].' (Assem. Com. on Judiciary, com. 1 of Com. Rep. for 1991 [hearing of May 6, 1992] on Assem. Bill No. 3620 (1991-1992 Reg. Sess.), as amended Apr. 29, 1992, p. 4.)

*Amalgamated Bank v. Superior Court*, 149 Cal. App. 4th 1003, 1012 (Cal. Ct. App. April 16, 2007).

Also questionable is whether the *lis pendens* at issue is lawful under the New Mexico statute, 38-1-14, cited as authority by the United States on the face of the *lis pendens.* It remains unsettled as a matter of law as to whether a New Mexico *lis pendens* recorded on the basis of an underlying *in personam* criminal indictment meets the state

statutory requirement of an underlying suit "affecting title to real estate," as the issue may be decided in Mr. Jarvis' appeal, submitted for decision after oral arguments on May 10, 2007. Mr. Jarvis contends that the New Mexico statute, strictly construed, does not encompass an indirect effect on real estate as herein within its requirement that the underlying suit be one "affecting title to real estate." *See e.g. Ruiz v. Varan,* 110 N.M. 478, 479 (1990)(leaving undisturbed lower court finding that a suit seeking commissions on a real estate transaction was not a suit "affecting title" to that real estate). If the *lis pendens* is invalid it must be quashed and this impediment to Mr. Jarvis' sale of his property evaporates.

### C.  Mr. Jarvis' Sale Proposal is Reasonable and Comports Both with Mr. Jarvis' Property Rights and the Government's Duty to Preserve Potentially Forfeitable Property

Mr. Jarvis has submitted a purchase offer and a proposed agreement for payment of necessaries subsequent to sale. Mr. Jarvis responds to the United States' specific concerns as follows.

The United States demands that any sale be "made by the appropriate United States agency, its contractor or a person the Court designates, based upon the non-binding authority of the civil procedure supplemental rule G(b)(ii). The government concludes the sale should be by the US Marshall's service, rather than "a broker contracted in secret by the defendant," providing absolutely no reasoning as to why the unilateral choice of the United States best serves congressional intent of preserving property. *Doc.* 970, p. 6.

Mr. Jarvis has committed no crime in negotiating with a buyer for his own property without the knowledge of the United States. Prosecutorial discretion does not extend so far as to allow the government to impede or curtail a reasonable sale of the

6

subject property simply in retaliation for Mr. Jarvis having taken steps to sell his property rather than see it wasted. Prosecutorial discretion is not license allowing the government to thwart the expressed congressional intent of preservation of property potentially subject to forfeiture with no good reason.

The government asserts further that since it does not agree to the sale, 28 U.S.C. §§ 2001, 2002 and 2004 apply, although the United States has already said in its footnote 2 that the proposed rule that incorporates these provisions is not binding. The Parties can, as the United States *does* admit, simply agree to the sale details. *Doc.* 970, p. 6.

Mr. Jarvis and his potential buyer have agreed to obtain an appraisal, and the potential buyer has agreed to split the cost of the appraisal with Mr. Jarvis. Mr. Jarvis and the Buyer will consider the United States' suggestions as to appropriate appraisers. There is no hard and fast requirement anywhere to Mr. Jarvis' knowledge that the property must be sold at market value, as the United States is now demanding. In its previous attempts to force an interlocutory sale, the United States set a floor bid at "no less than two-thirds of the appraised value of the property." *Doc.* 664, ¶ 5 (Proposed Order). Mr. Jarvis submits that if the existing purchase agreement meets or exceeds that two-thirds amount, the sale is reasonable by the United States' own terms. If the sale is by agreement with the United States, it is also unassailable later. *See* Section D.

The United States also asserts that other prospective buyers must have an opportunity for purchasing the property. The United States has no such obligation to hypothetical third parties; its obligation is to reasonably and lawfully preserve the value of the *res* for potential forfeiture.

