IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cr. No. 05-1849 JH |
| ) | |
| DANA JARVIS, ) | |
| ) | |
| Defendant. ) | |

UNITED STATES' RESPONSE TO DEFENDANT DANA
JARVIS'S "MOTION TO DISMISS FOR IRREPARABLE STRUCTURAL
ERROR & ADDITIONAL FIFTH & SIXTH AMENDMENT VIOLATIONS"

Defendant Dana Jarvis's "Motion to Dismiss for Irreparable Structural Error & Additional Fifth & Sixth Amendment Violations" is based on the faulty premise that attorney Robert Gorence would have entered his appearance on Jarvis's behalf if only the court had ordered the *lis pendens* on his property in Mora County removed in January 2006. As Jarvis is well aware, however, this is simply not true. Moreover, Jarvis asks the court to grant the most extraordinary remedy available to a criminal defendant – dismissal of an indictment with prejudice – without making any showing of misconduct on the part of the government or resulting prejudice. Jarvis's motion must be denied.

A.  RELEVANT FACTS AND PROCEDURAL HISTORY

On August 23, 2005, a federal grand jury in Albuquerque returned a twenty-six count indictment charging Jarvis and twenty co-defendants in count 1 with conspiracy to

distribute 1000 kilograms or more of marijuana, in violation of 21 U.S.C. § 846. Jarvis was also charged in count 2 with engaging in a continuing criminal enterprise ("CCE"), in violation of 21 U.S.C. § 848, and with money laundering violations, including conspiracy to launder money, in counts 3 through 26.

The indictment contained a forfeiture allegation, in which the grand jury found probable cause to believe that certain bank accounts, real property, personal property and conveyances were subject to forfeiture as proceeds of drug trafficking offenses, property used to facilitate drug trafficking offenses, and/or property involved in, or traceable to, money laundering offenses.[1]  Also listed in the forfeiture allegation was property, including two parcels of land owned by Jarvis in Mora County, New Mexico ("the Mora property") that was subject to forfeiture as substitute assets, up to the value of the described and unavailable property. The United States recorded notices of *lis pendens* on all of the real property listed in the indictment, including the Mora property, obtained protective orders freezing the bank accounts listed in the indictment, and obtained seizure warrants for the conveyances listed in the indictment.

Attorney Judith Rosenstein was appointed to represent Jarvis in this case under the Criminal Justice Act ("CJA"). Ms. Rosenstein subsequently filed a motion to withdraw

---

[1] The property in which Jarvis was an owner or an interested party consisted of two accounts at Bank One, two accounts at First State Bank, real property located at 1440 Calle Cielo Vista in Bernalillo, real property located at 3523 Central Avenue in Albuquerque, real property located at 28 Quail Run (a/k/a 67 Willow) in Santa Fe, a 1972 Cessna airplane, and a New Mexico liquor license.

from the case on December 23, 2005, citing a deterioration of the attorney-client relationship.  Doc. 286.  In her motion, Ms. Rosenstein noted that she had located two attorneys on the CJA panel who were willing to be appointed to the case and who had Jarvis's approval.  *Id*. at 1-2.  Ms. Rosenstein did not name the attorneys in her motion, but stated that if her motion was granted, she would "advise the Court of the names of proposed substitute counsel."  *Id.* at 2.[2]

On January 9, 2006, attorneys Robert Gorence and Paul Kennedy filed a pleading styled "Defendant Dana Jarvis' Motion to Release Assets and For Leave to Retain Counsel."  Doc. 314.  The motion requested that the court unfreeze all of Jarvis's assets listed in the indictment so that Jarvis could hire Mr. Gorence and Mr. Kennedy.  The United States filed a motion to strike Document 314 on January 13, 2006, because neither Mr. Gorence nor Mr. Kennedy had entered an appearance on behalf of Jarvis.

At a hearing held on January 19, 2006, Ms. Rosenstein informed the court that attorneys Joe Romero and Billy Blackburn were willing to be appointed to the case.  1/19/06 Tr. at 3.[3]  The court granted Ms. Rosenstein's motion to withdraw and stated that

---

[2] Jarvis himself wrote a letter to the court dated December 18, 2005, in which he asserted that "[t]o adequately defend this case, a high powered attorney in the category of Charlie Daniels and Nancy Hollander, Ray Twohig, Peter Schoenburg, Paul Kennedy and Mary Han, Robert Gorance [sic], Steven McCue or Jackie Robins is needed."  Doc. 293.  Jarvis requested that money from his frozen Santa Fe bank accounts be paid to his "new attorneys, to get them started right away" and that the *lis pendens* be lifted "on at least one" of his four pieces of real property.  *Id*.

