## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

**v.**                     **No***:*    *05-CR- 1849 (JH)*

**DANA JARVIS,**

        **Defendant.**

## <u>SEALED DOCUMENT</u>

### DEFENDANT DANA JARVIS' REPLY TO THE UNITED STATES' RESPONSE TO HIS
### MOTION TO DISMISS FOR IRREPARABLE STRUCTURAL ERROR & ADDITIONAL <u>FIFTH & SIXTH AMENDMENT VIOLATIONS</u>

Defendant, Dana Jarvis, through counsel of record Joe M. Romero, Jr. and Jody Neal-Post, hereby replies to the United States' Response to his Motion to Dismiss.

This document is filed under seal because it has appended to it the affidavit of Mr. Jarvis supporting his claim, without waiving privilege, that he enjoyed an attorney-client relationship with Co-Defendant Wilson's counsel, Mr. Robert Gorence, and the expert affidavit of Professor Rodney Uphoff, Esq. *Ex. A, Jarvis Affidavit; Ex. B, Expert Affidavit.* Furthermore, sealing is necessary as this brief contains references to discovery in the form of FBI Investigative Reports released only to Mr. Jarvis which discuss Mr. Gorence as Defendant Jarvis' "attorney" and surveillance by the US Marshals Service of Mr. Gorence in the federal court hearing underlying Mr. Jarvis' *Gonzalez-Lopez* claim herein, on January 19, 2006. *Ex. C, Bates Nos.* 8.125, 8.126, 8.167 & 8.168.

The United States' unorthodox choices in defending against the original Motion to Dismiss have added another violation of Sixth Amendment rights, making the remedy necessitated today

even clearer. Dismissal with prejudice of this prosecution is necessary, based upon continuous governmental interference with Defendant Jarvis' Sixth Amendment rights to counsel. Cumulative structural and pre-trial Sixth Amendment constitutional violations have resulted in Mr. Jarvis being forever deprived of his due process entitlement to a fair trial under the Fifth Amendment.

Mr. Jarvis supports his request for dismissal as follows, from the simplest points forward.

### **Developments Since the Filing of Defendant Jarvis' Motion to Dismiss**

Defendant Dana Jarvis filed his Motion to Dismiss on October 4, 2007 alleging violation of his *Gonzalez-Lopez* right to retained counsel of choice in the erroneous denial of his Motion to Release Assets, which he asserted as structural error. *Doc.* 1076. The defendant argued that because the Court interceded with its erroneous ruling between counsel seeking, by his own representations, to be fully retained by Mr. Jarvis, and Mr. Jarvis, a Sixth Amendment violation occurred. *Id.* at 3. Mr. Jarvis argued a second structural error based upon this district court's finding of Sixth Amendment violation related to Mr. Jarvis' six months in solitary confinement, resulting in a denial of counsel assistance during the critical pre-trial stage of these proceedings. *Id.* at 5. Finally, Mr. Jarvis argued the Sixth Amendment violations cumulated into an additional Fifth Amendment violation, with the totality of constitutional error being irreparable. *Id.* at 6-7.

By October 8, 2007, Mr. Gorence was openly disputing the "premise," as the United States puts it, of Mr. Jarvis' Motion to Dismiss. Mr. Gorence was asserting he had not represented Dana Jarvis nor had he intended to represent Dana Jarvis. Based upon this information, undersigned counsel notified Mr. Gorence via letter on October 9, 2007 that Mr. Jarvis was claiming privilege and asked Mr. Gorence to refrain from speaking about his former client's affairs. *See Doc.* 1098, *Ex. A* . A sequence of letters between present counsel and Mr. Gorence were exchanged, which Mr. Gorence subsequently placed in the record in this case over Mr. Jarvis' continuing claim of privilege. *See also Transcript of Proceedings*, October 11, 2007, 9:21-25- 10:13.

2

On October 16, 2007, Mr. Jarvis filed his Motion to Seal Proceedings Related to the Attorney-Client Issue Regarding Robert Gorence. *See Doc.* 1090. Mr. Gorence opposed any sealed filings or proceedings. The United States provided no position.

On October 22, 2007, the United States filed its response to Mr. Jarvis' Motion to Dismiss. *Doc.* 1095. In this Response, the United States presented Mr. Gorence's new position that despite signing and filing a motion on Mr. Jarvis' behalf and appearing in court for him, Mr. Gorence would testify for the United States that he had never represented Mr. Jarvis. *Doc.* 1095 at 1-8. The United States' proffer of Mr. Gorence's testimony made it clear that the United States was in contact with Mr. Gorence, despite being on notice of Mr. Jarvis' claims of privilege. The United States' primary defense against the Motion to Dismiss is this single point based upon Mr. Gorence's new assertions, that Mr. Gorence never represented Mr. Jarvis, nor ever intended to represent Mr. Jarvis, and therefore, the United States reasons, the erroneous denial of the Motion to Release Assets was not a Sixth Amendment *Gonzalez-Lopez* violation. *Id.* at 1.

On October 26, 2007, Mr. Gorence filed his "Motion to Determine Whether an Alleged Conflict of Interest Exists with Robert J. Gorence's Representation of Dennis Wilson," revealing confidential information in the unsealed filing by attaching counsels' letters regarding Mr. Jarvis' claim of privilege. *Doc.* 1098. Mr. Gorence stated obliquely at paragraph five that he would testify at an evidentiary hearing that his discussions with Mr. Jarvis were exclusively as to Mr. Jarvis' financial ability to retain his services. He stated further he never discussed "the indictment, potential defenses or investigative strategy" with Mr. Jarvis. Counsel for Mr. Jarvis, however, has documentary evidence that shows otherwise, which is most clearly confidential information, and defense strategy. *See Doc.* 1109; *also Ex. A.*

On October 29, 2007, Mr. Jarvis noticed the United States via letter that he has not waived privilege as to any of his former counsel in this matter and requested that the United States cease speaking to Mr. Gorence or any other previous counsel of Mr. Jarvis, based upon privilege. Mr. Jarvis asserted that Fed. R. Evid. 104 requires this Court to make the preliminary determination of

3

privilege and until such time as this Court had ruled, communications were presumptively barred.

On October 30th, this Court set a hearing on Mr. Gorence's Motion, Doc. 1098, to determine whether an alleged conflict exists in Mr. Gorence's representation of Dennis Wilson, arising out of Mr. Gorence's professional relationship with Mr. Jarvis in this present case. Mr. Jarvis received no service of notice of this setting, despite the fact that he is a necessary party to the determination of Mr. Gorence's Motion. There has been no order entered on Mr. Jarvis' Motion, Docket No. 1090 (filed ten days earlier), seeking sealed proceedings on any attorney-client issues involving Mr. Gorence's representation of Mr. Jarvis.

The United States responded to Mr. Jarvis' October 29th letter via its letter of November 1, 2007 and refused to agree not to contact or communicate with "the attorneys mentioned" in Mr. Jarvis' letter. *See Ex. D, USA Letter.* Rather than cease communication with Mr. Jarvis' previous counsels, the government stated it would, instead, communicate if it chose and "rely on the attorneys who have privileged or other confidential information to assert the privilege." *Id.*

Mr. Jarvis responded to Mr. Gorence's Motion on November 5, 2007, immediately upon finding it had been set before his response time had run, and without notice to him. *Doc.* 1109. The Defendant asserted his basis for reasonably believing he had an attorney-client relationship with Mr. Gorence when Mr. Gorence filed Doc. 314, Mr. Jarvis' Motion to Release Assets, and appeared in Court on his behalf on January 19, 2006. Mr. Jarvis also asserted his indispensability as a party in the November 20, 2007 conflict proceedings.

