IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cr. No. 05-1849 JH |
| ) | |
| DANA JARVIS, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

UNITED STATES' MOTION FOR RULE 44(c)
HEARING AND MEMORANDUM IN SUPPORT THEREOF

THE UNITED STATES OF AMERICA hereby moves for this Court to hold a hearing pursuant to Federal Rule of Criminal Procedure 44(c) to address the potential conflicts of interest inherent in attorney Cliff McIntyre's representation of defendants Dana Jarvis and Cathy Fitzgerald. To the extent that this Court confirms that such potential conflicts of interest do exist, the United States further requests this Court to determine whether the conflicts are of such a serious nature that attorney McIntyre should be disqualified from continuing to represent the defendants in this matter.

FACTUAL BACKGROUND

On August 23, 2005, a federal grand jury in Albuquerque returned a twenty-six count indictment charging defendants Dana Jarvis and Cathy Fitzgerald, along with nineteen co-defendants, in Count 1 with Conspiracy to Distribute 1000 Kilograms and More of Marijuana, in violation of 21 U.S.C. § 846. Dana Jarvis is also charged in the

indictment with engaging in a Continuing Criminal Enterprise, in violation of 21 U.S.C. § 848, and with several money laundering counts.

The indictment contains a forfeiture allegation which subjects each of the defendants, jointly and severally, to a money judgment in the amount of $49,280,000.00 upon conviction. The forfeiture allegations also lists assets of certain defendants, including Dana Jarvis, that are subject to forfeiture.

On August 26, 2005, the court appointed attorney Cliff McIntyre to represent Cathy Fitzgerald and attorney Judy Rosenstein to represent Dana Jarvis under the Criminal Justice Act. On October 11, 2005, Mr. McIntyre entered his appearance on behalf of Dana Jarvis "for the limited purpose of litigating forfeiture issues only." Thus, Mr. McIntyre is now representing both Dana Jarvis and Cathy Fitzgerald in this case.[1]

## ARGUMENT

A.    The Need to Hold a Hearing.

The Sixth Amendment to the Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." In interpreting that constitutional guarantee, the Supreme Court has made clear "that there is a correlative right to representation that is free from conflicts of interest." Wood v. Georgia, 450 U.S. 261, 271 (1981).

---

[1] Although Mr. McIntyre has been privately retained to represent Jarvis, Ms. Rosenstein has not been relieved as Jarvis's court-appointed counsel.

2

For this reason, the United States has a duty to bring to the Court's attention any potential conflicts of interest of which it may become aware. United States v. Tatum, 943 F.2d 370, 380 (4th Cir. 1991). In turn, "a court when confronted with and alerted to possible conflicts of interest must take adequate steps to ascertain whether the conflicts warrant separate counsel." Wheat v. United States, 486 U.S. 153, 160 (1988); see also United States v. Winkle, 722 F.2d 605, 611 (10th Cir. 1983)(The "court should itself initiate an inquiry" whenever "the trial judge knows or reasonably should know that a particular conflict exists").

In cases involving joint representation, Rule 44 provides:

> The court must promptly inquire about the propriety of joint representation and must personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless there is good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel.

Fed.R.Crim.P. 44(c). When the trial court has notice of a potential conflict of interest but fails to make any inquiry, the reviewing court will presume a violation of a defendant's Sixth Amendment right to counsel. See e.g., United States v. Cook, 45 F.3d 388, 393-94 (10th Cir. 1995)(violation of right to counsel when trial court failed to inquire following defendant's objection to possible conflict). Thus, the Court should promptly hold a hearing in this matter pursuant to Rule 44(c).

3

    B.    <u>This Court has "Substantial Latitude" to Refuse to Accept a Waiver Where There is a Serious Potential for a Conflict to Arise</u>.

A defendant, if fully informed, may sometimes be permitted to waive a conflict of interest.[2] Indeed, the "District Court must recognize a presumption in favor of [defendant's] counsel of choice[.]" <u>Wheat</u>, 486 U.S. at 164. However, "that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." <u>Id.</u> The reason courts are permitted to override a defendant's willingness to waive his attorney's conflicts is because "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." <u>Id.</u> at 160, 163. Therefore, courts are given "substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may

