IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.

      No:    05-CR- 1849 (JH)

DANA JARVIS,

      Defendant.

**DEFENDANT DANA JARVIS' MOTION FOR ORDER OF DESIGNATION
UNDER 28 U.S.C. § 636(b)(1)(A) TO CHIEF MAGISTRATE GARCIA
FOR RESOLUTION OF SPECIFIC QUESTION AS TO DEFENDANT JARVIS'
PENDING MOTION TO DISMISS [Doc. 1076]**

      Defendant, Dana Jarvis, through counsels of record Joe M. Romero, Jr. and Jody Neal-Post, hereby submits this request for *in camera* review of privileged materials for resolution of certain factual issues outstanding as to the Defendant's Motion to Dismiss.

      This request is made pursuant to the Court's direction in the hearing of November 20, 2007 and as quickly as possible, the defendant having received the transcripts November 30, 2007. *See Transcript of Proceedings Judge Herrera* [TP], November 20, 2007, pp. 69:2, 70:1-24, 71:3-25, 72:1-25, 73:108, 73:10-19, 74:11-25, 75:1-3, 75:16-25; 76:1-25, 77:167-25. Mr. Jarvis outlines his requests as follows.

### Introduction

      This Court has indicated that it believes that Mr. Gorence's intent to enter his appearance is relevant to Mr. Jarvis' Sixth Amendment claims in his Motion to Dismiss. Mr. Jarvis has objected that Mr. Gorence's intent is not relevant or dispositive to the question of whether there is a Sixth Amendment violation, and that at most it may only be minimally relevant in determining the appropriate remedy for the Sixth Amendment Right to Retained Counsel violation(s). Counsel argued that this minimal relevance was insufficient basis for calling Mr. Gorence, who had an

1

attorney-client relationship with Mr. Jarvis in this same case, as a Government witness adverse to Mr. Jarvis' interests, as the harm greatly outweighs any probative value his testimony might carry on the Sixth Amendment question. [Doc 1129;  TP 60:20-25].

Near the end of the November 20, 2007 hearings on Mr. Jarvis' Motion to Dismiss, the Court allowed the testimony of Mr. Jarvis' former counsel in this case, Mr. Gorence, over Mr. Jarvis' objection and over his Motion to Quash the Subpoena of Mr. Gorence [Doc. 1129]. [TP 54-end.] The Government stated that it proffered the testimony of Mr. Gorence to attempt to prove one very particular factual proposition:  That Robert Gorence would not have entered his formal appearance on behalf of Dana Jarvis even if the Court had released Mora property, either by partial grant of Messrs. Gorence and Kennedy's motion in January of 2006 [Doc. 314], or grant of the Motion to Release the Mora Property filed in February 2006  [Doc. 338]. [TP 17:4-8; TP at p.18: 17-20.]  This court allowed his testimony for this narrow purpose.  As the Government stated at the hearing, "there is some ambiguity whether less than those [entire set of] assets would have sufficed for Mr. Gorence to enter his appearance" on the existing judicial record, and the Government sought to resolve that ambiguity.  [TP 17:16-18.]

Mr. Gorence testified (over objections) that he and Mr. Kennedy would not have entered their appearances on behalf of Mr. Jarvis if the Mora properties, alone, had been timely released, and that how he knew he would not have was because he had the benefit of an informal and unwritten estimate prepared by his son and his investigator regarding the value and liquidity of the Mora property.  [TP 56-62.] Mr. Gorence was not sure when that estimate was prepared, and has no records or notes of it because nothing was written, but testified that he believes it was about ten days after the January 19, 2006, hearing.  [TP 58:6-19; 59:9-25; 601-23.]  Mr. Gorence's testimony was that he and Mr. Kennedy required the release (and, apparently, liquidity) of the entire set of assets addressed in the January 2006 Motion filed by Gorence, which would appear to be between 1 and 2 million dollars of property identified for forfeiture, in order to enter their appearances formally for

2

Mr. Jarvis.[1] [TP 61:14-25; 62:1.]

Mr. Jarvis' counsel made record of his inability to do a full cross-examination or fully confront Mr. Gorence due to attorney-client privilege issues. TP 58:22-25, 59:1-5, 73:20-25, 74:1-2. At the conclusion of the cross, it was clear that impeaching and rebutting Mr. Gorence's testimony would require judicial review of the contents of the privilege log and, perhaps, the documents contained in it. *E.g.* TP at 71:13-19. When counsel for Mr. Jarvis, Mr. Romero, began to question Mr. Gorence about documents listed in the privilege log, specifically about reviewing the indictment with Mr. Jarvis, the Government objected. [TP at 63:9-13.] The Court asked Mr. Romero to describe why the questioning was relevant. [TP at 63:14-15.] Mr. Romero consulted with co-counsel Ms. Neal-Post, and, because he could not articulate the relevance without disclosing confidential information, passed the witness. [TP 63:9-16.]

