IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

v.

                              No:     05-CR- 1849 (JH)

**DANA JARVIS,**

      **Defendant.**

### DEFENDANT JARVIS' MOTION FOR BRADY/GIGLIO/GILES/KYLES MATERIALS RELATED TO GOVERNMENT WITNESS ROBERT J. GORENCE, ESQ.

Defendant, Dana Jarvis, through counsels of record Joe M. Romero, Jr. and Jody Neal-Post, hereby submits this discovery request for disclosures regarding the government witness Robert J. Gorence, Defendant Jarvis' former counsel in this matter, such witness having already testified for the United States against Mr. Jarvis' Motion to Dismiss and over Defendant's objections on November 20, 2007.

As grounds, Defendant Jarvis states he has made letter request for nearly all the categories of information requested below, most specifically, but no disclosures have been made nor promised by the United States. The discovery requests are relevant and material or will lead to relevant and or material impeachment evidence relating to Defendant Jarvis' Motion to Disqualify Former Counsel Robert Gorence, Doc No. 1144, Defendant Jarvis' Motion to Dismiss, Doc. 1076, and Mr. Wilson's Motion to Reconsider, Doc. 1153.

### Authorities in Support

In the unusual case posture here, Mr. Jarvis makes this new discovery request after failing to bar the testimony of the government's witness, Mr. Jarvis' former counsel, from testifying against Mr. Jarvis' interests. The principles of the prosecutor's obligations to seek justice through the disclosure of favorable

1

and impeachment evidence regarding the government's witnesses applies here as to any testifying government witness, although the underlying fact pattern is unreplicated in published federal law.

Due to the continuing complications of Mr. Gorence's refusal to honor Mr. Jarvis' claims of privilege and his contesting of the Magistrate's order finding an attorney-client relationship existed between Mr. Gorence and Mr. Jarvis, Mr. Jarvis seeks the government's disclosure regarding its own witness as the safest means of disclosure in Mr. Jarvis' continuing efforts to protect his client's unwaived privileges. As the United States customarily provides such disclosures rather than leaving defendants to discovery of such information through cross-examination, and Mr. Gorence has already testified, Mr. Jarvis makes this formal request through the Court at this time.

In *Brady v. Maryland*, the Supreme Court made clear that due process forbids a prosecutor from suppressing "evidence favorable to an accused upon request where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963); s*ee also Giglio v. United States*, 405 U.S. 150 (1972); *United States v. McCrane*, 527 F.2d 906 (3d Cir. 1975), *aff'd after remand*, 547 F.2d 205 (1976). The Supreme Court has also emphasized that impeachment evidence, as well as exculpatory evidence, falls within the *Brady* rule. *United States v. Bagley*, 473 U.S. 667, 676-77 (1985). Such evidence, if disclosed and used effectively, may make the difference between conviction and acquittal. *See Napue v. Illinois*, 360 U.S. 264.269 (1959) ("The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend.").

Disclosure of such evidence as discussed in the preceding cases is also necessary here for the principles the cases stand for, because the evidence is material and impeaching as to a government witness in a pre-trial hearing, it is required disclosed by the due process constitutional mandates protecting the defendant from the government's enormous institutional advantages in a federal criminal prosecution.

The first eight amendments, particularly the Fifth, Sixth and Eighth, are intentionally imbalanced in favor of the defendant's protection, supporting liberal disclosure requirements against the United States.

While the prosecution's duties of disclosure as to favorable evidence that could be used at trial are the usual focus, it is frequently overlooked that the prosecution also has a duty to disclose any favorable evidence that could be used "in obtaining further evidence." *Giles v. Maryland*, 386 U.S. 66, 74 (1967). Additionally, favorable evidence need not be competent evidence or evidence admissible at trial. *United States v. Gleason*, 265 F. Supp. 880, 886 (S.D.N.Y. 1967); *Sellers v. Estelle*, 651 F.2d 1074, 1077 n.6 (5th Cir. 1981) (evidence suppressed was material to the preparation of petitioner's defense, regardless of whether it was intended to be admitted into evidence).

The Supreme Court has never precisely pinpointed the time at which the disclosure under *Brady* must be made. It is abundantly clear, however, that disclosure by the government "must be made at such a time as to allow the defense to use favorable material effectively in the preparation and presentation of its case, even if satisfaction of this criteria requires pre-trial disclosure." *United States v. Pollock*, 534 F.2d 964, 973 (D.C. 1976); *accord United States v. Presser*, 844 F.2d 1275, 1283 (6th Cir. 1988). "Manifestly, a more lenient disclosure burden on the government would drain *Brady* of all vitality." *United States v. Elmore*, 423 F.2d 775, 779 (5th Cir. 1970).

