# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                        No. CR 05-1849 JH

DANA JARVIS, et al.,

        Defendants.

## ORDER DENYING DEFENDANT JARVIS'S
## MOTION TO DISQUALIFY COUNSEL

THIS MATTER comes before the Court on Defendant Dana Jarvis ("Jarvis")'s sealed Motion to Disqualify His Former Counsel, Robert Gorence, as Counsel for Co-Defendant Wilson [Doc 1161]. This Motion was referred to the undersigned United States Magistrate Judge for determination pursuant to 28 U.S.C. § 636(b)(1)(A) [*see* Doc. 1158]. No response is necessary.

On October 26, 2007, Defendant Dennis Wilson ("Wilson") filed a Motion to Determine Whether an Alleged Conflict of Interest Exists with Robert J. Gorence's Representation of Dennis Wilson [Doc. 1098]. Pursuant to 28 U.S.C. § 636(b)(1)(A), United States District Judge Judith Herrera referred that non-dispositive motion to me for determination [Doc. 1125]. I entered a Memorandum Opinion and Order on behalf of the Court on November 21, 2007 [Doc. 1138].

In the November 21 Order, I found and concluded as follows:

      10) From May 2006 to the present date (November 20, 2007), no party filed a motion to disqualify Mr. Gorence based on a possible conflict of interest. In other words, the issue of a possible conflict was not raised for approximately 18 months, even though Mr. Jarvis states in his affidavit that he is conversant with the law on conflict of

interest and waiver based on prior experiences in this criminal proceeding.

11)  Indeed, as of October 11, 2007, Jody Neal-Post, present co-counsel for Mr. Jarvis stated in an email to Mr. Gorence that while defense counsel for Mr. Jarvis understood Mr. Gorence's concern that Mr. Jarvis could raise issues regarding Gorence's present representation of Mr. Wilson, neither attorney for Mr. Jarvis "presently intend[ed] nor anticipat[ed]" raising issues regarding Mr. Gorence's representation of Mr. Wilson.  [Doc. No. 1098, Attachment].  Thus, while it is apparent that Mr. Jarvis is aware of the possibility of a conflict of interest, he has no present intention to attempt to disqualify Mr. Gorence.  Nor did the government file a motion to disqualify Mr. Gorence.

Based on the pertinent law and the Court's findings of facts, including the fact of Mr. Jarvis' present attorney's email to Mr. Gorence advising of no present intent to disqualify him, the Court concludes that Mr. Jarvis waived the conflict of interest by his unreasonable delay in moving for disqualification.

[Doc. 1138, at 4-5].

In his current Motion to Disqualify, Jarvis now seeks an order "pursuant to the Chief Magistrate's Order at Doc. 1138, ¶¶ 10 & 11 and the authorities cited therein, that Mr. Robert Gorence, Mr. Jarvis' former counsel in these same proceedings and now a government witness against Mr. Jarvis here as well, be disqualified from further representation of Co-Defendant Wilson in these proceedings."  [Doc. 1161, at 1].

It appears that Jarvis interprets the Court's findings at ¶¶ 10 and 11 as an invitation to file a Motion to Disqualify Robert Gorence ("Gorence") as counsel for Mr. Wilson.  On the contrary, the Court's ruling was to the effect that, while Jarvis could have raised the issue earlier and perhaps such a motion might have been granted given the Court's finding of a conflict of interest, Jarvis's actions in connection with this litigation constitute a waiver of the conflict issue.

2

Jarvis sets forth a lengthy chronology in support of his argument that there was not, in fact, an 18-month delay in seeking disqualification. Jarvis notes that he was in solitary confinement in May 2006 when Gorence first entered his appearance on behalf of Wilson, and that the conditions of such confinement were later found by the Court to have caused an unconstitutional deprivation of Jarvis's Sixth Amendment right to assistance of counsel. He further states that he remained isolated from counsel until late August 2006 when the Court adjusted the confinement conditions and alleges that that during the period of solitary confinement his mental health deteriorated to the point that he was unable to fully participate with his counsel in preparing his defense. [Doc. 1161, at 3].

Jarvis now argues that his "inability to fully participate in his own defense extended as well to his inability to communicate the conflict issue [regarding Gorence's earlier involvement in the case as Jarvis's potential attorney] to his counsel at that time and for the ensuing months that the deficient confinement conditions continued." [Id.].

