IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.

                                                    No:    05-CR- 1849 (JH)

DANA JARVIS,

        Defendant.

### DEFENDANT DANA JARVIS' APPEAL TO THE DISTRICT COURT OF THE MAGISTRATE JUDGE'S ORDER DENYING DISQUALIFICATION OF HIS FORMER COUNSEL, ROBERT GORENCE, AS COUNSEL FOR CO-DEFENDANT WILSON [Doc. 1165]

Defendant, Dana Jarvis, through counsels of record Joe M. Romero, Jr. and Jody Neal-Post, hereby appeals the Chief Magistrate Judge's Order Denying Disqualification of Mr. Gorence, as it is clearly erroneous and contrary to law. [Doc. 1138]. As grounds, Mr. Jarvis states as follows.

### Introduction

This Court designated Chief Magistrate Judge Garcia to "hear and determine" Mr. Jarvis' Motion to Disqualify pursuant to 28 U.S.C. § 636(b)(1)(A). [Doc. 1157]. Chief Magistrate Judge Garcia did so hear and determine the motion. [Doc 1165]. Under the statute, this Court must revisit the Magistrate Judge's determination of the motion upon allegations "that the magistrate's [magistrate judge's] order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). "A finding is clearly erroneous when it is without factual support in the record." *United States v. Copening*, 506 F.3d 1241 (10th Cir. 2007). If, "on the entire evidence" the District Court "is left with the definite and firm conviction that a mistake has been committed," the District Court should set aside the Magistrate Judge's Order. *Allen v. Sybase, Inc.,* 468 F.3d 642, 658 (10th Cir. 2006). An aggrieved party must seek district court review to preserve issues because under "§

636(b)(1)(A), a magistrate judge may not issue a final order directly appealable to the court of appeals." *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997). "Properly filed objections resolved by the district court are a prerequisite" to preserving any Magistrate Judge's § 636(b)(1)(A) determination for circuit appellate review. *Id.*

With all due respect to the Chief Magistrate Judge's determination, "on the entire evidence" the Magistrate Judge's Order is clearly erroneous and contrary to law. The Order is in error primarily because neither the weight of the "entire evidence" in fact, nor the accurate conclusion in law, result in the outcome announced in the order. When the evidence and authorities placed in the record by Mr. Jarvis are compared and contrasted to the evidence of record cumulated between both the United States and Mr. Wilson, it is apparent that the Magistrate Judge's outcome is against the weight of the entire evidence, and some evidence, Doc. 691, was completely missed by the Chief Magistrate in the voluminous record. Furthermore, the legal conclusion is contrary to law as erroneously placing the entire burden for the integrity of the proceedings on Mr. Jarvis, when both the United States and Mr. Wilson failed in their respective duties to this Court, and indeed, the Court itself has an independent duty regardless.

At issue here is recapturing the procedural integrity of this case, as due process counsels that procedural regularity is the cornerstone of justice being done. "The disqualification issue therefore implicates not only the accused's right to counsel, but also the interests of the judiciary in preserving the integrity of its processes, and the government's interest in ensuring a fair trial and a just verdict. *United States v. Jones*, 381 F.3d 114, 119 (2nd Cir. 2004).

An actual conflict exists in this case, as found by the Chief Magistrate and confirmed by the District Court. [Docs. 1138, p. 3, ¶ 6, p. 6, ¶3; Doc. 1169, p. 2 & 3. As Justice Marshall explained, actual conflicts are such a profound detriment to the Sixth Amendment rights of the accused, that their showing obviates the need for a defendant to show prejudice:

> It is axiomatic that 'the assistance of counsel is among those constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error.' *Holloway v. Arkansas*, 435 U.S.

> 475, 489 (1978), *quoting Chapman v. California*, 386 U.S. 18, 23 (1967). The right to counsel's undivided loyalty is a critical component of the right to assistance of counsel; when counsel is burdened by a conflict of interest, he deprives his client of his Sixth Amendment right as surely as if he failed to appear at trial. *See Holloway v. Arkansas* ('The mere physical presence of an attorney does not fulfill the Sixth Amendment guarantee when the advocate's conflicting obligations have effectively sealed his lips on crucial matters.').
>
> For this reason, a defendant that shows an actual conflict need not demonstrate that his counsel's divided loyalties prejudiced the outcome of his trial. *Cuyler v. Sullivan*. The right to conflict-free counsel is simply too important and absolute 'to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial.' *Glasser v. United States*, 315 U.S. 60, 76 (1942); *accord Cuyler v. Sullivan*. We should be no more willing to countenance nice calculations as to how a conflict adversely affected counsel's performance.
>
> 'The conflict itself demonstrate[s] a denial of the 'right to have the effective assistance of counsel.' *Cuyler v. Sullivan, quoting Glasser v. United States*.

