IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

v.

      No:    05-CR- 1849 (JH)

**DANA JARVIS,**

      **Defendant.**

**DEFENDANT JARVIS' REPLY TO THE UNITED STATES' RESPONSE [DOC.1179] TO MR. JARVIS' MOTION [DOC.1155] FOR BRADY/GIGLIO/GILES/KYLES MATERIALS RELATED TO
GOVERNMENT WITNESS ROBERT J. GORENCE, ESQ.**

    Defendant, Dana Jarvis, through counsel Jody Neal-Post, hereby replies to the United States' blanket refusal disclose *any* material regarding the United States' unauthorized contacts with Mr. Jarvis' former counsel turned government witness, Robert J. Gorence, Esq.

**Argument & Authorities in Support**

**Introduction**

    The United States argues on a number of grounds that it is not required to make the requested disclosures , but the United States *never* argues the information sought regarding contacts between the United States and Mr. Jarvis' former counsel and inducements in exchange for former counsel's testimony does not exist. Under *Giglio*, a "promise, reward or inducement" to a government witness in a criminal case is subject to mandatory disclosure to the defense under the Due Process Clause of the Fifth Amendment. *Giglio v. United States*, 405 U.S. 150 (1972). Such information is subject to pre-trial disclosure and is indeed, subject to pre-trial disclosure in this present case under the current scheduling order.

1

**The Context of the Disclosure Requests**

The United States argues that the disclosures sought are a "fishing expedition" to obtain information as to "partially moot" issues. Doc. 1179, ¶ 3, p.3 & n.2. However, disclosure requests seeking specific information known to exist are not fishing expeditions in the jargon of pre-trial disclosures. It is established that the communications between the United States and Mr. Jarvis' former counsel occurred, that Mr. Jarvis' privilege was claimed, that former counsel disavowed the attorney-client relationship and associated privilege claim, and that the United States also disavowed any duty *not* to contact the defendant's former counsel.

The most exhaustive case in this Circuit on *Brady* disclosures makes clear that requests for information regarding specific occurrences or the existence of specific materials require less showing by the defendant to obtain disclosure:

> If the defendant made a specific request for disclosure of an identifiable piece of evidence, then the prosecution was on specific notice of what was sought. Thus, the standard of materiality should be, and was, more lenient than if the defendant made either a general request for 'all Brady evidence' or no request at all, both of which fail to provide any descriptive notice of what is being sought. *See Bagley*, 473 U.S. at 678-83 (discussing *Agurs*, 427 U.S. at 103-12).

*Smith v. Secretary of N.M. Dep't of Corrections*, 50 F.3d 801, 826 (10th Cir. 1995). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Smith*, 50 F.3d at 827. Therefore, if Mr. Jarvis is not provided the requested material disclosures and his Motion to Dismiss is denied or he is prejudiced in outcome from his former counsel remaining representing his co-defendant, *Brady* and *Giglio* are violated if the undisclosed materials' inclusion in the proceedings would have made a reasonable probability of a different outcome.

Mr. Jarvis is concerned about bias, impeachment and confidentiality which could affect the outcome of the case. There is or may be the appearance that Mr. Gorence, in testifying for the government, will or

has obtained some advantage for his present client Mr. Wilson, which could include disclosure of Mr. Jarvis' confidential information to the United States. *See generally* N.M. R. Prof. Conduct 16-307 (2007); N.M. R. Prof. Conduct 16-108(B) (2007). The Rules turn on whether there is an *appearance* or possibility that confidential information is used for another's benefit, and support these disclosure requests. N.M. Bar Advisory Opinion 1984-8; 28 U.S.C. 530. The confidentiality matter is especially concerning due to the extent of Mr. Gorence's denial of the attorney-client relationship between himself and Mr. Jarvis, and his denial of being bound by any constraints of Mr. Jarvis' claimed privilege.

The United States asserts that the matter of disqualification of Mr. Gorence is final and therefore disclosures related to resolution of that Motion are moot. To the contrary, Mr. Jarvis has filed his appeal from the Magistrate Judge's disqualification Order. Doc. 1183. Mr. Wilson's reconsideration Motion as to the finding of an attorney client relationship *is* final. Impeaching Mr. Gorence's testimony from the Motion to Dismiss hearing of November 20, 2007 remains open as the Magistrate Judge's Order on that issue has also been appealed to the District Court, and the hearing was continued. Doc. 1182.

The most prominent open ground the United States failed to acknowledge is the claim most directly affected; Mr. Jarvis' Sixth Amendment Intentional Interference with Attorney Client Relations claim, which is now factually established although not formally ruled upon, but the remedy, tied to egregiousness, is yet to be determined. *See TP 11/20/07 J. Herrera, 51:8-25, 52:1-15; 44:10-25, 45:1-19*

### The United States' Arguments in Opposition

The United States argues primarily that the Motion is moot. The government argues that the witnesses' testimony is concluded, but Mr. Gorence's cross examination was stopped due to the necessity to resort to privileged materials which halted the examination at that point. After Mr. Gorence was excused, the transcript reflects from pp. 64-80 of discussion of how to impeach Mr. Gorence and how the United States might cross the witness at that point. These issues remain unresolved as noted above with Mr. Jarvis' appeal of the Magistrate Judge's decision.

