IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,    )
                             )
            Plaintiff,       )
                             )
    vs.                      )        Cr. No. 05-1849 JH
                             )
DANA JARVIS,                 )
                             )
            Defendant.       )

UNITED STATES' RESPONSE TO "DEFENDANT DANA JARVIS'S
APPEAL TO THE DISTRICT COURT OF THE CHIEF MAGISTRATE
JUDGE'S ORDER DENYING DISQUALIFICATION OF HIS FORMER
COUNSEL, ROBERT GORENCE, AS COUNSEL FOR CO-DEFENDANT WILSON"

Jarvis asserts that Judge Garcia's Order Denying Defendant Jarvis's Motion to

Disqualify Counsel (Doc. 1165) is clearly erroneous.  This Court, however, has already

reviewed Judge Garcia's order and held that his finding that Jarvis waived any conflict of

interest was not clearly erroneous.  Doc. 1169 at 3 (Order Denying Defendant Dennis

Wilson's Motion for Reconsideration of Magistrate Judge's Findings and

Recommendations, referencing Doc. 1165).  To the extent that Jarvis's "appeal" of Judge

Garcia's order is based on a mischaracterization of the record in this case, the United

States responds as follows.

I.    Jarvis Was Never Found to Have Been "Incapacitated."

Jarvis claims that Judge Garcia erred in finding that Jarvis had made a knowing

and voluntary implied waiver of any conflict which arose from Mr. Gorence's retention as

counsel for co-defendant Wilson during a time while Jarvis was found "incapacitated." Doc. 1183 at 11. This assertion is not supported by the record.

On February 14, 2006, one week after Jarvis was moved to administrative segregation, Jarvis filed a "Motion to End Unconstitutional Conditions of Confinement...," claiming that he was being denied access to all but one member of his defense team and that the conditions of confinement amounted to "... severe and irreparably harmful punishment …." Doc. 342 at 4. In its order denying that motion, the Court held that the issues of access were being resolved and that there was a proper administrative reason for Jarvis's conditions of confinement. Doc. 373 at 4. The Court acknowledged that it has jurisdiction over the question of conditions of confinement which adversely affect a defendant's ability to prepare his defense, but held that Jarvis had "…failed to come forward with sufficient authority to persuade the Court that it should act on his claims...." *Id.* at 6.

On May 27, 2006, Jarvis filed a "Motion to Reconsider Order Denying Defendant's Motion to End Unconstitutional Conditions of Confinement." Doc. 499. Jarvis claimed that the conditions of administrative segregation had damaging effects on his "…psyche and physical health…[which had] progressed to the point that it impair[ed] Defendant Jarvis's ability to effectively assist his defense team." *Id.* at 8. The motion went on to state that it was difficult for Jarvis to "concentrate and focus" and that he was being treated by a psychologist. *Id*. at 9.

At the August 11, 2006 hearing on the motion to reconsider, Robert Colby, Jarvis's psychologist, testified that Jarvis was diagnosed with "adjustment disorder with mixed moods and insomnia" on November 23, 2005, eleven weeks prior to his transfer to administrative segregation. 8/11/06 Tr. at 34. Mr. Colby explained that this meant Jarvis was in a stressful situation, was having difficulty coping, and was exhibiting a variety of moods, in addition to not being able to sleep. *Id.* Mr. Colby further testified that Jarvis was prescribed medication to treat anxiety and depression following the transfer to administrative segregation. *Id.* at 35. However, Mr. Colby could not definitively testify that Jarvis would not have been prescribed these medications absent his placement in segregation, nor that his worsening condition was solely the result of his placement and not a side effect of the medications themselves. *Id.* at 38-39. Further, while Mr. Colby testified that Jarvis's "memory and concentration [were] … impaired," and that Mr. Colby believed that the conditions of confinement had impaired Jarvis's ability to meaningfully participate in his defense "to some extent...and that it's likely … his level of impairment will increase," at no time did he state that Jarvis was "incapacitated," nor that he was unable to participate in his defense at all whatsoever. *Id.* at 36-37. Moreover, Mr. Colby stated that he had discussed the charges and penalties with Jarvis and that Jarvis understood both. *Id.* at 40.

