**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

                    Plaintiff,

v.                                                                    Cr. No. 05-1849 JH

DANA JARVIS, et. al,

                    Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on *Defendant Dana Jarvis' Motion to Dismiss for Irreparable Structural Error & Additional Fifth & Sixth Amendment Violations* [Doc. No. 1076]. On November 20, 2007, the Court held an evidentiary hearing on the motion, at which Defendant Dana Jarvis was present and at which the Court heard oral arguments. After considering the facts of the case, the law, and the arguments of counsel, the Court concludes that the motion should be denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

On August 23, 2005, the Government filed the indictment in this case charging Defendant Dana Jarvis ("Jarvis") with conspiracy to distribute more than 1000 kilograms of marijuana, engaging in a continuing criminal enterprise, and various money laundering violations. The Indictment contained a forfeiture allegation relating to bank accounts, automobiles, personal property, and real property belonging to Jarvis. The Government recorded notices of lis pendens on all the real property listed in the indictment, obtained protective orders freezing the bank accounts, and obtained seizure warrants for the conveyances.

Because Jarvis was unable to afford his own attorney, the Court appointed Ms. Judith Rosenstein, an attorney from the CJA panel. In a handwritten letter dated December 18, 2005, and

entered on the docket on December 30, Jarvis asked for appointment of new counsel and requested a "high powered attorney in the category of Charlie Daniels and Nancy Hollander, Ray Twohig, Peter Schoenburg, Paul Kennedy and Mary Han, Robert Gorence, Steven McCue or Jackie Robins . . . " On December 23, Ms. Rosenstein filed a motion to withdraw as counsel. On January 9, 2006, before the Court had ruled upon Rosenstein's motion to withdraw, attorneys Robert Gorence and Paul Kennedy filed a motion to release assets, purportedly on behalf of Jarvis. However, at that time Rosenstein was still counsel of record for Jarvis, and neither Gorence nor Kennedy had filed an entry of appearance of Jarvis' behalf. The motion requested that the Court unfreeze certain of Jarvis' assets listed in the indictment so that he could retain Mr. Gorence and Mr. Kennedy as counsel. Though the motion mentions two particular parcels of real property in Mora County, New Mexico ("the Mora property"), the motion requested the release of all of Jarvis' personal and real property subject to forfeiture, not only the Mora property.[1] On January 13, 2006, the Government moved to strike Attorneys Gorence and Kennedy's motion to release property on the grounds that, pursuant to Local Rule 44.1, they were not eligible to appear on Jarvis' behalf.

On January 19, 2006, the Court held a hearing on Attorney Rosenstein's motion to withdraw as counsel, Jarvis' motion to release assets as filed by Gorence and Kennedy, and the Government's motion to strike. At that hearing, Rosenstein represented to the Court that two attorneys from the CJA complex litigation panel, Mr. Joe Romero and Mr. Billy Blackburn, were willing to represent

---

[1] Jarvis has argued that the January 9, 2006 motion to release assets implies that Gorence and Kennedy would have entered their appearance for Jarvis upon the release of only the Mora property. However, Paragraphs 4 and 5 of that motion clearly argue that Jarvis was entitled to a hearing to determine that the Government improperly restrained both the real property in Mora County as well as all of Jarvis' other assets, including bank accounts and real property in other locations. Nothing in the motion indicates that Gorence and Kennedy would have accepted the representation of Jarvis if only the Mora property had been released. This Court has reached the same conclusion on more than one occasion. *See, e.g.,* Doc. Nos. 1182, 1217.

Jarvis.  In addition, Gorence informed the Court that he was unwilling to represent Jarvis as a CJA appointed attorney, but rather would do so only as retained counsel.  The Court granted Rosenstein's motion to withdraw, directed that new CJA counsel be appointed for Jarvis, and deferred the issue of releasing Jarvis' assets.  The Court also granted the Government's motion to strike the January 9, 2006 motion to release assets on the grounds that Gorence and Kennedy filed it in violation of the Local Rules.  [Doc. No. 329].  However, the Court granted Jarvis leave to refile the motion after new counsel was appointed and entered his appearance.  The Court late appointed CJA Attorney Romero to represent Jarvis, who on February 3, 2006, filed a new motion for release of funds [Doc. No. 338].  Unlike the motion filed by Gorence and Kennedy, Romero's motion sought the release of only the Mora property.  The Court denied Romero's motion [*see* Doc. No. 373], at which point Jarvis filed a motion to reconsider.  [Doc. No. 500].

