IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.

                      No:    05-CR- 1849 (JH)

DANA JARVIS,

      Defendant.

### DEFENDANT DANA JARVIS' MOTION FOR RECONSIDERATION OF THE DENIAL [Doc. 1217] OF HIS APPEAL TO THE DISTRICT COURT OF THE CHIEF MAGISTRATE JUDGE'S REPORT [Doc. 1166] ON ORDER OF DESIGNATION [Doc. 1158]

      Defendant, Dana Jarvis, through counsels of record Gary Mitchell and Jody Neal-Post, hereby seeks reconsideration of the district court's denial of his appeal of the Chief Magistrate Judge's Report on Order of Designation [Doc. 1166], which was designated by this Court [Doc. 1158] upon Defendant's Motion [Doc. 1154].

      Mr. Jarvis is constitutionally entitled to a *de novo* review of the Magistrate Judge's factual findings by an Article III judge. This review has not occurred here, due to the unusual circumstance of the materials subject to such review being confidential and sealed. By this Motion, Mr. Jarvis formally requests his full Article III rights. As grounds, Mr. Jarvis states as follows.

### Introduction

      This Court designated to Chief Magistrate Garcia "to conduct an *in camera* review of the material set forth in Defendant's privilege log for the purpose of determining whether the materials detailed in the privilege log rebut or impeach Mr. Gorence's testimony that he would not have represented Defendant Jarvis if the Court had released only [Mr.] Jarvis' Mora County property." [Doc. 1158 at 2.]

Upon the Defendant's appeal of the Magistrate Judge's adverse ruling, this Court entered its own order affirming the Magistrate Judge's ruling that the materials submitted *in camera* did not rebut or impeach the witness Mr. Gorence. *See* Doc. 1217, p.2. *De novo* review of "the entire evidence," as *Allen v. Sybase, Inc.,* characterized the clearly erroneous standard, is necessary when the defendant seeks it. *Allen v. Sybase, Inc.,* 468 F.3d 642, 658 (10th Cir. 2006); *Peretz v. United States*, 501 U.S. 923, 939 (1991)(*de novo* review required when requested). Here, the "entire evidence" would by necessity include an Article III judge's review of the actual privileged materials. The review is further required by the Court's error of law regarding the sequence of adversarial proceedings involved in the "procedural mechanism" of a *Jones* hearing to obtain pretrial release of assets.

### Mr. Jarvis is Entitled to Article III *De Novo* Review

A criminal defendant has the due process right to have an Article III judge preside over his case, and over all critical aspects of a case. For a Magistrate Judge's determination[1] to comport with the right to an Article III judge determination, there must be two things (1) consent, and (2) referral conditioned upon the fact that an Article III judge will review the factual basis of the Magistrate judge's determinations, directly and *de novo*. *United States v. Ciapponi,* 77 F.3d 1247 (10th Cir. 1996). In *Ciapponi,* the Tenth Circuit held that all of the record and proceedings before the Magistrate Judge must be reviewed *if the defendant so demands. Ciapponi,* 77 F.3d at 1251. *Black's Law Dictionary* defines *de novo* as "Anew, afresh, a second time" and "Same as if it had not been heard before." *Black's Law Dictionary* 6th ed. 435 (1990).

Mr. Jarvis is entitled to a *de novo* review of the factual material reviewed by the Magistrate Judge under his rights to due process and Article III adjudication. "Most notably, Article III judges cannot delegate to magistrate judges final authority over some important issue in a case, as only

---

[1] Federal magistrate judges are not empowered to exercise judicial functions under Article III of the Constitution. Instead, their authority is that conferred by Congress under the Magistrates Act, 28 U.S.C. § 636. The Act enumerates certain duties, excepts others, and provides that a "magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." § 636(b)(3).

