IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

THE UNITED STATES OF AMERICA,

    Plaintiff,

  vs.                                                   No. CR 05-1849 JH

DANA JARVIS, et al.,

    Defendants.

### DEFENDANT DANA JARVIS' MOTION TO CLARIFY STATUS OF PLEADINGS AND ORDERS FILED BETWEEN SEPTEMBER 1, 2006 AND <u>FEBRUARY 20, 2007</u>

Defendant Dana Jarvis, by and through court-appointed counsel of record, Gary Mitchell and Jody Neal-Post, and joint associate counsel for defendants represented by court-appointed attorneys, Scott M. Davidson, hereby respectfully requests the Court to clarify the status of pleadings, orders and other case activity that occurred during a period of approximately thirteen months, between September 1, 2006 and October 17, 2007, when the Court was without jurisdiction over matters involving Mr. Jarvis' defense.

**1.    INTRODUCTION**

From the inception of this case, the government's prosecution has centered on Mr. Jarvis, whom the government contends was the king-pin of a multi-state marijuana distribution and money laundering conspiracy involving dozens of co-conspirators, spanning more than a decade, and grossing more than $150,000,000.

For more than thirteen months in 2006 and 2007, this Court was divested of jurisdiction over matters related to Mr. Jarvis' defense against the government's charges of marijuana distribution and money laundering.  From September 1, 2006, when Mr. Jarvis filed a notice of interlocutory appeal from a pre-trial order, *see* Doc. 666, to October 17, 2007, when the Court lifted the stay on proceedings that was formally entered on February 21, 2007, *see* Doc. 924, the Court was divested of jurisdiction over all matters related to Mr. Jarvis' defense.  This divestiture includes pre-trial motions pursuant to Federal Rule of Criminal Procedure 12(b)(3) that were filed during this thirteen-month period.

Due to the Court's divestiture of jurisdiction over matters related to Mr. Jarvis' defense during the pendency of the interlocutory appeal, Mr. Jarvis respectfully requests the Court to declare null and void any pleading, order, or

other case activity if it meets two criteria: (1) it relates to Mr. Jarvis' defense against the government's charges, and (2) it occurred between September 1, 2006 and October 17, 2007. Mr. Jarvis further proposes that this declaration be accompanied by a time table permitting the defendants and the government to adopt, withdraw, or modify pleadings that have been declared null and void due to the divestiture of jurisdiction.

Mr. Jarvis respectfully submits that this proposal is in the interest of judicial economy, the fair and just administration of these criminal proceedings, and the protection of his right to due process, a fair trial, and counsel of his choice, as guaranteed in the Fifth and Sixth Amendments to the United States Constitution.

## 2. CHRONOLOGY OF RELEVANT EVENTS

### A. The Court's August 20, 2006 scheduling order.

On August 20, 2006, the Court ordered that motions pursuant to Federal Rule of Criminal Procedure 12(b)(3), other than the wiretap suppression motion, be filed by October 20, 2006. *See* Doc. 660 (Aug. 20, 2006 order). The scheduling order, *inter alia*, set a deadline of October 20, 2006 for motions filed pursuant to

Federal Rule of Criminal Procedure 12(b)(3). Although not known at the time of the Order or at the status conference in July 2006, the Court would soon lose jurisdiction over matters related to Mr. Jarvis' guilt or innocence, and the October motions deadline, and other deadlines in the scheduling order, would fall during a period when the Court would have no jurisdiction over matters related to Mr. Jarvis' defense.

> B.   Mr. Jarvis' September 1, 2006 notice of appeal.

On September 1, 2006, Dana Jarvis filed a notice of appeal from the Court's pre-trial order denying his motion to release funds that were illegally restrained by the government and which he contended were needed to exercise his Sixth Amendment right to hire counsel of his choosing. *See* Docs. 654 & 666.

Mr. Jarvis raised two issues on appeal: (1) whether the district court erred in denying the release of funds that were encumbered by the government's use of New Mexico's *lis pendens* statute, and (2) whether the district court's denial of the motion infringed on Mr. Jarvis' Sixth Amendment right to counsel of choice, contra **United States v. Gonzalez-Lopez**, 126 U.S. 2557, 2563 (2006) ("[T]he Sixth Amendment right to counsel of choice . . . commands . . . that the accused be defended by the counsel he believes to be best."). The crux of Mr. Jarvis'

4

argument on appeal was that the government's improper recording of a notice of *lis pendens* on Mr. Jarvis' properties in Mora County, New Mexico, had the effect of preventing him from negotiating those properties and using the proceeds to hire counsel of his choice. *See **Jarvis***, 499 F.3d at 1199-1201 (describing Jarvis' arguments in the district court and on appeal).

