IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                            No:   05-CR-1849 (JH)

DANA JARVIS,

        Defendant.

**AFFIDAVIT OF JODY NEAL-POST, CJA APPOINTED COUNSEL, IN SUPPORT OF DANA JARVIS' MOTION TO RECONSIDER SANTIONS ORDER, DOC. 1236**

STATE OF NEW MEXICO   )
                                    ) ss
COUNTY OF BERNALILLO  )

1.    My name is Jody Neal-Post. I am over the age of eighteen and competent to attest to the matters set forth herein. I am a licensed attorney in good standing in the State of New Mexico, Federal District of New Mexico, Tenth Circuit Court of Appeals and the United States Supreme Court.

2.    I am court-appointed CJA co-counsel in this cause, *USA v. Dana Jarvis*, 1:05cr1849.

1

3.      Before filing Doc. 1226 in the above titled matter, I made the following efforts in an exercise of due diligence to acquire access to all my client's pleadings herein. Except as may otherwise be identified, I have contemporaneous documentary evidence of all the efforts of due diligence listed below in the form of my contemporaneously created CJA time sheets, submitted under penalty of perjury as accurate, and or in the form of emails contemporaneously created and currently in my possession.

    a.    Friday October 19, 2007: I wrote co-counsel Romero's office that document 1090, seeking sealing of attorney client related matters wasn't accessible to me and didn't show on the docket as a docket query. I asked Mr. Romero's staff to call the clerk;

    b.    Sunday November 4, 2007: I wrote Mr. Jarvis' defense team that co-Defendant Wilson's Motion regarding conflicts was showing on the docket set for hearing and the Jarvis counsel were not noticed of the hearing set 4 days earlier. Doc. 1103;

    c.    Monday November 5, 2007: I communicated to Mr. Romero's office that we needed to verify with the clerk's office that service would be made on Mr. Wilson's counsel of filing 1109. Co-counsel Romero advised chambers the sealed pleading was coming and that we were seeking the court's determination of the parties it would allow served the sealed pleadings and we requested the Court make service commensurate with the order the Court eventually entered on the sealing;

    d.    Monday November 5, 2007: Doc. 1109 successfully filed *ex parte* on co-counsel Romero's filing ID. I received notice but could not open on my ID. Terminated

counsel for Mr. Jarvis McIntrye continues to show as receiving NEFs;

 e. Friday November 9, 2007: AUSA Braun notified me that a filing mentioned in our reply brief on the motion to dismiss had never been served on the United States. AUSA Braun advised he could not get into sealed pleadings and I wrote him back that I was also unable to get into the sealed pleadings. I explained that Joe and I tried to work around that by his office saving PDFs of the documents and then sending them to me. I asked the United States if they believed they had copies of everything they were supposed to have. I advised them I would try and get them anything they couldn't open from Joe's office if I could, if they told me what documents they needed.

 f. Friday November 9, 2007: I directed Matt Lopez, Joe Romero's paralegal, to see if he could resolve the Doc. 1109 issues with Joe Murphy at District Court. Matt and Joe Murphy worked on it together over two hours and all involved were trying to correct the electronic filing.

 g. Thursday November 15, 2007: In email dialogue with AUSA Braun and Mr. Wilson's counsel, I advised that Mr. Romero's office and I personally were still working with the clerk's office "to determine what has occurred to our filing of response [Doc. 1109] to Mr. Gorence's motion." I further reported to all counsel that the issues with Doc. 1109 had been "left with the clerk's office to perfect filing as it appeared the system could not accommodate a responsive pleading between defendants and on top of that, it was to be a sealed pleading."

3

h.  Thursday November 15, 2007: I spent an hour working with Debbie in the clerk's office regarding Doc. 1109. I advised counsel that Debbie had determined from the docket record that Mr. Gorence had never been served, "and, in fact, that the clerk's office had withdrawn filing 1109, for reasons that are not yet clear. Debbie is investigating and has promised to alert Lincoln and respond to me when she has determined the status of that filing and, if needs be, what must be done to correct it." I inquired of Mr. Gorence in the same correspondence if he could confirm whether or not he was served with Doc. 1109. Mr. Gorence responded that he had not been served. I further advised all counsel later that morning that Debbie had reinstated Doc. 1109 to the docket to the actual date of filing, but that it was missing an attachment. I confirmed that no service showed on the record for Mr. Wilson's counsel and advised all counsel that Matt Lopez would make personal hand service of hard copies to Mr. Wilson's counsel that day, which Matt Lopez did actually make.

i.  Tuesday November 20, 2007: I explained on the record in the hearing before Judge Herrera that we continued to have docket access problems.

