IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cr. No. 05-1849 JH |
| | ) | |
| DANA JARVIS, | ) | |
| | ) | |
| Defendant. | ) | |

UNITED STATES' RESPONSE TO DEFENDANT'S
"MOTION FOR RELEASE ON CONDITIONS PURSUANT TO
THE FIFTH AMENDMENT REQUIREMENTS OF DUE PROCESS"

The United States responds to defendant Dana Jarvis's "Motion for Release on Conditions Pursuant to the Fifth Amendment Requirements of Due Process" (Doc. 1360) as follows:

I.    RELEVANT PROCEDURAL HISTORY

On August 23, 2005, a federal grand jury in Albuquerque returned a twenty-six count indictment charging Dana Jarvis ("Jarvis") and twenty co-defendants in Count 1 with conspiracy to distribute 1000 kilograms and more of marijuana, in violation of 21 U.S.C. § 846. Jarvis was also charged in Count 2 with engaging in a Continuing Criminal Enterprise ("CCE"), in violation of 21 U.S.C. § 848, and with money laundering

violations in Counts 3 through 26.[1]

Jarvis was arrested on August 25, 2005. He had his initial appearance before United States Magistrate Judge Alan C. Torgerson on August 26, 2005. At that time, the United States moved for Jarvis's detention.

On August 29, 2005, Jarvis appeared before Judge Torgerson for arraignment and a detention hearing. At the conclusion of the hearing, Judge Torgerson noted Jarvis's prior failure to appear in other cases and his use of an alias and ordered that Jarvis be detained pending trial pursuant to 18 U.S.C. § 3142. 8/29/05 Tr. at 18. Jarvis was held at the Regional Correctional Center ("RCC") in downtown Albuquerque.

On October 11, 2005, Jarvis filed a "Motion for Release on Conditions." Judge Torgerson held a hearing on November 7, 2005, at which the United States presented substantial evidence of Jarvis's danger to the community and risk of flight. This included evidence that Jarvis had used the alias "Todd Ward" in the past. 11/7/05 Tr. at 33-44; Exhibits C, D, E, F, G, H, and J. The United States also played three recorded telephone conversations that were intercepted during the course of the court-authorized wiretaps. The first call was from Jarvis to Melania Kerwin, whom Jarvis believed was selling marijuana that she had stolen from him. During the call, Jarvis told Kirwin, "Do you know what happens to people who burn other people? They get gasoline splashed on

---

[1] On April 25, 2006, the grand jury returned a superseding indictment which charged Jarvis in the same counts but added eight additional defendants and expanded the time-frame of the charged conspiracies and CCE.

them and they get lit on f—ing fire." 11/7/05 Tr. at 20-21. In the second call, Jarvis called co-defendant Dennis Wilson, who was believed to be an "enforcer" for Jarvis's drug trafficking organization, to "bring some boys down ... to deal with the gang members who beat Ayla Jarvis [Jarvis's daughter] up." *Id.* at 22. The third call involved a conversation between Jarvis and Ayla Jarvis in which Jarvis requested that Ayla obtain methamphetamine for him and they discussed paperwork related to the seizure of $287,210.00 in suspected drug proceeds. *Id.* at 26-30. DEA Special Agent Richard Stark also summarized a fourth intercepted conversation between Ayla Jarvis and an unidentified person, in which Ayla stated: "'The first time this happened, my dad [Dana Jarvis] beat it in court. The second time, he had enough lawyers.' How they were on the run for 12 years of his life ...." *Id.* at 32.[2]

After the hearing, Judge Torgerson denied Jarvis's motion, finding "that no condition or combination of conditions will reasonably assure the appearance of defendant at Court proceedings as required, or, reasonably assure the safety of others and the community." (Doc. 248). Jarvis did not seek review of the detention order by this Court pursuant to 18 U.S.C. § 3145(b).

