1              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF NEW MEXICO
2

3

4

5    UNITED STATES OF AMERICA,

6                        Plaintiff,

7     -vs-                    NO:  CR 05-1849 JCH

8    DANA JARVIS, et al.,

9                        Defendants.

10

11

12

13

14

15              TRANSCRIPT OF PROCEEDINGS

16                 STATUS CONFERENCE

17                  August 6, 2008

18

19

20

21

22

23    BEFORE:  HONORABLE JUDITH C. HERRERA
                UNITED STATES DISTRICT JUDGE
24

25

**PAUL BACA, OFFICIAL COURT REPORTER**

Page 2

```
 1                      APPEARANCES

 2   For the Plaintiff:

 3        US ATTORNEY'S OFFICE
          PO Box 607
 4        Albuquerque, NM  87103-0607
          505-346-7274
 5        BY:  JAMES W.R. BRAUN, ESQ.

 6   For DEFENDANT DANA JARVIS:

 7        GARY C. MITCHELL, PC
          PO Box 2460
 8        Ruidoso, NM  88345
          505-257-3070
 9        BY:  GARY C. MITCHELL, ESQ.

10        JODY NEAL-POST, ESQ.
          317 Amherst St., SE
11        Albuquerque, NM  87106
          505-268-7263
12
     For DEFENDANT GREG HILL:
13
          BILLY R. BLACKBURN, ESQ.
14        1011 Lomas Blvd., NW
          Albuquerque, NM  87102
15        505-242-1600

16   For DEFENDANT BILL JONES:

17        VICTOR K. SIZEMORE, ESQ.
          PO Box 782
18        Placitas, NM 87043-0782
          505-867-1010
19
     For DEFENDANT DENNIS WILSON:
20
          GORENCE & OLIVEROS, PC
21        201 12th Street, NW
          Albuquerque, NM  87102
22        505-244-0888
          BY:  ROBERT J. GORENCE, ESQ.
23

24

25
```

**PAUL BACA, OFFICIAL COURT REPORTER**

c7dc23da-fd93-4e2a-80b4-930aff9f0a78

Page 3

```
 1   For the CJA DEFENDANTS:

 2        SCOTT MORAN DAVIDSON, ESQ.
          1011 Lomas Blvd., NW
 3        Albuquerque, NM  87102
          505-255-9084
 4
     For the DEFENDANTS:
 5
          ASSOCIATES RESOURCES
 6        5590 W. Mexico Ave.
          Lakewood, Colorado 80232
 7        303-986-7688
          BY:  RICHARD DEMAREST, ESQ.
 8
     For DEFENDANT DAVID REID:
 9
          NASH & KIRCHNER, PC
10        PO Box 2310
          Tucson, Arizona  85702
11        520-792-1613
          BY:  WILLIAM KIRCHNER, ESQ. (Via telephone)
12
     Defendant Dana Jarvis appeared in person.
13

14

15

16

17

18

19

20

21

22

23

24

25
```

**PAUL BACA, OFFICIAL COURT REPORTER**

Page 4

```
 1              (Court in session at 9:49 a.m.)

 2              THE COURT:  Please be seated.  Good

 3    morning.  We are on the record in USA vs Jarvis,

 4    et al., CR 05-1849.  Could I get appearances,

 5    please?

 6              MR. BRAUN:  Good morning, Your Honor.

 7    James Braun on behalf of the United States.

 8              MR. MITCHELL:  Good morning, Your Honor.

 9    Gary Mitchell and Jody Post-Neal on behalf of

10    Mr. Jarvis.

11              MR. BLACKBURN:  Good morning, Your Honor.

12    Billy Blackburn on behalf of Greg Hill.  And I will

13    waive his appearance for the status conference, Your

14    Honor.

15              THE COURT:  All right.

16              MR. SIZEMORE:  Good morning, Your Honor.

17    Vic Sizemore for Bill Jones.  We would also waive

18    his appearance for the status conference.

19              MR. GORENCE:  Good morning, Your Honor.

20    Robert Gorence on behalf of Dennis Wilson.  And I

21    will waive his appearance as well.

22              MR. DAVIDSON:  Good morning, Your Honor.

23    Scott Davidson, Associate Research Counsel for the

24    CJA defendants.

25              MR. DEMAREST:  Richard Demarest on behalf
```

c7dc23da-fd93-4e2a-80b4-930aff9f0a78

Page 5

1    of defense for discovery.

2         MR. KIRCHNER:  Good morning, Your Honor.

3    I'm Bill Kirchner.  I'm on the telephone.  I hope

4    I'm not speaking out of order here, but I represent

5    Mr. Reid, who is not present.  He's out of custody,

6    and we would waive his presence.

7         THE COURT:  All right.  Mr. Blackburn.

8         MR. BLACKBURN:  Your Honor, in a previous

9    pleading that Mr. Nash had filed concerning a status

10   memorandum, he had indicated that I was going to

11   stand in for him today because Mr. Kirchner had a

12   medical problem.

13        But that has subsided, so Mr. Kirchner

14   will appear on behalf of Mr. Nash.  I may have some

15   other comments, but he is present for Mr. Reid and

16   Mr. Nash.

17        THE COURT:  All right.  This is a status

18   conference that I set up because I want to discuss

19   primarily scheduling.  But before we get to that,

20   let me ask about a couple of housekeeping things.