Finally, the United States acknowledges it must pay the legitimate liens against the property but balks against paying Mr. Jarvis "personal taxes or other debts and obligations." *Doc*. 970, p. 6. The United States simply throws this up as a roadblock in its continuing theme of "my way or the highway."  The government has already agreed to pay child support in hearings before this Court with this Court's approval.  Federal taxes go to the same government the United States represents here, so there is no rational reason for the government to refuse to pay them out of the sale proceeds, unless the reason is retaliation- should the Defendant prevail and the property is not forfeited, the defendant's tax penalties will have accrued at a higher rate than the Defendant's funds will have amassed interest in the government's holding account. *See also* 28 U.S.C. § 547(4).

Conversely, if the property is eventually forfeited, pursuant to *United States v. 92 Buena Vista Ave.,* the United States is authorized to "…take any other action to protect the rights of innocent third persons which is in the interest of justice…." The United States will then be required to pay local and state property taxes, and if the government is to preserve the *res*, payment of taxes now will cost less than payment of taxes with interest later.

The United States simply puts up no reasoned argument as to how its refusal to allow this reasonable sale proposal fits within their congressional mandate of preservation or this Court's lack of discretion to judicially authorize property waste.

### D.  Sale by Agreement is Procedurally the Safest Route

The United States asserts that the present stay must be lifted for the purposes of effectuating a sale of the property, also stating that such must be supported by appropriate

authority and law, and then provides none. Certainly the procedural status quo is difficult and unclear.

If the United States refuses to negotiate in good faith to effectuate the proposed sale, the Court treads lightly in its rulings as it cannot rule on matters directly encompassed within the pending collateral order appeal. If the United States refuses a sale by agreement, the Court is faced with a defendant with constitutionally protected property rights at stake and no clear venue within which to bring them, when time is of the essence in this proposed real property transaction.

The Defendant has no clear remedies available should his property be allowed to waste. Sovereign immunity for money damages suits appears unwaived by 28 U.S.C. § 2680(c) for property the government has wasted. If Mr. Jarvis is convicted, the effect of any uncompensated waste falls to Mr. Jarvis as the government will reach deeper into Mr. Jarvis' substitute assets to satisfy its money judgment due to a shortfall in directly forfeitable property *created by* the government's mismanagement of the encumbered-in-fact real property. *See* 28 U.S.C. § 2680(c); s*ee Adeleke v. United States*, 355 F.3d 144, 153-54(2nd Cir. 2004)(evaluating Federal Tort claims and other possible remedies for property destruction while in government custody).

The Defendant may have no avenue for relief at all, especially if he is never convicted, as the authorities he has previously cited detail. *Docs.* 689 & 964 (incorporated by reference). There is no sense in knowingly creating this manner of procedural morass when agreement to a reasonable sale and disposition of the proceeds in the government's safekeeping pending resolution of this criminal matter avoids all present and future such difficulties.

WHEREFORE, Mr. Jarvis requests the Court bring this matter on for hearing and resolve the issue of the proposed sale of Mr. Jarvis' property to his chosen buyer within all constitutional protections to which he is entitled, consistent with Congress' mandate and *Monsanto*, that the United States and this Court preserve the potentially forfeitable property at issue.

Respectfully submitted by:

*Electronically Filed*

By_____
Joe M. Romero, Jr., Attorney for Mr. Jarvis
1905 Lomas Blvd. NW
Albuquerque, NM 87104
(505) 843-9776

*Electronically Filed*

By_____
Jody Neal-Post, Attorney for Mr. Jarvis
317 Amherst SE
Albuquerque, NM 87106
(505) 268.7263

I hereby certify that a true and correct copy of the foregoing pleading was filed electronically through the CM/ECF system on May 23, 2007, with service made electronically on both AUSAs of Record, James Braun and Stephen Kotz.

*Electronically Filed*

_____
JOE M. ROMERO, JR.