[3] Presumably, these are the two attorneys referenced in Ms. Rosenstein's motion to withdraw of whom Jarvis had approved.

3

it would "refer the matter to the magistrate for appointment of other counsel." *Id.* at 4.

The court then addressed the motion filed by Mr. Gorence and Mr. Kennedy. In an attempt "to cure the government's motion to strike," Mr. Gorence offered to file a limited entry of appearance regarding only the disposition of the motion to release assets. *Id.* at 4-5. The limited entry of appearance asserted that Mr. Gorence and Mr. Kennedy would enter their appearances on behalf of Jarvis if the motion to release assets was granted.[4] The government responded that the court could simply appoint Mr. Gorence to represent Jarvis under the CJA, as Mr. Gorence was on the CJA panel.[5] *Id.* at 5-6.

Mr. Gorence replied that he "was not interested in this case as a CJA matter." *Id.* at 6. He went on to state that he and Mr. Kennedy were "of the belief that Mr. Jarvis has the financial wherewithal to hire us if the Court were to grant the motion to release assets that have been seized." *Id.* at 7. He then stated:

> The structure of the indictment, Your Honor, has, well, there's numerous property, both personal property and real estate, that has, the government has indicated it either seeks to forfeit as directly traceable or as substitute assets. I think preliminarily with regard, you can see from the indictment, the Mora County property that the government has filed *lis pendens* on under the theory that if they are successful in obtaining the money judgment, those are substitute assets preliminarily, without even showing that they are traceable, those ought to be released and this Court ought to order the *lis pendens* removed so that Mr. Jarvis can retain counsel of his choice. And it's not –

*Id.* The court interjected:

---

[4] A copy of that limited entry of appearance is attached hereto as Exhibit 1.

[5] Attorneys Jackie Robins, Billy Blackburn, and Joe Romero were also mentioned as suitable appointees.

> Before we get to that issue let me just say that I did refer to the fact that I reviewed the letter submitted by the defendant and I did note, in reviewing that, there are a number of lawyers that he indicated he would consider appropriate to defend this case. So what I'm going to do is, I'm going to basically take it one step at a time. I'm going to, as I indicated, not only allow Miss Rosenstein's withdrawal, but he will be appointed other CJA counsel. What I'm going to do then is let his new counsel review this issue and we can take up the issue of releasing assets at a later time.

*Id.* at 7-8. The court did not deny the motion filed by Mr. Gorence and Mr. Kennedy; it struck the motion from the record. *Id.* at 9; Doc. 329.

Attorney Joe Romero was subsequently appointed to represent Jarvis. On February 3, 2006, Jarvis filed a "Motion for Release of Funds" through Mr. Romero. Unlike the motion filed by Mr. Gorence and Mr. Kennedy, the motion filed by Mr. Romero focused solely on the Mora property: "Specifically, Mr. Jarvis requests that his property in Mora be released so that he may use it to obtain the counsel of his choice." Doc. 338 at 2. The court denied Jarvis's motion on March 13, 2006.

On April 25, 2006, the grand jury returned a superseding indictment, which charged Jarvis in the same counts but added eight additional defendants, including Dennis Wilson ("Wilson"), and expanded the time-frame of the charged conspiracies and CCE. The superseding indictment also contains a forfeiture allegation, including the Mora property as substitute assets. Mr. Gorence entered his appearance on behalf of Wilson on May 5, 2006. Doc. 454.

On May 29, 2006, Jarvis filed a "Motion for the Court to Reconsider or Modify its Order Denying Defendant's Motion for Release of Funds," in which he requested that "all

5

his real property (including the Mora County property) subject to the *lis pendens*, and identified in pages 12 and 13 of the Superseding Indictment, be released so that he may use it to obtain counsel of his choice." Doc. 500 at 2.[6]  The court denied the motion to reconsider on August 21, 2006.

Jarvis appealed the court's order only with regard to the Mora property. The Tenth Circuit reversed, directing the court to order the United States to remove the notices of *lis pendens* on the Mora property. On October 12, 2007, the court entered such an order. The United States subsequently sent releases of *lis pendens* to the Mora County clerk for recording.