## Argument & Authorities

### I.  The Sixth Amendment Violation of Right to Counsel's Assistance

The Sixth Amendment violation of a defendant's right to counsel's assistance was found by this Court. *Motion to Dismiss*, *Doc.* 1065, *citing Order, Doc.* 654. The United States argues that this court's finding of the government "interfering with his [Jarvis'] Sixth Amendment right to prepare a defense with the effective assistance of counsel" does not equate to a finding of denial of "assistance

4

of counsel." *Doc.* 1095 at 12. Even if the Court's own characterization of what it found is not linguistically identical to the government's characterization, the two are constitutionally synonymous. *See United States v. Chronic*, 466 U.S. 648, 657-58 (1984)(describing the violation). The Court specifically found denial of confidential communications via phone with counsel while Mr. Jarvis was held in pre-trial solitary confinement. This factual finding results in the legal conclusion that Mr. Jarvis was denied "access to speak with and prepare a defense with his counsel," as Mr. Jarvis accurately asserted.

The United States correctly characterizes Mr. Jarvis' argument as a "denial of assistance at a critical stage" argument. *Doc.* 1095 at 12. The United States cites the correct authority for denial of counsel at a critical stage as being bounded by *Chronic. Id.* at n.11. Inexplicitly then, the United States ignores the correct authority it cites and asserts that the standard for a critical stage violation is "complete denial" or "wholesale" denial of assistance of counsel. The standard is denial "during a" critical stage, not for the "entire" critical stage. *United States v. Chronic*, 466 at 659 n.25. The United States conceded some of the factual basis of this violation as this Court found it, that phone contact with counsel was on a "restricted basis." *Doc.* 1095 at 13; *see e.g. Geders v. United States*, 425 U.S. 80, 91 (1976)(17 hour overnight period of no counsel access a Sixth Amendment violation)(and cases cited therein). The Sixth Amendment guarantee is violated when counsel is prevented from "fully assisting and representing" an accused. Neither complete nor wholesale deprivation of counsel assistance is required before the Constitution is violated.

The United States bolsters its alteration of the legal standard with the justification that this Sixth Amendment violation was "over a year ago." *Id.* "He [Mr. Jarvis] has now had over a year to recoup any grounds he may have lost during his time in segregation, and he has presented no evidence to the contrary." *Id.* The United States provides no authority for the subtext here, which is

if the Government violates a pre-trial detainee's constitutional rights and then holds the detainee for a long time past the point of violation, the extended incarceration somehow vitiates the fact that guaranteed rights were violated. Perhaps the United States is confusing the standard of review for post-trial allegations of error requiring prejudice with the pre-trial Sixth Amendment violation here of *per-se* prejudice.

This Sixth Amendment violation of interference with access to counsel and counsel's assistance during the pre-trial phase of these proceedings, a critical stage violation, requires dismissal of the indictment.

## II.  The Sixth Amendment Intentional Interference with Attorney-Client Relations Violation

The Government begins its argument in response that "[Mr.] Jarvis asserts in his motion that '[t]his is the unusual case with *two* Sixth Amendment violations of record…." *Doc.* 1095 at 6.  Indeed, this is the even *more* unusual case as Mr. Jarvis now asserts a *third* Sixth Amendment violation - that in the Government's zealousness to craft a defense to the Motion to Dismiss, the United States intentionally interfered with Mr. Jarvis' attorney-client relationship in speaking with Mr. Robert Gorence, whom, Mr. Jarvis argues below, was Mr. Jarvis' actual counsel for an indeterminate time earlier in this present case. *Also Ex. A*; *Ex. B,* ¶¶ 14, 16-18.

The United States has taken the unorthodox position that the Government can unilaterally make the determination under the New Mexico Rules of Professional Conduct as interpreted in federal law, that it can speak to and call as an adverse witness an attorney who was defendant's own counsel. *See Ex. B*, ¶¶ 19, 20; *see also State v. Wong*, 40 P.3d 914, 919-25 (dismissing with prejudice for failure to seek judicial determinations of attorney-client relationships and privilege *before* calling former counsel as witness).  For this extraordinary proposition, the United States provides no authority, neither in its response brief where the government announces its intentions to call Mr.

Gorence, nor in its letter refusing to stop contact with any of Mr. Jarvis' previous counsel herein. *See Ex. D.*

In *Shillinger v. Haworth*, the Tenth Circuit evaluated prosecutorial misconduct claims upon allegations that a prosecutor's intrusion into the inmate's trial preparation sessions with his attorney violated the attorney client privilege. *See also United States v. Daprano,* 505 F. Supp. 2d 1009 (D.N.M. 2007)(explaining test for outrageousness in pre-trial invasions of attorney-client relationship). The prosecutor in *Shillinger* admitted, like the prosecutor here, intentional intrusion into the attorney-client relationship. *Shillinger*, 70 F.3d 1132, 1141 (10th Cir. 1995). In *Shillinger,* the Tenth Circuit found the prosecutor "proceeded for the purpose of determining the substance of Haworth's conversations with his attorney, and attorney-client communications were actually disclosed." *Id.* Herein, the prosecutor has proceeded with the intent to determine the substance of Mr. Jarvis' discussions with Mr. Gorence, to the extent at the least that such communications reflect the joint intent of Mr. Jarvis and Mr. Gorence to enter into an extended relationship of attorney-client. *See Doc.* 1095 at 8 (testimony anticipated to be given by Mr. Gorence against Mr. Jarvis); *but see Ex. D,* (contradicting as to the substance of communications sought from former counsel). "This sort of purposeful intrusion on the attorney client relationship strikes at the center of the protections afforded by the Sixth Amendment." *Shillinger*, 70 F.3d at 1141.

*Shillinger* was very clear in adopting the view of the District of Columbia that these intentional intrusions, without countervailing and compelling governmental interest, create Sixth Amendment violations which are *per se* prejudicial:

> *Because these impediments constitute direct state interference with the exercise of a fundamental right, and because they are susceptible to easy correction by prophylactic rules, a categorical approach is appropriate….*

*Shillinger*, 70 F.3d at 1142 (emphasis in *Shillinger* ), *citing United States v. Decoster*, 624 F.2d 196, 201 (D.C. Cir. 1979).

The prosecutor's intentional intrusions into the attorney-client relationship here, whether initiated by the United States with Mr. Gorence or by Mr. Gorence with the United States, are so constitutionally abhorrent precisely *because* they are so easily avoidable - so "*susceptible to easy correction by prophylactic rules*." At any time the United States had felt it had a legitimate need to make potentially prohibited contact with Mr. Gorence, undersigned counsel asserts with certainty that this Court would have made itself available to promptly provide a preliminary determination as to whether a relationship between Mr. Jarvis and Mr. Gorence prohibited or allowed such governmental intrusions, just as this Court did when the prosecutor here sought a R. 44 hearing two years ago. *See Doc.* 226. The United States and Mr. Gorence, even after being noticed by Mr. Jarvis' counsel, simply chose to risk constitutional error rather than advise the Court of the situation and seek a preliminary 104 ruling as to privileges.