---

[2] To effect a valid waiver, the Tenth Circuit requires the trial judge to "affirmatively participate in the waiver decision by eliciting a statement in narrative form from the defendant indicating that he fully understands the nature of the situation and intelligently made the decision to proceed with the challenged counsel." <u>Winkle</u>, 722 F.2d at 611 (citing <u>United States v. Martinez</u>, 630 F.2d 361 (5th Cir. 1980)). As part of such a colloquy, of course, the defendant should be as fully informed as possible about the nature of the conflict that is being waived. <u>See e.g.</u>, <u>United States v. Coneo-Guerrero</u>, 148 F.3d 44, 47-48 (1st Cir. 1998) (in joint representation case, defendants advised of their right to independent representation and such potential problems as: (1) the level of defendant's culpability could vary; (2) one or more defendants might cooperate in exchange for leniency; (3) the evidence might prove stronger against some defendants; (4) if any defendant wanted to testify it could create a conflict (and that if any defendant changed his mind after the trial started it would be too late to conduct a new trial); (5) counsel would be unable to seek immunity for one client to testify against another; (6) counsel would be unable to communicate information gleaned from one client to another; (7) counsel would be unable to present evidence that is exculpatory for one defendant if inculpatory of another; (8) counsel would be unable to argue in the alternative as to the level of culpability of each defendant; (9) counsel would be unable to negotiate after trial on behalf of one defendant against another, and; (10) counsel would be unable to argue the defendants' relative blame at sentencing).

be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." Id. at 163. This "substantial latitude" undoubtedly is based in part upon the fact that "a district court must pass on the issue whether to allow a waiver of conflict of interest not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly." Id. at 162.

Thus, based upon the high potential for the nascent conflicts identified below to ripen into full-blown and unmanageable conflicts that could fatally taint any trial, even if defendants Dana Jarvis and Cathy Fitzgerald should prove willing to waive any conflicts of interests, this Court may also be called upon to exercise its substantial latitude to refuse to accept those waivers.

C.  Potential Conflicts Arising from Mr. McIntyre's Joint Representation of Defendants Dana Jarvis and Cathy Fitzgerald.

"Joint representation of conflicting interests is suspect because of what it tends to prevent an attorney from doing. . . . [A] conflict may . . . prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing . . . the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another." Holloway v. Arkansas, 435 U.S. 475, 489-90 (1978). "The potential for conflicting interests is particularly acute when . . . the two clients are . . . codefendants who allege different levels of culpability in the crime." Fitzpatrick, 869 F.2d at 1252.

5

In the instant case, although Mr. McIntyre has ostensibly entered his appearance on behalf of Dana Jarvis "for the limited purpose of litigating forfeiture issues only," it is simply not possible to neatly separate the issue of guilt from the issue of forfeiture in this case. Because this case involves criminal forfeiture, Mr. McIntyre cannot effectively represent Jarvis on the forfeiture allegation without having a clear understanding of Jarvis' culpability for the underlying crimes and at least some involvement in formulating Jarvis' defense to those charges. Thus, the same potential for conflicts of interest that exists in any joint representation of defendants exist here.

One readily-apparent potential conflict involves the disparate culpability of Jarvis, who is charged with being the kingpin of this drug organization, and Fitzgerald. With regard to forfeiture in particular, because Fitzgerald will be subject to the same money judgment as Jarvis upon conviction, she will have a strong incentive to minimize her exposure to forfeiture by emphasizing the culpability of Jarvis.

Staking out a position about the relative culpability of each of the defendants, of course, is but one of many issues upon which all of the defense attorneys in this case likely will have to take a position. This particular conflict could also manifest itself at trial if a defense for one defendant was compromised by Mr. McIntyre's representation of a co-defendant. See e.g., United States v. Romero, 780 F.2d 981 (11th Cir. 1986)("blame shifting defense" foreclosed because it would have implicated co-defendant). These types of concerns obviously could become even more problematic if either defendant wanted to explore cooperating with the United States.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests this Court to hold a hearing pursuant to Rule 44(c) and to determine whether attorney Cliff McIntyre should be disqualified from continuing to represent both defendant Dana Jarvis and defendant Cathy Fitzgerald in this matter.

Respectfully submitted,

DAVID C. IGLESIAS
United States Attorney



JAMES R. W. BRAUN
Assistant United States Attorney
Post Office Box 607
Albuquerque, NM 87103
(505) 346-7274

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing pleading was mailed by first-class mail to opposing counsel of record for defendant Dana Jarvis, Judy Rosenstein, and to attorney Cliff McIntyre, this 17th day of October, 2005.



JAMES R. W. BRAUN
Assistant United States Attorney