The witness was excused and Counsel for Mr. Jarvis then brought this Court's attention to affidavits and matters detailed in the privilege log that contradict Mr. Gorence's recollection. [TP 62-63.] The Government objected, on the basis that Counsel for Mr. Jarvis did not ask Mr. Gorence about these items in cross-examination (apparently overlooking that the Government stopped such inquiry by its objection). [TP 64-65.] This Court indicated its reluctance to make any ruling without knowing what the proffered evidence reflected. [TP 66:6-7, 15-18.] At the end of the day, the Gorence testimony, cross-examination, and the United States' termination of the cross-examination when it ventured into the documents and information detailed in the privilege log, raised factual issues going to Mr. Jarvis' claim of intentional interference with attorney-client relations. The Gorence testimony that Mr. Gorence "never received any documents from Mr. Jarvis," and "did not

---

[1] The Court on November 20, 2007 made two references that suggested some question as to why Mr. Jarvis' appointed counsel (Mr. Romero) did not in his February 2006 motion [Doc. 338] seek release of *all* of the seized properties, as the Court has interpreted was requested under Mr. Gorence's limited entry of appearance in Doc. 314, as opposed to only seeking release of the Mora property. The reason is that there was a legal basis to seek release of the Mora property, which was seized *not* as fruit of the conspiracy but as "substitute assets," and that no viable legal basis existed as to the listed and directly forfeitable properties, as the grand jury had presumably already found probable cause as to those properties having sufficient nexus to the criminal conspiracy, providing the United States' lawful authority to restrain them if it so chose.

recall returning any file" to Mr. Jarvis was 100% at odds with Mr. Jarvis' privilege log and the documents collected therein, potentially raising questions as to prosecutorial misconduct in the United States offering the witness. [TP at 63:6-15; [sealed pleadings]].

Counsel for Mr. Jarvis proposed that an *ex parte* review of the material and determination by the magistrate was the appropriate way to address the issue, without waiving Mr. Jarvis' privileges as to the documents in described in the privilege log [TP 76:15-18, 77:10-16.] This Court suggested that Mr. Jarvis file a motion seeking such designation.

### Suggested Designation to Chief Magistrate Garcia Under 28 U.S.C. § 636(b)(1)(A)

The government proffered the testimony of Mr. Gorence to attempt to prove one very particular factual proposition: That Robert Gorence would not have entered his formal appearance on behalf of Dana Jarvis even if the Court had released just the Mora property, and that he would only have entered his appearance upon the release of all of the seized property subject to the January 2006 motion. [TP 17:3-11; Doc. 1095.] Mr. Jarvis, on the other hand, pointed to the judicial record in this case suggesting otherwise [Doc. 314, 326-329 and associated transcripts], and proffered a detailed summary of documents, materials and information in the form of a privilege log, that he contends show the opposite—that Mr. Gorence waited until the February Motion to Release, which addressed only the Mora property, was denied in mid-March 2006 before he decided that he would not be taking the case, and which time Mr. Gorence returned his "Jarvis, Dana" file to Mr. Jarvis, without any formal letter or notice of withdrawal.

Mr. Jarvis believes that the record and the materials outlined in the privilege log establish that Mr. Gorence possessed a law firm file on Mr. Jarvis' case. They establish that the file included confidential information and documents from Mr. Jarvis, including the copy of the indictment Mr. Gorence annotated as to the forfeiture allegations [TP 11/20/07 6119-23], that Mr. Gorence maintained that file and had a relationship as short term counsel, which evolved into prospective counsel, that Mr. Gorence added to the file of papers Mr. Jarvis originally gave him and watched Mr. Romero's Motion's progress, and that he did not return this file to Mr. Jarvis until *after* the denial of Mr. Romero's motion to release the Mora Properties, only, after March of 2006. [*Cf.* TP 62:21-25

thru 63.]

Counsels for Mr. Jarvis requests that Chief Magistrate Garcia determine this non-dispositive pretrial question, whether in view of all of the relevant information, the government has proven by a preponderance of evidence that Mr. Gorence would not have taken the case for any duration if the Mora properties had been timely released in January or February or March of 2006.[2]

As the District Court indicated, Mr. Jarvis cannot effectively confront Mr. Gorence's testimony without disclosing some of the confidential communications and work product that were the bases for the Motion to Quash Mr. Gorence's subpoena. The general request to Chief Magistrate Judge Garcia is for him to determine whether the materials detailed in the privilege log rebut or impeach Mr. Gorence's testimony and otherwise show that it is more likely than not that Mr. Gorence did not decide to decline the case and end his relationship with Mr. Jarvis until the erroneous denial of the motion to release the *lis pendens* on the Mora property, on or after March 13, 2006.