Here, the government's witness has already testified without any disclosure provided to Mr. Jarvis, yet the Motions at issue have not yet been decided. The government refuses to provide disclosures arguing that the Defendant has no basis in law, somehow failing to see that Mr. Gorence is treated under existing law as just another witness cooperating with government in the face of conceivable concessions to gain for himself or his client. *USA Letter* dated December 4, 2007. Post testimony and pre decision is the minimal disclosure traditionally required of the United States. Clearly it is appropriate for immediate disclosure now. The disclosures requested herein should be made by week's end so defense counsel can review and prepare for the Tuesday hearing.

The government has been in communication with Mr. Gorence regarding the contested motions and Mr. Jarvis' affairs since as early as mid-September, at least since October 2007. This is of concern to Mr. Jarvis for two reasons. First, because Mr. Gorence was in an attorney-client relationship with Mr. Jarvis in this same case, and they exchanged confidences which Mr. Jarvis fights to keep confidential, emphatically continues to fight to keep from the government. Second, Mr. Gorence is presently counsel for one of Mr. Jarvis' co-defendants in this same case, and therefore Mr. Gorence is presently under the ethical duty to zealously promote his new client's interests, which will, or at least should, include seeking a favorable resolution for his new client from the government. As the United States Supreme Court has stated in *Lilly v. Virginia*, 527 U.S. 116 (1999), it is axiomatic in our legal system that a co-defendant will try to better his own position in a criminal case by shifting blame to his fellow co-defendants.1 *See People v. Morgan,* 562 N.E.2d 485 (N.Y. 1990) (explaining that a motive to mis-recall or misrepresent normally arises from a desire to curry favor with the authorities, to shift blame, to receive immunity from prosecution or to obtain a favorable plea bargain whenever there are co-defendants in the same case). It is no stretch to imagine how Mr. Gorence might be tempted to obtain gain from this unusual offering of his testimony. Conversely, what the imagination cannot conceive is that Mr. Gorence has chosen the extraordinary route he has, drawing all manner of critical attention to his unique tri-parte role in this case, for nothing, for no purpose.

Mr. Gorence was an attorney who represented Mr. Jarvis for a period of time in the present proceedings and the United States has contacted him without notice to Mr. Jarvis' current counsel and in secret, akin to the ethical violations underlying *In re Gorence. In re Gorence,* 810 F. Supp. 1234 (D.N.M. 1992). In *Gorence*, "[a]pparently, Gorence [then as AUSA] contacted Brian Ellzey in an effort to persuade

---

1 It is so universal in our justice system that, for this reason, confessions of accomplices or co-defendants are "presumptively unreliable as to the passages detailing the defendant's conduct or culpability because those passages may well be the product of the codefendant's desire to shift or spread blame, curry favor, avenge himself, or divert attention to another." *Lee v. Illinois,* 476 U.S. 530, 545 (1986); *see also New Mexico v. Earnest*, 477 U.S. 648, 649 (1986) (Rehnquist, J., concurring) (noting state must overcome a "weighty presumption of unreliability" to sustain admission of statement).

Brian to testify against his father." *Id.* at 1235. Mr. Ellzey was a defendant who had been prosecuted by Mr. Gorence and whom Mr. Gorence knew had counsel. While the ethical breach in *In re Gorence* was the contact of a client without notice to his counsel, it is not a far reach to realize that the conversation with former counsel without the notice to client, in the same case, is problematic. The thread is the disregard for the attorney-client relationship and its attendant duties and responsibilities.

The matter of these contacts is material and relevant to three pending Motions, Mr. Jarvis' Motion to Disqualify [Doc.1144] and his Motion to Dismiss [Doc.1076], as well as Mr. Gorence's Motion to Reconsider the finding of the Chief Magistrate that he was indisputably Mr. Jarvis' former counsel. [Doc. 1153]. Regarding the Motion to Disqualify, the disclosures relate to confidential information known or which can be presumed to have passed between Mr. Gorence and Mr. Jarvis, and also relate to Mr. Gorence's duties to advance Mr. Wilson's interests. The disclosures will assist the court in determining the extent of conflict or in confirming it is an unwaivable, actual conflict. As to the Motion to Dismiss, Mr. Jarvis has established on the record already existing that the United States has made intentional contacts with former counsel Gorence without notice to or the consent of Mr. Jarvis.