Jarvis notes further that his current counsel, Joe Romero, became involved in the case on his behalf in late January 2006, but that Romero was not serving as his attorney at the time that Gorence and Paul Kennedy entered their limited appearance on behalf of Jarvis, also in January 2006. Jarvis's other attorney, Jody Neal-Post, was appointed in September-November 2006. Both attorneys assert that neither of them was aware that Gorence had a potential conflict of interest until after September 7, 2007. [*See*, Doc. 1153, at ¶ 8; *see also*, Doc. 1161, at 5]. However, the record is clear that Gorence and Kennedy attended the January 19, 2006 hearing, and that they were seeking to represent Jarvis at that time. It is not credible to believe that Jarvis's current counsel were unaware of Gorence's earlier involvement with Jarvis because that involvement is part of the public record, which current counsel surely reviewed. Indeed, Jarvis's current counsel state elsewhere that they were

aware of Gorence's efforts with respect to release of Jarvis's assets but assumed the conflict was waiveable, arising from a short representation. [Doc. 1156, at 5]. Any potential conflict of interest would presumably have been discussed with Jarvis, as soon as he was able to participate sensibly in his defense, and a tactical decision made as to whether to press issue. Jarvis states that the unconstitutional conditions of confinement ceased in August 2006. There is no indication how long Jarvis's alleged mental state rendered him incapable of cooperating in his defense or, by implication, incapable of making a knowing and voluntary waiver of his right to protest any perceived conflict of interest. Jarvis does not allege that he is currently impaired or incapable of participating in this action.

It appears that counsel made the tactical decision to allow Gorence to continue as Wilson's attorney in spite of a potential conflict. In October 2006, Jarvis joined in four motions filed by Gorence on behalf of his client, Wilson. [*See*, Docs. 741, 742, 746, and 747]. Jarvis and his counsel did not raise any issue at that time regarding conflict of interest, in spite of the public record of Gorence's earlier involvement with Jarvis, but rather chose to take advantage of Gorence's work on behalf of Wilson. Jarvis's attorneys had the right to join in Gorence's motions, and their decision to do so was presumably based on what was best for Jarvis. However, these actions add weight to the conclusion that Jarvis waived his right to complain of any potential conflict of interest.

The Sixth Amendment right to effective assistance of counsel includes a right to conflict-free representation. Glasser v. United States, 315 U.S. 60, 70, 62 S. Ct. 457 (1942). However, "a defendant may waive the right to assistance of counsel unhindered by conflicts of interest." United States v. Burney, 756 F.2d 787, 791 n.2 (10th Cir. 1985).

While a defendant is generally presumed not to have waived his right to the assistance of conflict-free counsel, United States v. Glasser, *supra*, a waiver of any constitutional right will be upheld if the waiver is knowing and voluntary.

> A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

Johnson v. Zerbst, 304 U.S. 458, 464, 58 S. Ct. 1019 (1938).

In this case, Gorence's current client, Wilson, has not pressed the issue of potential conflict of interest raised by Gorence's previous involvement with his co-defendant Jarvis; to the contrary, he wishes Gorence to continue as his counsel. Nor did the United States, or any other party herein, raise the potential conflict issue. As late as October 2007, one of Jarvis's attorneys wrote to Gorence and assured him that she had no present intention of raising the alleged conflict issue and no reason to anticipate doing so. Thus, all parties have proceeded since May 2006, nearly 18 months, with certain knowledge that Gorence was representing Wilson and with no one mounting any objection to that state of affairs.

The Court found earlier that Jarvis waived the potential conflict. The Court now upholds that waiver, due to Jarvis's continued acceptance of Gorence as Wilson's attorney and his failure to object at an earlier time in these proceedings, when a change of counsel would have been less prejudicial to Wilson. In addition, Jarvis and his counsel have demonstrated a willingness to take advantage of Gorence's legal work on behalf of Wilson. These decisions appear to have been taken as matters of litigation strategy.

The Court finds that Jarvis's waiver of the conflict issue is knowing and voluntary. Jarvis concedes that he is familiar with the issues and procedures involved when counsel has a potential conflict of interest, due to the situation encountered earlier in the case involving counsel Cliff McIntyre. Although Jarvis states that he suffered from an "inability to communicate the conflict issue to his counsel" during a period of deficient confinement conditions, the fact of Gorence's involvement with Jarvis was part of the public record of this case and was something Jarvis's attorneys knew about. Instead of raising the potential conflict issue at the time Gorence entered his appearance on behalf of Defendant Wilson (or, in the case of attorney Jody Neal-Post, at the time she first became counsel of record for Jarvis), Jarvis's counsel acceded to Gorence's continued representation of Jarvis's co-defendant Wilson up, until November 29, 2007, when they filed the Motion to Seal the Motion to Disqualify. Jarvis's counsel even relied on Gorence's legal work on behalf of Wilson, to the benefit of Jarvis. There is no indication on the record, and Jarvis does not allege, that he was unable to participate sensibly in his defense up to the time the Motion to Disqualify was filed. Thus, the Court finds that Jarvis knowingly and voluntarily waived his right to protest Gorence's representation of co-defendant Wilson.