*Bonin v. California*, 494 U.S. 1039, 1044 (1990)(J. Marshall dissenting to denial of petition).

Nonetheless, prejudice to Mr. Jarvis is evident all over this case. The events subsequent to the finding of implied waiver, including Mr. Gorence's testimony against his former client with no objection lodged by Mr. Gorence to the giving of such testimony, and Mr. Gorence's continued inability to separate his status as government witness from his separate status as Co-Defendant Wilson's counsel [see Doc. 1171], only confirm that actual conflicts cannot be safely waived and have the proceeding go on with constitutional integrity.

"Some conflicts mandate disqualification under the Sixth Amendment, …and are *per se* unwaivable." *Jones*, 381 F.3d at 119-20. In *Jones*, the appellate court upheld disqualification due to the "risk" of counsel becoming a witness, noting if the possible attorney testimony occurred, such "actual" conflict *obliged* the court to disqualify. The Court also relied upon the attorney's "self-interest" in his reputation should he become a witness as dividing loyalties and requiring disqualification. *Id.* at 121. What were the potentialities in *Jones* are the realities here, Mr. Gorence has already testified and his self-interest in his reputation is already garnering his concern. [Doc.

3

1171, opposing release of information about his contacts with the United States regarding his testimony herein].

## I.  The Chief Magistrate Judge's Findings of Fact are Clearly Erroneous and Against the Weight of the "Entire Evidence"

### A.  Facts Now of Record

The relevant facts now of record surrounding Mr. Gorence's involvement herein are that Mr. Gorence had an attorney-client relationship with Mr. Jarvis and that a conflict arose. District Court Order, Doc. 1169, p. 2. Mr. Gorence and Mr. Jarvis communicated regarding securing legal representation and those communications were privileged. [Doc. 1138, p. 3, ¶ 3]. The presumption that confidences have been passed has not been rebutted. Mr. Jarvis has claimed his attorney client-privilege. [Doc. 1138, p. 3, ¶ 4]. A conflict of interest has arisen between Mr. Gorence's representation of Mr. Jarvis and Mr. Gorence's representation of Mr. Wilson in these same proceedings. [Doc. 1138, p. 3, ¶ 5]. The District Court affirmed the Magistrate's determination that as of November 20, 2007, pre-testimony of Mr. Gorence against Mr. Jarvis, Mr. Jarvis had impliedly waived this actual conflict. [Doc. 1169, p. 3].

### B. Magistrate Garcia Missed Doc. 691 Regarding Mr. Jarvis' Mental State Rendering his Fact Finding Clearly Erroneous as to Mr. Jarvis' Ability to Participate in his Defense

In his Motion to Disqualify, Mr. Jarvis recounted the history of this complex case to give factual context to how it occurred that he did not raise the conflict issue earlier.

Mr. Jarvis pointed out in his motion that this Court found his 6th Amendment rights violated expressly during the period of time when Mr. Gorence entered his appearance for Co-Defendant Wilson. The Magistrate Judge acknowledged this in his new Order, but found

> there is no indication how long Jarvis' alleged mental state rendered him incapable of cooperating in his defense, or, by implication, incapable of making a knowing and voluntary waiver of his right to protest any perceived conflict of interest.

Doc. 1165, p. 4.

4

This is clearly erroneous. The public record indicates that Mr. Jarvis' mental state continued impaired. At hearing on September 12, 2006 to halt the transfer and again in Motion 691 counsel advised the Court that Mr. Jarvis was unable to participate in his defense due to his mental condition. The public record at Doc. 691, filed September 26, 2006, shows Mr. Jarvis' Emergency Motion still seeking reinstatement of his psychotropic drugs, which were discontinued September 5, 2006 when Mr. Jarvis was removed from his unconstitutional conditions of confinement upon the granting of his Motion at Doc. 654. Counsel also advised the Court on October 26, 2006 that the defendant's computer access was still denied and Mr. Jarvis could not participate in his defense as he could not review the voluminous discovery, provided in electronic format. [Doc. 739].

The Minutes to the October 26, 2006 hearing on the Emergency Motion show counsel's advisement to the Court that medications had been resumed by that date, but the additional issues raised of conditions of confinement and computer access to participate in his defense were still unresolved. [Doc.739]. It is highly unlikely that an individual is released from six months of unconstitutional conditions of solitary confinement, has their psychotropic medications abruptly stopped and upon resolution of medications is immediately mentally stable, *and* the most important thing on their mind is to communicate to their counsel that their former counsel has an impermissible conflict of interests and should be disqualified. Indeed, "it is difficult for a lawyer or judge to predict what future conflicts might arise during the course of a criminal trial, how much more problematic is it for a criminal defendant -- unskilled in the law and criminal proceedings to comprehend the possibilities? *United States v. Jones*, 381 F.3d 114, 120 (2nd Cir. 2004), *citing Wheat v. United States*, 486 U.S. 153, 163 (1988). And to comprehend the possibilities as his paramount concern upon being relieved of six months solitary confinement, and then immediately deprived of his psychotropic medications?