Some of the underlying rationale for the Court denying the Motion to Quash the subpoena of Mr. Gorence was a fairness argument, that "fairness demanded that the United States be permitted" to call Mr. Gorence for their stated purpose. Doc. 1145, p.6. However, the constitutional *im*balance between the accused and the government requires the government *always* to disclose more than the defendant. The government has been allowed to put on its case as it chose with Mr. Gorence, despite Mr. Jarvis' steadfast position that Mr. Gorence's subjective intent was not at issue in the face of the existing court record of his attorney representations to the Court. The constitutional due process policy protections embodied in *Brady* to protect the accused from wrongfully withheld evidence now require the United States to disclose, rather than as this Court has cautioned against, "silence Mr. Gorence" regarding its contacts with him. As the secondary authorities cited and their references therein support, even the United States' implied inducements for the Gorence testimony, which could include a panoply of possibilities such as agreeing to take no position on disqualification, are to be disclosed to Mr. Jarvis under the rationale of *Brady*.

The reality here is that every favorable action toward Mr. Wilson or Mr. Gorence henceforth is subject to explanation now that it is subsequent to the testimony provided by Mr. Gorence against Mr. Jarvis' Motion to Dismiss. Any plea will be subject to question as to whether it is more favorable due to the testimony. The matter of the *Brady* disclosures will come up again and again. If the Government withdraws the enhancement against Mr. Wilson or Mr. Wilson receives a cooperation agreement against Mr. Jarvis the question will again be asked- is this related to or due to the unusual testimony given by Mr. Gorence in his multiple roles in this case? *See* 18 U.S.C. 3553(e) (only the prosecutor can initiate a reduction in the mandatory minimum by filing a substantial assistance motion).

As to agreements between Mr. Gorence and the United States, the question on Mr. Jarvis' lips is the one on everyone's lips- why would Mr. Gorence testify for the United States against his former client? Surely the point that the fact pattern is unreplicated makes the question reasonably asked. Indeed, it would be clear ineffective assistance not to seek these answers as the Sixth Amendment mandates counsel's reasonable investigation on a criminal defendant's behalf.

The case law and commentary on cooperating witnesses points out the many, many reasons individuals cooperate with the government adverse to their former affiliates, and the reasons include the psychologically complex:

> While an accomplice's primary motivation to cooperate with the government may be to hasten his release from jail, it is important to recognize that other factors may influence his decision as well. An informant may testify against a criminal confederate due to fear, a desire for revenge, or the need for self-protection (that is, a concern that if he does not testify against a co-defendant, the co-defendant may testify against him). Because the government frequently pursues cooperation by lower echelon criminals against the higher-ups in an organization, some witnesses may view cooperation with the government in a criminal case as a means to reorder a previously hierarchical relationship. The accomplice may also enjoy the thrill of playing detective; ego building, developing friendships with authority figures, and securing a 'chit' from the police against apprehension for future criminal activity may all play a role in an accomplice's decision to testify. Finally, the informant may be manipulating the system for personal or pecuniary gain, such as a desire to take over the joint criminal enterprise for himself or an ally after helping to put the confederate away. When coupled with powerful governmental incentives in the form of sentencing or charging leniency, all of these psychological motivations may outweigh any countervailing pressures upon an accomplice to remain silent.
>
> It is important to recognize the complexity of these psychological motivations, because while all of them may be probative of a witness's credibility on cross-examination, not all of them are indicative of bias towards the government. *Trial judges assessing claims of Giglio error and their likely effect on the jury must be alert to the reality that factors other than an expectation of leniency may prompt an accomplice witness to testify.*

R. Michael Cassidy, "*Soft Words of Hope*": *Giglio, Accomplice Witnesses, and the Problem of Implied Inducements*, 98 NW. U. L. Rev. 1129, 1235-36 (2004)(emphasis added).

The testimony of Mr. Gorence is problematic many ways. As already much discussed in this case, it is problematic beginning with this particular government witness being the defendant's former attorney. It is further problematic in an atmosphere of congressional scrutiny on known prosecutorial policies of interference with the attorney-client relationship. *See Attorney-Client Privilege Protection Act of 2007*, H.R. 3013, passed November 14, 2007, http://thomas.loc.gov/cgi-bin/query/C?c110:./temp/~c1108PZRDk; *United States v. Stein*, 495 F. Supp. 2d 390 ( D.N.Y. 2007)(Thompson Memorandum).