In its order granting Jarvis's motion to reconsider, the Court accepted Mr. Colby's testimony that Jarvis's "...psychological disorder has worsened and his ability to

participate meaningfully in his own defense has been <u>hampered</u> by the conditions of his solitary confinement and will likely become even more impaired the longer Defendant remains there." Doc. 654 at 2 (emphasis added). However, there was no finding that Jarvis was "incapacitated."

On September 5, 2006, Jarvis was transferred from the Regional Correctional Center to the Torrance County Detention Center. A hearing was held on September 12, 2006, in response to an emergency motion filed by Jarvis to halt the transfer. At that hearing, defense counsel informed the Court that Jarvis had not been given his medications subsequent to the transfer, and that Jarvis had requested psychiatric care, but that it had not yet been granted. 9/12/06 Tr. at 14. Counsel did not, however, indicate that Jarvis had become incapable of communicating with his defense team as a result of the interruption in his medical regimen or the deterioration of his mental state.

Subsequent to the Court's denial of Jarvis's motion to halt his transfer, on September 26, 2006, Jarvis filed an "Emergency Motion for an Order for Immediate Re-Institution of The Prescribed Medical Regimen Previously Ordered by Physicians and Abrubtly [sic] Discontinued…." Doc. 691.[1] In that motion, Jarvis alleged that he had been denied his prescribed medication since being transferred to Torrance County and that such denial had "…caused a rapid and palpable deterioration in Defendant's physical

---

[1] This is the document Jarvis assumes Judge Garcia overlooked. *See* Doc. 1183 at 4.

and psychological well-being making it extremely difficult for counsel to elicit

Defendant's meaningful participation in his defense." Doc. 691 at 2. The hearing on that

motion was held on October 26, 2006. Jarvis admits in his appeal that the medications

had been resumed by that hearing. Doc. 1183 at 5. In fact the only discussion of the

medications at that hearing was when defense counsel advised the Court that there had

been a problem, but that it had been resolved. 10/26/06 Tr. at 4.

Even assuming *arguendo* that Jarvis was completely "incapacitated" from the time

medication ceased until his medical regimen was resumed and the medications took

effect, this still would not render Judge Garcia's findings clearly erroneous. There is

nothing in Judge Garcia's order originally finding an implicit waiver of any conflict by

Jarvis (Doc. 1138) nor in Judge Garcia's order denying Jarvis's motion to disqualify Mr.

Gorence (Doc. 1165) which indicates a precise date upon which Jarvis impliedly waived

any conflict which arose from Mr. Gorence's entry of appearance for co-defendant

Wilson. The record reflects there have been no further assertions that Jarvis's mental

health is such that he cannot participate in his defense in the intervening time, over fifteen

months, since medications were resumed.

Jarvis had sufficient opportunity to discuss with current counsel, either on his own

initiative or in response to their questioning, what had occurred in the case prior to their

appointments, including whatever discussions he had with Mr. Gorence. Based on the

record, it is disingenuous for Jarvis to claim that he was so incapacitated by his

confinement that he could not engage in a such a conversation.[2]

Finally, Jarvis makes a confusing argument relating to the timing of the stay of the case pending appeal and the resulting divestiture of the Court's jurisdiction.  Def. Mot. at 17-18.  Jarvis appears to argue that the Court was divested of jurisdiction to resolve any conflict issues as of September 1, 2006.  Even assuming that the Court was divested of jurisdiction by operation of law on the day Jarvis's notice of appeal was filed, September 1, 2006, the Court maintained jurisdiction as to Jarvis over all "…matters not related to the appeal, such as ministerial functions including conditions of confinement and or detention and attorney and defense team fees and costs."  Doc. 924 at 2 (Court's Order staying the case as to Dana Jarvis and continuing the case as to all other defendants).  Moreover, the Court was not divested of any jurisdiction over co-defendant Wilson.  The stay of the case and partial lack of jurisdiction over Jarvis certainly did not prevent Jarvis's defense team from continuing to communicate with Jarvis and work on his case.[3]  And, as the issue of a potential conflict arising out of Mr. Gorence's representation of

---

[2]  Had Jarvis's mental state deteriorated to the degree insinuated here that he could not have a comprehensible conversation, it is reasonable to assume that his counsel would have requested a competency hearing.  There have been no claims of incompetency, let alone a finding of such.