Defendant claims that a Sixth Amendment violation occurred when the Court denied his February 3, 2006 [Doc. No. 338], and May 29, 2006 [Doc. No. 500] motions, which requested the release of only one subset of Defendant's assets—the real property in Mora County, New Mexico.  In his motion to dismiss, Defendant contends that if the Court had granted these motions to release the Mora property only, he could have hired his counsel of choice, Mr. Gorence and Mr. Kennedy.  On September 1, 2006, Defendant filed an interlocutory appeal of this Court's Order [Doc. No. 654] denying May 29, 2006 motion for release of the Mora property.  On September 24, 2007, this Court received the Tenth Circuit Court of Appeals' opinion reversing this Court's decision on grounds not argued before this Court and ordering that the United States remove the notice of lis pendens it recorded against Defendant's property in Mora County.  Although he now has assets with which to retain private counsel, Defendant contends that his right to choice of counsel has been irrevocably violated because Mr. Gorence, who entered his appearance for co-defendant Dennis Wilson, is no

3

longer available to represent him.[2]  Defendant contends that had the Court granted his motions [Doc. Nos. 338 and 500] in early 2006 to release the Mora County property, he could have retained Mr. Gorence and his right to choice of counsel would have been preserved.  Accordingly, Defendant has moved to dismiss the indictment on grounds of irreparable structural error.

## DISCUSSION

Jarvis argues for dismissal on four grounds.  First, he contends that by erroneously denying his motion to release lis pendens on the Mora property, the Court violated his Sixth Amendment right to counsel of his choice.  According to Jarvis, that violation resulted in irreparable structural error because Gorence, who now represents co-defendant Dennis Wilson, is no longer available to represent Jarvis.  Second, Jarvis argues that the conditions of his pretrial confinement resulted in a violation of his Sixth Amendment right to the assistance of counsel.  Third, in his reply brief [Doc. No. 1113], Jarvis argues that another constitutional violation took place when the Government communicated with Gorence regarding whether he would have undertaken the representation of Jarvis based only upon the release of the Mora Property.[3]  Jarvis contends that this "interference" with his attorney-client relationship with Gorence resulted in a third violation of his Sixth Amendment rights.  Finally, Jarvis contends that the foregoing alleged errors, taken together, have resulted in an irreparable violation of his Fifth Amendment right to a fair trial.  According to Jarvis, the only cure for these violations of his rights is dismissal of the indictment with prejudice.

_____

[2] Neither Jarvis nor the Government has mentioned the current availability of Mr. Kennedy.

[3] Many of the other new issues raised in Jarvis' reply have already been addressed by this Court, such as whether or not Jarvis and Gorence ever established an attorney-client relationship [Doc. Nos. 1138, 1169], the relevance, admissibility, and propriety of Gorence's testimony as to the circumstances and nature of his relationship with Jarvis [Doc. Nos. 1165, 1166, 1217], and Jarvis' waiver of Gorence's conflict of interest [Doc. Nos. 1145, 1138, 1165, 1169, 1216].

4

I.    **RIGHT TO COUNSEL OF CHOICE**

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence."  The Sixth Amendment's right to counsel encompasses two distinct rights: a right to adequate representation and a right to choose one's own counsel.  *Daniels v. Lafler*, 501 F.3d 735, 738 (6th Cir. 2007).  The Sixth Amendment right to choice of counsel is not limitless; one's chosen counsel must also be willing and available to accept the representation.  *See, e.g., Wheat v. United States*, 486 U.S. 153, 159 (1988).  "[A] defendant may not insist on representation by an attorney he cannot afford or who for other reasons declines to represent the defendant."  *Id*. As the Supreme Court has explained, "the Sixth Amendment guarantees the defendant the right to be represented by an otherwise qualified attorney *whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds*." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624-625 (1989) (emphasis added).  In other words, a defendant has no right to "choose" an attorney who is not willing to undertake the representation for financial or other reasons, and there can be no improper interference with a defendant's unilateral choice of an attorney who does not wish to represent him.