2

Article III judges, not their adjuncts, have the power to dispose of cases or controversies." *United States v. Dees,* 125 F.3d 261, 268 (5th Cir. 1997). "For this reason, the Supreme Court has stressed that the reviewability of a magistrate judge's actions is a critical factor in considering the propriety of an Article III judge's delegation of authority to a magistrate judge." *Id.*, *citing Peretz,* 501 U.S. at 937-39). Even if a "'controversial matter might be delegated to a magistrate,'" the district court must retain the power to review *de novo* the magistrate judge's actions, so that there is no "'threat to the judicial power or the independence of judicial decisionmaking that underlies Article III.'" *Peretz,* 501 U.S. at 938, quoting *United States v. Raddatz,* 447 U.S. 667, 685-86 (1980) (Blackmun, J., concurring)). When a magistrate judge possesses final decision-making authority over a substantial issue in a case, an Article III problem arises. *See Raddatz,* 447 U.S. at 683.

No *de novo* review, and no meaningful review, is possible on the question at issue here, because the factual material on which the Magistrate Judge relied is sealed and confidential. Effectively then, the Article III problem is that the Magistrate judge has had final authority over a substantial issue in this case, contrary to *Raddatz*. The circumstance which led up to the 636(B)(1)(A) designation here was a situation where Defense counsel attempted to cross examine the defendant's former attorney without revealing privileged material in a cross where, from the outset, Mr. Jarvis' counsel advised the court that he would likely be ineffective due to his inability to utilize the privileged materials for impeachment. *TP* 11/20/07 (J. Herrera), at 58:22-59:4.

The cross examination of the government's called witness, Mr. Gorence, was halted by the objection of the United States to the Defense question on cross to Mr. Gorence, "Do you recall reviewing an indictment with him [Mr. Jarvis]?" *TP* 63:8-9. Notably, Mr. Jarvis' briefings had asserted repeatedly that Mr. Gorence had reviewed the indictment with Mr. Jarvis, contrary to Mr. Gorence's assertion in his conflict Motion on behalf of Co-Defendant Wilson that he had not reviewed the indictment with Mr. Jarvis. Doc. 1098. Consequently, the Government was on notice that their witness could be impeached at minimum and could possible perjure himself if the witness were allowed to answer the question posed by defense counsel. Consistent with Defense counsel's advisement to the Court at the outset that cross would be inadequate without the privileged

3

materials, defense counsel was unable to impeach Mr. Gorence with the indictment Magistrate Judge Garcia concluded does exist in the privileged materials. Unable to proceed with cross in the open proceedings, defense counsel could not complete the cross examination, nor offer the rebuttal of Mr. Jarvis' former counsel. *TP* 73:20-74:2.

"The entire evidence" entitles Mr. Jarvis to complete the evidentiary portion of the halted cross examination of Mr. Gorence before an Article III judge segregated from the merits of the underlying criminal prosecution. The "entire evidence" also requires Mr. Jarvis be allowed to complete his hearing by calling his own witnesses who could not testify in the open proceeding due to matters of attorney-client and work product privilege, as anything else would be "an inadequate substitute for the Article III judge's actual supervision." *Peretz v. United States*, 501 U.S. 923, 939 (1991). And indeed, the Court's expression of its view of an appropriate proceeding is consistent with this request. From the bench in the November 20, 2007 hearing, the Court stated:

> [M]y goal is to, one, give Mr. Jarvis the opportunity to present evidence that he thinks may be relevant to this issue on the motion to dismiss; and secondly, understanding that some of this information is privileged, I want it to be presented in a way that maintains the privilege, yet provides the government with the opportunity to not only have notice of what the testimony is, but also would give them the opportunity to present whatever evidence they feel they need to.

T/P 77:1-9.

This true and meaningful *de novo* review by an Article III judge would be accomplished by the designation of another Article III judge segregated from the merits of the case and for this limited purpose. Before the designated Article III judge, the Defendant would be allowed to complete the evidentiary portion of his hearing on his Motion to Dismiss in a sealed proceeding wherein the United States participates fully through a special prosecutor, also segregated from the merits of the underlying criminal prosecution.