### C. Pleadings, orders and other case activity during the pendency of the interlocutory appeal.

On October 20, 2006, and days both before and after that date, Mr. Jarvis, by and through counsel, filed or joined a number of pre-trial motions. They were filed at that time because the Court had ordered that October 20, 2006 was the deadline for those motions. But for the court-imposed deadline, those motions would not have been filed at that time.

These motions relate to Mr. Jarvis' defense in this case. For instance, on October 6, 2006, Mr. Jarvis moved to dismiss the forfeiture allegations, or in the alternative, for a bill of particulars with respect to those allegations. *See* Doc. 697. His counsel also filed a motion to dismiss Count III of the superceding indictment on the alternative for a bill of particulars, *see* Doc. 709, a motion to compel production of certain financial discovery, *see* Doc. 712, a demand for jury

trial on forfeiture allegation, *see* Doc. 704, a motion to sever trial from co-defendants, *see* Doc. 721, a motion for disclosure and production of confidential informants, *see* Doc. 722, a motion to sever Counts I and III on grounds of misjoinder and prejudicial joinder, *see* Doc. 723, and a motion to compel discovery regarding the conspiracies alleged between 1990 and 1999. *See* Doc. 740.

During this period, the Court entered orders that pertain to Mr. Jarvis' defense. For instance, on October 24, 2006, the Court denied in part and granted in part a motion to compel discovery related to the interception of electronic communications. *See* Doc. 733. The defendants later requested further relief related to the Court's partial denial of the motion to compel. *See* Doc. 788. The Court denied in part the relief the defendants sought in their supplemental pleading. *See* Doc. 819.

Mr. Jarvis filed notices of joinder in motions filed by co-defendants. For example, he notified the Court that he joined co-defendant Dennis Wilson's motion to exclude co-conspirator statements, *see* Doc. 741, Mr. Wilson's motion for discovery regarding prior criminal acts by Government witnesses, *see* Doc. 742, co-defendant Ayla Jarvis' motion for severance, *see* Doc. 743, co-defendant

Dakota Fitzner's motion to dismiss Count I, *see* Doc. 744, co-defendant George Ripley's motion for co-conspirator statements and, alternatively, for ***Brady*** disclosure, *see* Doc. 745, Mr. Wilson's motion in limine concerning opinion testimony, *see* Doc. 746, and Mr. Wilson's motion to dismiss the indictment, or in the alternative, for a bill of particulars. *See* Doc. 747.

Other defendants filed notices of joinder in motions filed by Mr. Jarvis, or filed jointly by defendants, including Mr. Jarvis. For instance, co-defendant Greg Hill joined a motion for disclosure and production of confidential informants, *see* Doc. 763, a motion that was filed by Mr. Jarvis' counsel. *See* Doc. 722.

Pursuant to the Court's scheduling order, setting a deadline for the government's responses to defendants' motions, the government filed a number of responses. *See, e.g.,* Docs. 767 (response to motion for disclosure and production of confidential informants), 768 (response to motion to extend deadline for filing wiretap related motions), 769 (response to motion in limine regarding the exclusion of opinion testimony), 771 (response to motion for discovery regarding prior criminal acts by government witnesses and information necessary to effectively cross-examine government witnesses), 772

(response to motion to exclude co-conspirator statements), 774 (response to motion to compel discovery regarding conspiracies from 1990 to 1999).

A number of replies by Mr. Jarvis were also filed during this period. *See, e.g.,* Doc. 773 (reply re motion to extend deadline for filing wiretap-related motions), 770 (joint reply re motion to compel discovery related to the interception of electronic communications).

In February 2007, upon the filing of his Brief-in-Chief in the Tenth Circuit, Mr. Jarvis became convinced of the divestiture of jurisdiction, and moved for a stay of proceedings in the district court. *See* Doc. 895. Granting the motion, the Court entered a stay of proceedings as to Mr. Jarvis, and continued deadlines as to all other defendants. *See* Doc. 924 (February 21, 2007 order).

### D.     The Tenth Circuit decided the appeal in Mr. Jarvis' favor, choosing to resolve it on the statutory issue of the *lis pendens* notice without reaching the broader Constitutional question.