j.  Monday December 10, 2007: I corresponded with AUSAs Braun and Kotz and Mr. Wilson's co counsels to verify they had received the latest sealed filing.

k.  Tuesday December 11, 2007: I corresponded with Lincoln Sorrell, copied to AUSA Braun and Mr. Romero, regarding the certificate of service for the sealed materials Mr. Jarvis was submitting to the Chief Magistrate Judge. I noted in the correspondence

that the record difficulties continued for everyone, and pointed out that the Court's designation order, filed on Mr. Jarvis' motion and to which co-Defendant Wilson was not a party, was entered with the Wilson case caption instead of Mr. Jarvis'. I stated "The record is difficult for everyone."

l. Thursday December 27, 2007: I inquired at Mr. Romero's office if he was receiving the NEFs [jmp] (ECFs) in this case. His office responded that the ECFs had been discontinued to Mr. Romero when the order allowing him to withdraw had been entered, despite the same order continuing Mr. Romero in a transitional capacity until Mr. Jarvis' new counsel got up to speed. As a consequence, Mr. Romero has been rendered unable to stay up to date on the case and advise on current matters since his National Guard activation, as he cannot access the docket in his transition capacity.

m. Thursday December 27, 2007: I advised Mr. Roemro's office that I would call Joe Murphy again and see if he could assist as other terminated counsel for Mr. Jarvis, Mr. McIntyre and Ms. Eckert, were still getting NEFs [jml] (ECFs) while Mr. Romero was not. Joe Murphy offered his best efforts with the goal that I would have full docket access by the end of the day. He wasn't able to correct the access difficulties that day, and advised later on that was unable to get the system to override the word "withdrawal" such that the docket would reflect the directives of the Court's order allowing withdrawal- that Mr. Romero was both terminated as counsel and still entitled to notices on Mr. Jarvis' behalf in his transition counsel capacity;

n.  Friday December 28, 2007: Correspondence between myself, Court, chambers and the clerk's office regarding the revelation of CJA billing information in the docket title entries. I requested that such detail be left out of the titles of the entries as compensation information is confidential. Bernadette Williams worked with docketing through the morning until she reported that the descriptions reflecting payees and amounts had been deleted from the docket;

o.  Wednesday January 23, 2008: I corresponded with Joe Murphy again advising I could not access "my own client's documents as of today." I asked for assistance, including the inquiry, "if it is some error on my end, help me understand how to access Mr. Jarvis' docket?"

p.  Wednesday January 23, 2008: Mr. Murphy immediately responded to me and asked me to call Marty Silva in Las Cruces District Court. I called her and she attempted to resolve the issues and she advised that she thought she could resolve some of it by week's end.

q.  Docket access was not achieved by week's end.

r.  February 6, 2008: Current co-counsel Mr. Mitchell was appointed.

s.  February 21, 2008: Mr. Mitchell advised me that his staff could not access all the documents and he enquired if I could. I explained the docket access history to him and that the problems remained as of that day, referring to Doc. 1225. I also advised Mr. Mitchell of the client's continuing frustration that we had not yet filed a Motion to resolve

the issue.

t.    February 21, 2008: I called AUSA Braun for a position on Mr. Jarvis' motion for docket access. In a phone conversation lasting .2 hours, Mr. Braun and I discussed the docket access issues and work arounds suggested by the United States, including his suggestion that we make paper filings for sealed materials. AUSA Braun advised that the docket issues were far greater than I knew of and that they crossed many cases. I thanked him for informing me of the bigger picture he was aware of and I was not, presumably due to his much larger federal case load than I have in my practice.

u.    Mr. Jarvis' counsels together filed the Motion seeking docket access at Doc. 1226.

v.    In the process of drafting Mr. Jarvis' Motion to Reconsider on March 18, 2008, I ran into document titles in the Jarvis docket, retrieved through use of my CM/ECF ID and the selection of "all defendants," that appeared to be sealed documents of other defendants with a "live" link. Two such documents counsel attempted to open relating to other defendants were Doc.687 regarding another defendant's CJA matters and a plea of another defendant, noted as "SEALED" at Doc. 734. Both sealed documents of other defendants were accessible to me using my CM/ECF filing ID. I reported this to affected counsel for Doc. 687 who responded to me today that I should not have been able to open this sealed document.

7

FURTHER AFFIANT SAYETH NAUGHT.

This 18th day of March 2008.

_Jody Neal-Post_

Sworn to and subscribed before me this 19 day of March, 2008.

Notary Public

My commission expires: 5/4/2011