Prior to the November 7, 2005 hearing before Judge Torgerson, on October 4,

---

[2] Jarvis's counsel then objected to Agent Stark's testimony. *Id.* Judge Torgerson ruled, "Well, I don't think I need to hear this one. I've listened to the other two [sic] and Agent Stark has said what basically is on this phone, so let's go on." *Id.* at 33. Agent Stark's summary of the fourth call remained part of the record.

3

2005, the government received information from a person detained with Jarvis at RCC that Jarvis was going to try to have the DEA case agent in this case, Agent Stark, murdered.  An investigation into this threat revealed credible evidence that Jarvis fully intended to procure the murder of not only Agent Stark, but also a cooperating defendant witness in this case.[3]  The investigation further revealed that Jarvis was attempting to have people outside of jail assist him in arranging for these murders-for-hire.  Despite his attempts, however, Jarvis was unable to obtain the money needed to pay for the murders.  Therefore, the undercover investigation was terminated, and the United States Marshal's Service ("USMS") ordered that Jarvis be placed in administrative segregation on February 7, 2006.

Jarvis later filed a motion to modify his conditions of confinement, requesting that the Court order him to be placed back into general population.  Following a hearing, the Court entered an order granting Jarvis's motion on August 21, 2006.  Shortly thereafter, at the request of the United States Attorney's Office, Jarvis was transferred from RCC to the Torrance County Detention Center (TCDC), where he remains in custody.

On July 29, 2008, Jarvis filed the present motion for release.  In his motion, Jarvis asserts that his continued detention violates the Due Process Clause of the Fifth Amendment to the United States Constitution.  For the reasons stated below, Jarvis's

---

[3] Because it involved an ongoing investigation, the United States did not introduce evidence of Jarvis's plan at the November 7 detention hearing.

motion should be denied.

    II.    ARGUMENT

        A.    The Length of Jarvis's Detention Does Not Violate Due Process

Pretrial detention of a defendant is permissible under the Due Process Clause so long as it does not constitute punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *United States v. Salerno*, 481 U.S. 739, 746-47 (1987). The Tenth Circuit has stated, however, that "[a]lthough pretrial detention is permissible when it serves a regulatory rather than a punitive purpose, we believe that valid pretrial detention assumes a punitive character when it is prolonged significantly." *United States v. Theron*, 782 F.2d 1510, 1516 (10th Cir. 1986). "[A]t some point due process may require a release from pretrial detention or, at a minimum, a fresh proceeding at which more is required of the government than is mandated by section 3142." *United States v. Cos*, 2006 WL 2821376, *5 (10th Cir. 2006) (*Cos I*) (quoting *United States v. Accetturo*, 783 F.2d 382, 388 (3rd Cir. 1986)).

In *Cos I*, the defendant asserted that the length of his pretrial detention violated due process. Because the district court had not ruled on that issue, the court of appeals remanded the case to the district court to consider: "1) the length of detention; 2) the extent of the prosecution's responsibility for the delay of trial; and 3) the strength of the evidence upon which the detention was based." *Id.* at *5 (citing *United States v. Millan*, 4 F.3d 1038, 1043-47 (2nd Cir. 1993)). These are, therefore, the factors that this Court

5

should consider in evaluating Jarvis's motion.[4]

### 1. Length of Pretrial Detention

Jarvis was arrested on August 25, 2005, and has been in continuous custody since then. Trial is presently set for January 26, 2009, and is estimated to last four to six weeks. Assuming that this trial date is not continued,[5] Jarvis's total projected time in pretrial

---

[4] Jarvis's proposed test, that "[t]he government must now show, by clear and convincing evidence, that (1) special circumstances indicate that defendant's release, even with conditions, would pose an extraordinary threat to the government's interests, *and* (2) the government was not responsible for any significant portion of the delay to date," Def. Mot. at 2, is not supported by the Tenth Circuit's opinion in *Cos I*. Nor do prior Tenth Circuit cases support the application of Jarvis's proposed test. For example, in *United v. Gonzales*, 1998 WL 321218 (10th Cir. 1998) (unpublished), the court held that a defendant who had been detained 30 months without trial was not entitled to pretrial release. And in *United States v. Peters*, 1994 WL 325419 (10th Cir. 1994) (unpublished), the court upheld 34 months pretrial detention "with a prospect of several more" before trial. Neither *Gonzales* nor *Peters* articulate anything resembling the test proposed by Jarvis.