21        First, let me ask Mr. Braun:  Do you have

22   any idea yet when I can expect your response to

23   Defendant Jarvis' motion for release?

24        MR. BRAUN:  We can get that filed as soon

25   as the Court likes, in a week or two weeks.

c7dc23da-fd93-4e2a-80b4-930aff9f0a78

Page 6

```
1            THE COURT:  Well, you just tell me when I
2    can expect it.
3            MR. BRAUN:  By next Friday.
4            THE COURT:  So I can expect it by
5    the 15th?
6            MR. BRAUN:  Yes.
7            THE COURT:  All right.  The other thing I
8    wanted to ask you all about before we get to
9    scheduling issues is, I have -- I mean I realize
10   that there are a number of defendants who have
11   entered pleas, changed their pleas, and some of whom
12   have filed motions in this case, motions that other
13   of you have joined.
14            So one thing I'd like you all to address,
15   not today, but if you could get back to me on what
16   motions at this point -- which motions are high
17   priority, which motions are outstanding that you
18   need a ruling on, whether it's a motion that you
19   filed or whether it's a motion that somehow you
20   joined.  I think there is a fair amount of
21   repetition here.  But I would like to try to clean
22   that up as much as possible.
23            So if you all could get back to me on the
24   motions that you all consider to be outstanding and,
25   in addition, pressing, so that I can turn my
```

c7dc23da-fd93-4e2a-80b4-930aff9f0a78

Page 7

1    attention to those as well.

2         And the last thing I wanted to mention

3    before we get to scheduling is, I did receive a

4    suggestion -- and I can't remember which of you gave

5    it to me; it may have been Mr. Mitchell -- about

6    possibly finding some benefit in some sort of a

7    settlement conference.

8         Do any of you feel that that would be

9    useful?  And I am willing to see if I can find

10   another district judge who would be willing to take

11   this on.  I don't want to move in that direction

12   unless you all feel there would be some benefit to

13   it.

14        Mr. Mitchell.

15        MR. MITCHELL:  Your Honor, based on

16   counsel nodding their heads and my prior

17   conversations with most of them, we think that would

18   be advantageous in this particular matter.  And

19   sooner, rather than later.

20        THE COURT:  That was my next question.

21   All right.  Okay.  Well, I will --

22        MR. MITCHELL:  Excuse me, Your Honor.

23        THE COURT:  Yes.  Mr. Mitchell.

24        MR. MITCHELL:  May I have one of

25   Mr. Jarvis' handcuffs or his right hand removed so

**PAUL BACA, OFFICIAL COURT REPORTER**

Page 8

1    he can make notes so I don't have to confer across

2    the table with him and he can write the notes?

3          THE COURT:  Yes.  Could you please release

4    his writing hand?

5          THE DEPUTY MARSHAL:  Judge, if that's your

6    order, I can do that --

7          THE COURT:  That's my order.

8          THE DEPUTY MARSHAL:  I have been

9    instructed to make a record that that's against

10   Marshal policy.

11         THE COURT:  The record has been made and

12   noted.  If you could just release his writing hand.

13         MR. MITCHELL:  Your Honor, I don't know if

14   Mr. Braun is okay with that.

15         MR. BRAUN:  If it might be helpful, then

16   that's fine.

17         The government's only concern would be the

18   effect of Rule 11 on that and whether Rule 11

19   prohibits any judge in this district from engaging

20   in the plea negotiation process.  And that's

21   something perhaps we could look into before we

22   proceed down that path.

23         MR. MITCHELL:  Your Honor, we've had

24   experience in this district.  I think Mr. Gorence is

25   nodding his head.  I know what the other counsel

**PAUL BACA, OFFICIAL COURT REPORTER**

c7dc23da-fd93-4e2a-80b4-930aff9f0a78

1    that are present -- I've had that experience, and

2    we've done that in these complex cases before and

3    it's worked well.  And with appropriate waivers and

4    such, I think we can accomplish that either through

5    a magistrate or a district judge, if you could find

6    one that would be willing to do it.

7             THE COURT:  Well, that will be a

8    challenge.  But I'm willing to see if I can find

9    someone.

10            MR. MITCHELL:  Judge Parker did it in the

11   case that I'm familiar with.

12            THE COURT:  He's who I was thinking of as

13   well.  I will ask him.  I know he's had some health

14   issues, so I frankly don't know one way or the other

15   what his availability may be.  But I will ask him.

16            MR. MITCHELL:  That's an excellent idea.

17            THE COURT:  All right.  Then to move on to

18   the primary purpose for this status conference,

19   which is scheduling, now I've set this trial for

20   January 26, 2009, and I did establish all my

21   standard pretrial deadlines.

22            I realize that this case is not a standard

23   case, but I wanted to have a trial setting just to

24   have something to work off of.  So I did review the

25   status letter from -- or not letter, but the status

1    memorandum that was filed in this case by Defendant

2    Reid.  And I did see his position that January may

3    not be a realistic date, but I want to hear from you

4    all.

5              Mr. Braun.

6              MR. BRAUN:  The government is fine with

7    that date, Your Honor.  I think that gives us about

8    six months' advance notice to clear our schedules

9    and to do what needs to be done to get ready for

10   trial.

11             I think that a remaining motion to be

12   filed, I believe, is a motion to suppress the

13   wiretap.  If the deadline for that is in October,

14   that gives the defense two months to prepare their

15   motion.

16             Where we left off last, I believe the

17   motion to suppress the wiretap was due February 15th

18   of '07.  And that deadline wasn't lifted until just

19   a couple days before then, when the case was stayed.