B.  ARGUMENT

Jarvis asserts in his motion to dismiss that "[t]his is the unusual case with *two* Sixth Amendment violations of record – the implicit finding of the Tenth Circuit and the explicit finding of this Court of violations of the right to prepare a defense with the effective assistance of counsel." Def. Mot. at 5 (emphasis in original). Contrary to this assertion, however, the Tenth Circuit did not find – either implicitly or otherwise – a Sixth Amendment violation, and as demonstrated below, there has not been a violation of Jarvis's right to choice of counsel under the Sixth Amendment. Nor has Jarvis been denied the right to counsel under the Sixth Amendment based on his time in

---

[6] Notably, in this motion, Jarvis never asserted that Mr. Gorence, who by then was representing co-defendant Wilson, either had been or remained his only counsel of choice.

administrative segregation.

1. Choice of Counsel

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right…to have the Assistance of Counsel for his defence." It has long been held that the right to counsel includes the right to counsel of choice for a defendant who does not require appointed representation. *Powell v. State of Alabama*, 287 U.S. 45, 53 (1932) ("…the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice"); *Wheat v. United States*, 486 U.S. 153, 159 (1988) ("… the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment…"); *United States v. Gonzalez-Lopez*, 126 S.Ct. 2557, 2561 (2006) ("…an element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him"). This right, however, is not absolute. The Supreme Court has repeatedly identified situations in which the right to counsel of choice is circumscribed. *See, e.g., Morris v. Slappy*, 461 U.S. 1 (1983) (holding that a defendant is not entitled to a "meaningful relationship" with his attorney, where the defendant was represented by a Public Defender who became ill, a new Public Defender was appointed, and the defendant wanted a continuance until his original attorney was recovered); *Wheat*, 486 U.S. 153 (holding that it was not a violation of the defendant's Sixth Amendment rights for the district court to refuse to accept waivers of conflicts of interest where the

defendant wanted to be represented by his co-defendants' attorney). As shown below, Jarvis's qualified right to choice of counsel has not been violated in this case.

> a. Mr. Gorence Would Not Have Entered His Appearance on Behalf of Jarvis Even If the *Lis Pendens* on the Mora Property Had Been Ordered to Be Removed in January 2006

Jarvis's motion rests on the assumption that Mr. Gorence would have entered his appearance on behalf of Jarvis solely in exchange for the removal of the notices of *lis pendens* on the Mora property.[7] This assumption, however, is false. The limited entry of appearance specifically stated that Mr. Gorence and Mr. Kennedy would enter their appearances if their motion to release assets was granted. That motion requested the release of all of Jarvis's property, not just the Mora property. At a hearing on this matter, the United States anticipates that Mr. Gorence would testify that the Mora property alone was insufficient to pay for his and Mr. Kennedy's representation of Jarvis, and that he and Mr. Kennedy would not have entered their appearances on Jarvis's behalf based solely on the removal of the notices of *lis pendens* on the Mora property.

It is beyond question that "a defendant may not insist on representation by an attorney he cannot afford or who for other reasons declines to represent the defendant." *Wheat*, 486 U.S. at 159. Here, even if the court had ordered the United States to remove

---

[7] Jarvis also proceeds on the false premise that the court wrongfully denied the motion to release assets filed by Mr. Gorence and Mr. Kennedy. The motion, however, was not denied. It was stricken from the record for being filed in violation of the local rules.

the notices of *lis pendens* on the Mora property in January 2006, Jarvis still would have been without sufficient funds to retain Mr. Gorence and Mr. Kennedy. Thus, Jarvis has not been denied his right to choice of counsel under the Sixth Amendment.

>b. <u>The Court's Refusal to Order the United States to Remove the Notices of *Lis Pendens* on the Mora Property Prior to October 2007 Did Not Constitute a Denial of Jarvis's Right to Choice of Counsel</u>

Even if Mr. Gorence had been willing to represent Jarvis if the court had ordered the notices of *lis pendens* removed on only the Mora property, the court's refusal to so order did not constitute a denial of Jarvis's right to choice of counsel. Jarvis's argument to the contrary relies on the Supreme Court's decision in *Gonzales-Lopez*. That case, however, is inapposite.

In *Gonzalez-Lopez*, the government <u>conceded</u> that the trial court had erroneously deprived the defendant of his choice of counsel when it misinterpreted the local court rules and held that the out-of-state attorney, whom the defendant had already retained, could not represent the defendant *pro hac vice*. 126 S.Ct. at 2561. The Supreme Court held that such erroneous deprivation was structural error, requiring the conviction be vacated and the case remanded for a new trial with the defendant's counsel of choice. *Id*. at 2564-2566. The error was remedied by allowing the defendant to face the charges against him, represented by the attorney of his choice, not by forever foreclosing the government from prosecuting the case. Furthermore, the Supreme Court specifically said that nothing in *Gonzalez-Lopez* was in contravention of precedent that recognizes the

limitations to the right to counsel of choice and a court's discretion in balancing that right against the fair administration of justice. *Id*. at 2565-2566.