The Hawaii Supreme Court laid it out clearly, that, contrary to the United States' position that it can speak to former counsel above Mr. Jarvis' objection, a prosecutor is duty bound to protect the potential privileges of the accused:

> [W]hen a prosecutor seeks arguably privileged testimony, the prosecutor must either (1) give notice to the person who might claim the privilege and the person's counsel, so that the person or the person's attorney can seek judicial review of any claim or privilege or waive the privilege, or (2) give notice to the person's counsel and, if the person's counsel does not raise the privilege and seek judicial review, the prosecutor **must** seek the court's ruling on the privilege issue. In the latter instance, the prosecutor should proceed with the understanding that if the person who might claim the privilege has not been given notice and an opportunity to be heard on the issue of privilege,  a court's allowance of testimony may be overturned after the holder of the privilege can be heard by the court.

*State v. Wong*, 40 P.3d 914, 923 (Haw. 2002)(emphasis added).

Under *Shillinger,* the United States' unauthorized contacts with Mr. Gorence are *per-se* Sixth Amendment violations. *Per se* constitutional errors are never harmless because they "necessarily render a trial fundamentally unfair." *Shillinger,* 70 F.3d at 1142, *citing Rose v, Clark,* 478 U.S. 570, 577 (1986). The remedy for this intentional Sixth Amendment violation should be tailored to the injury suffered by the intrusion, and to whatever is necessary to purge the taint. *Shillinger,* 70 F.3d at 1143. Suppression of Mr. Gorence's testimony against Mr. Jarvis' Motion to Dismiss would be the minimal remedy. *See id.* at 1143. Suppression and substitution of a new prosecutor could be an intermediate level remedy to purge more pervasive constitutional taint. *Id.* "Dismissal of the indictment, could, in extreme circumstances, be appropriate." *Shillinger,* *id.* The Hawaii Supreme Court reviewing the *Wong* case found that such *per-se* constitutional violations merited more than the District Court had given in ordering dismissal of the indictments. The Hawaii Supreme Court vacated the dismissals without prejudice and ordered instead that dismissal **with** prejudice be entered as the appropriate remedy for the extreme and intentional prosecutorial violations. *Wong,* 40 P.3d at 930.

It is incontrovertible that intentional intrusions into the attorney-client relationship have occurred in the last four weeks, the United States and Mr. Gorence having established this fact in, so to speak, their own hands. *Doc.* 1095 at 1, 8; *Ex. D*; *Doc.* 1098, ¶ 1 & 5. In fact, the United States opened its brief by asserting what it knew of Mr. Jarvis' understanding of his relationship with Mr. Gorence, which misinformation could only have come through Mr. Gorence. *Doc.* 1095 at 1 ("As Mr. Jarvis is well aware, however, this is simply not true," regarding Mr. Gorence's representation of Mr. Jarvis) (controverted by Mr. Jarvis' affidavit *Ex. A.*).

The sequence is straightforward. Once the Court enters its finding of an attorney-client relationship between Mr. Gorence and Mr. Jarvis, the Court will determine the pervasiveness of the

intrusion and intentionality, and all that is left is the remedy. Mr. Gorence will be prohibited from testifying against Mr. Jarvis, at minimum. At most, and in the unusual landscape of this case, dismissal with prejudice will be required, as in *Wong*. The prosecutorial misconduct the United States argued must be shown to support dismissal with prejudice is now of record. *Doc.* 1095 at 1.

### III. The Sixth Amendment Choice of Counsel Violation

### Introduction

The United States' primary defense against dismissal with prejudice based upon *Gonzalez-Lopez* is the surprising argument that Mr. Gorence was not representing Mr. Jarvis in January of 2006 when Mr. Gorence filed, over his signature, Mr. Jarvis' motion for release of assets, the stated purpose of which was to hire Mr. Gorence. *Doc.* 314, ¶ 6; *see also* proffered "*Limited Entry of Appearance*," *Doc.* 1095, *Ex.* 1. The government argues further that Mr. Gorence was **neither**, while standing in the courtroom on January 19, 2006 arguing on Mr. Jarvis' behalf, Mr. Jarvis' counsel at that moment, **nor** was Mr. Gorence intending to represent Mr. Jarvis. *Doc.* 1095 at 8.

As a secondary argument the Government argues in two parts; first, that the Gorence motion was not heard, denied and appealed, and secondly, that the Court's erroneous denial of Gorence's Motion, even if Gorence was "willing to" represent Mr. Jarvis, did not "preclude" Gorence's retention of counsel. *Id.* at 5, 8 n.7, 9-10. Finally, the government simply dismisses the actual conflict issue as "too attenuated." *Doc.* 1095 at 10.

Mr. Jarvis addresses the Government's arguments sequentially. The matter of Mr. Gorence being able to testify and adversely against his former client, Mr. Jarvis, is taken up as a stand-alone issue after the government's two part argument is refuted, although it pertains to the Government's primary issue- that no *Gonzalez-Lopez* issue exists because Mr. Gorence was not representing Mr. Jarvis at any time in these proceedings, and never intended to represent Mr. Jarvis.

**A. Mr. Gorence had an Actual Attorney- Client Relationship with Mr. Jarvis & Intended to Represent Mr. Jarvis Long Term if the Gorence Motion Were Granted**

The Government's assertions that Mr. Gorence would not have entered his appearance for Mr. Jarvis are simply nonsense, "legal jabberwocky." *McGinnis v. Rogers*, 279 A.2d 459, 473 (Md. 1971). Mr. Gorence was *already* representing Mr. Jarvis in January of 2006. He was representing Mr. Jarvis in federal legal proceedings in efforts to get sufficient assets released for his retainer *to continue to represent* Mr. Jarvis.

The legal test for determining whether an attorney-client relationship exists belies the nonsense of the government's position. As Professor Uphoff details in his affidavit, the rules of ethics and professional conduct provide that a client-lawyer relationship arises whenever a person manifests to a lawyer the person's intent that the lawyer provide legal services for the person, and the lawyer manifests to the person consent to do so. *See Ex. B.* A lawyer may enter into a client-lawyer relationship explicitly, or by consent by action, for example by performing services requested by the client. An attorney-client relationship is created, therefore, when an attorney and client discuss that lawyer taking on the representation of the client, exchange information relevant to that representation, and then the lawyer takes steps to achieve that end of assuming representation of the client. *See, e.g., In re S. Anita Ryan,* 760 A.2d 375 (D.C. Ct. App. 1995); *Ex. B.*

For Mr. Jarvis to show he had an implicit or explicit attorney-client relationship with Mr. Gorence, he would demonstrate that he submitted confidential information to Mr. Gorence and did so with the reasonable belief that Mr. Gorence was "acting as his attorney." *Cole v. Ruidoso Mun. Sch.,* 43 F.3d 1373, 1384 (10th Cir. 1994), c*iting Nelson v. Green,* 823 F. Supp. 823 F. Supp. 1439, 1445 n.8 (E.D. Wis. 1993). Mr. Jarvis "need not reveal the substance of [his] communication to the lawyer, for this would defeat the purpose of confidentiality." *Cole,* 43 F.3d at 1384, *citing Smith v. Whatcott*, 757 F.2d 1098, 1100 (10th Cir. 1985). "Usually, a showing of the circumstances and subject of the

consultation will be enough to demonstrate whether the information was confidential." *Cole*, 43 F.3d at 1384.   Mr. Jarvis' affidavit demonstrates the circumstances of his sharing of confidential information at  ¶¶ 6 and 7.   *See  Ex. A*. That Mr. Jarvis' belief that Mr. Gorence was acting as his attorney was reasonable is satisfied by the objective review of the historic record herein.