To this end, the Defendant suggests the following as to procedure, deferring to Chief Magistrate Judge Garcia's experience and preferred procedure in this regard:

1. That Chief Magistrate Garcia review the judicial record and transcripts concerning Mr. Gorence's January 2006 motion to release property and Mr. Romero's February 2006 motion to release property [Doc. 314, 324-329 and hearing transcripts, Doc. 338], the relevant briefing sequence regarding Mr. Jarvis' Motion to Dismiss [sealed pleadings] and transcripts of the November 20, 2007 hearing, Defendant Jarvis' Motion to Disqualify briefing and exhibits including the affidavit of the investigator Albert Mares [Doc. 1144 and exhibits, no responsive pleadings have

---

[2] Under 28 U.S.C. § 636(b), a full-time magistrate judge may conduct any or all proceedings when specially designated to exercise such jurisdiction by the district court in which the magistrate judge serves. *See also* Fed. R. Civ. P. 72; *Ocelot Oil Corp. v. Sparrow Indus.,* 847 F.2d 1458, 1461 (10th Cir. 1988). If the matter to be decided can be characterized as nondispositive, the magistrate has authority to "enter into the record a written order setting forth the disposition of the matter," and the district court reviews the magistrate's disposition only under the "clearly erroneous or contrary to law" standard. Fed. R. Civ. P. 72(a).

yet been filed], most recent Motion sequence initiated by Mr. Wilson's counsel for the district court to reconsider Magistrate Garcia's findings of an attorney client privileged communications and relationship between Mr. Gorence and Mr. Jarvis, [Doc. 1153; Mr. Jarvis Response in Opposition filed December 5, 2007, Doc. No. not yet available];

2. That Chief Magistrate Garcia review the testimony of Mr. Gorence (Transcript 11-20-07 pp. 54-end) with particular attention to his testimony regarding the Jarvis file, and his testimony regarding when it may have been decided that he would not enter an appearance upon release of only the Mora property;

3. That Chief Magistrate Garcia review the detailed privilege log, particularly items 22 through 31 and 1A through 6A, and including the affidavits of Ms. Hope Eckert at Items 3 and 4 in relation to the Gorence intent issue (corresponding to TP 11/20/07 pp. 69-74 discussion of the Eckert email) and determine whether Chief Magistrate Garcia needs to review *ex parte* and in chambers the actual documents detailed in that part of the privilege log. If he so determines, that Chief Magistrate Garcia review those items *ex parte* and in camera;

4. That Chief Magistrate Garcia make a ruling as to whether the Government's proposition, that Gorence in January February and March of 2006 would not have agreed to enter his appearance on behalf of Mr. Jarvis if the Mora property had been released, has been proven by a preponderance of the evidence;

5. That if Chief Magistrate Garcia determines that it is necessary to support his ruling that he make written or oral findings that would disclose confidential or privileged information beyond the descriptions given on the face of the privilege log, that he first give notice to Mr. Jarvis so as to give Mr. Jarvis' counsels the opportunity to address possible waiver of the privilege with their client before the Chief Magistrate makes any such disclosure, and to review the Chief Magistrate's opinion as to whether or not a limited waiver can protect such disclosure.

The United States has been contacted and opposes.

Mr. Jarvis proposes this Motion be made an attachment to the Order of Designation when entered. Upon notice of the entry of the order, Mr. Jarvis proposes to provide Chief Magistrate

6

Garcia with the actual privileged documents for any *in camera* review the Chief Magistrate determines necessary. The Chief Magistrate has already received a copy of the privilege log in his review of the Motion to Quash, as part of his document review pursuant to his last Order of Designation.

Respectfully submitted:

*Electronically filed 12/05/07*
By: _____
Joe M. Romero, Jr.
Attorney for Defendant Jarvis
1905 Lomas NW
Albuquerque, NM 87104
(505) 843-9776

*Electronically filed 12/05/07*
By: _____
Jody Neal-Post
Attorney for Defendant Jarvis
317 Amherst SE
Albuquerque, NM 87106
(505) 268-7263

I hereby certify that a true and correct copy of the foregoing was served on opposing counsel, AUSAs James Braun and Stephen Kotz on December 5, 2007.

*Electronically filed 12/05/07*
_____
Joe M. Romero, Jr.