Regarding Mr. Gorence's Motion to Reconsider the finding of Mr. Gorence's attorney-client relationship with Mr. Jarvis, as well as the defendant's Motion to Dismiss, disclosures of all government information relating to its interactions with Mr. Gorence acting on Mr. Jarvis' behalf will confirm or destroy the government's good faith in the arguments it has put forward regarding Mr. Gorence's status and its knowledge. *See e.g. N. Mariana Islands v. Bowie*, 243 F.3d 1109, 1122-23 (9th Cir. 2001) Regarding the prosecutor's intentional choice not to investigate possibly fraudulent testimony when on notice before presenting the evidence:

> It is the sworn duty of the prosecutor to assure that the defendant has a fair and impartial trial. Here, the government shirked this duty. In this respect, the error on which we reverse Bowie's conviction was not simply a trial error, but a fatal due process error committed by the Office of the Attorney General of the Commonwealth of the Northern Mariana Islands. The error fatally contaminated everything that followed.

5

*N. Mariana Islands v. Bowie*, 243 F.3d 1109, 1122-23 (9th Cir. 2001).

The government's failure to recognize its duty regarding this witness and voluntarily comply without demand has damaged the defendant's ability to meet the government's evidence and to assert his claims, compounding the already extensive due process difficulties and affecting the adequacy of defense counsels' assistance to Mr. Jarvis.

Mr. Jarvis' requests follow. He seeks disclosures related to the contacts made by the United States with Mr. Jarvis' former counsel, Mr. Gorence. Before the November 20th hearing, the contacts were implicit in the proffers of Mr. Gorence's testimony made by the United States; revelation of the subpoena, now Exhibit A, Doc. 1140, confirms the actual contacts.

Pursuant to the authorities and basis presented above and the record as already developed in this case, and including Mr. Jarvis' right to effective assistance of counsel, due process and a fair trial, and the burdens placed on the government in the form of obligations to the criminally accused under the Fifth, Sixth and Eighth Amendments to the United States Constitution, Mr. Jarvis requests disclosure of each of the following described categories of information and materials.

1. Any evidence in the possession of the government, the existence of which is known, or by the exercise of due diligence could become known to the government, tending to show that already called government witness Mr. Gorence has given conflicting or contradictory statements regarding his involvement in this case, the involvement of Mr. Gorence with Mr. Jarvis and or Mr. Wilson, specifically as to matters related to the three identified motions at issue;

2. Record of any professional disciplinary actions or legal proceedings regarding the government's witness Gorence as to duties under the Rules of Professional Conduct, including any such records relating to attorneys acting at his direction or pursuant to his authority, or as part of his law firm, including any evidence or records of any suspected professional or ethical wrongdoing or ongoing investigations in this or any other jurisdiction (state or federal);

3. A full and complete statement of all promises, considerations, rewards, or inducements made by the government, its prosecutors, agents or agencies to induce or encourage Mr. Gorence's testimony, cooperation or provision of information, wherein the government has agreed, either with Mr. Gorence, his client Mr. Wilson, with Mr. Gorence's counsel, partner, agent or representative, to any of the following:

    (a) not to prosecute Mr. Gorence or Mr. Wilson for any crime or crimes;

    (b) not to prosecute a third party for any crime or crimes where the reason for not prosecuting the third party is a consideration related to the Gorence testimony;

    (c) to provide a formal grant of statutory immunity, or to provide an informal assurance to Mr. Gorence or Mr. Wilson or any person as a consequence of the Gorence testimony, that the person will not be prosecuted in connection with any testimony, cooperation, or information given;

    (d) to recommend leniency or a particular sentence for any crime or crimes for which Mr. Gorence or Mr. Wilson stands convicted or is expected to be convicted;

    (e) to comply with any prior agreements although said witness may have previously violated a part of their agreement;

    (f) to recommend or not oppose a reduction of the offense level of Mr. Gorence's present client Mr. Wilson under the United States Sentencing Guidelines for acceptance of responsibility, in consideration for Mr. Gorence's testimony;

    (g) to recommend to the sentencing authority under the United States Sentencing Guidelines a downward departure from the guidelines to Mr. Gorence or Mr. Wilson in consideration of the testimony of Mr. Gorence if either provides substantial assistance to authorities;