Jarvis argues that circumstances changed on November 20, 2007, when Gorence testified under subpoena at the hearing before Judge Herrera. Jarvis now contends that Gorence has an irreparable, and hence unwaivable, conflict of interest in that he is "now a government witness against Mr. Jarvis." Jarvis's argument overeggs the custard. Gorence did not become a government witness against Jarvis. As Gorence points out in the briefing on his Motion for Reconsideration, as a subpoenaed witness he had an obligation to testify truthfully in response to questions posed to him. [Doc. 1153, at 5]. The information sought was factual and not privileged. *See*, In re Six Grand Jury

Witnesses, 979 F.2d 939, 944 (2d Cir. 1992); Henry v. Champlain Enters., Inc., 212 F.R.D. 73, 90-91 (N.D.N.Y. 2003).  "The [attorney-client] privilege does not foreclose inquiry into the general nature of a lawyer's activities on behalf of a client, the conditions of the lawyer's employment, or any of the external trappings of the relationship.   The privilege is concerned only with confidential communications, not with the structural framework within which they are uttered."  2 Shepard's, Discovery Proceedings in Federal Court § 28.04 (3d ed. 1995).  Judge Herrera overruled Jarvis's Motion to Quash, and the questions thereafter posed to Gorence were carefully limited to matters bearing on the issue of his own state of mind in connection with the conditions under which he would accept employment as Jarvis's attorney.  The Court rejects the assertion that Gorence has become a "government witness" against Jarvis.

In addition, disqualification of Gorence at this point in the proceedings would implicate Defendant Wilson's Sixth Amendment choice of counsel.  In a scenario similar to that in the present case, a District Court noted that a defendant is generally entitled to counsel of his own choosing, "in whose favor there is a presumption."  United States v. Morrell-Corrada, 343 F. Supp. 2d 80, 84 (D.P.R. 2004).  In determining a motion to disqualify another party's counsel, the Court should consider not only potential prejudice to all parties, but also whether the continued representation would interfere with the ethical and orderly administration of justice.  In making this determination, "disqualification of . . . counsel should be a measure of last resort."  Id., quoting In re Grand Jury Proceedings, 859 F.2d 1021, 1026 (1st Cir. 1988).

While the presumption in favor of a defendant's choice of counsel (in this context, Wilson's choice of counsel) may be overcome by a showing of actual conflict or a serious potential therefore, "[t]he evaluation of the facts and circumstances of each case under this standard must be left primarily

to the informed judgment of the trial court." Wheat v. United States, 486 U.S. 153, 164, 108 S. Ct. 1692 (1988). The informed judgment of the Court is that Gorence's prior status as potential counsel for Jarvis does not preclude his continued representation of Wilson in this case.

The Court thus confirms its earlier ruling that Jarvis waived his right to disqualify Gorence from representing a co-defendant, based on delay as well as on his acceptance of Gorence's representation of Wilson and concurrence in Gorence's legal work on behalf of Wilson when it was to Jarvis's advantage to do so. Further, Gorence's testimony at the November 20, 2007 hearing, on issues strictly limited and controlled by the District Judge, does not alter that conclusion. No confidential or privileged information was sought and none was provided.

Jarvis is the party who raised the issue that he was deprived of the counsel of his choice. In order to determine this issue, the Court must, of necessity, explore the question whether Gorence would ever have taken on representation of Jarvis. Gorence's testimony on this issue is, of course, necessary and relevant, and his appearance at the hearing on this limited issue does not render him a "government witness" against Jarvis. The Court will address and decide the issue presented by Jarvis's Motion to Dismiss with all due respect for the confidentiality of any communications between Jarvis and his present or former counsel.

Finally, the Court rejects Jarvis's contention that "the Chief Magistrate Judge found attorney-client confidences had passed between Mr. Gorence and Mr. Jarvis." [Doc. 1161, at 8]. The undersigned did not so find. Rather, the ruling was that the nature of the prior relationship between Gorence and Jarvis was such that, *if* any such confidences passed between the two, Gorence would be would be precluded from revealing them without Jarvis's concurrence. No such revelation has occurred in this case.

8

## **Order**

IT IS THEREFORE ORDERED that Defendant Jarvis's Motion to Disqualify His Former

Counsel, Robert Gorence, as Counsel for Defendant Wilson [Doc 1161] is denied.


Lorenzo F. Garcia
Chief United States Magistrate Judge