The Magistrate Judge's order was clearly erroneous as to the record *not* reflecting Mr. Jarvis' mental state after the 6th Amendment violation was found. This error as to the public record leads to the following erroneous assumptions made in the Magistrate Judge's Order.

### C. The Magistrate Judge's Findings as to Credibility & Tactical Decisions Flow from the Oversight of Doc. 691 and Have No Further Factual Support in the Record

The Magistrate Judge found that "it is not credible to believe that Jarvis' current counsel were unaware of Gorence's earlier involvement with Jarvis because that involvement is part of the public record, which counsel surely reviewed." [Doc. 1165, p. 3]. Counsel certainly tried to be cognizant of the entire voluminous record, but sometimes things are missed by those with the most diligent intent, as shown above regarding the Magistrate Judge missing Doc. 691.

The record evidence shows Mr. Romero knew of Mr. Gorence's short involvement and continuing desire to be fully retained after January 19, 2006, but until Investigator Mares provided the physical evidence to counsel, the actuality of the conflict was not known. [Doc. 1129, Items 3 & 4] (which underlying privileged materials were actually viewed by the Magistrate Judge). In this same time period, February 2006 through August 2006, the record reflects in the Order at Doc. 654 that Mr. Jarvis' and Mr. Romero's confidential communications had been interfered with over this six months, which commenced immediately upon Mr. Romero's appointment as counsel.

The public record the Magistrate Judge found counsel should have been aware of was a stricken document, Doc. 314. Ms. Neal-Post, counsel responsible for joining the Wilson motions, had no actual knowledge of the Gorence involvement until she began working on the successful appeal January 2, 2007. This is record evidence the District Court can take notice of, its own docket as well as reflected in Ms. Neal-Post's CJA time sheets already submitted almost a year ago and certified by counsel as accurate. These same time sheets also show 2 confidential meetings between Mr. Jarvis and Ms. Neal-Post in 2006, the day of her appointment as forfeiture counsel, September 1, 2006 and again on December 5, 2006. There is no controverting evidence in the record that Mr.

6

Jarvis' counsels ever actually knew of the extent of Mr. Gorence's involvement as Mr. Jarvis' counsel. The Magistrate Judge's finding that Mr. Jarvis' counsel are not credible on this factual record, and not credible in the face of no findings of ethical violations or inconsistent statements as the record establishes against Mr. Gorence,[1] is against the weight of the evidence and clearly erroneous.

The Magistrate Judge found further that "any potential conflict of interest would presumably have been discussed with Jarvis, as soon as he was able to participate sensibly in his defense." The "knowledge" the Magistrate Judge found Counsel to have was constructive knowledge, to paraphrase, "it was surely known by counsel as in the public record." The Magistrate Judge then piled inference of knowledge, upon inference of a discussion of knowledge *not actually known,* upon inference of the ability to "participate sensibly in his defense," to conclude that a tactical decision was made to take no action on the conflict. It is black letter law that piling inference upon inference "is too speculative" for fact finding in criminal law, yet it is upon this foundation of inference upon

---

[1] *E.g.* Violation of NMRA 16-107, Conflict of Interests, failure to get written waiver of conflict before entering for Mr. Wilson; violation of NMRA 16-106, failure to assert privilege as former counsel when client had not signed waiver; 16-109(A), Conflict of Interests, Former Client, Duty of Loyalty, no consent by Jarvis for Wilson representation in substantially related matter; TP October 11, 2007 Status Conference, public revelation of confidential correspondence over former client's assertion of waiver and Mr. Gorence's denial of the "indisputable" attorney client relationship in violation of 28 USC 530(b), see also TP 11/20/07 51:8-13; TP 11/20/07 (Garcia) 4:22-25, 5:1-8, Gorence misrepresenting to Court that he needed time to respond to Mr. Jarvis motion to which he had waived a continuance, controverted at Doc. 1156, p.7 ¶ 13; also Doc, 1156, ¶¶ 2,3,6,7,11,13,14,19, & 20; Doc.1145 n.1, violation of LR 83.4 January 9, 2006 by filing of Doc. 314 without being counsel of record; filing of Doc. 1098 asserting he had never discussed the indictment with Mr. Jarvis, but the indictment in this case with handwritten annotations matching the discussions between Mr. Gorence and Mr. Jarvis was found in the privileged materials by the Magistrate Judge, Doc. 1168, n.2, consistent with the information Mr. Gorence testified he discussed with Mr. Jarvis regarding the forfeiture allegations; Mr. Gorence's testimony "not remembering" receiving an envelope of materials from Mr. Jarvis, which the Magistrate found to exist in the privileged materials, Doc. 1166, n.2; Mr. Gorence's testimony about not having a file in the face of the documents in the privilege log at Items 22-31, 6A-6A, not even mentioned by the Magistrate Judge.