In simple *Brady* terms, the attorney issue aside, the testimony appears to run afoul of the prohibition that a deal may *not be* contingent upon the precise content of the testimony. This appears because the Government has said exactly what Mr. Gorence would testify to and the witness repeated it on cue, this performance suddenly and out of the blue in a long pre-trial case posture and shortly after the witnesses' client was enhanced from a 10 to twenty year mandatory minimum incarceration exposure. *Id.* at n.51 & 52; NMRA 16-304(A) & (B); *see also* The Justice Project, *Jailhouse Snitch Testimony*: *A Policy Review* (2007), available at http://www.thejusticeproject.org/solution/snitch/snitch-lr.pdf; Doc. 1056.

That unauthorized contacts occurred between Mr. Gorence and the United States is known. It is the details of the contacts and "the why," the "what was to gain" that must legitimately now be disclosed to quell the obvious questions regarding how a defendant's former attorney in the same proceeding came to be a friendly witness against him for the government:

> The process of securing the cooperation of an accomplice is often accomplished over a series of meetings involving initial proffers of information, probing questions by the prosecutor, bargaining sessions with the accomplice's lawyer, and possibly one or more appearances by the witness before a grand jury. Even if this process does not, in the view of one commentator, at times rise to the level of unethical coaching of a witness, it would certainly be an unsophisticated witness who did not develop an inclination for the prosecutor's theory of the case during this entire period of 'give and take.'

*Soft Words of Hope* at n. 96. Here, we have quite the opposite of an "unsophisticated witness."

This Court has responded to the United States' of concerns of fairness in the proceedings to the opposing party should one side seek to conceal evidence. *TP* 26:15-24. In actuality in this criminal case, the matter is not exactly fairness, it is *im*balance, and the constitutional protections are *im*balanced in favor of protecting the accused from the immense power of the government. *Smith* acknowledged this in discussing the government's responsibility to disclose *Brady* whether requested to or not:

> This represents a paradigmatic example of the *im*balances inherent in the criminal justice process, and it serves to illustrate the purpose behind the *Brady* doctrine.

*Smith,* 50 F.3d at 827. Fairness here means greater protection for the accused than for the government.

6

**Brady Disclosures Pre-Trial**

Both the United States and the witness Mr. Gorence [Doc. 1171 ] argue in concert that *Brady* is not relevant pre-trial in their unified efforts to prevent disclosures. Indeed, the alliance between Mr. Wilson's counsel and the United States against Mr. Jarvis' Motion is record evidence of their continuing cooperation that merely adds support to Mr. Jarvis' requests that their relationship be fully disclosed.

*Brady* disclosures are routinely ordered pre-trial such that the defendant can make meaningful use of them. *Brady* and its principles have been applied in the pre-trial context in a number of circuits, and was impliedly approved although not ruled upon in this circuit in *United States v. Johnson*, 1997 U.S. App. LEXIS 16776 (10th Cir. 1997)(unpublished)(going to suppression rather than traditional guilt innocence). *See e.g. United States v. Barton*, 995 F.2d 931, 935 (9th Cir. 1993) ("We hold that the due process principles announced in *Brady* and its progeny must be applied to a suppression hearing involving a challenge to the truthfulness of allegations in an affidavit for a search warrant."); *Smith v. Black*, 904 F.2d 950, 965-66 (5th Cir. 1990), vacated on other grounds, 503 U.S. 930 (1992); *United States v. Williams*, 10 F.3d 1070, 1077 (4th Cir. 1993).

In the posture of these proceedings, the Fifth and Sixth amendments, and the policies underlying due process and the right to confront witnesses, require the defendant be provided the evidence necessary to prove his claims and prevent undisclosed inducement and bias from changing the outcome of these proceedings. The Court has remarked that the relief the defendant seeks "is termination of the prosecution against Mr. Jarvis, but on the other hand, you don't want the government to be able to respond to that motion. Is that fair to the Government?" *TP, 31:24-2, 33:1-2*.

Put another way, the United States has filed an indictment that seeks to incarcerate Mr. Jarvis for life, and he has already been incarcerated for over two years while presumed innocent. Now that the witness has testified, the government does not want the defendant to be able to respond. Is that fair to the accused?

WHEREFORE, Mr. Jarvis respectfully prays that this Court enter an order directing the government to produce all the information and material requested in his *Brady* Motion, and providing such other and further relief to which the Court may find Mr. Jarvis to be justly and constitutionally entitled.

                                        Respectfully Submitted,

                                        *Electronically filed 12/29/07*
                       By: _____
                            Jody Neal-Post
                            Attorney for Defendant Jarvis
                            317 Amherst SE
                            Albuquerque, NM  87106
                            (505) 268-7263

I hereby certify that a true and correct copy of the foregoing was served on opposing counsel, AUSAs James Braun and Stephen Kotz on December 29, 2007.

*Electronically filed 12/29/07*
_____
Jody Neal-Post.