[3]  In fact, Jarvis not only filed numerous pleadings following his notice of appeal on September 1, 2006, but he also filed a motion regarding other property involved in the case following the Court's formal stay of the case.  *See* "Motion for Order Granting Defendant Dana Jarvis Leave to Substitute Res for Real Property & Liquor License Number 2599."  Doc. 964, filed May 1, 2007.  Clearly, Jarvis did not believe that the Court had absolutely no jurisdiction over his case during the stay.

Wilson and prior dealings with Jarvis was not related to the issue on appeal, this Court could have dealt with the conflict issue had Jarvis raised it at any time.

II.    Defense Counsels' Knowledge of Mr. Gorence's Involvement with Jarvis.

Judge Garcia found that "it is not credible to believe that Jarvis' current counsel were unaware of Gorence's earlier involvement with Jarvis because that involvement is part of the public record, which counsel surely reviewed." Doc. 1165 at 3. Jarvis asserts that this finding is clearly erroneous. He admits, however, that attorney Joe Romero "knew of Mr. Gorence's short involvement" with Jarvis. Doc. 1183 at 6. Judge Garcia noted that "[a]ny *potential* conflict of interest would presumably have been discussed with Jarvis, as soon as he was able to participate sensibly in his defense, and a tactical decision made as to whether to press the issue." Doc. 1165 at 4 (emphasis added). Thus, Jarvis's claim that that Mr. Romero did not know of "the *actuality* of the conflict," Doc. 1183 at 6 (emphasis added), is irrelevant.

With regard to attorney Jody Neal-Post, Jarvis asserts that "the public record the Magistrate Judge found counsel should have been aware of was a stricken document, Doc. 314" (the motion to release assets filed by Robert Gorence and Paul Kennedy on January 9, 2006). Doc. 1183 at 6.[4] Judge Garcia does not, however, reference Doc. 314;

_____

[4] While Jarvis asserts that Ms. Neal-Post was the "counsel responsible for joining the Wilson motion," Doc. 1183 at 6, the notices of joinder contain signature blocks for both Mr. Romero and Ms. Neal-Post and only Mr. Romero's name is on the certificate of service. Docs. 741, 742, 746, and 747.

rather, he references the public hearing that Mr. Gorence and Mr. Kennedy attended on January 19, 2006. Doc. 1165 at 3-4.[5] Defense counsel admit that they knew "about the January 19, 2006 hearing, but assumed ... that the conflict at the time was a waiveable conflict arising from a short representation." Doc. 1156 at 5. There is ample support for Judge Garcia's finding, and Jarvis has failed to establish that it is clearly erroneous.

Respectfully submitted,

LARRY GOMEZ
United States Attorney

*/s/ James R.W. Braun*

JAMES R.W. BRAUN
Assistant U.S. Attorney
P.O. Box 607
Albuquerque, New Mexico  87103
(505) 346-7274

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 15th day of January, 2008, I filed the foregoing pleading electronically through the CM/ECF system, which caused counsel of record for the defendant to be served by electronic means.

*/s/ James R.W. Braun*

JAMES R.W. BRAUN
Assistant U.S. Attorney

---

[5] Nevertheless, Jarvis's claim that "the record reflects" that Ms. Neal-Post had no "actual knowledge of the stricken Motion Doc. 314" at the time she joined four of co-defendant Wilson's motions on Jarvis's behalf, Doc. 1183 at 8, is incorrect. The record does not so reflect. Indeed, while Doc. 314 was ordered stricken from the record (Doc. 329), it has remained on the court's electronic docket along with the other pleadings filed in this case.