Jarvis contends that in denying his motion to release the Mora property[4], the Court interfered

---

[4] As the Court has already discussed, it never ruled on the merits of Jarvis' first motion to release assets [Doc. No. 314], filed by Gorence and Kennedy, which requested the release of all of Jarvis' property, not just the Mora property.  Instead of ruling on the merits, the Court struck the motion from the record because it was filed in violation of the Local Rules.  Although apparently Jarvis traces the alleged constitutional violation to the date when the Court struck his motion, Jarvis never challenged the Court's decision to strike Doc. No. 314, either through a motion to reconsider or through an interlocutory appeal.  Instead, Jarvis filed a new motion to release assets [Doc. Nos. 338], and a motion to reconsider denial of that motion [Doc. No. 500], both of which discuss only the Mora property.  Jarvis' Notice of Appeal [Doc. No. 666] specifically states that he is appealing from this Court's Memorandum Opinion and Order [Doc. No. 654] denying Jarvis' motion to reconsider [Doc. No. 500] the Court's decision [Doc. No. 373] denying Jarvis' motion for release of funds [Doc. No. 338], which applied only to the Mora

with his Sixth Amendment right to hire counsel of his choice, the team of Robert Gorence and Paul

Kennedy.  Jarvis contends that if the Court had ordered the United States to lift the notice of lis

pendens on the Mora property, Jarvis would have had funds with which to retain Gorence and

Kennedy, who were apparently unwilling to represent him as appointed counsel under the Criminal

Justice Act.  *See* Transcript of Jan. 19, 2006 hearing at p. 6.[5]

The evidence in the record demonstrates that as a prerequisite to embarking on the

representation of Defendant, Mr. Gorence and Mr. Kennedy required the release of <u>all</u> the property

listed in Doc. No. 314, not just the Mora property.  First, the motion itself requests the release of all

property, both personal and real, belonging to Jarvis so that he could retain Gorence and Kennedy.

Paragraph 5 of the motion specifically discusses Jarvis' bank accounts and real property located in

Bernalillo County, New Mexico, and requests their release.  Nothing in the motion indicates that a

release of only the Mora property would be sufficient to secure representation by Gorence and

Kennedy.  Second, at the January 19, 2006 hearing, Gorence stated that he believed that "Jarvis has

the financial wherewithal to hire us *if the Court were to grant the motion to release assets that have*

*been seized*."  Transcript of Jan. 19, 2006 hearing at p. 7 (emphasis added).   This statement implies

that it would require all of Jarvis' seized assets listed in the motion to pay for representation by

Gorence and Kennedy.  In addition, Gorence made it clear that he had no interest in representing

property.  Like the Notice of Appeal, the Tenth Circuit's decision [Doc. No. 1065] on Jarvis'
appeal discusses only the notice of lis pendens on the Mora property—it makes no mention of
this Court's decision to strike Doc. No. 314 from the record.  However, all of this may be moot.
Jarvis does not contend that this Court interfered with his right to counsel of choice by refusing
to release anything other than the Mora property.  It appears to be Jarvis' position that he could
have retained Gorence based upon the Mora property alone.

[5] Indeed, Mr. Gorence expressly stated at the hearing held on January 19, 2006 that he
would not undertake to represent Defendant as an appointed attorney under the Criminal Justice
Act.

Jarvis on other terms, such as appointed counsel under the Criminal Justice Act. Implicit in this statement is that Gorence required a specific financial arrangement in order to represent Jarvis. Third, Gorence and Kennedy filed a Limited Entry of Appearance [Doc. No. 1095] representing to the Court that if their motion was successful, they would enter their appearance on behalf of Jarvis. The Limited Entry of Appearance does not state that they would undertake the representation if their motion was granted only in part. Fourth, at a hearing held November 20, 2007, Gorence testified under oath that he would not have undertaken the representation of Jarvis based solely on the Mora property, as its value was not adequate to secure his services. This Court found Gorence's testimony to be credible and concluded that he was not impeached by extraneous evidence. *See* Doc. Nos. 1166, 1217.

The Court concludes that its ruling denying Jarvis' motion to release the Mora property [Doc. No. 338] did not interfere with Jarvis' Sixth Amendment right to counsel of his choice. Clearly, Jarvis wished to hire Gorence and Kennedy as his chosen counsel. However, Jarvis' unilateral desire does not constitute a "choice" within the meaning of the Sixth Amendment; rather, the attorney must choose to represent the client as well. The record shows that Gorence and Kennedy were willing to undertake the representation only if certain financial prerequisites were satisfied—the release of all of Jarvis' property. The record also shows that Gorence and Kennedy were unwilling to represent Jarvis on lesser terms, such as release of the Mora property only or as appointed CJA counsel. However, Jarvis has never filed a motion to release restrained assets other than the Mora property upon which this Court has issued a substantive ruling. The only motion to question the restraint of Jarvis' other assets, Doc. No. 314, was stricken from the record, and the Court never reached the merits. Jarvis has not appealed that ruling, nor has the Tenth Circuit held

7

it to be erroneous.[6]  Thus, the Court concludes that its denial of Jarvis' motion to release only the

Mora property did not interfere with Defendant's choice of counsel, because even if the Court had

granted that motion, Jarvis still would not have had adequate assets to retain Gorence and Kennedy.