## **Factual Impossibility on the *Jones* Hearing Issue**

The "*Jones* hearing issue" arises in the context of the United States' purpose in calling Mr. Jarvis' former attorney in these proceedings, Robert Gorence, as a witness for the United States.

4

Ostensibly, Mr. Gorence's testimony was sought by the United States to contradict the written and recorded record of this case, "solely on the question of whether [Mr. Gorence] would have undertaken to represent [Mr.] Jarvis if the notice of *lis pendens* on [Mr.] Jarvis' Mora, New Mexico property had been released while [Mr.] Jarvis' other assets remained frozen." Characterization from Order, Doc. 1217, p. 2.

The Court's Order acknowledges that Mr. Gorence's Motion on behalf of Mr. Jarvis, [Doc. 314] "invokes," as the Court puts it, "the procedural mechanism of a *Jones* hearing." *Id.* The Court's Order finds the Motion seeks more than it asks for on its face, that the motion sought "release of [Mr.] Jarvis' assets so that he may retain private counsel." The Court concludes that "nothing in the motion [Doc. 314] indicates that Gorence would have accepted the representation of [Mr.] Jarvis if only the Mora property had been released. In short, the Court agrees with Judge Garcia's [Magistrate's] conclusion that Gorence's motion sought the release of all of [Mr.] Jarvis' assets."

The Court's Order strains to obtain an outcome that does not follow from the record or from a clear understanding of the "procedural mechanism" of a *Jones* hearing. Mr. Gorence tendered an entry of appearance at hearing on Doc. 314 on January 19, 2006 stating he would enter his appearance "if the court granted his motion [314]." The transcript of the January 19, 2006 hearing at 6:9-15 and 7:13-20 specifically seeks lifting of the *lis pendens* on the substitute Mora properties for the purpose of retaining counsel of choice. *See also USA v. Jarvis*, Brief in Chief, Tenth Circuit 06-2264, pp. 8-10. Mr. Gorence was obviously already representing Mr. Jarvis in the courtroom January 19, 2006. For Mr. Gorence to continue to represent Mr. Jarvis through the multi-step process of obtaining release of assets, the only "procedural mechanism" available in this Circuit was to seek a *Jones* hearing as to property listed in the indictment. The only properties the motion could have effectuated release of on January 19, 2006 *were* the Mora properties, the substitute assets. The Mora properties' release, the record reflects, was to fund representation either in whole or at the least, to continue to litigate for the release of additional assets. When the process of a *Jones* hearing is understood, it is clear that this is the only explanation of what Mr. Gorence was attempting to do within the constraints of this Circuit's law at that moment.

5

A *Jones* hearing is sought by motion asserting two threshold issues, that the defendant has no assets with which to assert his Sixth Amendment right to counsel *and* there is bona fide reason to believe the Court or grand jury erred in finding probable cause that the listed property would be subject to forfeiture upon the defendant's eventual conviction. *United States v. Jones*, 160 F.3d 641, 647-48 (10th Cir. 1998). These are the assertions Doc. 314 made, corroborated by the transcript of the proceedings.

If Mr. Gorence's Motion had been successful, he would have obtained a *Jones* hearing, not a release of all assets. In *Wittig*, the District of Kansas explained:

> In *Jones*, the Tenth Circuit established the following preliminary showing *before* a post-restraint, pretrial adversarial hearing on probable cause could be ordered: 1) defendant has no other assets, other than those restrained, with which to retain private counsel and provide for himself and his family; and 2) a prima facie showing of a bona fide reason to believe the grand jury erred in determining that the restrained assets are proceeds, or traceable proceeds, of the charged offenses.

*United States v. Wittig*, 333 F. Supp. 2d 1048, 1050 (D. Kan. 2004)(italics added).

Mr. Gorence's proffered Entry of Appearance stated that if his motion had been successful, he would have entered his appearance. "Successful" at most on January 19, 2006, would have been obtaining release of the *lis pendens* on the substitute assets to fund the legal representation necessary to proceed on the adversarial *Jones* hearing(s) won by the threshold motion.