On August 28, 2007, the Tenth Circuit issued its decision reversing the district court and ordering that the *lis pendens* be lifted. *See **Jarvis**,* 499 F.3d at 1198. Whereas the *lis pendens* issue involved statutory interpretation of 18 U.S.C. § 982, 21 U.S.C. § 853, and NMSA 1978, § 38-1-14, the second issue involved the constitutional question of the deprivation of Mr. Jarvis' Sixth Amendment right

8

to counsel of choice. The Tenth Circuit decided in Mr. Jarvis' favor on appeal on the basis of the statutory question, and did not explicitly reach the constitutional question. *See* ***United States v. Jarvis***, 499 F.3d 1196, 1198, 1206 (10th Cir. 2007) (holding that "the use by the United States of the New Mexico *lis pendens* statute was improper," reversing this Court's order denying Mr. Jarvis' motion to release funds, and not reaching the constitutional question); *see also **id.*** at 1202 n.6 (distinguishing between two alternative rationale for resolving the pure legal question before the circuit court and, as the proper legal resolution was "certain," choosing not to address "whether injustice from an alleged violation of [Mr.] Jarvis' Sixth Amendment right to counsel would occur" if the court did not address the *lis pendens* issue). The Tenth Circuit "generally avoids reaching constitutional questions when it can resolve an appeal on other grounds." ***Vanderhurst v. Colorado Mountain College District***, 208 F.3d 908, 918 (10th Cir. 2000). Its approach to Mr. Jarvis' interlocutory appeal is consonant with this prudential doctrine of long standing.

On October 17, 2007, the Court lifted the stay. *See* Doc. 1091.

9

## 3. DISCUSSION

### A. The interlocutory appeal divested this Court of jurisdiction over matters involved in the appeal, from September 1, 2006 to October 17, 2007.

Mr. Jarvis' interlocutory appeal divested this Court of subject matter jurisdiction over matters related to his defense as of September 1, 2006, the date of the notice of appeal. *See **McCauley v. Halliburton Energy Servs.***, 413 F.3d 1158, 1163 (10th Cir. 2005) ("[T]he district court was divested of jurisdiction by [the interlocutory appellant's] filing of its notice of appeal."). *See also **Stewart v. Donges***, 915 F.2d 572, 574 (10th Cir. 1990). The Tenth Circuit embraced the divestiture principle nearly two decades ago, when it noted that it is axiomatic

> that "a federal district court and a court of appeals should not attempt to assert jurisdiction over a case simultaneously. The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."

*Stewart*, 915 F.3d at 574, 575 (quoting ***Griggs v. Provident Consumer Discount Co.***, 459 U.S. 56, 58 (1982) (*per curiam*)). For jurisdictional purposes, an interlocutory appeal is equivalent to an appeal from a final decision. *See **Stewart***,

10

915 F.2d at 574 (discussing *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 546 (1949)).

This Court did not regain jurisdiction over Mr. Jarvis' defense until October 17, 2007, when the stay was lifted. *See* Doc. 1091. Of course, all parties were aware that the proceedings were stayed with respect to Mr. Jarvis' defense between February 21, 2007, and October 17, 2007. But it appears from the docket sheet in this case that no one was cognizant of the fact that the Court had been *automatically* divested of such jurisdiction from September 1, 2006 to February 20, 2007. During this six-month period, the docket shows more than 250 entries, including dozens of substantive pleadings related to Mr. Jarvis' defense, orders by the Court related to his defense, and so forth.

**B.    The divestiture of jurisdiction includes all matters related to Mr. Jarvis' defense.**

Mr. Jarvis' appeal involved not just the *lis pendens* issue; it also directly involved his Sixth Amendment right to counsel of choice. The fact that the Tenth Circuit resolved the appeal in his favor on non-constitutional grounds, *see Vanderhurst*, 208 F.3d at 918 (principle of constitutional avoidance), does not erase the fact that the appeal also involved the issue of the denial of Mr. Jarvis' Sixth Amendment right to counsel of his choosing. In this Court, the purpose for

Mr. Jarvis' motion to order the government to lift the notice of *lis pendens* was to free up properties to provide funds for hiring counsel of Mr. Jarvis' choice. The denial of the motion had the effect of preventing Mr. Jarvis from hiring counsel of choice.

The Sixth Amendment right to counsel of choice is undeniably important and its erroneous deprivation pervasive. See **Gonzalez-Lopez**, 126 S. Ct. at 2564-65. As the Supreme Court noted, "erroneous deprivation of the right to counsel of choice . . . [has] . . . consequences that are necessarily unquantifiable and indeterminate." *Id.* at 2564.

The Court noted the non-fungibility of attorneys: "Different attorneys will pursue different strategies with regard to investigation and discovery, development of the theory of defense, selection of the jury, presentation of the witnesses, and style of witness examination and jury argument." *Id.* A criminal defendant's choice of attorney will necessarily pervade every aspect of his or her defense, affecting "whether and on what terms the defendant cooperates with the prosecution, plea bargains, or decides instead to go to trial." *Id.* The Court concluded that "the erroneous denial of counsel bears directly on the framework within which the trial proceeds, or indeed on whether it proceeds at all. It is

12

impossible to know what different choices the rejected counsel would have made, and then to quantify the impact of those different choices on the outcome of the proceedings." *Id.* at 2564-65 (internal quotation marks and citations omitted).