Jarvis appears to base his "test" on Judge Browning's observation on remand in *Cos I* that in cases where pretrial detention has exceeded two years, "courts have typically upheld detention only if the government was not responsible for any significant portion of the delay and special circumstances indicated that the defendant's release would pose an extraordinary threat to the government's regulatory interests in detention." *United States v. Cos*, 2006 WL 4061168, *7 (D.N.M. 2006) ("*Cos II*"). This observation does not constitute the articulation of a new test. Moreover, in making this observation, Judge Browning did not mention either *Gonzales* or *Peters*, both of which involved detention exceeding two years.

Finally, *Mathews v. Eldridge*, 424 U.S. 319 (1976), a procedural due process case in which the Supreme Court held that an evidentiary hearing is not required prior to the termination of social security disability benefits, has no application to this case. *See* Def. Mot. at 21-22. The only test to be applied at this stage is the one mandated by *Cos I*.

[5] Jarvis has not filed a formal motion for a continuance, but at the status conference held on August 6, 2008, his attorney, Gary Mitchell, requested that trial be

confinement will be approximately 42 months. *See Millan*, 4 F.3d at 1044 ("In weighing potential future detention [ ] we take into account non-speculative aspects of future confinement.") (internal quotation omitted).

Without question, 42 months is a significant period for a defendant to be detained without a formal finding of guilt. But there is no *per se* rule that would consider this amount of time too lengthy. Moreover, this factor is not dispositive. "Length of detention will rarely by itself offend due process." *See Millan*, 4 F.3d at 1044 (internal quotation omitted).[6]

### 2. Extent of the Prosecution's Responsibility for the Delay of Trial

Jarvis baldly asserts that "the United States is responsible for a significant portion of the delay" in this case. Def. Mot. at 2-3. Yet the only delay Jarvis identifies as the prosecution's responsibility relates to Jarvis's challenges to the *lis pendens* that were placed on his Mora County property.[7] Jarvis does not even attempt to describe how any delay caused by his own litigation of that issue constitutes a "significant portion" of the delay in this case, or why any alleged delay for this reason should be attributed to the

---

postponed until at least the summer of 2009.

[6] In *Millan*, which also involved CCE and drug conspiracy charges, the Second Circuit held that an anticipated pretrial detention of 30-31 months did not violate due process. 4 F.3d 1038.

[7] Jarvis also references his time in administrative segregation, but he fails to explain how his conditions of confinement are relevant to this inquiry.

government. In fact, a cursory review of the record demonstrates the fallacy of Jarvis's assertion.

The superseding indictment in this case was returned on April 25, 2006. The Court subsequently set a trial date of April 10, 2007. On September 1, 2006, Jarvis filed his notice of appeal of this Court's order denying his "Motion for the Court to Reconsider or Modify its Order Denying Defendant's Motion for Release of Funds." Despite the notice of appeal, Jarvis and his co-defendants proceeded with the case by filing a number of pretrial motions pursuant to the Court's previously-entered stipulated scheduling order. It was not until February 6, 2007, that Jarvis filed a motion requesting a stay of the proceedings, in which he asserted that his appeal "concerns, and will determine, who Mr. Jarvis' defense counsel will be." Doc. 895 at 2. On February 21, 2007 the Court vacated the April 10 trial date and stayed the case pending the resolution of the appeal. The Tenth Circuit's judgment reversing the Court's order was entered on August 28, 2007, and the mandate was entered in the district court on September 24, 2007.