20   So it's not unrealistic to allow the defendants a

21   full two months to prepare their motion, perhaps

22   have hearings in November and December, and then be

23   ready for trial in January.

24             And the government does not oppose

25   expanding the normal deadline for disclosure of

**PAUL BACA, OFFICIAL COURT REPORTER**

1    witness and exhibit lists to, say, 30 days prior to

2    trial.  And that would give the parties plenty of

3    time to confer and talk about stipulations.

4              THE COURT:  All right.  Let me hear from

5    defense counsel.  Let's start with Mr. Mitchell.

6              MR. MITCHELL:  Your Honor, I have

7    conferred with counsel for the remaining defendants

8    as well.  And we think Mr. Nash is correct, that a

9    January trial date is unrealistic in this matter.

10             And certainly two weeks, Your Honor, is

11   unrealistic.  I think even the government agrees

12   that this case will probably take, at a minimum,

13   four weeks.  And I would estimate that we should set

14   aside six weeks, at least.

15             And of course, that depends on a number of

16   factors.  It depends on how much cooperation and how

17   much disclosure we're going to get regarding

18   cooperating witnesses and who they're going to call

19   on the wiretap information, which wiretaps they

20   think they're going to it use.

21             Let me point out a couple of things for

22   the Court in that regard.  We're familiar with, but

23   I think sometimes we forget that the judge isn't

24   necessarily familiar with everything that we're

25   familiar with in this particular instance.  But

**PAUL BACA, OFFICIAL COURT REPORTER**

1    there's 260 hours of wiretaps, 11,000-plus calls.

2              Obviously, if the government comes in and

3    tells us, "These are the wiretaps that we're going

4    to concentrate and on we're going to attempt to

5    utilize," that makes it much easier and it makes us

6    much more efficient and frankly, costs less and

7    makes for better trial efficiency.

8              Now I know that there's counsel that have

9    conflicts in January with other trials, as Mr. Nash

10   mentioned.  I always have a conflict, personally.

11   But I'm so used to dealing with that, you know, once

12   you give me a setting and I say that's top priority,

13   I alert everybody else and I just say, "Hey, I can't

14   do that."

15             But I like to have that well in advance so

16   I'm not interfering with another judge that's done

17   the same thing before you set yours.

18             But I do anticipate that January is

19   unrealistic.  I think defense counsel are talking

20   about the summer, at the earliest, before we could

21   do that.  And my suggestion to the Court is that,

22   for example, on behalf of Mr. Jarvis, we know

23   that -- and we'll be happy to provide you with the

24   exact motions that still need to be ruled on, those

25   that would require a hearing.  But I know that

c7dc23da-fd93-4e2a-80b4-930aff9f0a78

1    there's 20 plus of those motions that we have

2    pending.

3              In addition, I do think that depending on

4    how much notice and frankly, how strict the

5    government is in telling us which wiretaps they're

6    going to utilize, that will either shorten or

7    lengthen the hearing that's going to be necessary in

8    that matter.

9              And our preparation of affidavits in that

10   regard takes far longer than what most people

11   anticipate.  It certainly will take an extremely

12   lengthy period of time if we don't narrow this

13   wiretap information down to what the government is

14   going to utilize.

15             Now speaking for Mr. Braun, I think that

16   he's certainly amenable to try and accomplish

17   something in that regard.  I will applaud all the

18   counsel that we've gone through and were provided --

19   we've gone through some 70,000 pages of documents

20   and such that we have available through

21   Mr. Demarest, that he can call up for us when we're

22   in trial rather rapidly.  With twelve strokes on his

23   computer, he can have that available for us.

24             So there's been a tremendous amount of

25   work already done, but there's still a lot of heavy

c7dc23da-fd93-4e2a-80b4-930aff9f0a78

Page 14

1    lifting yet to go.

2            Most of the Brady information, Mr. Braun

3    advises me and in conferring with counsel, has been

4    given regarding these cooperating witnesses.

5    There's still some to come, and there's still some

6    disclosure yet to be made regarding presentence

7    reports and such that we don't have that the Court

8    hasn't sentenced on or there are certain defendants

9    that are not set for sentencing yet.

10           But be that as it may, that information is

11   still -- a lot of it has been disclosed, and there's

12   still some forthcoming.

13           I think the better suggestion for

14   scheduling, Your Honor, is this:  Is that we set

15   aside January, and we go back from January and we

16   set aside January for hearings on all of these

17   motions -- and frankly, even on the wiretap

18   motion -- and we go back from that January setting

19   and set deadlines for when those motions are to be

20   filed and when certain disclosures are to be made.

21           And let me address something else.  Thirty

22   days before trial in a complex case may seem like a

23   lot of time for disclosing exhibits and witnesses

24   and such.  But frankly, in these complex cases it's

25   really not.

c7dc23da-fd93-4e2a-80b4-930aff9f0a78

1           If we want to make it really efficient, I

2    have worked with counsel, defense counsel that are

3    here, with the exception of the Arizona counsel, a

4    number of times.  And I know that all of us have a

5    tendency to be very efficient if we have sufficient

6    time to go through the information first.

7           And this is the type of trial in which the

8    greater advance time we have, the more efficient the

9    trial becomes.  And in this case, we could literally

10   bore a jury to tears with all of the thousands and

11   thousands of bank documents and such that may be

12   introduced at this trial.