Here, in refusing to order the United States to remove the notices of *lis pendens* on the Mora property prior to October 2007, the court did not preclude Mr. Gorence from representing Jarvis. It merely denied Jarvis's requests to lift *lis pendens* on property that he claims he would have used to hire Mr. Gorence and Mr. Kennedy. Mr. Gorence could have entered his appearance on behalf of Jarvis, or allowed himself to be appointed under the CJA, and litigated the forfeiture issue. He chose not to do so.

Mr. Gorence's presumed current conflict of interest is simply too attenuated from the government's filing of the *lis pendens* on the Mora property. The Tenth Circuit's remedy on appeal was to direct this court to order the government to remove the *lis pendens*. Jarvis can now use that property to retain his counsel of choice, subject to the availability of that counsel.

Jarvis asserts that his counsel of choice is Mr. Gorence, but that Mr. Gorence is precluded from representing him at this stage because Mr. Gorence is now representing co-defendant Wilson and thus has a conflict of interest. Yet that presumed conflict of interest, even if it does in fact prove to exist, would not constitute a denial of Jarvis's qualified right to choice of counsel, as the Supreme Court has held that a conflict of interest is a valid qualification on the right to counsel of choice, and is not a violation of

10

the Sixth Amendment. *Wheat* 486 U.S. at 159.[8] Mr. Gorence's presumed current unavailability due to a conflict of interest does not entitle Jarvis to dismissal of the indictment in this case.

   2.   Conditions of Confinement

Jarvis was placed in administrative segregation at the Regional Correctional Center (RCC) on February 7, 2006, based on credible evidence that Jarvis had attempted to hire a hit man to murder the DEA case agent and a cooperating witness in this case. Jarvis later moved the court to modify his conditions of confinement. Following a hearing, the court entered an order granting Jarvis's motion on August 21, 2006.

In its order, the court did not find that Jarvis had been denied the assistance of counsel. Rather, the court concluded that Jarvis had presented sufficient evidence to demonstrate that his conditions of confinement in segregation were "interfering with his Sixth Amendment right to prepare a defense with the effective assistance of counsel." Doc. 654 at 1.[9] The court specifically noted the difficulty Jarvis had in conducting

---

   [8] It should not be overlooked that Rule 44 of the Federal Rules of Criminal Procedure contemplates the possibility of dual representation, and it is certainly possible for the court to accept the defendants' knowing and intelligent waivers of a conflict. For purposes of this response, however, the United States assumes *arguendo* that a conflict of interest precludes Mr. Gorence from representing Jarvis at this time.

   [9] To remedy the situation, the court ordered that Jarvis be transferred from segregation into general population. In his motion, Jarvis claims that "[t]his Court found that Mr. Jarvis was held in solitary confinement longer than any other individual in the history of this district." Def. Mot. at 7. The United States is unaware of any such finding by the court.

.
.
.

telephone calls to his counsel and the negative psychological effect of segregation on Jarvis. But contrary to the assertions in Jarvis's motion, during his time in segregation Jarvis was not denied "access to speak with and prepare a defense with his counsel." Def. Mot. at 6. In fact, the court noted that "the evidence suggests that there is no limit placed on Defendant's right to meet with his attorneys in person, subject to the same limitations on the availability of meeting space that apply to all detainees at RCC." Doc. 654 at 2.[10]

Jarvis now appears to be asking this court to apply the presumption of prejudice that attaches when a defendant is denied the assistance of counsel during a critical stage of the proceedings. *See* Def. Mot. at 6.[11] Jarvis, however, has received the assistance of appointed counsel throughout these proceedings. His attempt to equate the difficulties he

---

[10] As the United States informed the court after the August 11, 2006, hearing:

> Access to attorneys is the same for inmates in segregation and inmates in general population. Likewise, the interview room is the same. *Moreover, unlike other inmates, Mr. Jarvis has unrestricted and unlimited access to counsel.*

Letter from AUSA Stephen R. Kotz to the Honorable Judith C. Herrera dated August 16, 2006, attached hereto as Exhibit 2.