Mr. Gorence filed a pleading on Mr. Jarvis' behalf.   *See Doc*. 314. Only a licensed attorney or a person imbued with legal authority to act on behalf of another, which is not relevant here, can file a paper "on behalf" of another person in federal court. This Court noticed Mr. Gorence at the hearing on "his" motion, as the filing attorney.   *Doc*. 320. The Clerk of the Court apparently saw sufficient indicia of Mr. Gorence's status as counsel for Mr. Jarvis to notice Mr. Gorence for a hearing in Mr. Jarvis' case.  Mr. Gorence appeared and sat at counsel table for Mr. Jarvis at the hearing on the Gorence motion.  It was objectively reasonable for Mr. Jarvis to take Mr. Gorence's actions on their face and believe Mr. Gorence was his attorney.

As a matter of law, Mr. Jarvis was without counsel other than Mr. Gorence at the moment Mr. Gorence addressed the Court on the Gorence Motion to release assets. Only *after* this Court granted Mr. Jarvis' former counsel Judy Rosenstein's Motion to Withdraw, did this court hear Mr. Gorence on January 19, 2006.  Mr. Gorence informed the Court that "Mr. Jarvis needs the services of both of us to represent him on this continuing criminal enterprise indictment….", and "We're of the belief that Mr. Jarvis has the financial wherewithal to hire us if the Court were to grant the motion to release assets that have been seized." *Transcript of Proceedings January 19, 2006,* 5:1-11, 6:9-15, 7:1-20; *attached as Exhibit to Doc.* 1076.

Mr. Gorence tried to file a "Limited Entry of Appearance" in open court January 19, 2006, which stated, as to the Gorence Motion to Release Assets, "If the motion is successful, Robert J. Gorence and Paul Kennedy will then enter their appearances on behalf of defendant, Dana Jarvis, as

it is Mr. Jarvis's desire to retain Robert J. Gorence and Paul Kennedy to represent him in the above-styled cause." *Doc.* 1095, Ex. 1. Because the Court would not let Mr. Jarvis speak on his own behalf, Ms. Rosenstein then made record for Mr. Jarvis that "Mr. Jarvis wants the Court to know that he is the defendant and he would very much like to be able to retain Mr. Gorence and Mr. Kennedy in this matter with his own personal funds…." *Transcript, id.* at 8:10-14; *also  Ex.B.* ¶ 14 (explaining that an attorney-client relationship is formed, and all the duties of confidentiality and loyalty can be created, even though a representation is limited in time and scope, *citing Tambourine Comercio International S.A. v. Solowsky,* 2007 U.S. Dist. Lexis 14905 (S.D. Fla. filed March 4, 2007)).

Mr. Gorence, present next to Ms. Rosenstein, did not stand and advise the Court that he did not intend to enter his appearance unless his full Motion was granted, as the United States now asserts. Mr. Gorence did not stand and advise the Court that release of the *lis pendens* on the Mora properties he had just argued for would be insufficient to cause him to enter his appearance. Mr. Gorence allowed the Court to rely on the plain meaning of his words, written and oral, coupled with his actions. Objectively, the only conclusion is that Mr. Gorence was acting as Mr. Jarvis' attorney in January of 2006, and would continue to do so, if the court would release sufficient funds to pay him to continue. But the Court interceded with its denial of the motion, wrongfully defeating the condition precedent to Mr. Gorence and Mr. Jarvis entering into a long-term attorney-client relationship.

If Mr. Gorence and the United States are really arguing that these words and actions of record are equivocal to establishing that an attorney-client relationship existed on January 19, 2006, they are arguing contrary to the law of this circuit. When an attorney's actions and words regarding his representation of a client are "equivocal," "elusive" and or "disingenuous," the Tenth Circuit will find in favor of the client's interpretation, finding here that a an attorney-client representation

existed between Mr. Gorence and Mr. Jarvis in fact and law. *Vesco v. Snedecker*, 236 F. Supp. 2d 1272, 1274 (D.N.M. 2002).

The remainder of the legal framework for ascertaining whether a lawyer-client relationship was formed provides further support for Mr. Jarvis' reasonable belief. Mr. Jarvis and Mr. Gorence did not have a formal contract, and "the parties need not have executed a formal contract." *Cole*, 43 F.3d at 1384 (10th Cir. 1994), *citing Westinghouse Electric Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1317 (7th Cir. 1978). Mr. Jarvis paid Mr. Gorence no fees, but "[n]or is the existence of a relationship dependent upon the payment of fees." *Id.* at 1317 n.6. The Gorence/Jarvis relationship need not have had a formal beginning, nor resulted in an entry of appearance as "an 'implied professional relationship' can exist in the context of the 'preliminary consultation by a prospective client with a view to retention of the lawyer,' even though 'actual employment does not result.'" *Westinghouse*, 580, F.2d at 1319; *see also In re Lichtenberg*, 117 N.M. 325, 326 (1994).

Mr. Jarvis had an actual attorney-client relationship with Mr. Gorence, which the evidence indicates began sometime in December of 2005. *See Ex. A; Ex. B, Expert Affidavit.* The evidence, on its face, shows further that Mr. Gorence was attempting to get enough assets released to *continue* his actual but non-paying representation into a paid representation, if the Court would release sufficient funds for Mr. Gorence's retainer. The United States' attempt to carve out some argument otherwise is even more appalling when it is revealed that this position is contrary to the United States' own sealed evidence.

The United States kept Mr. Jarvis in pre-trial solitary confinement for over six months, based upon what a confidential FBI "source" told them. The "source," who was credible enough to cause Mr. Jarvis' placement in administrative segregation for a period of six months, told the United States on January 17, 2006 "Jarvis has a new attorney, Bob Gorence, and Jarvis will be meeting with

Gorence in several days." *Sealed Discovery, Bates No.* 8.125.   The next day the "source" told the FBI

that Jarvis was going to write a letter about "instructions" and that "Jarvis planned on giving the

letter to his attorney Bob Gorence, the next day at a hearing in Court and asking Gorence to place

the letter in the mail." *Sealed  Discovery, Bates* No.8.126. The hearing referred to was the January 19,

2006 hearing.  The U.S. Marshals Service personnel met at 9:45 am before the hearing and discussed

that Bob Gorence "was scheduled to be present for the hearing."   Directions were given "that if

Jarvis was observed passing any items to Gorence in court that day that [FBI Special Agent] SA

Pierson would be notified." *Sealed Discovery, Bates No.* 8.168; *attached as Exhibit C.*

  Now, the United States ignores that their "credible source" relayed to them that Gorence

was Jarvis' counsel and that they believed it.  It would seem that Mr. Jarvis probably told the

"source" that Gorence was his counsel as Jarvis' affidavit indicates that he told several people.  *Ex.*

*A,* ¶ 9. The United States also ignores what appear to be its own apprehensions regarding Mr.