    (h) to recommend or not oppose any downward departures or offense level reductions for either Mr. Gorence or Mr. Wilson under the United States Sentencing Guidelines;

    (i) to seal any plea or plea agreement of either Mr. Gorence or Mr. Wilson;

        (j)    to provide favorable treatment or consideration, including but not limited to, money, expenses, subsistence, a job, a new location, a new start, etc. to Mr. Gorence, Mr. Wilson or to friends or relatives of either person in return for or as a consequence of Mr. Gorence's testimony, cooperation, or provision of information;

        (k)    to make any beneficial recommendation regarding Mr. Gorence or Mr. Wilson to any state or federal agency;

        (l)    to cooperate with any state law enforcement agency and that agency's agreement not to prosecute Mr. Gorence or Mr. Wilson for any crime, crimes prohibited by state law; or

        (m)    to make any other recommendation of benefit, or give any other consideration to the person or friends or relatives of either Mr. Gorence or Mr. Wilson; or

        (n)    to provide a statement to, or speak with, any law enforcement agency, prosecution official or court (state or federal) concerning the witness Gorence's assistance or cooperation;

        (o)    withdrawal of sentencing enhancements in exchange for the testimony of Mr. Gorence or for Mr. Wilson's waiver of conflict.

4.    Notice, including date, amount and method (cash or check) and purpose of any monies paid to Mr. Gorence or Mr. Wilson in return for information, their services or as a reward and/or for the purported payment of expenses or for any purported obligation of any such witness or informant.

5.    Any writings, canceled checks, receipts, vouchers or other documents generated as a result of any promises, statements, agreements, understandings or arrangements by which any of the matters listed in paragraphs 3 and 4 were provided to the Witness Gorence or Mr. Wilson, or by which records were kept of such by the government.

6.    Any evidence in the possession of the government that would tend to prove or reveal a bias or motive of Mr. Gorence.

7. Any and all threats of prosecution or any statements regarding the magnitude of penal liability made to Mr. Gorence or Mr. Wilson, by any agent or employee of the federal government or by an state law enforcement or prosecutorial agency working or cooperating with the government.

8. A list of all persons (and their counsel) who were asked by the government or its representatives whether they or their clients would and/or could assist the United States in defending against the defendant's Motion to Dismiss.

9. The following evidence, including for impeachment purposes, including particularly but not exclusively, inconsistent statements of a witness or between witnesses:

    A. Dates and durations of all contacts between the United States and Mr. Gorence related to Mr. Jarvis and or his Motion to Dismiss, commencing November 2005 through the represent;

    B. Identification of the party who initiated the contacts for each and every contact and what records support the assertion;

    C. Persons present at the meetings or in the phone contacts;

    D. Communications in any form, letter or email or otherwise regarding or memorializing the communications identified in this paragraph;

    E. Rough and or contemporaneous notes of same;

    F. Any written agreements between Mr. Gorence and or Mr. Wilson and the United States, including drafts as well as final agreements, if existing;

    G. Discovery in the form of FBI and or other investigatory records showing the Government's surveillance of Mr. Gorence in relation to Mr. Jarvis as was previously disclosed under seal and to Mr. Jarvis only, but significantly redacted. *E.g. Sealed Doc.* 1076, Ex. D. Any such mention of Mr. Gorence in his capacity as counsel or potential counsel for Mr. Jarvis should be presented to the Court for *in camera* review in unredacted form.

10. Documentation confirming the assertion to the Court at hearing November 20, 2007 that the DOJ subpoena process for obtaining the Gorence subpoena was followed.

WHEREFORE, Mr. Jarvis respectfully prays that this Court enter an order directing the government to produce all the information and material requested herein, and providing such other and further relief to which the Court may find Mr. Jarvis to be justly and constitutionally entitled.

Respectfully Submitted,

*Electronically filed 12/05/07*
By: _____
Joe M. Romero, Jr.
Attorney for Defendant Jarvis
1905 Lomas NW
Albuquerque, NM 87104
(505) 843-9776

*Electronically filed 12/05/07*
By: _____
Jody Neal-Post
Attorney for Defendant Jarvis
317 Amherst SE
Albuquerque, NM 87106
(505) 268-7263

I hereby certify that a true and correct copy of the foregoing was served on opposing counsel, AUSAs James Braun and Stephen Kotz on December 5, 2007.

*Electronically filed 12/05/07*
_____
Joe M. Romero, Jr.