inference upon inference that the Chief Magistrate Judge found a disfavored implied waiver of Mr. Jarvis' constitutional right to conflict free representation. *See United States v. Leos-Quijada*, 107 F.3d 786, 795 (10th Cir. 1997); *Fuentes v. Shevin*, 407 U.S. 67, 95 n. 31 (1972)("courts indulge every reasonable presumption *against* waiver" of constitutional rights). This finding too, is clearly erroneous and without evidence in the record for its support. *United States v. Campbell*, 491 F.3d 1306, 1312 (11th Cir. 2007)(Mr. Jarvis' refusal to waive attorney-client privilege "is stronger justification for disqualification" of Gorence).

Finally, as far as fact finding, the Magistrate Judge found that Mr. Jarvis joined four of Mr. Wilson's Motions, and inferred from that that Mr. Jarvis "chose to take advantage of Gorence's work on behalf of Wilson," actions that "add weight to the conclusion that Mr. Jarvis waived" his right to raise the conflict issue." [Doc. 1165, p. 4.]. Ms. Neal-Post made this error, but as the record reflects, without any actual knowledge of the stricken Motion Doc. 314, and without being in confidential contact with her client but for their initial meeting when this occurred. In the absence of evidence showing counsel knew otherwise, and the uncontroverted evidence that she did not know, it was clearly erroneous to find that counsels made a tactical decision regarding information they were unaware of, and that Mr. Jarvis made a knowing and voluntary waiver of a constitutional right.

The Magistrate Judge declared that Mr. Wilson "wishes Gorence to remain his counsel." There is no evidence in the record supporting this. Mr. Wilson has submitted no affidavit. At his own hearing on his own conflict Motion, Mr. Gorence advised the Court that his client had waived presence in the manner of hearing where the Court customarily *directly addresses the defendants* in a colloquy to ensure they have been counseled and properly advised by their attorney. *See* TP November 20, 2007 (Garcia), 2:11-13. There is no evidence in the record that Mr. Wilson consented to Mr. Gorence testifying. In these curious circumstances, unless and until Mr. Wilson is before the

8

court and personally addressed, no one knows what Mr. Wilson's personal positions are, nor what he's been advised. The record evidence is uncontroverted, however, that Mr. Wilson was never advised about conflicts of interest before Mr. Gorence entered his appearance, and no written waiver has ever been entered into the record.[2]

As there is no evidentiary support for this assertion and significant evidence to the contrary that Mr. Wilson is not fully aware of these proceedings and their consequences, the Magistrate's finding as to Mr. Wilson's intent is against the weight of the evidence, unsupported on the record, and clearly erroneous.

Regarding the post Judge Garcia hearing November 20, 2007 factual basis asserted by Mr. Jarvis for Mr. Gorence's disqualification, Mr. Gorence's testimony for the United States on November 20, 2007, the Magistrate Judge "rejected the assertion that Gorence has become a 'government witness against [Mr.] Jarvis." This fact finding, too, is clearly erroneous.

The record evidence reflects that the United States called Mr. Gorence as a witness, in their efforts to defend against Mr. Jarvis' Motion to Dismiss. *See TP* 11/20/07 55:19-20 ("The United States would call Mr. Gorence."); [USA Response to Motion to Quash, filed sealed 11/20/07, p. 5, docket no. unknown]. It is a fiction to say otherwise. Mr. Gorence was called, according to the United States, to answer whether he would have entered his appearance on Mr. Jarvis' behalf. *Id.* at

---

[2] But contrast the treatment of Mr. Jarvis' proffers of physical evidence and his affidavits in Doc. 1166, wherein the Magistrate Judge discounts Mr. Jarvis' former counsel Ms. Rosenstein's *affidavit* because it contains "hearsay, and Ms. Eckert's *affidavits* as merely "'what various individuals thought" and meaningless. These "various individuals" included Mr. Jarvis' two licensed and appointed attorneys' sworn statements as to what they were doing in their representation of their client. This is contrary to *Holloway*: representations regarding a conflict in clients interests from an officer of the court "should be given the weight commensurate with the grave penalties risked for misrepresentation." *Holloway v. Arkansas*, 435 U.S. 475, 486 (1978). Mr. Gorence's representations, despite this presumption, have been proven wrong. Surely if Mr. Jarvis' presentation of attorneys' affidavits are not to have evidentiary weight, the Magistrate cannot legitimately simply find a fact regarding Mr. Wilson's state of mind on no evidence in the record at all but for Mr. Gorence's already, more than once, proven wrong representations (attorney client relationship).