In support of his choice of counsel argument, Jarvis relies heavily upon *United States v.

Gonzalez-Lopez*, 548 U.S. 140, 126 S. Ct. 2557 (2006).  However, that case is unavailing.  In

*Gonzalez-Lopez*, the respondent retained attorney Low from California to represent him in his

Missouri criminal trial.  *Id*. at 2560.  The trial court erroneously denied Low's various motions to

appear *pro hac vice*.  *Id*. at 2561.  Despite the fact that Low traveled to Missouri for pretrial hearings

and appeared at trial ready to represent the respondent, the trial court prohibited him from sitting at

counsel table or from even communicating with respondent's substitute counsel.  *Id*. at 2560.  Citing

*Caplin & Drysdale*, 491 U.S. at 624-25, the Supreme Court observed that a criminal defendant has

the right to representation by a qualified attorney who is willing to represent him and whom he can

afford.  *Gonzalez-Lopez*, 126 S. Ct. at 2561.  Thus, the court concluded that Gonzalez-Lopez had

been erroneously deprived of his chosen counsel.

*Gonzalez-Lopez* is distinguishable, however.  In that case, attorney Low was ready, willing,

and able to represent the respondent all the way through his trial, and Low's willingness was not

contingent upon some future event.  In addition, it was implicit that the respondent and Low had

reached an agreement on Low's compensation.  The respondent retained Low, who appeared to be

committed to the representation, yet the trial court prevented the respondent from using his chosen

---

[6] Jarvis contends that the Tenth Circuit "implicitly" held that a Sixth Circuit choice of counsel violation has occurred in this case.  *See* Doc. No. 1076 at pp. 1, 5.  The Court disagrees. The Tenth Circuit addressed only whether the Government's use of the notice of lis pendens violated New Mexico state law and explicitly declined to address the Sixth Amendment issue. Doc. No. 1065 at p. 12 n.6.

counsel.  By contrast, in this case Gorence and Kennedy never committed to representing Jarvis through trial.  Rather, their continued representation was contingent upon Jarvis' ability to pay through release of all the assets listed in their motion.  In denying the release of the notice of lis pendens on the Mora property, this Court did not interfere with Jarvis' choice of counsel, because Gorence and Kennedy were not willing to represent him based on the release of that property alone—they wanted more money.  *See Wheat v. United States*, 486 U.S. 153, 159 (1988) (stating that a defendant has no right to representation by an attorney that he cannot afford or who does not wish to represented him).  While Gorence and Kennedy presumably were ready to commence the representation of Jarvis if all of his assets had been released, the Court struck that motion for procedural reasons, a decision that Jarvis has not challenged and that has not been found to be erroneous.

There has been no violation of Jarvis' right to counsel of choice.

## II.    RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL

Jarvis contends that he has been deprived of his Sixth Amendment right to the assistance of counsel such that the indictment should be dismissed with prejudice.  Jarvis' argument stems from the conditions of his administrative segregation at the Regional Correctional Center from February 7, 2006 until approximately August 21, 2006.  On February 14, 2006, Jarvis filed his "Motion to End Unconstitutional Conditions of Confinement," [Doc. No. 342].  Nine days later, on February 23, 2006, the Court held a hearing on the motion, at which point the parties stipulated that the issue of Jarvis' access to counsel during his confinement had been cured.  *See* Doc. Nos. 356, 373.  Thus, the Court denied Jarvis' motion.  *See* Doc. No. 373.  Then, on May 27, 2006, Jarvis filed a motion to reconsider this ruling [Doc. No. 499], arguing that the conditions of his administrative segregation unfairly limited his ability to meet with his investigator and had adversely affected his mental state,

9

which in turn diminished his ability to assist in his own defense. The Court held an evidentiary hearing and on August 21, 2006 entered an Order granting the motion to reconsider.