The *Jones* hearing, the second and sometimes third hearing in this sequence, would have been the evidentiary hearing where Mr. Gorence represented Mr. Jarvis in proving up the assertions of lack of funds counsel had successfully made threshold showings on at the January 19, 2006 hearing. *Wittig*, 333 F. Supp 2d at 1050. The defendant would also have had the burden to assert the lack of probable cause to believe the named properties were forfeitable. At this point, either in this second or in a third hearing, the government would have been put to its proof of probable cause "to believe that the restrained assets are in fact traceable to or derived from the underlying offense." Only if the

government failed to make this showing could restrained assets named in the indictment be released to the defendant, as occurred in *Wittig*.

The Court's construction of the Motion to find that Mr. Gorence would only enter his appearance if *all* assets were released would require the Motion to be understood that Mr. Gorence was saying he would have litigated at least one or more additional *Jones* hearings to release assets *before* entering his appearance. Clearly the "procedural mechanism" of a *Jones* hearing is a multi-step litigation process which counsel cannot advocate his way through *without* entering an appearance and engaging in substantial briefings, investigations, and oftentimes, in two or more additional adversarial hearings.

Appointed counsel's extensive litigation regarding virtually the same motion filed subsequently at Doc. 338 underscores the substantial nature of litigation to release assets. The Court cannot affirm the Magistrate Judge's conclusion that the release of *all* assets was sought without ignoring the law of the Circuit in *Jones*, and similarly cannot affirm without finding that Mr. Gorence was in violation of his ethical responsibilities if he was asserting he would continue to litigate on Mr. Jarvis' behalf up to and until *all* assets were released, and then only enter his appearance in the criminal matter upon the contingency of all assets being released. *See Seeds v. Lucero*, 207 F. Supp. 2d 1297, 1300 (D.N.M. 2002); *United States v. Rivera*, 775 F.2d 1559, 1561 (11th Cir. 1985)(testimony is incredible if the events could not have occurred); NMRA 16-105(D)(2)(contingency fees prohibited in criminal cases by Rules of Professional Conduct). As the Magistrate Judge's finding is contrary to the law of the Circuit, it cannot be affirmed by this Court.

### The Magistrate Judge Found Significant Contradiction Impeachment, But Erroneously Concluded Mr. Gorence Was Not "Impeached" Based On Misunderstanding That Defense Must Substantively Disprove Gorence.

Impeachment by contradiction or impeachment by specific contradiction as it is sometimes known, is one of the five primary modes of impeachment at trial. Christopher Mueller & Laird

7

Kirkpatrick, *Evidence* § 6.18, at 464-65 (3d. ed. 2003); 1 John W. Strong, McCormick on Evidence § 33 (5th ed. 1999). The five modes of impeachment are (1) attacking a witness's bias, (2) demonstrating defective mental or sensory capacity, (3) showing the witness's character for truthfulness, (4) pointing out inconsistent statements, and *(5) specific contradiction of statements the witness has made in the courtroom. Id.* (emphasis added).

Magistrate Judge Garcia specifically found, and this Court accepted, several instances where the material cataloged in the privilege log impeached Mr. Gorence by specific contradiction:

> (1) Mr. Gorence testified he never received anything from Mr. Jarvis, and offered to describe the entire office record keeping procedure of his office as to how it would have been documented, or the process by which his office opens and tracks a file. TP 62:23- 63:3. Magistrate Judge Garcia reviewed the materials and agreed that they constituted Mr. Gorence's firm's file on Mr. Jarvis' case.
>
> (2) Mr. Gorence testified he never received any documents from Mr. Jarvis. *TP* 62:23- 63:1-3. Mr. Gorence testified he never returned any documents to Mr. Jarvis. *Id.* He testified he did not recall ever returning a file or paperwork to Mr. Jarvis at the end of his representation. Id. 63:4-7. Magistrate Judge Garcia found and this Court affirmed that that the privileged materials show that Mr. Gorence "did in fact receive such materials from Mr. Gorence." Doc. 1217 at 4. Clearly Mr. Gorence or his firm returned a file from Gorence's law firm to Mr. Jarvis with these materials.
>
> (3) Mr. Gorence in his pleading on behalf of Defendant Wilson stated as an officer of the Court that he (Mr. Gorence) had never reviewed the indictment of Mr. Jarvis with Mr. Jarvis. Doc. 1098. Magistrate Judge Garcia, after reviewing the copy of the indictment with Mr. Gorence's handwriting and analysis on it, found that Mr. Gorence had in fact gone over the indictment, paying particular attention to the forfeiture counts, with Mr. Jarvis.
>
> (4) On October 11, 2007, Mr. Gorence represented to the Court that he had never "represented" Mr. Jarvis. Magistrate Judge Garcia found to the contrary that Mr. Gorence had an attorney-client relationship with Mr. Jarvis for a period of time. Doc. 1138.
>
> (5) The Magistrate Judge found that the material supports the conclusion that Counsel Rosenstein, Counsel Eckert, and Mr. Jarvis all believed that Mr. Gorence was going to represent Mr. Jarvis upon release of the Mora assets. However, Magistrate Judge Garcia did not

8

>think that these facts impeached Mr. Gorence's testimony, that his representation was contingent upon release of the whole panoply of assets.

While Magistrate Judge Garcia found this form of direct impeachment-by-contradiction, he concluded that this evidence did not "rebut or impeach" because it did not disprove Mr. Gorence's testimony--that he would have represented Mr. Jarvis contingent only upon release of all of the assets. Apparently, Magistrate Judge Garcia was requiring some evidence that disproved the statement by Mr. Gorence, which, unfortunately, is not the legal role of impeachment evidence. In fact, impeachment-by-contradiction evidence is admitted solely to impeach, that is, it cannot be used to prove anything about the events being litigated, but can only be used to discredit the witness's credibility. Magistrate Judge Garcia mis-understood or discounted the power and validity of impeachment-by-contradiction, which is every bit as legally powerful as a prior inconsistent statement.

Impeachment does not have to directly rebut the disputed testimony to be completely legally effective at impeaching the disputed testimony. *See* Mueller & Kirkpatrick § 6.43, at 529. In concept, impeachment-by-contradiction is simple. When a witness makes an assertion of fact, the attorney can impeach him by showing that the fact is not true; this can be done either by cross-examining the witness, using extrinsic evidence, or both. *See id.* For example, a witness might not normally be permitted to testify she is a safe driver, and the opponent cannot normally prove she is in general an *un*safe driver, but should the witness nonetheless happen to testify she is a safe driver, her opponent can now contradict her with evidence she has been involved in several accidents. If the fact-finder believes the counterproof offered by the attorney, the witness has been impeached in two ways. First, the fact-finder will believe that the witness lied or made a mistake on the specific fact contradicted. *See id.* § 6.43, at 529. But second, and perhaps more significantly, *the fact-finder will begin to doubt everything else the witness has said. See id.* The theory is when a witness can be contradicted,

9

that should be taken into account in determining the reliability of the witness. Because the attorney can use extrinsic evidence rather than simply relying on cross-examination, impeachment-by-contradiction can be devastating to a witness's credibility. *Id., e.g., United States v. Castillo,* 181 F.3d 1129 (9th Cir. 1999) ("Castillo's expansive and unequivocal denial of involvement with drugs on direct examination warranted the district court's decision to admit extrinsic evidence of the 1997 cocaine arrest as impeachment by contradiction.").