Due to the fact that different attorneys will approach Mr. Jarvis' defense differently, while Mr. Jarvis' appeal was pending, anything done by his court-appointed counsel was involved in the appeal. While the interlocutory appeal was pending, each and every pleading filed by Mr. Jarvis' attorney was inextricably intertwined with the appeal by virtue of the fact that his counsel was not his counsel of choice, in deprivation of the right he was seeking to vindicate on appeal.

Every action taken by Mr. Jarvis' attorneys in the district court during the pendency of the interlocutory appeal is nullified by the divestiture of jurisdiction. For instance, pleadings filed by Mr. Jarvis' counsel on his behalf during this period, and pursuant to court-ordered deadlines during this period, are a nullity.

Due to the divestiture of the Court's jurisdiction from September 1, 2006 to October 17, 2007, court-imposed deadlines for pre-trial motions and motions filed in accordance with that court order and falling within this divestiture period are

13

a nullity.  The divestiture of jurisdiction apparently escaped the notice of all defense counsel, counsel for the government, and the Court.  By this motion, Mr. Jarvis seeks to set the proceedings on a proper footing.

    **C.**    **The Court should declare null and void matters related to Mr. Jarvis' defense during the pendency of the interlocutory appeal, and allow parties to adopt, withdraw or modify null and void pleadings.**

To ensure the integrity of the proceedings, to preserve scarce judicial resources, to ensure that the Constitutional rights of Mr. Jarvis are not deprived, and to recognize the ramifications of the divestiture of jurisdiction during the pendency of the interlocutory appeal, the Court should declare null and void all pleadings, orders and other case activity that meet two criteria: (1) they are related to Mr. Jarvis' defense and (2) they occurred between September 1, 2006 and October 17, 2007.

To further preserve judicial economy and avoid needless repetition of efforts already expended in the preparation of motions and briefs, the parties should be allowed to adopt, withdraw, or modify pleadings declared null and void.  To demonstrate how Mr. Jarvis' proposal would operate in practice, consider the defendants' joint motion for disclosure and production of

14

confidential informants. *See* Doc. 722. Under Mr. Jarvis' proposal, this motion, Doc. 722 (filed October 20, 2006), the government's response, Doc. 767 (filed November 3, 2006), and the defendants' reply, Doc. 816 (filed December 20, 2006), would be declared null and void because they relate to Mr. Jarvis' defense, and were filed when the Court had no jurisdiction over such matters. Mr. Jarvis would be permitted to adopt, withdraw, or modify the motion. After notice of this decision is given, the government would be given sufficient time to adopt, withdraw, or modify its response. And after notice of the government's decision is given, Mr. Jarvis would be given sufficient time to adopt, withdraw or modify his reply. Then, unless the motions were completely withdrawn, the Court's decision on the motion would stand on a firm jurisdictional footing. The cloud over the status of pleadings which were filed under a scheduling order of questionable validity would be removed.

In light of the fact that the divestiture of the district court's jurisdiction over matters related to an interlocutory appeal is "virtually complete" during the pendency of the appeal, *see* **Stewart**, 915 F.2d at 576, the boundaries of this Court's jurisdiction during this thirteen month period will remain the subject of considerable doubt by all, unless and until it is resolved definitively. That is, it is

15

imperative that the Court resolve this matter so that the myriad orders, motions, notices, proceedings, and other case activity during the pendency of the interlocutory appeal be placed on solid jurisdictional footing.

The United States has been contacted and opposes this Motion.

**4.   CONCLUSION**

For the foregoing reasons, Mr. Jarvis respectfully requests that the Court declare null and void all pleadings, orders, and other case activity that were (1) related to Mr. Jarvis' defense, and (2) occurred between September 1, 2006, and October 17, 2007.  Mr. Jarvis also respectfully requests that the Court permit the parties to adopt, withdraw, or modify such pleadings.  Mr. Jarvis respectfully submits that this proposal is in the interest of judicial economy, the fair and just administration of these criminal proceedings, and the protection of Mr. Jarvis' constitutional rights to due process, a fair trial, and the right to counsel of his choice, as guaranteed in the Fifth and Sixth Amendments to the United States Constitution.

                                        Respectfully submitted,

                                        <u>Electronically filed</u>
                                        Scott M. Davidson
                                        1011 Lomas Boulevard NW

> Albuquerque, NM 87102
> (505) 255-9084
> Joint associate counsel for defendants
> represented by CJA counsel

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of March, 2008, I filed the foregoing motion electronically through the CM/ECF system, which caused opposing counsel for the Government to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

> <u>Electronically filed</u>
> Scott M. Davidson