Thus, the only delay of trial "caused" by the *lis pendens* on the Mora property is the time between April 10, 2007, and September 24, 2007. That delay was the result of Jarvis's decision to take an appeal, however, and cannot be attributed to the government. *See Cos II*, 2006 WL 4061168 at **18-19 (Judge Browning declined to hold any time incurred on the *government's* appeal of a suppression order against the prosecution, noting that "[a]n appeal is not a delay, but the exercise of a right Congress has granted

litigants"). Moreover, Jarvis's stated reason for taking the appeal was to have the *lis pendens* on the Mora property removed so that he could use that property to retain private counsel. Yet despite obtaining the relief he sought, Jarvis never retained private counsel and there is no indication that he is going to do so. Under these circumstances, Jarvis's attempt to blame the government for any delay caused by his decision to pursue an appeal is especially unreasonable.

After the Tenth Circuit issued its decision, Jarvis filed a motion to dismiss the indictment, which resulted in lengthy litigation. The Court ultimately denied the motion to dismiss on February 26, 2008. Jarvis then filed a notice of appeal from the denial of his motion to dismiss and sought, over the government's objection, to have this case stayed pending the resolution of that appeal. Any delay caused by Jarvis's motion to dismiss and his subsequent appeal of the denial of that motion should not be attributed to the prosecution. *See Gonzales*, 1998 WL 321218 at *2 (defendant cannot "rely upon his own extensive motion practice to bolster the due process argument").

The Tenth Circuit dismissed Jarvis's appeal on May 28, 2008. Trial in this case has now been scheduled for January 26, 2009. The United States does not intend to seek any continuance of this trial date. Incredibly, however, despite complaining in the present motion about the delay in this case, Jarvis's counsel are seeking to delay trial until at least the summer of 2009.

The prosecution is not responsible for the delay of trial in this case. Accordingly,

this factor should not weigh in favor of Jarvis's release.

          3.      The Strength of the Evidence upon Which Detention Was Based

The evidence supporting Jarvis's detention was very strong. Based on the charges contained in the superseding indictment for which the grand jury has found probable cause, the presumption that Jarvis is a risk of flight and a danger to the community applies. *See* 18 U.S.C. § 3142(e). Judge Torgerson previously found that Jarvis had not rebutted that presumption.

As to the CCE count alone, Jarvis faces a mandatory minimum sentence of 20 years and up to life imprisonment. This gives Jarvis an "obvious incentive to flee," *Millan*, 4 F.3d at 1046, especially since he is currently 58 years old. As Judge Torgerson noted, Jarvis also has prior failures to appear and has used an alias in the past, which demonstrates that, if released, Jarvis presents a very high risk of flight. Finally, in the intercepted conversation that Agent Stark summarized, Ayla Jarvis discussed how they had previously been "on the run" for twelve years.

The nature of the charged crimes, which are based on Jarvis's role as the kingpin of an extensive drug trafficking organization, reflect the unacceptable danger that Jarvis poses to the community. The wiretap calls that were played at the November 7 detention hearing were further evidence of that danger.[8]

---

[8] Jarvis asserts that, pursuant to 18 U.S.C. § 2515, Judge Torgerson should not have considered these calls because they "have nothing to do with the allegations in this

The evidence that Judge Torgerson relied on to find that Jarvis is a risk of flight and a danger to the community supports Jarvis's continued detention. Furthermore, to the extent that due process requires more of the government at this stage than is mandated by section 3142, *Cos I*, 2006 WL 2821376 at *5, the government has proffered the evidence relating to Jarvis's attempt to arrange for the murders of the case agent and a cooperating

---

case." Def. Mot. at 18-21. Even assuming that section 2515 applies at detention hearings, and without prejudice to additional arguments the government may make in response to Jarvis's anticipated motion to suppress the wiretap, Jarvis's argument fails for two reasons.