13          So I'm suggesting to the Court that with

14   the cooperation from the government and with the

15   Court giving us earlier deadlines, the trial would

16   be much more efficient.

17          THE COURT:  What are you suggesting?

18   Mr. Braun suggested 30 days, but I'm not quite sure

19   what you're talking about.

20          MR. MITCHELL:  Mr. Blackburn just

21   whispered 90 days to me, and I think that's

22   appropriate.  I don't have a problem with 90 days.

23   Ninety days would be far better for all of us

24   involved.

25          And I think you'll find, Judge, that

**PAUL BACA, OFFICIAL COURT REPORTER**

Page 16

1    you'll have a lot more stipulations if we can do it

2    that way than before.  Because none of us want to

3    stand up here and interrupt trials with hearings at

4    the bench, if we can avoid it, to make it move right

5    along.

6              So there's a number of other issues we can

7    speak to, but the rest of counsel should speak to

8    the date and the length of trial.

9              THE COURT:  All right.  Let me ask

10    Mr. Braun:  I didn't ask you how long you think this

11    trial would take.  What is your estimate?

12             MR. BRAUN:  The government agrees that it

13    will probably take four to six weeks.

14             THE COURT:  All right.  Thank you.

15             Mr. Blackburn.

16             MR. BLACKBURN:  Your Honor, on behalf of

17    Greg Hill, and also talking a little bit about, as I

18    indicated before, I had consulted with Mr. Nash in

19    preparation for today's hearing, and we worked on

20    the status memorandum.

21             I think that everybody -- counsel has

22    met -- all defense counsel met.  And it's our belief

23    that it would take at least, in our opinion, if the

24    government takes four week, it's our belief that the

25    case will take a minimum of six weeks.  I just

c7dc23da-fd93-4e2a-80b4-930aff9f0a78

1    believe, in talking to everybody, that a six-week

2    estimate is going to give us the appropriate time in

3    order to do this.

4              Number one, I rely upon the statement set

5    forth in the status memorandum.  Mr. Nash has a

6    trial in January that's already been set, where his

7    client is in custody.

8              I have a trial that starts in early

9    January that will not interfere with this.  But it's

10   a little bit difficult to do a first degree murder

11   case and then turn around and do a six-week trial

12   thereafter, in particular based upon --

13   unfortunately, I think everybody that's in this

14   courtroom has a -- it's just the nature of the

15   beast -- has a full plate between now and January

16   anyway, with a number of trials.

17             I'm going to do a six-week trial with

18   Judge Brack in October in Las Cruces.  So we do have

19   to find some periods in between there to do these

20   other issues.

21             And I'm going to ask the Court to set a

22   trial maybe a year from today for this reason:  The

23   people who are going to be in charge of the wiretap

24   is Mr. Nash, myself and Mr. Jarvis' counsel, in

25   conjunction with Scott Davidson, who is the

c7dc23da-fd93-4e2a-80b4-930aff9f0a78

1    administrative counsel in this case, and with one of

2    the experts that we have consulted within this case.

3    But it's our belief, with all due respect, that the

4    earliest that we can have this motion ready to go

5    would be -- is in December.  And it's set forth in

6    the status memorandum that was provided by Mr. Nash.

7              We have to look at -- we have to get -- in

8    order to do the necessity requirement and in order

9    to be able to get an appropriate hearing, I think we

10   have to file the appropriate affidavits under

11   Franks, in order to make a showing to the Court.

12             Obviously, one of the other issues we're

13   going to have to address is the manner and method in

14   which -- related to the individuals that gave the

15   information concerning the wiretaps and whether or

16   not those should be produced.  I know this is just a

17   status conference, so I don't want to belabor the

18   point.

19             But I think the lawyers, as the Court

20   knows, that are here can speak in good faith and

21   state that under the circumstances, we believe that

22   it will take us until December to get that file.

23             Having said that and giving the government

24   some chance to respond over the holidays, then we

25   could hear the wiretap motions sometime --

c7dc23da-fd93-4e2a-80b4-930aff9f0a78

Page 19

1    Mr. Mitchell said January.  However, the problem

2    with that is that because Mr. Nash is taking a

3    rather large lead in this particular motion, he's

4    unavailable, as he set forth in his status

5    memorandum, for the month of January.

6           So one of the things that we could suggest

7    is that we use the time in January or February that

8    the Court has set aside to handle some of the other

9    motions and housekeeping matters and then maybe have

10   a status conference -- or maybe have the wiretap

11   motion sometime in February.

12          I'm not suggesting that -- I'm just using

13   this as an example, having tried a number of

14   multidefendant, multicounty indictment cases.  And

15   just recently one in Arizona that involved the US

16   Attorney's Office here, was that based upon the

17   number of conflicts with counsel, other people's

18   schedules, the presiding judge who took over the

19   case in Arizona, along with Judge Bolton, sat down

20   and said, "Here's the deal."

21          Because that case was going to take two to

22   three months, what they did was they said, "Here's

23   the deal:  We're going to give you a trial date."

24   Basically, it was a year to the date.  And

25   therefore, that will give you plenty of time to go

c7dc23da-fd93-4e2a-80b4-930aff9f0a78

1    get all your conflicts taken care of.  No vacations.

2    You can go do your summer -- all these other issues,

3    and there will be no continuances from that because

4    you can take this order today, and you can go to all

5    of these other judges and say, "This was set under

6    these terms."