[11] *Citing Mitchell v. Mason*, 325 F.3d 732, 743 (6th Cir. 2003) and *United States v. Cronic*, 466 U.S. 648 (1984). In *Cronic*, the Supreme Court noted that it "has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." 466 U.S. at 659 n.25. In *Mitchell*, the Sixth Circuit, holding that defense counsel "utterly failed his client in the critical pre-trial period," found a complete denial of counsel when defense counsel was suspended from practice for the thirty days immediately preceding trial and had only met with the defendant for a total of six minutes spanning three meetings, over the course of the seven months prior to jury selection. 325 F.3d at 742, 744.

12

had over a year ago communicating with his counsel by telephone and the alleged effect administrative segregation had on his mental state with a complete denial of the assistance of counsel is unavailing. During his time in segregation, Jarvis was still allowed to speak with his appointed counsel on the telephone (albeit on a restricted basis), he was allowed <u>unrestricted</u> access to meet with his appointed counsel in person, and he was permitted to use a laptop computer and a printer, which provided him with other means by which to meaningfully participate in the preparation of his defense. While the rules placed on Jarvis's telephone calls to his counsel may have once made his ability to assist in the preparation of his defense somewhat more difficult, it certainly did not result in the wholesale denial of his right to the assistance of counsel. Finally, whatever alleged negative affect Jarvis's placement in segregation may have once had on his mental condition was cured by the court's order that he be placed back into general population. He has now had over a year to recoup any ground he may have lost during his time in segregation, and he has presented no evidence to the contrary.

      3.    <u>Dismissal with Prejudice Is Not an Appropriate Remedy</u>

As discussed above, Jarvis's Sixth Amendment rights have not been violated with regard to either his choice of counsel or during his time in administrative segregation. Thus, there are no "compound Sixth Amendment errors" present in this case. Def. Mot. at 6. Even if the court were somehow to find such violations, however, they would not justify the drastic remedy of dismissal of the indictment with prejudice where there has

been no showing of misconduct on the part of the United States, much less any alleged misconduct that prejudiced Jarvis.

The dismissal of an indictment with prejudice is "extraordinary relief." *United States v. Morrison*, 449 U.S. 361, 363 (1981). In *Morrison*, federal agents twice met with the defendant without her counsel's knowledge or permission in an attempt to gain her cooperation in a related investigation, despite being aware that she had been indicted and had retained counsel. *Id*. at 362. The Supreme Court assumed *arguendo* that the defendant's Sixth Amendment right to counsel had been deliberately violated, *id.* at 364, yet refused to impose the extreme remedy of dismissal without a showing of actual prejudice. *Id*. at 366-67. The Court noted that "[c]ases involving Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." *Id.* at 365. Thus, the Court held, "absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate." *Id.*

The United States has not engaged in any misconduct in this case. The notices of *lis pendens* on the Mora property were filed in good faith in order to preserve the property for forfeiture, not to preclude Jarvis from hiring his counsel of choice. Jarvis was placed in administrative segregation to protect the lives of the case agent and a cooperating witness, not so that the United States could gain any tactical advantage in this case.

Moreover, Jarvis has already received his remedies – the notices of *lis pendens* have been removed and he was long ago transferred from administrative segregation back into the jail's general population. The "irremediable" prejudice Jarvis claims here, that Mr. Gorence is "forever unavailable" to represent him, (Def. Mot. at 4-5), is the result of Mr. Gorence's choice to represent a co-defendant, not of any conduct on the part of the government.

Finally, although Jarvis now conveniently claims that only the "defense team" of Mr. Gorence and Mr. Kennedy will do, (Def. Mot. at 4), that claim is belied by the fact that he mentioned several other attorneys in his December 18, 2005, letter to the court and that he persisted in his motion to release assets for the purpose of hiring his counsel of choice even after Mr. Gorence was unavailable. If the Mora property is indeed sufficient to fund a "defense team," Jarvis is now free to use that property to retain his choice of available counsel.

WHEREFORE, the United States requests that the Court deny Jarvis's "Motion to Dismiss for Irreparable Structural Error & Additional Fifth & Sixth Amendment Violations."

Respectfully submitted,

LARRY GOMEZ
United States Attorney

*/s/ James R.W. Braun*

JAMES R.W. BRAUN
Assistant U.S. Attorney
P.O. Box 607
Albuquerque, New Mexico  87103
(505) 346-7274

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 22nd day of October, 2007, I filed the foregoing pleading electronically through the CM/ECF system, which caused counsel of record for the defendant to be served by electronic means.

*/s/ James R.W. Braun*

JAMES R.W. BRAUN
Assistant U.S. Attorney