Gorence- that the United States Marshals Service was ordered to conduct surveillance of Mr.

Gorence at the very same hearing now at issue.  Today, as today it suits the United States, it intends

to call Mr. Gorence as a government witness to assert that he was not Mr. Jarvis' attorney.

Yesterday, so to speak, Mr. Gorence was under surveillance because the United States viewed him as

Mr. Jarvis' attorney. The United States simply decides whether it will view Mr. Gorence as Mr.

Jarvis' attorney by "the exigencies of the moment."

  The attorney-client relationship between Mr. Jarvis and Mr. Gorence was never formally

terminated. *See Ex. A,* ¶ 16.  The relationship lingered while CJA appointed counsel Mr. Romero

immediately commenced litigation anew on a revised version of the Gorence motion, with Mr.

Jarvis' goal still to release funds so that Mr. Gorence, still his counsel of choice, could be retained.

*See Doc.* 1095, n.6; *also Doc.* 338, filed February 3, 2006. Again Mr. Jarvis' motion was erroneously

denied. On March 13, 2006 the court entered its denial of the Romero motion to release funds to retain counsel. *Doc.* 373. Sometime thereafter, without a letter of declination of representation, Mr. Gorence returned Mr. Jarvis' file to him. *Ex. A.* ¶¶ 12, 13 & 16. The file Mr. Gorence returned contains the documents referred to in Mr. Jarvis affidavit at paragraph 7, plus documents and papers apparently generated by Mr. Gorence's office, including sticky notes and copies of emails.

Clearly, Mr. Gorence and Mr. Jarvis had an actual attorney-client relationship which lasted for an indeterminate period of time, where it was reasonable of Mr. Jarvis to believe that as soon as his Motion to Release Funds was granted, Mr. Gorence would enter his appearance. When the Court erroneously denied the Gorence motion on January 19, 2006, the *Gonzalez-Lopez* violation occurred because it was judicial action interceding between counsel and client and preventing counsel of choice from being retained with the client's own funds.

### III(B)(1). The Gorence Motion as being Heard, Denied and Appealed

The government raises, anew and for the first time as with the other Gorence revelations, the possibility that there can be no *Gonzalez-Lopez* violation because the erroneously denied and reversed decision of the district court was not Gorence's Motion, it was Mr. Romero's Motion. *Doc.* 1095 at 5 (no denial, motion was struck); *contra* at 10 ("…the court merely denied…); *also* at 6. This is interesting timing, considering Mr. Jarvis argued throughout his appeal that deprivation of the right to retained counsel was the denial beginning with the Gorence motion. The government made no effort at correcting what now is alleged to be an erroneous presumption in the already final appeal.

Mr. Jarvis raised the whole matter of the "stricken" Gorence motion in his brief in chief at p. 10 n.2, including the fact that is was included in the record of the appeal and the United States had not objected. The United States chose not to object in its Answer brief, either. Suddenly, now that

it suits the United States, now that the appeal is final, the United States wants the record to reflect something else, due again, perhaps, "to the exigencies of the moment…."

The specific date of deprivation does not change the fact that deprivation of *Gonzalez-Lopez* protected rights occurred and it is structural error. Structural error now requires dismissal. Both motions were for the release of funds to pay Mr. Gorence for extending his representation of Mr. Jarvis.  On both possible dates to find structural error, January 19, 2006 or March 13, 2006, Mr. Gorence was available to contract with Mr. Jarvis. The Court prevented that possibility by failing to release Mr. Jarvis' erroneously encumbered Mora properties, which both the Gorence and Romero motions argued were wrongly encumbered by the *lis pendens*.

Fed. R. App. P. 10(e) allows supplementation of the record on appeal so that "the record truly discloses what occurred in the district court."  The Tenth Circuit was noticed of the status of the Gorence Motion and receiving no objection from the United States, allowed the Gorence motion to become part of the record and be argued as the formal commencement of the deprivation. In light of the fact that parties cannot stipulate to supplement an appellate record with "what was not before the district court," it is implicit in the Circuit court's allowing the supplementation that the stricken motion was properly before the Court on the issue before it.

As with the other Gorence revelations, it is simply too late for the United States to assert that what was said and what occurred, was not so. "Truly" as 10(e) put it, the Gorence motion was heard, decided and the first formal motion in the sequence decided by the appeal.

### III(B)(2).  Denial of Either Motion was *Gonzalez-Lopez* Error

As Mr. Jarvis points out above at III(B)(1), denial of either motion was *Gonzalez-Lopez* error. Both motions argued for release of the Mora properties, both Mr. Gorence and Mr. Romero orally

argued for release of the Mora properties and both motions sought the release of assets for the purpose of retaining Mr. Gorence as paid counsel.

The government's argument that Mr. Gorence could have represented Mr. Jarvis as CJA counsel is helpful, as it points out just what the government *does not* understand about the *Gonzalez-Lopez* decision. *Gonzalez-Lopez* provides that an accused person with assets has the constitutional right to be represented by counsel of his choice, while an indigent accused has only the right to effective, *appointed* counsel. Mr. Gorence and Mr. Jarvis both enjoy a right of freedom of contract. Mr. Gorence was not required to accept Mr. Jarvis' representation on other than contract terms Mr. Gorence chose and Mr. Jarvis agreed to accept. Mr. Gorence chose to start work with the hope that his initial unpaid representation would result in securing his future paying representation. There is no Sixth Amendment violation when counsel and a potential client cannot agree to contract terms, because there isn't, in the terms of civil rights cases, any state action.

The government further errs in its understanding of *Gonzalez-Lopez* in hanging on Justice Scalia's starting point, that "the Government has conceded" erroneous deprivation of counsel. *United States v. Gonzalez-Lopez*, 126 S. Ct. 2557, 2566 (2006). Decisions must start from the facts found and this is simply the fact found underlying the Sixth Amendment violation in *that* case, not the dispositive fact or the necessary fact. The necessary facts are the same facts as Mr. Jarvis puts forward, that an erroneous deprivation of choice of counsel has occurred and the District Court was responsible for it, although admittedly at the urging of the United States to make the error the United States now seeks to distinguish. *Id.*

The United States' arguments about the nature of any error that occurred are wholly staged to avoid the consequence Mr. Jarvis points out is appropriate, not just dismissal, but the final remedy of dismissal with prejudice. The United States refuses even to admit the obvious, that the

investigation necessary to respond to the government's new Gorence revelations has revealed the true nature of Mr. Gorence's previous relationship of attorney-client with Mr. Jarvis, exposing the actuality of a conflict of interests in Mr. Gorence's present simultaneous representation of Mr. Jarvis' co-defendant, Dennis Wilson.  The affidavit of Professor Uphoff clearly exposes this, and makes obvious that Mr. Gorence could not have taken on Wilson's representation and so could never now have other than an actual conflict in his representation of either defendant.