p. 3 & TP at 55. The subpoena was friendly. *See Minutes* to November 20, 2007 hearing, Ex. A, Fax cover. The docket confirms Mr. Gorence did not seek to quash the subpoena, nor join in Mr. Jarvis' Motion to Quash the subpoena. Mr. Gorence did not object to the subpoena. *USA Response*, p. 1. Mr. Gorence was not called as a hostile witness. Mr. Gorence was not ordered by this Court to testify. Mr. Jarvis litigated extensively to have the subpoena quashed because Mr. Gorence's testimony has been argued as irrelevant all along by Mr. Jarvis. *See also* Doc. 1111, § IV, pp. 21-26. This Court correctly stated the Defendant's contention as to the Sixth Amendment right to counsel of choice issue at Doc. 1145, p. 4:

> Thus, the question is whether this Court's failure to release only the Mora County property by ordering the United States to cancel the *lis pendens*—the improper state action to which Defendant points— actually interfered with Defendant's choice of counsel.

It was never the Defendant's contention that the rest of the Court's adoption of the United States' view is the Defendant's legal argument- that Mr. Gorence's testimony bears directly on *whether* the Sixth Amendment violation occurred. If the Defendant contended that and failed to put the witness on, the defendant would have defeated his own motion without the United States calling Mr. Gorence. Mr. Gorence's testimony is irrelevant to *whether* a Sixth Amendment violation occurred. Mr. Gorence's "actual conflict," now confirmed by this Court on the paper record without testimony as Mr. Jarvis always said was evident, was argued in the original motion at Doc. 1076 as relevant to the *remedy*:

> The only *remedy* in these unique circumstances is dismissal with prejudice, *in part due to the actual conflict of interests* now preventing Mr. Jarvis' counsel of choice from ever representing him in this case.

[Doc. 1076, p.1 (emphasis added)].

Mr. Gorence certainly was not Mr. Jarvis' witness. It simply strains credulity and the factual record to say Mr. Gorence was not "a government witness" when the government manufactured the legal argument it sought to support with Mr. Gorence's testimony and then called the witness itself.

10

The Magistrate Judge attempts to support this finding of fact by pointing out that this Court refused to quash the subpoena for Mr. Gorence's testimony. That ruling did not encompass a finding that Mr. Gorence was not a government witness. That ruling did not encompass a finding that Mr. Gorence's testimony was allowable because it was not adverse to Mr. Jarvis. The testimony was elicited by the Government to defeat Mr. Jarvis' Motion, and in that purposefulness, it was adverse[3] to Mr. Jarvis. This Court's denial of the Motion to Quash was only that and nothing more; the Court allowed the United States to go forward and put on its case as the United States saw fit and the United States is now entitled to its own consequences. This Motion to Disqualify is not a surprising consequence, and was anticipated by the United States at the end of the Magistrate Garcia hearing on November 20, 2007 where the United States suggested that the Government may seek Mr. Gorence's disqualification, *before* Mr. Gorence testified. The consequence post-testimony that disqualification is sought on that additional ground does not rewrite the record of the case however, that somehow Mr. Gorence was not the government's witness, nor that his testimony on behalf of the Government was anything but adverse to Mr. Jarvis' interests. These findings, too, of the Magistrate Judge, are also clearly erroneous and contrary to the record on its face.

### D. The Magistrate Judge's Clearly Erroneous Findings Contributed to his Erroneous Conclusions of Law; Other Controlling Law was Simply Unaddressed, Rendering his Order Contrary to Law.

The legal grounds for the Magistrate Judge's denial of Mr. Jarvis' Motion are built on the foundation of erroneous fact finding resulting in a finding of implied waiver. The Magistrate Judge then proceeded to finding that the implied waiver was made knowing and voluntary during a time when the Defendant has already been found incapacitated, which incapacitation was continuing. The Magistrate Judge also factored in detriment to Mr. Wilson. "It is well-settled, however, that a

---

[3] Adverse means "turned opposite to, moving or working in an opposite or contrary direction, unfavorable, harmful, opposite in position." *Webster's New World Dictionary* 20, (2nd College Ed. 1974).

11

criminal defendant's [Mr. Wilson's] right to his chosen attorney may be outweighed by a serious potential for conflict due to the attorney's prior representation of other defendants charged in the *same criminal conspiracy*." *Wheat* 486 U.S. 153; *United States v. Algee,* 309 F.3d 1011, 1013-1014 (7th Cir. 2002.) Despite this oversight in law regarding the weight of Mr. Wilson's interests, what stands out is the absolute silence of the Magistrate Judge's analysis as to the duties of Mr. Wilson and his counsel, and of counsel for the United States. There is similarly no acknowledgment of the real duty of the Court to each and every defendant to assure effective assistance. This incompleteness in the framework of the legal analysis is the most glaring error or omission of law in the Magistrate Judge's order, it being "a familiar maxim that deems an error of law an abuse of discretion," and contrary to law. *Cooper Indus. v. Leatherman Tool Group*, 532 U.S. 424, 448 (2001).