In that Order, the Court concluded that "the Defendant has presented sufficient evidence to demonstrate that the current conditions of administrative segregation are interfering with his Sixth Amendment right to prepare his defense with the effective assistance of his counsel." Doc. No. 654 at p. 1. The Court reasoned that certain physical and time restrictions made it very difficult for Jarvis to communicate with his counsel over the phone, or to take notes or look at documents while doing so. *Id.* at p. 2. The evidence showed that Jarvis could call only his attorney, Joe Romero, and only on his office phone; he could not call Romero on his cell phone or call his investigator. Jarvis' calls were limited to fifteen minutes, and he had to kneel on the floor in order to speak through the earpiece, which was pushed through a slot in the cell door. *Id. See also* Transcript of Aug. 11, 2006 hearing at pp. 25, 28-29. On the other hand, the evidence also showed that there was no limit to Jarvis' ability to meet with his attorneys and investigator in person, and that he had the ability to use a computer to review discovery in his case for several hours per day. Doc. No. 654 at p. 2; Transcript of Aug. 11, 2006 hearing at pp. 30-31. Finally, Jarvis placed evidence before the Court showing that as a result of the conditions of his confinement, Jarvis had "adjustment disorder with mixed moods and insomnia, and that Defendant's concentration and memory [were] impaired," thereby "hampering" his ability to participate in his own defense. Doc. No. 654 at p. 2. Based on this Order, Jarvis now argues that the Court has already ruled that he has been deprived of the effective assistance of counsel and that the appropriate remedy is dismissal of the indictment with prejudice.[7]

---

[7] During the period in 2006 when he was in administrative segregation and the issue of the conditions of his confinement were before this Court, Jarvis never argued that those

In *United States v. Cronic*, 466 U.S. 648 (1984), the Supreme Court "identified three situations implicating the right to counsel that involved circumstances 'so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.' " *Bell v. Cone*, 535 U.S. 685, 695 (2002) (quoting *Cronic*, 466 U.S. at 658-59). Under these scenarios, a defendant need not demonstrate actual prejudice; rather, prejudice is assumed and dismissal is appropriate.

> First and "[m]ost obvious" was the "complete denial of counsel." *Id.*, at 659.... A trial would be presumptively unfair, we said, where the accused is denied the presence of counsel at "a critical stage," *id.*, at 659, 662, ... a phrase we used in *Hamilton' v. Alabama*, 368 U.S. 52, 54, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961), and *White v. Maryland*, 373 U.S. 59, 60, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963) ( per curiam), to denote a step of a criminal proceeding, such as arraignment, that held significant consequences for the accused. Second, we posited that a similar presumption was warranted if "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Cronic*, supra, at 659.... Finally, we said that in cases like *Powell v. Alabama*, 287 U.S. 45, 53, 53 S.Ct. 55, 77 L.Ed. 158 (1932), where counsel is called upon to render assistance under circumstances where competent counsel very likely could not, the defendant need not show that the proceedings were affected.

*Id.* at 695-96 (citing *Cronic*, 466 U.S. at 659-62) (footnote omitted). *Cronic* applies "when ... the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial," 466 U.S. at 659-660. In this case, Jarvis argues that he falls under the first category—that he

---

conditions resulted in a total deprivation of his right to the effective assistance of counsel justifying dismissal of the indictment, nor did he bring the issue before the Tenth Circuit. Instead, he waited until more than a year after his administrative segregation ended—long after his complaints had been remedied—and then only raised the issue in his October 4, 2007 motion to dismiss. Although the Court does not decide the motion to dismiss on this ground, these facts suggests that Jarvis does not consider this argument, by itself, to justify the dismissal of the indictment.

suffered a "complete denial of counsel"[8] during "a critical stage" of the proceeding against him. *See* Doc. No. 1113 at p. 5. As the Supreme Court explained, in order to warrant this presumption, the defendant must demonstrate that he suffered the "complete denial of counsel," that is, when "counsel [is] either totally absent, or prevented from assisting the accused during a critical stage of the proceeding," *id.* at 659, and n. 25.[9] The Supreme Court relied, in part, upon its decision in *Powell v. Alabama*, 287 U.S. 45 (1932), in which the defendants were arraigned without counsel; instead, the Alabama trial judge appointed "all the members of the bar" for purposes of arraignment. *Id.* at 53. "Whether they would represent the defendants thereafter if no counsel appeared in their behalf, was a matter of speculation only, or, as the judge indicated, of mere anticipation on the part of the court." *Id.* at 56. The court set the trial to begin a mere six days after the arraignment, providing the defendants (who were poor and uneducated) with little opportunity to obtain counsel. A lawyer from Tennessee appeared on behalf of persons "interested" in the defendants, but stated that he had not had an opportunity to prepare the case or to familiarize himself with local procedure, and therefore was unwilling to represent the defendants on such short notice. *Id.* at 55. The Alabama trial court decided that the Tennessee lawyer would represent the defendants, with whatever help the local bar could provide. *Id.* at 56. As the Supreme Court observed, "during perhaps the most critical period of the proceedings against these defendants, that is to say from the time of their

---

[8] Jarvis appears to dispute that the denial of counsel must be "complete." However, the Supreme Court uses that word in both *Cronic* and *Bell*, and as the following discussion of cases demonstrates, more than a partial deprivation of access to counsel is required.