Magistrate Judge Garcia misunderstood the legal import of impeachment-by-contradiction. This is not surprising, as it has been noted that judges and attorneys tend to forget about the doctrine or blur it together with other doctrines. *See generally* Francis J. Gilligan & Edward J. Imwinkelreid, *Bringing the "Opening the Door" Theory to a Close: The Tendency to Overlook the Specific Contradiction Doctrine in Evidence Law*, 41 SANTA CLARA L. REV. 807 (2001). As one commentator has observed, "counsel and courts sometimes have difficulty distinguishing between Rule 608 impeachment and impeachment-by-contradiction." 4 Joseph M. McLaughlin, *Weinstein's Federal Evidence*, 608.12[6][a] at 608-41 (2d ed. 1999) ("Weinstein"); *see also* 2A Charles A. Wright & Victor J. Gold, *Federal Practice and Procedure,* 6119 at 116-17 (1993); *see also* Moody & Coacher, *A Primer on Methods of Impeachment,* 45 A.F.L. REV. 161, 182 (1998) (noting that impeachment by contradiction is often misunderstood, misused, or not used at all); *cf. United States v. Chu*, 5 F.3d 1244, 1249 (9th Cir. 1993) (recognizing the distinction between evidence governed by Rule 608(b) and evidence offered to impeach-by-contradiction).

If counsel cannot acknowledge he represented a client, cannot remember that he created a file on that client, nor remember that he annotated the individual's indictment with the assistance of the client sufficient to pursue a release of assets motion, why is the same witnesses' unequivocal assertion as to his intent to represent the same client believable?

### The Standard of Care Required of Counsel In A Forfeiture Case Shows Mr. Gorence's Assertions Were Incredible

For nearly thirty years, criminal defense counsel have been on notice that fees paid them from criminal activity proceeds were subject to forfeiture, the Sixth Amendment notwithstanding. In the *Caplin & Drysdale* dissent, Justice Blackmun characterized the conundrum of private counsel, such as Mr. Gorence, considering payment from sums or property potentially forfeitable:

> Even if the defendant finds a private attorney who is 'so foolish, ignorant, beholden or idealistic as to take the business,' the attorney-client relationship will be undermined by the forfeiture statute. Perhaps the attorney will be willing to violate ethical norms by working on a contingent fee basis in a criminal case. But if he is not -- and we should question the integrity of any criminal-defense attorney who would violate the ethical norms of the profession by doing so -- the attorney's own interests will dictate that he remain ignorant of the source of the assets from which he is paid. Under § 853(c), a third-party transferee may keep assets if 'the transferee establishes . . . that he is a bona fide purchaser for value of such property who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture under this section.' The less an attorney knows, the greater the likelihood that he can claim to have been an 'innocent' third party. The attorney's interest in knowing nothing is directly adverse to his client's interest in full disclosure. The result of the conflict may be a less vigorous investigation of the defendant's circumstances, leading in turn to a failure to recognize or pursue avenues of inquiry necessary to the defense. Other conflicts of interest are also likely to develop….
>
> The Government will be ever tempted to use the forfeiture weapon against a defense attorney who is particularly talented or aggressive on the client's behalf -- the attorney who is better than what, in the Government's view, the defendant deserves. The specter of the Government's selectively excluding only the most talented defense counsel is a serious threat to the equality of forces necessary for the adversarial system to perform at its best. *See United States* v. *Monsanto*, 852 F. 2d, at 1404 (concurring opinion); *United States* v. *Rogers*, 602 F. Supp., at 1347, 1350; Cloud, 36 Emory L. J., at 829. An attorney whose fees are potentially subject to forfeiture will be forced to operate in an environment in which the Government is not only the defendant's adversary, but also his own.

*Caplin & Drysdale v. United States*, 491 U.S. 617, 649-50 (1989)(some internal citations omitted).

As *Caplin* demonstrates, if Mr. Gorence is to be believed that he never discussed the indictment with Mr. Jarvis, the actual annotated indictment in the Court's possession aside, Mr. Gorence is to be understood to have committed the ethical violation of failing to inquire sufficiently into his client's assets to provide effective assistance due to self-interest- the maintenance of his potential bona fide purchaser capacity. Mr. Gorence's testimony shows concern with the "liquidity" of the Mora property, to the extent of seeking appraisal of the property. *TP* 60:5-12. It makes no sense that Mr. Gorence would have been seeking the release of assets he had not ascertained the value of or title sourcing information of from the client.