First, Jarvis did not object to the introduction of the wiretap calls on that ground at the November 7 hearing. Thus, he is estopped from asserting that they should not be considered at this stage. *See Cos II*, 2006 WL 4061168 at *19 ("... the Court must be careful not to reconsider rulings on the statutory grounds supporting detention it and the Tenth Circuit have already made ..."); *Accetturo*, 783 F.2d at 389-90 (holding that defendants' delay in asserting section 2515 rights estopped them from asserting those rights).

Second, the wiretap orders in this case authorized the government to intercept calls relating to Jarvis's drug trafficking and money laundering activities, as well as the use of a communications facility to further the commission of a felony controlled substance offense. Each of the three calls played at the November 7 detention hearing were lawfully intercepted because they were pertinent to the government's investigation into Jarvis's drug trafficking organization. With regard to the first call, as noted by DEA Special Agent Stark at the November 7 hearing, the investigation revealed that Jarvis believed Melania Kirwin was selling marijuana that she had stolen from him. 11/7/05 Tr. at 20. Thus, this call constitutes evidence of Jarvis's drug trafficking activities. With regard to the second call, Agent Stark noted at the hearing that Dennis Wilson was an enforcer for Jarvis's organization. *Id.* at 22. This call thus helped to confirm Wilson's suspected role in the organization. Finally, the third call involved a conversation in which Jarvis requested that Ayla Jarvis obtain methamphetamine for him and they discussed the seizure of $287,210.00 in suspected drug proceeds from Ayla. *Id.* at 26-30. Clearly, this call related both to Jarvis's drug trafficking activities and his use of a telephone to facilitate the distribution of methamphetamine.

witness. On the facts of this case, due process does not require that Jarvis be released pending trial.

> B. <u>Jarvis's Detention at TCDC Does Not Violate His Sixth Amendment Rights</u>

Jarvis's final argument is that his detention at TCDC somehow impairs his ability to assist in his defense to such an extent that it violates the Sixth Amendment. Def. Mot. at 23-26. The majority of his argument on this point, however, focuses on the detrimental affect of pretrial detention on the detainee, which relates to his due process argument. The only argument Jarvis makes that is specific to TCDC, as opposed to any other detention facility, is that it is "far from where he faces trial" and is "200 miles away" from his lead counsel, Gary Mitchell. TCDC is in Estancia, New Mexico, approximately 64 miles from the federal courthouse in Albuquerque. Mr. Mitchell's office is in Ruidoso, New Mexico. According to the website mapquest.com, the distance from Mr. Mitchell's office to Estancia is 133.5 miles and the distance from his office to RCC in Albuquerque is 183.9 miles. Thus, Mr. Mitchell is currently approximately 50 miles closer to Jarvis than he would be if Jarvis were detained at RCC.

Jarvis previously moved the Court to stop his transfer from RCC to TCDC, arguing that TCDC's distance from Albuquerque would adversely affect his ability to prepare for trial. Doc. 667. Following a hearing held on September 12, 2006, the Court denied the motion, holding that Jarvis's transfer to TCDC did not implicate either his Sixth Amendment or due process rights. Jarvis has stated no basis in his present motion

for the Court to revisit that decision.

WHEREFORE, the United States requests that the Court deny Jarvis's "Motion for Release on Conditions Pursuant to the Fifth Amendment Requirements of Due Process."

          Respectfully submitted,

          GREGORY J. FOURATT
          United States Attorney

          */s/ James R.W. Braun*

          JAMES R.W. BRAUN
          Assistant U.S. Attorney
          P.O. Box 607
          Albuquerque, New Mexico  87103
          (505) 346-7274

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 12th day of August, 2008, I filed the foregoing pleading electronically through the CM/ECF system, which is designed to cause counsel of record for the defendant to be served by electronic means.

          */s/ James R.W. Braun*

          JAMES R.W. BRAUN
          Assistant U.S. Attorney