7            I say that because with all due respect, I

8    think everybody in this courtroom has cases

9    scheduled between now and December and January that

10   are already on the plate, and it's going to be

11   difficult to juggle both situations.

12           And that gives us more time to work on

13   this case.  There are, as I understand,

14   approximately 20 to 22 outstanding motions that we

15   will comply with the Court's request to provide you

16   with which of those motions need to be heard, which

17   of these motions need to be joined in.

18           Of the 150,000 pages of discovery, 260

19   hours of wiretaps, if we could have identification

20   of which of those wiretaps -- for instance, there's

21   a couple that are just hang up calls.  And while we

22   understand that that's not appropriate, but there

23   are a lot of -- there are a lot of times in there

24   that there are conversations that if we knew that

25   there would be some identification on, that it would

c7dc23da-fd93-4e2a-80b4-930aff9f0a78

1    make these things go a little bit easier.

2          In cases that I've done in this district,

3    and in particular just recently with Judge Armijo, I

4    know she has a practice of having the government

5    give a witness list and also their -- a witness list

6    and their exhibit list.  A trial notebook,

7    basically, that she has the government provide to

8    the Court and the defendant or defense counsel 30

9    days before trial.  Those are on just one defendant

10   cases.

11         That seems to work.  And she then sets

12   deadlines thereafter that parties have to set --

13   have to file objections, and then objections are

14   heard prior to trial.

15         As the Court well knows, if we're going to

16   do a four- to six-week long trial, we want to have

17   as much down time at the bench as possible because

18   the Court has been through this before.  You know

19   how jurors get a little antsy when we're spending

20   out here a lot of time.

21         The further we move these dates back --

22   and that's why I say 90 days.  The further we move

23   these dates back to give us an opportunity to know

24   what witnesses or what exhibits, and if we have a

25   trial notebook or identify those exhibits, then if

1    the Court sets a deadline that we have to object to

2    those within so many -- within 30 days thereafter or

3    they're deemed admitted, then we have plenty of time

4    to come in front of the Court and have arguments as

5    to those particular exhibits and what should be

6    admitted.

7            I know, in speaking to Mr. Demarest,

8    there's about 37,000 pages' worth of documents that

9    could be under the auspices of exhibits.

10           Am I correct, Mr. Demarest?

11           MR. DEMAREST:  Yes.

12           MR. BLACKBURN:  And he can address the

13   Court on that because he's our discovery

14   coordinator.

15           Clearly I don't believe, with all due

16   respect, that the government is going to admit

17   37,000 particular -- I hope not -- exhibits.  Even

18   if it's in the tune of 500 to 1,000, that still is

19   going to be -- it would give us an opportunity to

20   identify those and not have to make a lot of

21   objections, based upon those that we can identify.

22           And that's why I think, as Mr. Nash put

23   forth in his status memorandum, he talked about the

24   efficiency that would take effect if indeed those

25   could be accomplished sooner, rather than later, and

c7dc23da-fd93-4e2a-80b4-930aff9f0a78

Page 23

1    that we don't have to be doing this -- I mean 30

2    days is good.  But 30 days, under a case of this

3    magnitude, is going to have us right up against the

4    wall, I would submit.

5            So my request, on behalf of Mr. Hill --

6    and I think that Mr. Kirchner will have his own.  I

7    don't want to steal his thunder at this point in

8    time because I know he wants to talk -- is to ask

9    the Court to set a trial setting appropriately July

10   or August of next year and set deadlines 90 days

11   before that.  That will give us some time to address

12   all of these issues and will make for an efficient

13   trial in the meantime.  That's all, Your Honor.

14           THE COURT:  Thank you, Mr. Blackburn.

15           Mr. Sizemore.

16           MR. SIZEMORE:  Good morning, Your Honor.

17   Vic Sizemore for Bill Jones.  I do not want to be

18   duplicitous or --

19           THE COURT:  I appreciate that.

20           MR. SIZEMORE:  I know you appreciate that.

21   But I do want to make one point.  All my

22   colleagues -- I've worked with every lawyer at both

23   tables in this courtroom.  And in 1995,

24   Mr. Blackburn and I were involved in the longest

25   trial in this district, which was the Aguirre drug

c7dc23da-fd93-4e2a-80b4-930aff9f0a78

Page 24

1    conspiracy and money laundering case out of Deming.

2         We didn't -- although Judge Conway, I

3    thought, did a great job.  But we did not, and I

4    sure wouldn't say anything else, standing before

5    you, but that and making a record, and he did.  But

6    that trial went on for seven months, including the

7    time the jury was out.  We had 387 witnesses, and I

8    can't remember how much documentary evidence we had.

9         THE COURT:  How long was the retrial?

10        MR. SIZEMORE:  About six weeks.  But a

11   good former colleague of mine, a judge in Midland,

12   Texas, Judge Button, tried that case.

13        THE COURT:  Yeah.  I thought that was four

14   weeks.  But anyway.

15        MR. SIZEMORE:  Was it four weeks?  Okay,

16   I'm sorry.  My client was acquitted in the first

17   trial, and they didn't retry him.

18        MR. BLACKBURN:  It started November 4th,

19   and the jury came back the week before Christmas.

20   And my daughter was born in the middle of this

21   trial.  And we were doing four days a week, by the

22   way.  That was something we didn't discuss.  But

23   that's how long the retrial took.

24        THE COURT:  Yeah, I recall it was four

25   days a week, with Fridays to take other matters up.