### III(B)(3).  Rule 44:  The United States' Inexplicable Failure of Duty

Leaving for a moment Mr. Gorence's actions or lack thereof, the United States reminds in a footnote that Rule 44 "should not be overlooked."  *Doc.* 1095 at 11 n.8. Indeed, the United States is right, and it is the United States who should not have overlooked it when Mr. Gorence entered his appearance on Mr. Wilson's behalf in May 5, 2006. It is inconceivable that this Court, properly advised by the United States of a potential conflict due to Mr. Gorence's previous appearance on Mr. Jarvis' behalf would have failed to hold a Rule 44 hearing.  In similar circumstances, the New Mexico Supreme Court found the fault for the resulting actual conflict to be on the State:

> Because the State failed to timely disclose a conflict of which it was well aware, Defendant's right to a conflict-free representation was withheld and the trial judge was prevented from conducting an evidentiary hearing to determine the extent of the conflict.

*Rael v. Blair*, 2007-NMSC-6, 26 (2007).

Furthermore, in this very case when the United States asked for a Rule 44 hearing October 17, 2005, this Court promptly and thoroughly provided the hearing.  The United States argued two years ago it was the government's duty to seek such hearing when it filed a Rule 44 motion six days after Mr. Jarvis' former counsel, Mr. Cliff McIntyre, entered his appearance for Mr. Jarvis. *Doc.* 226 at 3; *Doc.* 214.  *Rael* confirms the United States was correct two years ago that the duty belongs on the government. The government argued further upon the authority of *United States v. Cook* that in

19

the face of a court's knowledge of a potential conflict and a failure to "make any inquiry," "the reviewing court will presume violation of a defendant's Sixth Amendment right to counsel." *Cook*, 45 F.3d 388, 393-94 (10th Cir. 1995). Not only has the standard not changed in the intervening two years, it has become clearer. This, too, is a Sixth Amendment violation by government omission.

When the United States raised Rule 44 in is Response brief, it offered no explanation as to how its accurate statement of its own duty regarding conflicts bound them two years ago and did not equally bind them May 5, 2006 when Mr. Gorence entered his appearance for Mr. Wilson. Explanation now would be futile. The Government prevailed in October 2005 on this assumption of duty argument to conflict out Mr. Jarvis' then choice of counsel. The Government cannot now argue a "clearly inconsistent position" contrary to the one they previously prevailed upon, as judicial estoppel prohibits parties from "deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 752-53 (2001).

The United States simply failed for inexplicable reasons in its duty to place the proper conflict inquiry regarding Mr. Gorence's representation of co-Defendant Wilson on the record. *See Ex. B* at ¶ 27. This is the same situation as in *Rael v. Blair*, wherein the New Mexico Supreme Court firmly disapproved on the State's failure to act on its awareness of a potential conflict early when the matter first became known to it:

> This case is difficult because early on the State became aware of a potential conflict of interest. However, the State did not immediately disclose this potential conflict; rather, the State tried to exploit the conflict. Through Grant, the State contacted and recorded Grant's conversations with Defendant and Grant's conversations with defense counsel, and later the State attempted to use these conversations to revoke Defendant's bond….
>
> We think the State's untimely disclosure contributed to the resulting conflict of interest in this case….

*Rael v. Blair*, 2007-NMSC-6, 24, 26 (2007)(actual conflict found).

But for the court's error in denying the Gorence motion to release funds to pay counsel, Mr. Gorence and Mr. Jarvis would have been free to contract for long-term representation if they chose. But for the United States' failure in its duty to bring a Rule 44 hearing on or otherwise notice the court for inquiry as to conflict regarding co-defendant Wilson, there would be no government actions involved in the present situation of Mr. Gorence's actual conflict. The Sixth Amendment guarantees "the right to counsel's undivided loyalty." *State v. Martinez*, 130 N.M. 744, 749 (Ct. App. 2001). The United States failed to protect it. Mr. Jarvis caused none of the error that makes his *Gonzalez-Lopez* violation irremediable due to actual conflict by other than dismissal with prejudice.

## IV. The Curious Matter of Defendant's Own Counsel as Adverse Witness

The United States' Response announces that Mr. Gorence, Defendant Jarvis' previous counsel in this very case, will testify in support of the United States' position that Mr. Gorence never did, nor ever intended to represent Mr. Jarvis, even if the Mora properties had been released. *Doc.* 1095 at 1, 8. The improbability of a legitimate legal avenue to this end seems *not* to have escaped the United States, for if there existed authority in support the United States would likely have cited it. The government however, cited absolutely nothing to support its proffer of former counsel's adverse testimony against Mr. Jarvis. In contrast, there are multiple arguments with the support of authority, against such testimony.

## IV(A).  Mr. Gorence's Testimony is Not Relevant to a Material Fact at Issue

There are two issues before the Court that involve Mr. Gorence, the issue of the prosecutor's intentional interference in the attorney-client relationship of Mr. Gorence and Mr. Jarvis, and secondly, the resolution of the *Gonzalez-Lopez* issue, now that the Tenth Circuit has reversed the underlying order denying release of funds. The Court will not be assisted in its resolution of either issue by receiving Mr. Gorence's testimony.

21

The Court does have to render a ruling on whether Mr. Gorence and Mr. Jarvis enjoyed an attorney-client relationship. The Defendant's Motion to Dismiss assumed the relationship was obvious from the historic record. The United States says it is not, hence the proffer of Mr. Gorence's testimony. But the test of whether there was such a relationship begins with a review of the objective evidence of such as reflected in this Court's own historic record. To this, the court will add its finding as to whether a reasonable person in Mr. Jarvis' position would have believed that Mr. Gorence was acting as his lawyer in December of 2005 and forward, for an indeterminate period of time.

In contrast, the government's proffer of testimony that Mr. Gorence never represented Mr. Jarvis nor intended to has no relevance to what this Court must find; that Mr. Jarvis' has a reasonable belief that Mr. Gorence was his counsel. Mr. Jarvis' affidavit and the objective record are all this Court needs for this necessary determination.

As for the Gorence-related claim of prosecutorial intrusion into the attorney-client relationship, the objective record also suffices to establish this. Determining who initiated contact with whom as between Mr. Gorence and the United States, and how extensive the contacts were might inform determination of the egregiousness of the Sixth Amendment violation. However, any such testimony would likely reveal confidences of Mr. Jarvis' and would be allowable through Mr. Gorence only upon the Court's weighing of the necessity to invade privileged areas. The court could then limit Mr. Gorence's testimony to the issue of the means and manner of the intrusion into the attorney-client relationship, or decide to determine the extent of prosecutorial intrusions upon the existing record.

### IV(B).  Testimony Procured by Prosecutorial Misconduct Will be Suppressed

As Mr. Jarvis explained above at Section II, the minimal remedy for intentional prosecutorial interference with attorney-client relation is suppression of the fruits of the misconduct. *Shillinger,* 70 F.3d at 1143. The misconduct is in the communications between the prosecutor and Mr. Gorence as former counsel.  The purpose of the intentional interference was to solicit testimony adverse to Mr. Jarvis.  The proffered testimony must be suppressed as fruits of the unconstitutional intrusion.