Mr. Jarvis argued in his Motion to Disqualify and incorporates such herein that it is not a singular duty to raise a conflict of interests. Of the two *persons* possessing the information of the confidences that passed and hence the basis establishing the actual conflict on May 5, 2006 when Mr. Gorence entered for Mr. Wilson, one was a very experienced attorney and the other was an unconstitutionally incarcerated defendant suffering mental degradation three months into solitary confinement. An "attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial." *Holloway v. Arkansas*, 435 U.S. 475, 485 (1978). Mr. Gorence failed professionally and ethically under *Holloway* as he denied the sanctity of the attorney client relationship between himself and Mr. Jarvis, and failed to identify the conflict which has been found actually exists in his sequential representations here. The record clearly establishes that Mr. Gorence violated his duties under 28 U.S.C. 530 and incorporated New Mexico law at NMRA 16-106. *None* of this attorney client litigation would be now occurring if Mr. Gorence had not violated federal statutory law binding him to compliance with the New Mexico Code of Professional Conduct.

Regarded in light of Mr. Gorence's numerous ethical and federal statutory violations, it is clear that *Mr. Wilson's* Sixth Amendment rights have not been put at risk by any failure to act by Mr. Jarvis. Mr. Wilson's counsel put his own client at risk when Mr. Gorence ignored his duty to procure conflict waivers. It is contrary to law to allow Mr. Wilson to benefit by his counsel's violation of the rules 28 U.S.C. 530 or to hold Mr. Jarvis responsible on this uncontroverted record of Mr. Gorence's violations. *Worthington v. Anderson*, 386 F.3d 1314, 1319 (10th Cir. 2004)( "He who comes into equity must come with clean hands.").

The complicit party in Mr. Gorence's entry of appearance was the United States, not Mr. Jarvis. The Magistrate Judge failed in his Order to even address the United States' assumption of duty to raise issues of conflict earlier in this proceeding which Mr. Jarvis cited extensively from the United States own Motion at Doc. 226. When a party succeeds in its argument to induce the court to rule in its favor, as the United States did in disqualifying Mr. Jarvis' previous counsel Mr. McIntrye, no party, not even the United States, can subsequently stand silent or argue contrary. *See NMRA.* 16-303(A)(3) Candor. Judicial estoppel prevents this for the higher purpose of maintenance of the integrity of the proceedings.

Incorporated following is Defendant Jarvis' argument from an earlier briefing [Doc. 1111, Section III(B)(3)], explaining further the duty of the United States that the Chief Magistrate Judge failed to even acknowledge.

Leaving for a moment Mr. Gorence's actions or lack thereof, the United States reminds in its response brief that Rule 44 "should not be overlooked." *Doc.* 1095 at 11 n.8. Indeed, the United States is right, and it is the United States who should not have overlooked it when Mr. Gorence entered his appearance on Mr. Wilson's behalf in May 5, 2006. It is inconceivable that this Court, properly advised by the United States of a potential conflict due to Mr. Gorence's previous appearance on Mr. Jarvis' behalf would have failed to hold a Rule 44 hearing. In similar

13

circumstances, the New Mexico Supreme Court found the fault for the resulting actual conflict to be on the State:

> Because the State failed to timely disclose a conflict of which it was well aware, Defendant's right to a conflict-free representation was withheld and the trial judge was prevented from conducting an evidentiary hearing to determine the extent of the conflict.

*Rael v. Blair*, 2007-NMSC-6, 26 (2007).

Furthermore, in this very case when the United States asked for a Rule 44 hearing October 17, 2005, this Court promptly and thoroughly provided the hearing. The United States argued two years ago it was the government's duty to seek such hearing when it filed a Rule 44 motion six days after Mr. Jarvis' former counsel, Mr. Cliff McIntyre, entered his appearance for Mr. Jarvis. *Doc.* 226 at 3; *Doc.* 214. *Rael* confirms the United States was correct two years ago that the duty belongs on the government. The government argued further upon the authority of *United States v. Cook* that in the face of a court's knowledge of a potential conflict and a failure to "make any inquiry," "the reviewing court will presume violation of a defendant's Sixth Amendment right to counsel." *Cook*, 45 F.3d 388, 393-94 (10th Cir. 1995). Not only has the standard not changed in the intervening two years, it has become clearer. This, too, is a Sixth Amendment violation by government omission.

When the United States raised Rule 44 in is Response brief, it offered no explanation as to how its accurate statement of its own duty regarding conflicts bound them two years ago and did not equally bind them May 5, 2006 when Mr. Gorence entered his appearance for Mr. Wilson. Explanation now would be futile. The Government prevailed in October 2005 on this assumption of duty argument to conflict out Mr. Jarvis' then choice of counsel. The Government cannot now argue a "clearly inconsistent position" contrary to the one they previously prevailed upon, as judicial estoppel prohibits parties from "deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 752-53 (2001).