[9] The second category discussed in *Cronic*, in which "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing" is also subject to the same stringent standard. That is, in order to demonstrate that the case should be dismissed, the defendant must demonstrate a *complete* failure by his counsel. *Bell*, 535 U.S. at 686 ("Under *Cronic*, the attorney's failure to test the prosecutor's case must be complete.").

arraignment until the beginning of their trial, when consultation, thorough-going investigation and preparation were vitally important, the defendants did not have the aid of counsel in any real sense . . . ." *Id*. at 57. The court concluded that the defendants' constitutional rights had been violated. *Id*. at 59.

In *Geders v. United States*, 425 U.S. 80 (1976), the Supreme Court considered whether the petitioner, a defendant in a federal criminal prosecution, had been deprived of the assistance of counsel during his trial. *Id*. at 81. The defendant elected to testify in his own defense. His attorney concluded the direct examination of the defendant at the end of the day, but when the court recessed for the night, the prosecutor asked the judge to instruct the defendant not to discuss the case with anyone overnight, including his attorney. *Id*. at 82. Defendant's counsel objected, asking for permission to confer with his client during the recess. *Id*. The trial court overruled that objection. In finding that the trial court had erred, the Supreme Court reasoned that recesses during the course of a trial typically afford an attorney and his client the opportunity to review strategies and make tactical decisions, as well as the opportunity to discuss the significance of the day's events. *Id*. at 88. The court also observed that "[t]he right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel . . . ." *Id*. at 88-89 (quoting *Powell*, 287 U.S. at 68-69). Thus, the Supreme Court held that the trial court's order preventing the defendant from consulting his attorney "about anything" during the 17-hour overnight trial recess between his direct and cross-examination impinged upon the defendant's Sixth Amendment right to the assistance of counsel. *Id*. at 91.

In *Mitchell v. Mason*, 325 F.3d 732 (6th Cir. 2003), a case relied upon by Jarvis, the petitioner's attorney met with him for no more than six minutes over the seven-month period before his criminal trial. *Id*. at 742. Moreover, the attorney had been suspended from the practice of law

for the entire month preceding the trial. *Id*. The court concluded that the weight of the evidence demonstrated that there was no consultation between petitioner and his attorney prior to trial, *id*. at 747, and that this defect must be viewed in light of the standards set forth in *Cronic*. *Id*. at 748.

Thus, in order to evaluate Jarvis' argument that the indictment should be dismissed with prejudice, the Court must determine first if Jarvis suffered a complete denial of counsel, and if so, whether that complete denial occurred during a critical stage of the proceedings against him. In light of the foregoing authorities to the facts of this case, the Court concludes that Jarvis never suffered a "complete denial of counsel" requiring a presumption of unfairness as contemplated by *Cronic* and other cases such that he would be entitled to dismissal of the indictment against him. Indeed, the evidence in the record shows that at no point was Jarvis entirely deprived of the opportunity to communicate with his attorney, nor were he and his counsel unable to conduct an investigation of the charges against him. Rather, the evidence demonstrates that during his administrative segregation, no limits were placed on Jarvis' ability to meet with his counsel or investigator in person. *See* Transcript of Aug. 11, 2006 hearing at p. 25, 30-31; August 16, 2006 Letter from Steven Kotz to the Court, attached as Ex. 2 to Doc. No. 1095. Jarvis had access to a computer to review discovery in his case. Doc. No. 654 at p. 2; Transcript of Aug. 11, 2006 hearing at p. 30. In addition, at all points Jarvis also had the right to talk to his lawyer on the telephone, albeit with certain restrictions. *Id*. at p. 25, 57-58; August 16, 2006 Letter from Steven Kotz to the Court, attached as Ex. 2 to Doc. No. 1095. While in its August 21, 2006 Order the Court concluded that in a case of this size and complexity that those telephone restrictions had an adverse affect his ability to fully cooperate with his attorneys in reviewing documents and discovery in order to prepare his own defense, Doc. No. 654 at p.2 and Transcript of Aug. 11, 2006 hearing at p. 62-63, this Court never found—and still does not find—that Jarvis suffered a complete deprivation of communication

14

with counsel or the ability to assist in his own defense.  *See* Doc. No. 1216 at p. 15 n. 7, and p. 18.