*Caplin* characterized the attorney trying to maintain bona fide purchaser status as one who "cannot do his job (or at least cannot do his job well) without asking questions that will reveal the source of the defendant's assets." *Id.* at 655. If Mr. Gorence did ask the questions revealing the source of Mr. Jarvis' assets as appears by the privileged materials, his representation to the Court that he didn't review the indictment with Mr. Jarvis is an unexplained misrepresentation to the Court or worse. Doc. 1098.

Forfeiture allegations, again as *Caplin* explains, cause conflicts of interest for retained counsel in representation. Conflicts are documented here. It is simply impossible to reconcile Mr. Gorence's "memory lapses" with the undisputed record of the Court and as against the also undisputed law of this Circuit surrounding Mr. Gorence's representations, testimony and the contents of the privileged materials Mr. Gorence "forgot" he ever received. And while the Court observed Mr. Gorence's testimony when the witness was safe from vigorous cross examination with the very documents he did not remember existed, no Article III judge has assessed the credibility of Mr. Gorence testifying subject to the full panoply of cross examination which will occur when Mr. Jarvis is unrestrained by confidential communications in a closed proceeding.

12

## Conclusion

Mr. Jarvis, by this Motion to Reconsider, hereby invokes his right to a full Article III review such that no final and dispositive finding by the Magistrate Judge is beyond Article III review in this felony criminal proceeding.

Mr. Jarvis seeks to complete his cross examination of the witness, Mr. Gorence, before an Article III judge segregated from the merits of these proceedings in a proceeding structured to preserve both Mr. Jarvis' attorney-client and work product privileged communications, by using the materials in the privilege law already submitted to the Court. Mr. Jarvis seeks to rebut Mr. Gorence's testimony by the testimony of Mr. Jarvis' former counsels in this case or be allowed to offer them as his own witnesses as he could have but for the hearing being terminated due to the privilege issues. Mr. Jarvis requests the proceedings be closed due to the privileged materials and because Mr. Jarvis' theory of his defense will necessarily be exposed. Further, Mr. Jarvis requests that for the second time in these proceedings, the United States utilize a special prosecutor in the closed hearing separate and apart from the AUSAs prosecuting the merits of this case, again for the purpose of protecting the defendant's theory of his case.

The future foretold by the *Caplin* dissent has arrived under the case name *USA v. Jarvis*. Mr. Jarvis simply requests he be allowed full Article III consideration as guaranteed him by the Constitution, to ferret out and impeach the witness Gorence as if Mr. Gorence were any other witness against him rather than his previous counsel now testifying for the United States.

As factually clearly erroneous and contrary to law, the Magistrate Judge's determination must be reversed.

The position of the United States has been sought and none has been yet received due to the shortness of time. The United States is presumed to be opposed to the Motion.

WHEREFORE and based upon the above legal arguments, Mr. Jarvis requests appointment of an independent Article III judge to hold the appropriate closed hearing incorporating the privileged materials, in light of this request for reconsideration.

Respectfully submitted:

*Electronically Filed*
*/s/*
*February 26, 2008*
By_____
Gary Mitchell, Esq.
Co-counsel for Defendant Jarvis
P.O. Box 2460
Ruidoso, NM 88355-2460
575.257.3070

*Electronically Filed*
*/s/*
*February 26, 2008*
By: _____
Jody Neal-Post, Esq.
Co-counsel for Defendant Jarvis
317 Amherst SE
Albuquerque, NM 87106
505.268.7263

I hereby certify that a true and correct copy of the foregoing was served on opposing counsel, AUSAs James Braun and Stephen Kotz, on February 26, 2008.

*Electronically filed 2/26/08*
_____
Gary Mitchell