**PAUL BACA, OFFICIAL COURT REPORTER**

1          MR. SIZEMORE:  We did that in that Aguirre

2     case, too, four/ten, four days, ten hours a day.

3          All I was going to say is that everything

4     that the government could provide us ahead of time,

5     should this all come to pass with the 90 days and so

6     on, that we could expect those things, I think we

7     could stipulate and eliminate a lot of witnesses.

8          The jury in that case, the government

9     had -- I can't remember how many -- I forget the

10    name right now.  The custodian of records testified

11    from all these various savings and loans and banks

12    and all that, and it became more like a civil trial

13    than it was a criminal trial.

14          So all I can say, Your Honor, is I really

15    feel that my colleagues have set that forth, and

16    that's a great idea.  If we could do that, I think

17    we could save the Court time, the jury time, the

18    government time and defense counsel time.

19          Thank you, Your Honor.

20          THE COURT:  Thank you, Mr. Sizemore.

21          Mr. Gorence, do you have any comments?

22          MR. GORENCE:  I have nothing to add, Your

23    Honor.

24          THE COURT:  Thank you.

25          Mr. Davidson, any comments?

**PAUL BACA, OFFICIAL COURT REPORTER**

Page 26

1           MR. DAVIDSON:  I have nothing to add.  I
2    think what Mr. Mitchell and Mr. Blackburn said
3    regarding the timing for the wiretap motion is
4    accurate.
5           And I also agree with, in substance, what
6    Mr. Nash said in his status memorandum about the
7    time frame for filing that.  And I think he
8    explained in that memorandum the steps that need to
9    be taken when you're challenging a necessity
10   element.  And I think he also noted that those steps
11   can't be compressed.  It's one after the other.
12          And perhaps Mr. Kirchner, by phone, would
13   like to address that.
14          THE COURT:  And I will call on
15   Mr. Kirchner in just a moment.
16          Let me ask Mr. Demarest, do you have
17   anything to add?
18          MR. DEMAREST:  Not unless, on behalf of
19   counsel here, to explain further, no.
20          THE COURT:  And I assume, Ms. Neal-Post,
21   you agree with Mr. Mitchell's comments?
22          MS. NEAL-POST:  I do agree with
23   Mr. Mitchell's comments and Mr. Blackburn's.
24          I would just like to point out that
25   defense filed a motion way back on December 29,

c7dc23da-fd93-4e2a-80b4-930aff9f0a78

Page 27

1    2006.  It's Document 836, I believe.  Yes, that's

2    correct.

3              THE COURT:  Document number what?

4              MS. NEAL-POST:  836.  And it's just a

5    formal request that we made way back, asking for

6    release of the government's exhibits and witness

7    list for its case in chief so we could get going on

8    that.

9              We've been advised on the latest discovery

10   that we may have another suppression motion coming.

11   And it's discovery that is from an incident in 2003,

12   and we didn't have it released to us until February

13   of 2008.  So the sequential releases have caused us

14   to be a little bit behind the curve on some of these

15   things that we need to address in writing.

16             So we could really be assisted if we could

17   get going on getting all the rest of the releases

18   from the government so we could write the motions

19   and not delay the trial setting.

20             THE COURT:  All right.  Thank you.

21             Mr. Kirchner.

22             MR. KIRCHNER:  Thank you, Your Honor.

23             I'm not too worried about Mr. Blackburn

24   having stolen my thunder here.  I won't repeat what

25   he has gone over.

**PAUL BACA, OFFICIAL COURT REPORTER**

1            The only thing I did want to highlight

2    from the memorandum that we filed is the usual

3    course that we take in pursuing wiretap motions, the

4    seriatim nature of it, where obviously we don't

5    start out knowing what's right and what's wrong.  We

6    have to ask the folks who are involved, usually

7    starting with the person who is the primary

8    telephone holder and the other defendants, other

9    people who would know something about the case.

10           From there, very often we then have to

11   file a motion for further disclosure from the

12   government, which is usually opposed, and could

13   result in a series of hearings.  And depending on

14   the outcome of those hearings, we have more or less

15   information to put in the wiretap motion and so

16   forth.

17           So although it sounds like it would be an

18   easy thing to get done by October, I think certainly

19   with the schedule that we have and probably the

20   other attorneys have in the case, I do not think it

21   would be realistic to be done in October.

22           Stating, of course, that we don't know

23   where all of this will lead us.  Maybe there will be

24   no motion.  But presumably, it will take as long as

25   the others that we have done took.  And I would

**PAUL BACA, OFFICIAL COURT REPORTER**

Page 29

1    think that December would be a much more realistic

2    time for getting all of that done.

3         Mr. Blackburn also, of course, noted that

4    we have a conflict in January, where it looks like

5    Walter and I are going to be involved in a full

6    month trial.  So we would really prefer that any

7    hearing on the wiretap motion be set after that,

8    probably in February.

9         The only other thing I would turn to is

10   the issue of the early disclosure.  I would just

11   echo the remarks of the other folks, that it would

12   make a lot of sense now to weed out what we really

13   have to deal with, what we don't, and for us to

14   concentrate on those things.

15        And as you can see in that memorandum, we

16   have sort of offered a quid pro quo here, which is

17   any things that we don't challenge could basically

18   be deemed admitted.  And that would save us a huge

19   amount of time having to go through stuff that the

20   government doesn't even intend to offer.