### IV(C). Mr. Gorence's Judicial Admissions Bind Him, Preventing Contrary Testimony

A judicial admission is a party's unequivocal concession of the truth of a matter, and the voluntary assertion to the court of fact for the party's purpose of persuading the court to rule in its favor, the effect of which is to remove the matter as an issue in the case. *Gelfo v. Lockheed Martin Corp.*, 140 Cal. App. 4th 34, 48 (Cal. Ct. App. 2006); *also Guidry v. Sheet Metal Workers Int'l Ass'n*, 10 F.3d 700, 716 (10th Cir. 1993).  The doctrine provides that "an express concession against one's interest is regarded as highly competent, credible evidence, and as such judicial admissions are not to be repudiated." *Gelfo*, *citing  Leasman v. Beech Aircraft Corp.*,  48 Cal. App. 3d 376, 382 (1975).

Mr. Gorence has bound himself on the issue of the attorney-client relationship.   Mr. Gorence represented to this Court that if the Court were to grant his Motion to release assets, he would enter his appearance. Period.  Now the United States proffers that Mr. Gorence will testify before this court to something quite to the contrary- that he would not have entered his appearance. An ordinary witness cannot do this, and an officer of the court, an attorney licensed in this particular court has even less avenue for changing his prior factual admissions to the Court due to his obligations of candor and the meaning of an attorney's signature on a pleading as an affirmation of truthfulness. The doctrine of judicial admissions prevents Mr. Gorence's attempt now to provide testimony contrary to his representations to this court in these very proceedings almost two years

ago, another basis for preventing him from being a witness for the United States against his former client.

### IV(D). Mr. Gorence's Fiduciary Duties as Mr. Jarvis' Former Counsel Prevent Him from Giving Adverse Testimony Against Mr. Jarvis

Mr. Gorence owes fiduciary and ethical duties to Mr. Jarvis that preclude him from giving his proffered testimony in this matter. It is black letter law that attorneys owe clients the duty of confidentiality, and "correlative to the duty of confidentiality" is the duty of loyalty. *Damron v. Herzog*, 67 F.3d 211, 214 (9th Cir. 1995). The Ethics Rules relating to conflicts dove-tail with the duties of confidentiality and loyalty, with their prohibitions against attorneys taking new representations that are adverse to former clients in "the same or a substantially related matter." NMRA 16-109(A); *Ex. B*. Mr. Gorence's representation of co-Defendant Wilson in the very same case as his representation of Mr. Jarvis was at least facially prohibited at the outset.

Under *Herzog* and as explained in *Rael*, it is irrelevant whether the Gorence/Jarvis attorney-client relationship is viewed as a concluded representation, when the past and current representation is in the same matter. *Herzog*, 67 F.3d at 215; *Rael v. Blair*, 2007-NMSC-6, 19 (N.M. 2007). "A professional relationship is ongoing, even if formal representation has ended, if circumstances exist such that the attorney-client privilege may be violated." *Id.* The fiduciary duties of this professional relationship "unarguably include" "a duty not to reveal information relating" to the former client. *United States v. Ener*, 1999 U.S. Dist LEXIS 19927, *14-15 (D. Pa 1999). As in *Ener*, Mr. Gorence here is "serving two masters," as he now owes a continuing duty of loyalty to his prior client, Mr. Jarvis, while also owing a duty of loyalty to his present client, co-Defendant Wilson. *Ener* at *13; *State v. Martinez*, 130 N.M. 744, 749 (Ct. App. 2001), *citing Glasser v. United States*, 315 U.S. 60, 75, (1942). Although simultaneous duties, the paramount loyalty is to the first- in- time client, Mr.

Jarvis, as the Rules reflect. *N.M. Bar Advisory Opinion* 2000-2 , *citing* Rule 16-106(A) NMRA 2000) (the rules are designed to protect the confidences and loyalty to the first client).

Mr. Gorence's obligation to represent Mr. Jarvis with undivided fidelity, including protecting his secrets or confidences, and coupled with the duty to avoid the appearance of impropriety, forbids him now from testifying or even speaking adversely to Mr. Jarvis. *N.M. Bar Advisory Opinion* 1984-8. *N.M. Bar Advisory Opinion* 1984-8, *citing E.F. Hutton & Company v. Brown*, 305 F. Supp. 371 (S.D. Tx. 1969)(citations omitted)). In *Sealed Party v. Sealed Party, et. al*, the attorney issued a press release adverse to the client, although at the time he no longer represented the client. *Sealed Party, et. al*, 2006 U.S. Dist. LEXIS 28392 (S.D. Tex. 2006). The federal court held that even though the representation was over, the attorney still owed a fiduciary duty to the client as a former client, and the attorney was forbidden to disclose the client's confidential information without the client's permission.

Mr. Gorence is not now able to unilaterally decide whether or not he will testify against Mr. Jarvis, as New Mexico has long prohibited attorneys from unilateral "waiver of privilege for a client, and are, [instead], obligated to assert it." *Hunter v. Kenney,* 77 N.M. 336, 422 P.2d 623 (1967), *cited in N.M. Bar Advisory Opinion* 1992-2. "One of the foundations of our profession is the client's right to confidence. We do not believe that Rule 16-106 should be construed to create any exception of convenience, or to put upon an attorney any right or obligation to do anything other than assert the privilege." *Id.*

Mr. Jarvis as a client "undoubtedly placed confidence and trust in [Mr. Gorence] when [he] agreed to have him" file motions on his behalf. *See N.M. Bar Advisory Opinion* 1984-8; *In the Matter of Lichtenberg*, 117 N.M. 325, 871 P.2d 981, 983 (1994). In New Mexico, ["a]ttorneys are also admonished to avoid even the appearance of impropriety." *N.M. Bar Advisory Opinion* 1984-8 (citing

Code of Professional Responsibility, Canon 9; Model Rules of Professional Conduct, Rule 1.9 (August 2, 1983)). For an attorney to invite the confidences of two adverse co-defendants in the same conspiracy case discourages clients from placing confidence and trust in attorneys "and will not enhance the dignity and reputation of the legal profession." *N.M. Bar Advisory Opinion* 1984-8. For an attorney to testify adversely to one of those two co-defendants without the compulsion of a court order mandating it is doubly abhorrent. *See In the Matter of Silverberg,* 108 N.M. 768, 779 P.2d 546, 548 (N.M. App. 1989)(decrying the attorney's disloyalty and suspect motivation in filing an affidavit adverse to a former client). *Id.*

As the first of two clients represented by Mr. Gorence in this case, Mr. Jarvis is entitled to all the protections afforded by the client-lawyer relationship, including the protection of confidential information. "The client in the client-lawyer relationship is entitled to determine how information relating to the client's case is to be used and disseminated." *N.M. Bar Advisory Opinion* 2000-2. "As the ABA Comment to Rule 16-107 reminds us, the lawyer's need for income may not allow the lawyer to place the lawyer's interests before the client's interests." *N.M. Bar Advisory Opinion* 1995-2.