The United States simply failed for inexplicable reasons in its duty to place the proper

14

conflict inquiry regarding Mr. Gorence's representation of Co-Defendant Wilson on the record. This is the same situation as in *Rael v. Blair*, wherein the New Mexico Supreme Court firmly disapproved of the State's failure to act on its awareness of a potential conflict early when the matter first became known to it:

> This case is difficult because early on the State became aware of a potential conflict of interest. However, the State did not immediately disclose this potential conflict; rather, the State tried to exploit the conflict. Through Grant, the State contacted and recorded Grant's conversations with Defendant and Grant's conversations with defense counsel, and later the State attempted to use these conversations to revoke Defendant's bond….
>
> We think the State's untimely disclosure contributed to the resulting conflict of interest in this case….

*Rael v. Blair*, 2007-NMSC-6, 24, 26 (2007)(actual conflict found).

Pursuant to the binding New Mexico law regarding Sixth Amendment guarantees in this state a defendant is entitled to "counsel's undivided loyalty." *State v. Martinez*, 130 N.M. 744, 749 (Ct. App. 2001). The United States properly assumed the duty as to raising conflicts and then failed to protect Mr. Jarvis when it had successfully used the duty *in the face of valid waivers* earlier in this same case.

The Chief Magistrate Judge acknowledged nothing regarding the duty of the District Court in conflict situations. The conflict is actual here, not the "possibility of" nor even the "substantial possibility of" a conflict. Fifty-five years ago the United States Supreme Court explained the Court's duties when facing conflicts:

> The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial. Of equal importance with *the duty of the court* to see that an accused has the assistance of counsel is its duty to refrain from embarrassing counsel in the defense of an accused by insisting, or indeed, even suggesting, that counsel undertake to concurrently represent interests which might diverge from those of his first client, when the possibility of that divergence is brought home to the court.

15

> *In conspiracy cases*, where the liberal rules of evidence and the wide latitude accorded the prosecution may, and sometimes do, operate unfairly against an individual defendant, *it is especially important that he be given the benefit of the undivided assistance of his counsel without the court's becoming a party to encumbering that assistance.*
>
> Here the court was advised of the possibility that conflicting interests might arise which would diminish Stewart's usefulness to Glasser. Nevertheless Stewart was appointed as Kretske's counsel. Our examination of the record leads to the conclusion that Stewart's representation of Glasser was not as effective as it might have been if the appointment had not been made. *We hold that the court thereby denied Glasser his right to have the effective assistance of counsel, guaranteed by the Sixth Amendment.* This error requires that the verdict be set aside and a new trial ordered as to Glasser.

*Glasser v. United States*, 315 U.S. 60, 76 (1942)(emphasis added).

The Tenth Circuit went directly to the point regarding the Court's duty in *Selsor*, wherein the defendants' attorneys repeatedly raised the issue of the conflict of interest and "[y]et the state judge turned a blind eye to an obvious possible conflict":

> We have stressed that the trial judge has an independent duty to ensure that criminal defendants receive a trial that is fair and does not contravene the Sixth Amendment.

*Selsor v. Kaiser*, 81 F.3d 1492, 1497, 1503 (10th Cir. 1996). The murder conviction was reversed when the Tenth Circuit found the "judge failed to fulfill his constitutional duty" pursuant to the Sixth Amendment when the consequences of the divergence of interests from the conflicted representation "were brought home to the Court." *Id.* Here and in in *Selsor,* the defendants brought the issue of the conflict to two judges, the second of whom simply affirmed the earlier ruling and required the conflicted attorneys to proceed. *Id.* at 1503. Also as in in *Selsor,* the representation is in violation of the Rules of Professional Conduct,[4] to which the judges also "turned a blind eye."

---

[4] *Beginning* with Mr. Gorence's initial violation of NMRA 16-106, failing to get a waiver of the conflict from Mr. Jarvis as former client, as well as from Mr. Wilson as prospective client in a substantially related matter.

The record here reflects nothing in fact or law to explain how the United States' assumption of duty as to conflicts is no longer applicable in this very same case. The record reflects nothing as to how only Mr. Jarvis had a duty. The record reflects nothing about any consequence to Mr. Gorence and or his client for his myriad of violations of federal statue, federal procedural rules and incorporated state rules of professional conduct. The record reflects nothing of the duty of the District Court in the face of an actual conflict as here. The record reflects no weighing "of the properly considered interests of the attorney's [Mr. Gorence's] former client, …where that client had made it clear that he viewed the risk of an intrusion upon his attorney-client privilege as substantial." *United States v. O'Malley*, 786 F.2d 786, 792 (7th Cir. 1986)(finding disqualification). The record here simply reflects as unexplainably contrary to law. *See United States v. Jarvis*, 499 F.3d 1196, 1200 (10th Cir. 2007)(cautioning regarding "drawing heavily on the United States' arguments" when those arguments were incomplete). As contrary to law, this Court must rectify it.