Finally, though Jarvis did present evidence that the conditions of his confinement were having a

negative impact on his mental state which had resulted "adjustment disorder with mixed moods and

insomnia" as well as impairment of his concentration and memory, *id*. at p. 2, there is no evidence

in the record (and Jarvis presents none) that he has ever been so mentally incapacitated that he could

offer his counsel no assistance in preparing his defense.  Thus, this case stands in stark contrast to

*Powell*, *Geders*, and *Mitchell*, in which the defendants suffered an utter and complete deprivation

of the right to counsel.  The record in this case demonstrates that Jarvis never suffered a deprivation

of that magnitude.  While administrative segregation imposed some significant restrictions on his

*telephonic* communications that this Court found presented obstacles to his right to counsel (and

therefore ordered that they be cured), Jarvis always had at least some telephonic contact with his

lawyer, and he had the unfettered right to meet with his lawyer in person.  Thus, he was never

completely deprived of his right to counsel.  "Not every restriction on counsel's time or opportunity

to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's

Sixth Amendment right to counsel."  *Morris v. Slappy*, 461 U.S. 1, 11 (1983).  Under these

circumstances, the Court concluded that Jarvis has failed to demonstrate that he suffered a "complete

denial of counsel" under *Cronic*.  Therefore, the Court need not reach the second part of the inquiry,

that is, whether such a denial took place at a "critical stage" of the proceedings.

**III.     INTERFERENCE WITH ATTORNEY-CLIENT RELATIONSHIP**

        In responding to Defendant's motion to dismiss, the United States subpoenaed Mr. Gorence

to testify as to whether he and Mr. Kennedy would have accepted the representation of Defendant

based upon the release of the Mora County property alone.  The United States proffered Mr.

Gorence's testimony that he and Mr. Kennedy would not have proceeded with the representation

unless all of Defendant's assets listed in Doc. No. 314 had been released. The Defendant objected

to Mr. Gorence's testimony and moved to quash the subpoena on grounds of attorney-client

privilege (*see* Doc. No. 1129).[10] At a hearing held November 20, 2007, the Court denied the motion

to quash but ruled that the United States could question Mr. Gorence only as to one narrow question

that would not reveal confidential attorney-client communications—whether he would have

continued with his representation of Defendant if only the Mora property had been released, or if

he would have required the release of all the property listed in Doc. No. 314. *See* Transcript of Nov.

20, 2007 hearing at pp. 26, 40-41.

In his Reply brief [Doc. No. 1113], Jarvis argues for the first time that he suffered a third

violation of his Sixth Amendment rights because "the United States intentionally interfered with Mr.

Jarvis' attorney-client relationship in speaking with Mr. Robert Gorence . . . ." *Id*. at p. 6. Jarvis

apparently takes issue with the fact that counsel for the Government contacted attorney Gorence and

asked him whether he would have accepted the representation of Jarvis if only the Mora property

had been released, as well as the fact that the Government subpoenaed Gorence to testify on that

subject. As evidence of the alleged interference, Jarvis relies upon the following statement from the

Government's response brief [Doc. No. 1095]: "At a hearing on this matter, the United States

anticipates that Mr. Gorence would testify that the Mora property alone was insufficient to pay for

his and Mr. Kennedy's representation of Jarvis, and that he and Mr. Kennedy would not have

---

[10] Just before the November 20, 2007 hearing, Chief United States Magistrate Judge
Lorenzo Garcia ruled that Mr. Gorence and Defendant did engage in privileged communications
made for the purpose of securing legal representation; that after their motion for release of assets
was stricken, Mr. Gorence and Mr. Kennedy took no further action on behalf of Mr. Jarvis and
never entered into an agreement to represent Mr. Jarvis; that Mr. Gorence and Mr. Kennedy
offered no legal advice, filed no pleadings, conducted no investigation for Mr. Jarvis and did not
correspond with him further; and that neither attorney told Mr. Jarvis that they were representing
him.

entered their appearances on Jarvis's behalf based solely on the removal of the notices of lis pendens on the Mora property." *Id*. at ¶ 8.

Jarvis argues that the foregoing demonstrates that the Government is guilty of prosecutorial misconduct, relying upon *Shillinger v. Haworth*, 70 F.3d 1132 (10th Cir. 1995). In *Shillinger*, the respondent had been arrested and charged with a violent crime. He remained in custody while he awaited trial, and a deputy sheriff was present for all of his pretrial preparatory meetings with his attorney. *Id*. at 1134. The deputy sheriff, therefore, was privy to the privileged conversations between attorney and client. *Id*. The prosecutor admitted that he initiated conversations with the deputy sheriff in order to obtain information about the respondent's preparatory sessions with his counsel and that he used that information in his cross examination of the respondent at trial. *Id*. at 1135. The Tenth Circuit concluded that the prosecutor's intrusion into the attorney-client relationship violated respondent's Sixth Amendment rights. *Id*. at 1138. Then, the court announced the following rule:

> Because we believe that a prosecutor's intentional intrusion into the attorney-client relationship constitutes a direct interference with the Sixth Amendment rights of a defendant, and because a fair adversary proceeding is a fundamental right secured by the Sixth and Fourteenth Amendments, we believe that absent a countervailing state interest, such an intrusion must constitute a per se violation of the Sixth Amendment. In other words, we hold that when the state becomes privy to confidential communications because of its purposeful intrusion into the attorney-client relationship and lacks a legitimate justification for doing so, a prejudicial effect on the reliability of the trial process must be presumed. In adopting this rule, we conclude that no other standard can adequately deter this sort of misconduct.

*Id*. at 1142.

This case, however, does not fit under the rule announced in *Shillinger*. Unlike that case, here there is absolutely no evidence in the record, beyond speculation by Jarvis, that "the state

[became] privy to confidential communications" between Gorence and Jarvis.  The evidence before

the Court is that counsel for the Government questioned Gorence as to whether he would have

continued his representation of Jarvis based solely on the value of the Mora property; the record

reflects no evidence of additional substantive communications between government attorneys and

Gorence.  And, as this Court has held on multiple occasions, Gorence's statements as to his own

state of mind and financial requirements regarding the representation do not constitute privileged

or confidential communications between himself and Jarvis.  Therefore, on the current record the

Court concludes that, unlike the facts in *Shillinger*, the Government did not intrude into the attorney-

client relationship between Jarvis and Gorence.  Second, even if the Government had intruded on

that relationship, it would have had a legitimate justification for doing so, as this Court has pointed

out.  *See* Doc. No. 1145.  Specifically, Jarvis filed a motion to dismiss with prejudice on the grounds

that the United States has interfered with his Sixth Amendment right to choice of counsel, resulting

in irreparable error.  In doing so, he directly raised the question of the scope of his attorney-client

relationship with Mr. Gorence and the question of whether the representation was contingent, or if

it would have gone forward but for the actions of this Court and the United States.  At the same time,

Defendant wished to prohibit the United States from developing any argument in opposition,  silence

Mr. Gorence on that issue, and prevent the Court from making the factual findings necessary to that

determination.  However, the privilege cannot be used as both a shield and a sword in this manner.

*United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) ("The attorney-client privilege cannot

at once be used as a shield and a sword.  A defendant may not use the privilege to prejudice his

opponent's case or to disclose some selected communications for self-serving purposes.  Thus, the

privilege may implicitly be waived when defendant asserts a claim that in fairness requires

examination of protected communications.") (internal citations omitted).  Here, the Government was

justified in approaching Gorence because Jarvis opened the door on the issue of Gorence's intent.

Thus, the Court finds that there has been no Sixth Amendment violation under *Shillinger*.

Jarvis' reliance on *State v. Wong*, 40 P.3d 914, 923 (Haw. 2002), a case not binding upon

this Court, is unavailing as well. In that case, the court held that

> when a prosecutor seeks arguably privileged testimony, the
> prosecutor must either (1) give notice to the person who might claim
> the privilege and the person's counsel, so that the person or the
> person's attorney can seek judicial review of any claim or privilege
> or waive the privilege, or (2) give notice to the person's counsel and,
> if the person's counsel does not raise the privilege and seek judicial
> review, the prosecutor must seek the court's ruling on the privilege
> issue.

*Id.* This holding is inapposite because, once again, Gorence's testimony regarding his intentions

with respect to future representation of Jarvis is not privileged, and because the United States did

give notice to both Jarvis and his current counsel that it intended to call Gorence to testify on that

subject. In short, there was no interference with Jarvis' attorney-client relationship in violation of

the Sixth Amendment.

## IV.    COMPOUND FIFTH AMENDMENT VIOLATION

Jarvis argues that the foregoing alleged Sixth Amendment violations, taken together, rise to

a violation of his Fifth Amendment right to due process. As discussed above, Jarvis has suffered

no deprivation of Sixth Amendment rights justifying dismissal of the indictment, and therefore there

can be no "compound" Fifth Amendment violation.

In light of the foregoing,

**IT IS THEREFORE ORDERED** that *Defendant Dana Jarvis' Motion to Dismiss for Irreparable Structural Error & Additional Fifth & Sixth Amendment Violations* [Doc. No. 1076] is **DENIED**.

_____
**UNITED STATES DISTRICT JUDGE**