21        Conversely, it would save the government a

22   lot of time later, having us challenge things that

23   it doesn't even need to offer.  And it would save

24   the Court a tremendous amount of time having to go

25   through all of those things that would be wasted.

**PAUL BACA, OFFICIAL COURT REPORTER**

c7dc23da-fd93-4e2a-80b4-930aff9f0a78

Page 30

1          So we would ask that we get that

2     disclosure as quickly as possible, maybe 90 days

3     before trial.  But really, it seems to me that it

4     could be even earlier than that, with the government

5     reserving the right to modify its list as need be up

6     until a certain amount of time before trial.

7          And you know, the other thing that I would

8     point out is I think some of the folks had talked

9     about 70- or 80,000 pages of disclosure.  My

10    information, and I don't know this first hand, but

11    we talked about it before.  And I do believe that

12    the disclosure is probably almost double that, maybe

13    150,000 or 180,000 pages of disclosure.  So it's a

14    huge amount for us to for through.

15         Anything that could be done to pare that

16    down would really be the best thing to do to get

17    this trial on track.  And summer of next year seems

18    appropriate to us.  One year from today or even any

19    time in the summer I think would be appropriate.

20         THE COURT:  All right.  I think I have

21    called on everyone.

22         Let me ask Mr. Braun what your position is

23    on the early disclosure.

24         MR. BRAUN:  Your Honor, as I said, the

25    government agrees that early disclosure would be

c7dc23da-fd93-4e2a-80b4-930aff9f0a78

Page 31

1    beneficial to the extent that it allows the parties

2    to stipulate on exhibits.  We believe that 30 days

3    is a substantial amount of time.  Ninety days is

4    excessive.  Perhaps 45 days would be better.

5            That would allow the parties to review the

6    exhibit lists, decide on what they're going to

7    object to and file something within, say, two weeks,

8    and give the Court time to rule on those objections

9    prior to trial.

10            I would ask only that it be reciprocal;

11    that if the government has to disclose a witness and

12    exhibit list, that the defense should as well.

13            As the Court is well aware, this is not a

14    new case.  We had a trial setting for April 10th of

15    2007.  That wasn't stayed until mid-February of '07.

16    Why we now need another year to get ready for trial

17    is beyond me.

18            I think a January setting is perfectly

19    reasonable.  I think that two months to prepare a

20    wiretap suppression motion is perfectly reasonable.

21    And I would ask that the Court keep the current

22    trial date and set deadlines accordingly.

23            THE COURT:  What about the request or

24    suggestion that the government identify specific

25    wiretaps so that the defense could focus on those?

c7dc23da-fd93-4e2a-80b4-930aff9f0a78

Page 32

```
 1              MR. BRAUN:  We had actually already agreed
 2      to that, Your Honor.  That was part of the James
 3      hearing disclosures that the government was going to
 4      make.  Previously, the James hearing was set for
 5      March 6th of 2007, I believe.
 6              And the government had agreed and the
 7      parties had agreed that we would disclose the list
 8      of co-conspirator statements, which included all the
 9      wiretap calls that would be introduced, two weeks
10      prior to that hearing.  And the government stands by
11      that disclosure deadline.
12              If the Court sets a James hearing for,
13      say, November, we will disclose all of the calls
14      that we're going to use two weeks prior to that
15      setting.  That gives the defense a substantial
16      amount of time prior to trial to know what they're
17      going to be defending against, as far as the wiretap
18      calls.
19              THE COURT:  All right.  Thank you,
20      Mr. Braun.
21              Does anybody else have any comment on
22      these scheduling issues?
23              Mr. Gorence.
24              MR. GORENCE:  Your Honor, I just wanted to
25      echo what Mr. Blackburn said.  I don't want to get
```

c7dc23da-fd93-4e2a-80b4-930aff9f0a78

1    into specifics, but I mean a January trial date

2    with -- I have -- I mean there's a lot of other

3    pending cases.  I would just ask that you set it far

4    enough out in advance so that it then gets blocked

5    off.

6            And I know Mr. Mitchell's suggestion of a

7    year, there's nothing on anybody's calendar really

8    next summer.  Judge Armijo has set one of the

9    alleged AB cases.  I'm involved in that.  That's

10   April.  I have -- I mean I won't get into my

11   schedule, but I have distinct and very difficult

12   conflicts with cases that are perhaps as old as

13   this, but have been long set.

14           And I think every other, in talking to

15   co-counsel, has problems with January.  That's the

16   only issue.  It's not that we couldn't be ready.

17   It's just that it's -- and not that the Court isn't

18   fair by saying six months out.

19           But six months, with as many lawyers as we

20   have, really doesn't give us the opportunity to

21   clear all our schedules for an undertaking that

22   everyone concedes is going to take approximately six

23   weeks.  That's really a problem and why we're asking

24   for a date far out, so that we can clearly just

25   block it off.  That's my problem.

**PAUL BACA, OFFICIAL COURT REPORTER**

c7dc23da-fd93-4e2a-80b4-930aff9f0a78

Page 34

1         MR. BRAUN:  Your Honor, I'm sorry.  If I

2    could just address one other thing.

3         THE COURT:  Yes.

4         MR. BRAUN:  The recent discovery that

5    Ms. Neal-Post mentioned.  We had heard during the

6    course of this investigation of a time when

7    Mr. Jarvis left a backpack or something like that at

8    a hotel in Tucson a number of years ago, but we

9    hadn't found any reports related to that.