As the above and Professor Uphoff's affidavit amply show, Mr. Gorence may not testify voluntarily and adversely to Mr. Jarvis. *See Ex. B.*

### V.  Multiple Sixth Amendment Violations Compound into a Fifth Amendment Violation

The United States' defense against this Court finding a Fifth Amendment violation based upon cumulative Sixth Amendment errors is simply to deny that there were any Six Amendment violations. *Doc.* 1096 at 13.  But this is not "Alice in Wonderland" and the government is not Humpty Dumpty, free to use words to mean "'just what I chose it to mean -- neither more nor less.'" *Lopez v. Gonzales*, 127 S. Ct. 625, 630 (2006). When the English language tells us words mean

one thing and the government tells us they mean another, the Supreme Court warns that "that result makes us very wary of the Government's position." *Id.*

This Court found that the defendant "has successfully demonstrated that the current conditions of his confinement are interfering with his Sixth Amendment rights." *Doc.* 654 at 3. The specific interference was with the defendant's "right to prepare a defense with the effective assistance of counsel." The plain reading here is that a Sixth Amendment violation was found. Again, the United States disingenuously raises issues about final orders it failed to raise at the time. A Motion for Clarification could have been timely filed if the United States thought this order unclear. Now, the order stands as granting the relief sought, which was a finding of unconstitutional conditions of confinement, including Sixth Amendment violations.

Mr. Jarvis' argument for dismissal with prejudice is far stronger than it was merely four weeks ago, when Mr. Jarvis filed his Motion to Dismiss. Therein he alleged two Sixth Amendment violations, now he alleges three. Perhaps there are even four with the right to conflict free counsel factored in. The violation of counsel of choice, in the face of Mr. Gorence's actual and permanent conflict, is of such magnitude that standing alone it requires dismissal with prejudice. Yet the new violation of intentional prosecutorial interference with attorney-client relations, also itself a Fifth Amendment violation of due process, joins to paint an even more disquieting picture, as the concentration of violations all relate to a single constitutional guarantee, the various aspects of the Sixth Amendment rights to counsel. *See Deprano,*505 F. Supp. 2d at * 25.

The multiple Sixth Amendment violations here cumulate to cause a Fifth Amendment due process violation of Mr. Jarvis' right to fairness in the criminal process, emphatically so here, because they are "one-sided errors" with a "unique and critical thread run[ing] through them." *Parle v. Runnels*, 2007 U.S. App. LEXIS 23734 (9th Cir. Oct. 10, 2007); *also Chambers v. Mississippi*, 410 U.S.

284, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). It is the "symmetry of these errors--by which each so starkly amplified the prejudice caused by the other and their direct relation" to the very heart of the defendant's constitutional guarantee of the assistance of counsel that causes pause. *Parle* at * 26.

The government's preoccupation with Mr. Jarvis' counsel has infected this case, now fatally so. On October 27, 2005, this Court held a Rule 44 hearing at the request of the United States. The United States sought a ruling "to address the potential conflicts of interest inherent in attorney Cliff McIntyre's representation of defendants Dana Jarvis and Cathy Fitzgerald." *Doc.* 226 at 1. The AUSA turned the Court's focus to the propriety of whether Mr. Jarvis could have retained forfeiture counsel simultaneously with appointed CJA counsel. *Transcript of Proceedings* October 27, 2005, 25:13-18 (October 27, 2005 transcripts attch as *Ex. E*). Not satisfied by Mr. McIntyre's explanation of circumstances, the AUSA admitted it was not the matter before the Court, but then proceeded again to argue that Mr. Jarvis was only "entitled to one counsel for this case." *Id.* at 27:20-25, 28:1-8. The Court appropriately intervened and stopped the AUSA. *Id.* at 28:9-12.

At the January 19, 2006 hearing much discussed herein, the United States continued its preoccupation with Mr. Jarvis' counsel when it wrongfully persuaded this Court that Mr. Jarvis was not entitled to retained counsel of choice, but rather that he was entitled to competent appointed counsel. The sealed discovery discussed earlier in this brief demonstrates that Mr. Jarvis' counsels were being monitored, and even surveilled. If this weren't enough, the United States caused Mr. Jarvis to be removed from his second or third attorney-client meeting with his newly appointed CJA counsel, Mr. Romero, and was taken away into administrative segregation without explanation to Mr. Romero. As this Court's Order describes, for the next six months Mr. Romero's contact with Mr. Jarvis was interfered with and confidential attorney-client communications limited and restricted.

As detailed above, when the United States had a duty to concern itself with Mr. Jarvis' counsel in the form of protecting Mr. Jarvis' Sixth Amendment rights, when Mr. Gorence entered his appearance for co-defendant Wilson with no evidence of a conflict waiver, the United States was inexplicitly silent. Now, in the last four weeks the United States has been in contact with and made tacit agreement to have Mr. Jarvis' former counsel in this case testify against him. At the October 11, 2007 status conference, the United States again raised the issue of Mr. Jarvis' counsel, and sought to "force the issue so that Mr. Jarvis knows he needs to hire [sic] this attorney…," in reference to the Mora properties being released from their *lis pendens. Transcript of Proceedings*, October 11, 2007 6:22-25. Why is the United States concerning itself with Mr. Jarvis' counsel subsequent to the releases of the *lis pendens*, if, as the United States argues, these motions had nothing to do with retaining counsel? *Doc.* 1095 at 6, 10. When noticed of non-waiver of the attorney-client privilege, the United States categorically refused to cease communication with former counsel, categorically refusing to take simple prophylactic measures which would have guaranteed protection of Mr. Jarvis' attorney-client relationships.

The compound Sixth Amendment errors as to this a single Defendant are untenable to the appearance of the integrity of the system. Any appearance of propriety has been irretrievably lost upon the recounting of the focused prosecutorial efforts to deny this defendant a particular constitutional guarantee- that of rights to counsel. The actual manner of prosecution here is so "infected … with unfairness as to make [any] resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974).

*Gonzalez-Lopez* provides necessary reminder that the Court has its own interests and responsibilities in the public perception in the legal system:

> The court has, moreover, an independent interest in ensuring that criminal trials are conducted within the ethical standards of the

profession and that legal proceedings appear fair to all who observe them.

*Gonzalez-Lopez*, 126 S. Ct. at 2566.

Errors of oversight have occurred here, as well as errors of knowing commission. They are multiple errors of constitutional magnitude, individually devastating and cumulatively destroying Mr. Jarvis' constitutional guarantee of the due process promise of a fundamentally fair trial. This is an opportunity for the United States to do justice in an uncommon fashion, by conceding that the cumulative effect of prosecutorial choices cannot now effectuate its mandate to seek justice. The United States should voluntarily dismiss this cause with prejudice.

Alternatively, this Court should restore the system to constitutionally principled operation by doing what the United Stated will not, dismissing the entire case against Mr. Jarvis with prejudice, having found multiple and structural constitutional errors which are otherwise irreparable.

WHEREFORE, Defendant Jarvis moves this Court for an Order of dismissal of this entire cause, with prejudice.

Respectfully submitted:

*Electronically filed 11/8/07*

By: _____
Joe M. Romero, Jr.
Attorney for Defendant Jarvis
1905 Lomas NW
Albuquerque, NM 87104
(505) 843-9776

*Electronically filed 11/8/07*

By: _____
Jody Neal-Post
Attorney for Defendant Jarvis
317 Amherst SE
Albuquerque, NM 87106
(505) 268-7263

I hereby certify that a true and correct copy of the
foregoing was served on opposing counsel, AUSAs
James Braun and Stephen Kotz, on November 8, 2007.

*Electronically filed 11/8/07*

_____
Joe M. Romero, Jr.