Mr. Jarvis would remind the Court that despite the age of the case and the timing the Magistrate Judge finds dispositive, not a single pre-trial motion has been yet resolved in this case. The Defendants' main defense motion, the wiretap suppression motion, has not been filed, let alone decided. *See Nicole Bradley v. Gloria Henry, Warden,* 2007 U.S. App. LEXIS 29297, *6-13 (December 19, 2007)(charting long delays in sequence of 6th Amendment violations and finding not attributable to the defendant).

Procedurally, the Magistrate Judge's delay issue is probably moot, as also unresolved is the date the case was stayed by operation of law due to the appeal as nothing the Magistrate Judge relied upon as the factual basis for waiver occurred before the date of the Notice of Appeal September 1, 2006. *See* Doc. 890, *citing Stewart v. Dronges*, 915 F.2d 572, 575-76 (10th Cir 1990)(jurisdiction divested in the district court "by *the filing of a notice of appeal*"). The defendant has always asserted it was the date the Notice was filed, September 1, 2006, when this Court lost jurisdiction, and that structural

17

error occurred at the date of wrongful denial of the motion reversed by the Tenth Circuit. Both dates defeat the Magistrate Judge's finding of implied waiver, one because of the continuing effects of the unconstitutional conditions of confinement as supported by the unconsidered document 691, and the other because it occurred before Mr. Gorence entered his appearance.

The case needs to be normalized. Mr. Gorence, a non-party to Mr. Jarvis' *Brady* motion, has now filed a "Response in Opposition," using his status as Mr. Wilson's counsel to contest disclosures sought against him under his other hat as Government witness. Witnesses file motions only to the extent they are claiming their Fifth Amendment rights. Mr. Gorence did not and so he cannot file contesting disclosures Mr. Jarvis is entitled to pursuant to the scheduling order regarding government witness disclosures. [Doc. 274]. Mr. Gorence's recent filing is as much in contravention of the Rules as when he filed Doc 314 without an entry of appearance. Mr. Jarvis is litigating against now two adversaries, his former counsel and the United States as the Ninth Circuit found in *Bowie* where the Court remarked that is was struck by "the utter shambles made of this case by the government" which allowed one defendant to end up being prosecuted not only by the government, but also by a co-defendant's counsel. *N. Mariana Islands v. Bowie*, 243 F.3d 1109, 1121-23 (9th Cir. 2001). "There is no need to add to the challenges of our criminal justice system, or to increase the public's distrust, by making it permissible for lawyers to act in concert with the government to investigate [or testify against] their own clients." *United States v. Sabri*, 973 F. Supp. 134, 148 (D.N.Y. 1996); Fifth Amendment.

The remedy here toward normalization is to disqualify the counsel who disrupted the case by failing to comply with 28 U.S.C. 530 and the incorporated New Mexico Rules of Professional Conduct- Mr. Gorence. The remedy is to render decision commensurate with the law of this circuit and the duties of the Court, the United States and Mr. Gorence all factored in, as the Magistrate Judge failed to do. There can be no error attributed to this Court on this record for disqualifying Mr.

Gorence as explained above. Failure to disqualify Mr. Gorence, in contrast, if he should have been on the actual conflict already found, will result in yet another Sixth Amendment violation, reversal of a conviction if has been obtained, and the compounding of the expanding Fifth Amendment violations of due process and fundamental fairness.

WHEREFORE and based upon the above, Mr. Jarvis respectfully requests this Court find the Magistrate Judge's order clearly erroneous and contrary to law and that the facts and law herein correctly require the disqualification of Mr. Robert Gorence, necessary to protect Mr. Jarvis' Sixth Amendment rights to conflict free representation and effective assistance of counsel as well as this Court's duty to maintain the integrity of the proceedings.

Respectfully submitted:

*Electronically filed 12/26/07*
By: _____
Joe M. Romero, Jr.
Attorney for Defendant Jarvis
1905 Lomas NW
Albuquerque, NM 87104
(505) 843-9776

*Electronically filed 12/26/07*
By: _____
Jody Neal-Post
Attorney for Defendant Jarvis
317 Amherst SE
Albuquerque, NM  87106
(505) 268-7263

I hereby certify that a true and correct copy of the foregoing was served on opposing counsel, AUSAs James Braun and Stephen Kotz, & Co-Defendant Wilson's counsel on December 26, 2007.

*Electronically filed 12/26/07*
_____
Joe M. Romero, Jr.

20