10        Just a few weeks prior to the disclosure

11   of this discovery -- and Ms. Neal-Post said it was

12   February of this year.  I'll just assume that's

13   accurate.  A few weeks prior to that is when agents

14   finally found the reports of that incident and some

15   photographs related to it.  And shortly after

16   discovering it and obtaining the reports, we

17   disclosed them to the defense.

18        And that's what we do.  As we obtain

19   additional discovery, we disclose it.

20        THE COURT:  All right.  Any other comments

21   on scheduling?

22        MR. BLACKBURN:  I just have one briefly,

23   Your Honor.  And obviously, there are three lawyers

24   in this case who are new to this case, myself,

25   Mr. Sizemore and Mr. Mitchell.  And you know, I'm

c7dc23da-fd93-4e2a-80b4-930aff9f0a78

Page 35

1    unfamiliar with all of the previous settings that

2    the Court has made in this case, and I rely upon

3    Mr. Braun's statement.

4            But there are 150,000 pages of discovery.

5    And a six-week trial for some of us who have been on

6    this case less than a year now, obviously, we

7    understood when we got into this case that we would

8    get to this point in time when the Court would set

9    this.  But we haven't been on this case since --

10   working on it since the government has, in 2003 and

11   beforehand or whenever it was.

12           And I just think that setting, as I have

13   indicated and Mr. Kirchner and Mr. Gorence have

14   indicated, by setting this at a date far enough in

15   advance, that we can actually really prepare this

16   case is advantageous to everybody, without having to

17   file last-minute motions.

18           I mean as the Court knows -- I mean if

19   we're going to do -- if I'm going to do a six-week

20   trial with Judge Brack in Las Cruces during the

21   months of October and November, with all due

22   respect, I'm not going to be spending a lot of time

23   looking at the discovery or helping as much as

24   possible as I can on the wiretaps.

25           That's because of the situation we're in

c7dc23da-fd93-4e2a-80b4-930aff9f0a78

1    now for all of the trials that have been scheduled

2    between now and then.  This case is old.  But

3    most -- other than Mr. Jarvis, these individuals are

4    out of custody.  And I would just request that the

5    Court set the case far enough out past January that

6    we can have a reasonable amount of time to address

7    all of these other issues.

8            And I think that again, as set forth in

9    the status memorandum, as you heard from

10   Mr. Davidson what we have to do on the wiretap

11   issues.  That's all I have, Judge.

12           THE COURT:  All right.  Well, I will take

13   all this information into consideration, and I'll

14   set some deadlines and I'll look at the trial date.

15   And I'm just going to tell you I'm going to set

16   things.  I'm just going to set them.

17           And if you all have conflicts, you're

18   going to have to let me know about that.  And I

19   recognize the fact that you all are busy lawyers and

20   you have other matters on your calendars.  But we

21   need to get some deadlines going on this case.  We

22   need to get this case tried.

23           And so I'm going to do my best to set

24   deadlines.  And if I set a James hearing at a time

25   when one of you is unavailable, then you just need

**PAUL BACA, OFFICIAL COURT REPORTER**

Page 37

1    to let me know that, and I'll see whether or not I

2    can realistically change things.

3         But you know, I'm hoping I can get things

4    set so that you all can get this case going and we

5    can get this thing tried.  So I will get back to you

6    on the scheduling order.

7         MR. MITCHELL:  Judge, can you give us a

8    deadline when you want that request, as to which --

9    your request to prioritize our motions and which

10   motions need to be heard, do you want that in the

11   next week?  We can get it to you by next Friday.

12        THE COURT:  The sooner, the better.  If I

13   don't get it from you -- you said this Friday.

14   That's great.

15        MR. MITCHELL:  Not this Friday, next

16   Friday.

17        THE COURT:  I'm sorry.  Next Friday,

18   the 15th.  Well, if I don't hear from the others,

19   then we'll be making some phone calls.

20        MR. MITCHELL:  Well, I think Mr. Jarvis is

21   the one that's going to take the lead on that.  So

22   Jody and I will get that ready for the Court and get

23   it to you by next Friday.

24        THE COURT:  All right.

25        MR. BRAUN:  And just so the Court is aware

c7dc23da-fd93-4e2a-80b4-930aff9f0a78

Page 38

1    when setting the James hearing, that may take three

2    days or so.

3            THE COURT:  All right.  Well, thank you

4    for your attendance this morning, and we'll be in

5    recess.

6            Ms. Neal-Post, can I see you in the

7    vestibule for just a few moments?

8            (Court in recess at 10:33 a.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**PAUL BACA, OFFICIAL COURT REPORTER**

c7dc23da-fd93-4e2a-80b4-930aff9f0a78

Page 39

1

2

3              REPORTER'S CERTIFICATE

4          I, Paul Baca, Official Court Reporter for

5    the US District Court, District of New Mexico, do

6    hereby certify that I reported the foregoing

7    proceedings in stenographic shorthand and that the

8    foregoing pages are a true and correct transcript of

9    those proceedings and was reduced to printed form

10   under my direct supervision.

11          I FURTHER CERTIFY that I am neither

12   employed by nor related to any of the parties or

13   attorneys in this case and that I have no interest

14   in the final disposition of this case.

15

16

17          _____
             PAUL BACA
18           NM Certified Court Reporter No. 112
             License Expires:  12/31/08
19

20

21

22

23

24

25

c7dc23da-fd93-4e2a-80b4-930aff9f0a78