Page 1

1          IN THE UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF NEW MEXICO
2

3

4

5    UNITED STATES OF AMERICA

6                          Plaintiff,

7     -vs-                 NO:  CR 05-1849 JH

8    DANA JARVIS, et al,

9                          Defendants.

10

11

12

13

14

15             TRANSCRIPT OF PROCEEDINGS

16             Sentencing Hearing

17              March 24, 2009

18

19

20

21

22

23   BEFORE:  HONORABLE JUDITH C. HERRERA
             UNITED STATES DISTRICT JUDGE
24

25

**PAUL BACA, OFFICIAL COURT REPORTER**

Page 2

```
 1                       APPEARANCES

 2   For the Plaintiff:

 3        US ATTORNEY'S OFFICE
          PO Box 607
 4        Albuquerque, NM  87103-0607
          575-346-7274
 5        BY:  JAMES W.R. BRAUN,
               james.braun@usdoj.com
 6             STEPHEN R. KOTZ, ESQ.
               steve.kotz@usdoj.gov
 7
     For the Defendants:
 8
          GARY C. MITCHELL, PC
 9        PO Box 2460
          Ruidoso, NM  88345
10        575-257-3070
          BY:  GARY C. MITCHELL, ESQ.
11             gmitchell@zianet.com

12        JODY NEAL-POST, ESQ.
          317 Amherst St., SE
13        Albuquerque, NM  87106
          505-268-7263
14        jodynealpost@gmail.com

15        JUDITH A. ROSENSTEIN, ESQ.
          P.O. Box 25622
16        Albuquerque, NM 87125-5622
          505-379-1289
17        jrosenstein7@cybermesa.com

18   Also present:

19   Probation Officers Anthony Galaz and Ron Travers

20   The defendant appeared in person.

21

22

23

24

25
```

**PAUL BACA, OFFICIAL COURT REPORTER**

```
 1              (Court in session at 11:00 a.m.)

 2              THE COURT:  Good morning.  We're on the

 3    record in USA vs Jarvis, CR-05-1849.

 4              MR. BRAUN:  Good morning, Your Honor.

 5    James Braun and Steve Kotz on behalf of the United

 6    States.

 7              MS. ROSENSTEIN:  Good morning, Your Honor.

 8    Judith Rosenstein on behalf of Dana Jarvis, along

 9    with Jody Neal-Post and Gary Mitchell.

10              THE COURT:  I note that the defendant is

11    also present this morning.

12              MS. ROSENSTEIN:  Yes, Your Honor.

13              THE COURT:  All right.  We're here on

14    sentencing.  Are we ready to proceed?

15              MR. BRAUN:  Yes, Your Honor.

16              MS. ROSENSTEIN:  Your Honor, we're

17    wondering if the Court would allow the Marshals to

18    take the shackles off his ankles.  They're tight

19    because I guess as we get older, he's beginning

20    to -- his legs are swelling up, and he's kind of in

21    pain.  And I would really rather he not be sentenced

22    while he's in pain.

23              We've got three Marshals here, he's in a

24    red outfit, and I don't think he's going anywhere.

25              THE COURT:  Well, typically I allow the
```

**PAUL BACA, OFFICIAL COURT REPORTER**

1    release of the writing hand when there's testimony

2    or argument or things of that nature.  Otherwise, I

3    do tend to abide by the Marshals' recommendations.

4    So I don't want him to be in pain, but . . .

5              MS. ROSENSTEIN:  Well, we're not asking

6    them to take the handcuffs off, just the leg

7    shackles.  And I don't see how he could possibly get

8    out of the building or do anything if he's

9    handcuffed, if he's got handcuffs on and a red suit.

10             THE COURT:  All right, I understand what

11   you're saying.  And again, my practice is to abide

12   by the recommendations of the Marshals, unless again

13   there's need for handwriting.  So I'll have to again

14   abide by the . . .

15             MS. ROSENSTEIN:  Well, he'd like to make

16   some notes, if we could have that.

17             THE COURT:  All right, let me ask you

18   this.  Typically what I do is, as I said a moment

19   ago, I will allow the handwriting hand to be

20   released when there's testimony or argument or

21   things of that nature.

22             This doesn't seem to be that type of a

23   proceeding, so I'm just trying to understand what

24   the issue is.

25             MS. ROSENSTEIN:  The issue is a little

eef4bf39-4584-4fc4-9754-bf446dabb27f

1    humanity, Judge, that's all.  This is a victimless

2    crime, no violence.  He's been in custody for four

3    year, no violence, no violations, no problems

4    whatsoever.  And he's pushing 60.  He can't go

5    anywhere.

6            I don't see how -- I understand what the

7    rules are.  It's just between us.  There are no

8    other inmates here.  And all we're asking is that we

9    treat him as a human being.  If he were out of

10   custody, he wouldn't have the handcuffs on.  He's in

11   custody for a lot of different reasons.  I'm not

12   going to go into that.

13           But we're just asking that he be vaguely

14   comfortable while he's being sentenced to almost a

15   decade and a half of incarceration for his conduct.

16           THE COURT:  All right.  I understand the

17   request, and I will not require that the shackles be

18   removed from his ankles.

19           MS. ROSENSTEIN:  Okay.

20           THE COURT:  All right.  As I indicated, we

21   are here on sentencing.  I have reviewed the

22   objections and exceptions to the presentence report

23   that you filed on behalf of Mr. Jarvis,

24   Ms. Rosenstein.

25           And it appears to me -- you tell me if I'm

1   wrong.  But it appears that most of the issues that

2   you were concerned with have been resolved.  Is that

3   fair to say?

4          MS. ROSENSTEIN:  That's fair to say.

5          THE COURT:  All right.  I will then ask

6   you, have you had an opportunity to review the

7   presentence report and addendum which most recently

8   was disclosed yesterday?  Or excuse me, not

9   yesterday -- yes, yesterday, March 23rd.

10          THE DEFENDANT:  Are you addressing me,

11   Your Honor?

12          THE COURT:  No, Mr. Jarvis.  I'm speaking

13   with your counsel.

14          MS. ROSENSTEIN:  Yes, ma'am.

15          THE COURT:  All right.  You've had an

16   opportunity to review -- I understand there are no

17   factual objections, so that no evidentiary hearing

18   will be necessary this morning.  Is that accurate?

19          MS. ROSENSTEIN:  I don't believe there's

20   an evidentiary hearing necessary.  I do have the

21   signed affidavit.  And how we did it is Mr. Mitchell

22   witnessed his signature.  And I believe that

23   Mr. Jarvis is prepared to swear to the accuracy of

24   the contents of the affidavit.  I'd like to hand

25   that up to the Court.

eef4bf39-4584-4fc4-9754-bf446dabb27f

```
 1            THE COURT:  All right.  Let me ask, is

 2   that the affidavit that was also submitted in one of

 3   your papers?

 4            MS. ROSENSTEIN:  Yes, that's correct.

 5            THE COURT:  All right.  I have reviewed

 6   the affidavit.

 7            MS. ROSENSTEIN:  That's just the signed

 8   one, Your Honor.

 9            THE COURT:  Yes, all right.  The Court at

10   this time will adopt the factual findings that are

11   contained in the presentence report and addendum, so

12   that no evidentiary hearing will be necessary today.

13   But I will --

14            MS. ROSENSTEIN:  Before the Court does

15   that --

16            THE COURT:  Yes.

17            MS. ROSENSTEIN:  -- with apologies for

18   interrupting, there is still an issue with regard to

19   the amount of drugs.  We have agreed that it should

20   be level 36 for the purpose of the calculations.

21            However, Mr. Jarvis in his affidavit,

22   based on his own review of his own documents, as

23   well as his recollection of previous documents which

24   are not in the hands of the government, he believes

25   that it may be less.
```

**PAUL BACA, OFFICIAL COURT REPORTER**

1              It is our opinion, based on case law, that

2     the Court must make its own determination as to the

3     amount and determine in its determination what an

4     appropriate sentence would be pursuant to both the

5     guidelines and the statute, 3553(a) factors.

6              So in that regard, I would say that the

7     Court can either accept the parties' agreement or it

8     can make its own findings based on Mr. Jarvis'

9     affidavit.  And I do have some case law here that

10    talks about that, if I may.

11             And I see that Mr. Braun is standing.  So

12    if he would like to say something, please do.

13             THE COURT:  Mr. Braun?

14             MR. BRAUN:  Well, Your Honor, I don't know

15    if we need to go to the case law because the parties

16    have stipulated to the amount of marijuana that is

17    attributable to the defendant.

18             And moreover, because the parties have

19    stipulated to the ultimate sentence that is

20    appropriate in this case, the Court can simply find

21    under Rule 32(i)(3) that a ruling on this issue is

22    unnecessary either because the matter will not

23    affect sentencing or because the Court will not

24    consider it in sentencing.

25             I think the appropriate ruling would be

eef4bf39-4584-4fc4-9754-bf446dabb27f

1    that it simply will not affect sentencing, so

2    there's no need to decide this dispute.

3            THE COURT:  Any comment?

4            MS. ROSENSTEIN:  The only comment I have

5    is that I believe that the Court has an obligation.

6    And the Court may find, based on all the materials

7    that the Court has, that you're prepared to do that.

8            But it's my feeling that the Court has to

9    make it own determination, no matter what the

10   parties have said, and that was the whole purpose of

11   this.  What we're trying to do, very frankly, Your

12   Honor, is to show the Court that this plea agreement

13   that was made, although it was made pursuant to

14   Rule 11(c)(1)(C), that it is in fact a guideline

15   sentence based on other factors besides just the

16   parties' stipulation.

17           And we're not going back on our

18   stipulation, and I don't think we're going to

19   withdraw the plea.  But it seems to me that the

20   Court can make a finding that the sentence that was

21   agreed upon is in fact pursuant to all the guideline

22   calculations, rules and application notes.

23           And that is spelled out in our reply

24   specifically, that if the Court believes that it's

25   less than 10,000 kilos, it's the bottom of the

1   guideline that applies if the Court agrees that

2   enhancement for money laundering should not be

3   applied.  And I believe that it is certainly a

4   reasonable departure for the reasons that we said in

5   our reply, as well as in the other documents that we

6   filed.

7           If the Court believes that it will stick

8   with the stipulation of the parties that it's over

9   10,000, then the Court can do a departure of the

10  equivalent of two levels for his age, his health and

11  his postarrest rehab, which is also spelled out,

12  with one exception.  We neglected to mention that

13  Mr. Jarvis, since he's been at Torrance County, has

14  been in charge of the printing room, print shop, and

15  prints all the documents for the entire jail.

16          And as the Court knows -- I think I

17  mentioned this -- I spoke with Deputy Warden

18  Rodriguez, who indicated to me that Dana has been a

19  great inmate.  He's very helpful to the staff.  He

20  calms things down.  I think it's because he's more

21  mature.  He's very intelligent.  He recognizes the

22  situation he's put himself in, and he's trying to

23  make the best of it.

24          And I think that one of the disturbing

25  things is that he seems to be getting -- based on

**PAUL BACA, OFFICIAL COURT REPORTER**

eef4bf39-4584-4fc4-9754-bf446dabb27f

1    guidelines and the law as it currently exists, he's

2    getting significantly more incarceration than people

3    who have acted out in violent ways on many

4    occasions.

5            I mean this is -- I'm getting ahead of

6    myself here.  But that's basically what we're asking

7    the Court, to make the finding that -- assuming the

8    Court wants to accept the plea agreement, and I

9    think that's a fairly good assumption --

10            THE COURT:  I do intend to accept the plea

11    agreement.

12            MS. ROSENSTEIN:  -- that the Court makes

13    findings that it is pursuant to the guidelines for

14    the reasons that are outlined.

15            THE COURT:  All right.  I guess perhaps we

16    are both getting a little ahead of ourselves.  Let

17    me just note that this is an 11(c)(1)(C) plea

18    agreement.  And let me just be clear.  I do accept

19    the plea agreement, and I do intend to sentence

20    Mr. Jarvis in accordance with the plea agreement.

21            So with that, if there are any other

22    comments that you'd like to make, Ms. Rosenstein,

23    please do.

24            MS. ROSENSTEIN:  Yes, there are a few.

25            Basically what I want to say, it really

eef4bf39-4584-4fc4-9754-bf446dabb27f

1    doesn't have much to do specifically with this case,

2    but kind of a generalized thing.

3          We, as a country, I think at some point

4    have to decide what we feel are our core values and

5    how we carry them out.  And it seems to me that

6    based on the economic condition that this country is

7    in basically because of fraud, white collar fraud

8    and greed, we're in a situation where we have to

9    parse out our funds.

10          And when we incarcerate Mr. Jarvis, at the

11    moment we're talking about approximately $25,000 a

12    year just for him.  And that's if he's healthy.  And

13    by the time he gets out, he will be almost 70 years

14    old.  He already has significant medical problems.

15    And we're talking about just the four years over the

16    mandatory minimum.  We're talking $100,000 plus.

17          The drug trade in this -- and this is from

18    a number of cites on Google -- the US drug trade

19    last year, from '08 to '09, was about $60 billion in

20    this country.

21          At the same time, according to pretty much

22    the same sources, white collar fraud was

23    $1.2 trillion, trillion dollars.  In 2008, the FBI

24    investigated 38 corporate investment frauds.  So far

25    this year, in the first three months of this year,

1    that number has gone up to 2,400, of which 1,800 are

2    mortgage frauds.  Since 1987, when the omnibus crime

3    bill, the drug laws, went into effect, prison costs

4    have gone up 127 percent.

5           And so what we're doing, we're

6    incarcerating this nonviolent gentleman who has

7    committed a victimless crime.  And I'm not saying

8    that it's not a crime, and I'm not saying that it

9    wasn't his choice, a knowing choice.  And I am not

10   saying that he doesn't deserve consequences for

11   making that very bad choice to violate the law.  I'm

12   a very strong believer in consequences for our

13   conduct, and I'm a big believer in adults making

14   good choices if they can.

15          But being I'm talking about choices that

16   this nation can make, and it seems to me that when

17   we have -- just this morning he came in with a

18   fellow who committed what, eight --

19          THE DEFENDANT:  I want to tell that story.

20          MS. ROSENSTEIN:  Oh, okay.  I'm sorry.

21   Well, I'll let you tell it.

22          But we have individuals who have committed

23   violent offenses, including murder, who get less

24   time or just a little bit more time.

25          In terms of marijuana, it's been legalized

1    in 13 states for medical purposes.  It's clearly

2    from a scientific viewpoint, perhaps not from a

3    legal viewpoint, clearly different from many of the

4    other drugs that are illegal.  It's used by millions

5    of people, including apparently Presidents, Supreme

6    Court Justices, lawyers, doctors, et cetera, as well

7    as other people.

8              So as I say, I think we have to make a

9    choice as to whether or not it's more important to

10   put people like Dana Jarvis in custody for long

11   periods of time or whether universal healthcare is

12   more important or supporting our infrastructure is

13   more important.

14             The only other things I wanted to ask for,

15   Your Honor, is if the Court would consider

16   recommending FCI Englewood, which is in Colorado,

17   which is fairly close to Mr. Jarvis' relatives here,

18   and he has some relatives that are in Colorado.

19             I have, if I can find it, an order.  And

20   what I may need to do is just e-mail it to your

21   staff.  But it's a court order that the parties are

22   asking the Court to sign allowing personal property

23   to be returned.

24             What Mr. Braun has indicated to me is

25   that -- and that's what I put in the order, so that

**PAUL BACA, OFFICIAL COURT REPORTER**

1    we would have it in writing -- that within the next

2    two weeks, he and Agent Stark or whoever will go

3    through the boxes that they have and determine

4    what's evidence and what can be returned.  And that

5    will be done within a 30-day period after the --

6              MR. BRAUN:  Thirty days.

7              MS. ROSENSTEIN:  Well, you have to start

8    within two weeks, and you have 30 days thereafter.

9    So that's a total of six weeks.

10             MR. BRAUN:  Okay.

11             MS. ROSENSTEIN:  Is that what we agreed

12   to?

13             THE COURT:  I trust that you'll let me

14   know if that's not what you --

15             MR. BRAUN:  Well, what the government has

16   agreed to, and the order may be different, is that

17   we would return the personal items within 30 days.

18             If you have the stipulated order.

19             MS. ROSENSTEIN:  I do.

20             MR. BRAUN:  We went through a prior

21   version.  So I'm not sure what the final version is.

22             THE COURT:  Is that the final version?

23             MR. BRAUN:  That's fine, Your Honor.

24             THE COURT:  All right.  I have reviewed

25   the order, and I have signed it.

**PAUL BACA, OFFICIAL COURT REPORTER**

Page 16

```
1              MS. ROSENSTEIN:  Thank you.

2              THE COURT:  So that's one thing less off

3    your list.

4              MS. ROSENSTEIN:  Two other requests, Your

5    Honor.  There is, as the Court knows, a provision in

6    the law to deny federal benefits to Mr. Jarvis and

7    his family, based on the conviction for a drug

8    offense.

9              We're asking that the Court specifically

10   waive that statute and that the federal benefits can

11   be applied.  By the time Mr. Jarvis is out, he will

12   be almost 70 year old.  It is highly unlikely that

13   he will be able to find employment.  All of his --

14   any valuable property that he has, the government

15   has already forfeited and he's already forfeited it

16   to the government.

17             He will have nothing when he comes out, so

18   he may well need those federal benefits just to

19   survive.  So I would ask that the Court allow him to

20   get those benefits, if necessary.

21             And the last thing is because the case

22   will now be over, as far as Mr. Jarvis is concerned,

23   we're asking that the Court unseal all of the

24   non-CJA proceedings as they relate to Mr. Jarvis.

25             And if there's any document, which I do
```

Page 17

1    not believe there is, that indicates the true name

2    of any of the CWs or CSs, I'm sure that Mr. Braun

3    will indicate that.

4              MR. BRAUN:  We hadn't talked about that

5    before Court, and I'm not in a position right now to

6    give the government's position on unsealing all the

7    documents.  I'd have to look back over the docket to

8    see what those documents were.

9              MS. ROSENSTEIN:  Well, we're talking about

10   the documents that relate to Mr. Jarvis, and not

11   other defendants.

12             MR. BRAUN:  We're talking about pleadings

13   that were filed in relation to the motion to

14   dismiss, that type of stuff.  And I would need to

15   look at those documents again to see why they were

16   sealed in the first place before we state our

17   position.

18             MS. ROSENSTEIN:  Well, I don't see that

19   there's any reason to seal anything, now that the

20   case is over, with the exception of the safety of

21   any of the CWs or CSs, who have nothing to fear from

22   Mr. Jarvis.

23             MR. BRAUN:  I believe some of those

24   documents were actually sealed at the defense'

25   request because they supposedly contain

Page 18

1    attorney/client privilege.  So to the extent that

2    the defense is waiving that and withdrawing that

3    request, the United States would not object to that.

4              MS. ROSENSTEIN:  Yes, we are.

5              THE COURT:  All right.  So with respect to

6    the unsealing of documents, then what you're

7    requesting is that any sealed pleadings relating to

8    Mr. Jarvis be unsealed, with the exception of any

9    information that may identify either CWs or CSs.

10             And to the extent that any of those

11   pleadings assert an attorney/client privilege,

12   you're waiving the privilege at this point?

13             MS. ROSENSTEIN:  That's correct, except

14   with regard to CJA matters.

15             THE COURT:  Except with regard to CJA

16   matters, all right.

17             MS. NEAL-POST:  Judge, I think I can

18   clarify that.  I think that the only pleading --

19   it's not even actually a pleading.  Mr. Jarvis had

20   submitted a notebook of materials for the in-camera

21   review of Chief Judge Garcia.  And I think that that

22   would be the only one that would be covered by

23   privilege.

24             THE COURT:  All right.  And then if I

25   understand, the government's position is the

**PAUL BACA, OFFICIAL COURT REPORTER**

eef4bf39-4584-4fc4-9754-bf446dabb27f

1    government has no objection to the unsealing of the

2    materials submitted by the defendant which initially

3    had been deemed to be attorney/client privileged?

4            MR. BRAUN:  That's correct.  And I suppose

5    we wouldn't object to the unsealing of the related

6    government pleadings that were filed under seal

7    simply because the defense' pleadings had been filed

8    under seal.

9            But it's my understanding the defense

10   doesn't request unsealing of anything that relates

11   to the cooperating defendant, in that these are

12   confidential witnesses.

13           THE COURT:  Right.  That's my

14   understanding as well.

15           And they also don't waive any

16   confidentiality in the CJA pleadings?

17           MS. NEAL-POST:  Right.

18           THE COURT:  All right.  So that appears

19   to --

20           MS. ROSENSTEIN:  Right, that's it.

21           The only other thing I'd like to say is

22   that, as the Court may know, I've been practicing

23   law for a long time, doing criminal defense most of

24   it.  And it was a pleasure to represent Mr. Jarvis.

25   He's a very intelligent person.

**PAUL BACA, OFFICIAL COURT REPORTER**

Page 20

```
 1            THE COURT:  And I'm also glad that you

 2    were able to jump back in here at the end to get

 3    this finalized.  So that was helpful as well.

 4            I don't mean to cut you off,

 5    Ms. Rosenstein.  But if that concludes your

 6    comments, then I will turn to Mr. Jarvis for any

 7    comments that you would like to make.

 8            THE DEFENDANT:  Okay, Your Honor.  Thank

 9    you Mr. Braun, Mr. Kotz, Mr. Baca and everyone else.

10    I would like to put on the record a statement that I

11    accept responsibility for my actions.  And I would

12    also like to mention that my request for the

13    Englewood facility, FIC Englewood outside of Denver,

14    in Lakewood, Colorado, is the destination for my

15    incarceration.

16            And I will tell the story about -- on the

17    way in from the Torrance County facility this

18    morning, in the back of the van I sat next to a man

19    who I had seen in the library frequently because we

20    have a common interest in ancient civilizations.  So

21    we compare books, and we were talking.

22            And he's going for a plea hearing today,

23    and he's agreed to a 47-month sentence.  His crime

24    was he's robbed eight banks.  He's a bank robber,

25    and he's getting 47 months.
```

**PAUL BACA, OFFICIAL COURT REPORTER**

Page 21

1          And I was going to say that compared to my

2   case as a nonviolent offense, first offense, the

3   presentence report, it says in the section Victim,

4   and it says none.  And I believe the 168-month

5   sentence, 14 years for a first offense

6   marijuana-related charge, is really out of line.

7          And I just wanted to point out that

8   compared to the bank robber who I was sitting next

9   to moments ago, I think there's something wrong here

10  today.  I think this is a problem here, and I don't

11  feel that justice is -- justice isn't happening

12  right here, right now.  And that's all I have to

13  say.

14         And I thank you for putting up with almost

15  four years of probably 500 trees were cut down for

16  all the motions that we filed.  And may I suggest

17  that the Court consider using hemp paper in the

18  future for their documents?  It would save cutting

19  down a lot of forest.  That's all.

20         THE COURT:  I think Ms. Neal-Post is

21  singularly responsible for the death of many, many

22  trees in the forest.

23         THE DEFENDANT:  Maybe 490 of those,

24  anyway.

25         MS. ROSENSTEIN:  In her defense, she's

eef4bf39-4584-4fc4-9754-bf446dabb27f

Page 22

1    just doing to her job, Judge.

2              THE COURT:  I'm not suggesting otherwise.

3              MS. ROSENSTEIN:  I know.

4              THE DEFENDANT:  These gals did a great job

5    for me.  I want to put on record I appreciate the

6    hard work that they did and the many, many hours

7    that Ms. Post put in researching the law and

8    fighting on my behalf.  Thank you.

9              MS. NEAL-POST:  You're welcome.

10             THE DEFENDANT:  And to Mr. Mitchell and

11   Mr. Romero and everyone else.

12             THE COURT:  And I would just say that

13   everybody here has just been doing their job, and we

14   all understand that.

15             All right.  Thank you for your comments,

16   Mr. Jarvis.

17             I will also note that I have reviewed the

18   statement that you submitted and all the materials

19   that were submitted in the sentencing pleadings that

20   I received.

21             THE DEFENDANT:  All right.  Thank you.

22             THE COURT:  Mr. Braun, any comments from

23   the government?

24             MR. BRAUN:  Your Honor, I would simply

25   note, as the Court is aware, Congress has determined

eef4bf39-4584-4fc4-9754-bf446dabb27f

1    the appropriate penalty for trafficking marijuana.

2    And given the law as it is, we would submit that the

3    stipulated sentence is a reasonable one.

4           THE COURT:  All right, yes.  There were a

5    number of comments made today not only by

6    Mr. Jarvis, but also by Ms. Rosenstein.  And I would

7    just say that I head what you had to say, and I

8    understand that you understand that that's not

9    something that this Court can address.

10           I understand that as you stated in your

11    comments, that's an issue for this country to

12    determine what this country's priorities and values

13    are.  That's something that's not on the table in

14    front of this Court, so you'll have to take it up

15    with Congress.

16           MS. ROSENSTEIN:  I agree with the Court,

17    and I understand that.  Federal judges have a great

18    deal of power and influence, and so do the US

19    Attorneys.  So I guess I was kind of hoping if

20    anybody agrees with me, that they will do the same

21    in terms of letting Congress know how we feel.

22           I think that probably the complaints of

23    federal judges caused us to have the safety valve.

24    I'm quite convinced of that.  And I think that

25    Congress doesn't know the reality of what this Court

1   goes through day after day, sentencing people, and

2   what prosecutors go through, having to make

3   discretionary decisions about how to prosecute

4   people, and what defense counsel have to do to

5   represent people.  And we get to see them as full

6   human beings and not just criminals.

7          THE COURT:  All right.

8          MS. ROSENSTEIN:  Thank you.

9          THE COURT:  If there's no further comment,

10  then I will proceed to sentencing.

11         All right.  The Court has reviewed the

12  presentence report and the factual findings.  The

13  Court has considered the sentencing guideline

14  applications and the sentencing factors that are set

15  forth in 18 United States Code, Section 3553(a)(1)

16  through (7).

17         Now the offense level is 39, and the

18  criminal history category is 1, establishing a

19  guideline imprisonment range of 262 to 327 months.

20         However, under Rule 11(c)(1)(C) of the

21  Federal Rules of Criminal Procedure, the Court

22  accepts the plea agreement which includes a specific

23  sentence of 168 months, as the Court is satisfied

24  that the agreed sentence departs for justifiable

25  reasons.

**PAUL BACA, OFFICIAL COURT REPORTER**

eef4bf39-4584-4fc4-9754-bf446dabb27f

Page 25

1          The Court notes that the defendant

2    operated and supervised a drug conspiracy and was

3    accountable for the possession and distribution of

4    between 10,000 and 30,000 kilograms of marijuana.

5    The Court does accept the stipulation of the

6    parties.

7          So as to each of Counts 1 and 26 of the

8    superseding indictment, 1:05-CR-01849-001JH, the

9    defendant, Dana Jarvis, is committed to the custody

10   of the Bureau of Prisons for a term of 168 months.

11   Said terms will run concurrently.  The Court will

12   recommend that the sentence be served at the FCI

13   Englewood, Colorado, facility.

14         Now as to Count 1 of the superseding

15   indictment, the defendant is placed on supervised

16   release for a term of five years.  As to Count 26 of

17   the superseding indictment, the defendant is placed

18   on supervised release for a term of three years.

19   Said terms will run concurrently, for a total term

20   of five years.

21         Now the defendant must comply with the

22   standard conditions of supervised release and the

23   following mandatory conditions:  The defendant will

24   submit to DNA collection, in compliance with

25   statutory requirements, while incarcerated in the

eef4bf39-4584-4fc4-9754-bf446dabb27f

1    Bureau of Prisons or at the direction of the United

2    States Probation Office.

3           The defendant shall not possess, have

4    under his control or have access to any firearm,

5    ammunition, explosive device or other dangerous

6    weapons as defined by federal, state or local law.

7           The following special conditions will also

8    be imposed:  The defendant must participate in and

9    successfully complete a substance abuse treatment

10   program, which may include drug testing, outpatient

11   counseling or residential placement.

12          The defendant may be required to pay a

13   portion of the cost of treatment and/or drug

14   testing, as determined by the Probation Office.

15          The defendant must refrain from the use

16   and possession of alcohol and other forms of

17   intoxicants and must not frequent places where

18   alcohol is the primary item for sale.

19          The defendant must submit to a search of

20   his person, property or automobile under his

21   control, to be conducted in a reasonable manner and

22   at a reasonable time, for the purpose of detecting

23   drugs, drug paraphernalia or any other contraband at

24   the direction of the Probation Officer.  And he must

25   inform any residents that the premises may be

**PAUL BACA, OFFICIAL COURT REPORTER**

eef4bf39-4584-4fc4-9754-bf446dabb27f

1    subject to a search.

2          The defendant must participate in and

3    successfully complete a mental health treatment

4    program, which may include outpatient counseling,

5    residential placement or prescribed medication as

6    approved by the Probation Officer.  The defendant

7    may be required to pay a portion of the cost of this

8    treatment, as determined by the Probation Office.

9          The defendant must provide the Probation

10   Officer access to any requested financial

11   information, personal income tax returns,

12   authorization for release of credit information and

13   other business financial information in which the

14   defendant has a control or interest.

15         Now the defendant shall have no contact

16   with the co-defendants in this case, with the

17   exception of his daughter, Ayla Jarvis; the mother

18   of his child, Melania Kirwin; and his sister-in-law,

19   Cathy Fitzgerald.

20         Based on the defendant's lack of financial

21   resources, the Court will not impose a fine.

22         Consistent with the stipulation in the

23   plea agreement, the defendant forfeits his rights,

24   title and interest to the items and property noted

25   in paragraph 11 of the plea agreement.

eef4bf39-4584-4fc4-9754-bf446dabb27f

Page 28

1          The defendant shall pay a special

2    assessment of $100 as to each count of conviction,

3    for a total of $200, which is due immediately.

4          MS. ROSENSTEIN:  That's already been paid,

5    Your Honor.

6          THE COURT:  All right.  I will note that

7    the special penalty assessment has already been

8    paid.

9          Pursuant to 18 United States Code,

10    Section 3742(a), within ten days of the entry of the

11    judgment you have the right to appeal the final

12    sentence of this Court, and you have the right to

13    apply for leave to appeal in forma pauperis if you

14    are unable to pay the cost of an appeal.

15          MS. ROSENSTEIN:  Your Honor, may I make a

16    comment on some of the conditions and then ask the

17    Court to reconsider them?

18          THE COURT:  Yes.

19          MS. ROSENSTEIN:  Number one, the drug

20    treatment program I do not believe is in any way

21    necessary.  There have been all sorts of scientific

22    studies that indicate marijuana is not an addictive

23    substance.

24          I can see that if the Probation

25    Department, who then supervises him, believes that

**PAUL BACA, OFFICIAL COURT REPORTER**

1    that's necessary, that would be fine.  But I would

2    ask that the Court not make it mandatory unless it's

3    necessary.

4            By the time Mr. Jarvis is out, he will

5    have done 85 percent of 14 years.  He will be in his

6    late sixties.  And I really think it seems to be a

7    waste of time and money to have him participate in a

8    substance abuse program that is unnecessary.

9            With regard to the no alcohol, he had a

10   DWI from eleven, probably twelve years ago.  I don't

11   think it's necessary for him to not have any

12   alcohol.  If the Court wishes to prohibit him from

13   drinking and driving, I think that's quite

14   appropriate because he has to obey all laws.  So I

15   don't think the prohibition against alcohol is in

16   any way necessary in this particular case.

17           And finally, allowing Probation to have

18   access to his financial records is generally a

19   provision for those who commit white collar crimes

20   and financial crimes.  This is not a financial

21   crime.  I mean there was a money laundering of 1,350

22   bucks, but I don't see that any of those three

23   things are necessary.

24           And we know that the Probation Department

25   is overworked and probably underfunded.  And I would

Page 30

1    like to see those three items back, unless they're

2    necessary.  And the probation conditions or the

3    supervision conditions can always be amended if it's

4    necessary.

5              THE COURT:  All right.

6              MS. ROSENSTEIN:  And also the mental

7    health, as well.  There's no indication whatsoever

8    that he has a mental health problem, other than

9    anxiety.

10             THE COURT:  Mr. Jarvis.

11             THE DEFENDANT:  Yes, Your Honor.  I agree.

12   I don't feel that I'm going to need any drug

13   counseling or mental health counseling.  The alcohol

14   is no problem.  I don't plan on ever drinking or

15   every doing drugs again.  I'm clean and sober now.

16   And I'm actually enjoying that, and that's the way

17   I'm going to stay.

18             I'm not going to sell marijuana ever

19   again, either, by the way.  But as far as attending

20   drug counseling sessions after I'm released, I would

21   ask the Court if you could cross that part off.  I

22   would appreciate it.

23             THE COURT:  Let me hear from Mr. Braun.

24   Do you have a position on these issues?

25             MR. BRAUN:  No, Your Honor.  We would

Page 31

1    simply defer to the Court.

2            THE COURT:  All right, thank you.

3            Let me hear from Mr. Galaz.

4            PROBATION OFFICER GALAZ:  Your Honor, we

5    would ask that Mr. Jarvis at least be subject to an

6    eval for possible mental health issues or alcohol or

7    drug issues.  To my understanding, he hasn't had an

8    eval.  And if the Court would at least make that

9    mandatory, then we could better evaluate for

10   supervision purposes if he needs substance abuse

11   treatment or mental health counseling.

12           MS. ROSENSTEIN:  All right, that's fine.

13   That will be fine.

14           THE COURT:  Okay.  What I will do then is

15   I will modify my order to indicate that the

16   defendant must be evaluated, rather than must

17   participate in.  So I will say the defendant must be

18   evaluated for substance abuse and mental health

19   further to be determined by the Probation Office.

20           MS. ROSENSTEIN:  Yes, that will be fine.

21           THE COURT:  I heard what you said about

22   the use of alcohol.  And I also heard what

23   Mr. Jarvis said, that he doesn't intend to drink or

24   consume any form of intoxicants.  I'm going to keep

25   that part of the order in for now.

1          MS. ROSENSTEIN:  All right.  And the Court

2    hasn't mentioned anything about the federal

3    benefits.

4          THE COURT:  Well, before I get to that,

5    let me ask Mr. Galaz about the defendant's request

6    that I not require the disclosure of financial

7    information.

8          PROBATION OFFICER GALAZ:  Your Honor,

9    given that the defendant pled to a money laundering

10   charge, we basically feel that it would be

11   appropriate that we could have access, since

12   finances were involved to some degree in this

13   offense.

14         THE COURT:  All right.  I'm looking to you

15   all for suggestions here.  Is there some lesser

16   level of inquiry that would satisfy your purposes so

17   that if need be, you could take it to the next step,

18   Mr. Galaz, Mr. Travers?

19         PROBATION OFFICER TRAVERS:  I don't

20   believe there is a lesser level, Your Honor.  What

21   we want to be able to do is just have access to

22   Mr. Jarvis' finances just to ensure that he does not

23   engage in future criminal activity.

24         Given the nature of the instant offense,

25   the fact that there was not only drug trafficking,

eef4bf39-4584-4fc4-9754-bf446dabb27f

1    but there was a money laundering count, I think it's

2    appropriate that we have the authority to at least

3    look into his finances, credit bureau checks, review

4    tax records, that sort of thing, again just to

5    ensure that there's no future illegal activity

6    taking place.  Not that we anticipate such a thing,

7    but it's just a precaution.

8              THE COURT:  All right, I understand.

9              MS. ROSENSTEIN:  That's fine, Your Honor.

10             THE COURT:  All right, which then leads us

11   to the issue of federal benefits.  Again, let me

12   hear from Mr. Braun first.

13             MR. BRAUN:  I believe that's in the

14   Court's discretion, and the government would not

15   oppose or not deny the defendant federal benefits.

16             THE COURT:  All right.  Is there any

17   further comment from Probation?

18             PROBATION OFFICER GALAZ:  Your Honor, just

19   pursuant to 21 USC 862, any grant, contract, loan,

20   professional license or commercial license provided

21   by an agency of the United States --

22             THE COURT:  Wait.  Could you slow down?

23             PROBATION OFFICER GALAZ:  -- or by

24   appropriated funds of the United States.  But with

25   regards to federal benefits, it does not include any

**PAUL BACA, OFFICIAL COURT REPORTER**

Page 34

1    retirement, welfare, Social Security health,

2    disability, veterans' benefits, public housing or

3    similar benefits or any other benefit for which

4    payments or services are required for eligibility.

5         So he should be still eligible for Social

6    Security and disability and things of that nature.

7         MS. ROSENSTEIN:  Well, what does it

8    prevent, if all those things -- it says federal

9    benefits.

10         PROBATION OFFICER GALAZ:  Any grant,

11    contract, loan, professional license or commercial

12    license provided by an agency of the United States

13    or by appropriated funds of the United States.

14         And that's in paragraph 217 of the third

15    amended PSR, Your Honor.  It gives more detail.

16         THE COURT:  All right.  Yes, 217 says

17    federal benefit as defined in 21 United States Code,

18    Section 862b, to mean any grant, contract, loan,

19    professional license or commercial license provided

20    by an agency of the United States or by appropriated

21    funds of the United States.

22         But it does not include any retirement,

23    welfare, Social Security, health, disability,

24    veterans' benefits, public housing or similar

25    benefits or any other benefits for which payments or

**PAUL BACA, OFFICIAL COURT REPORTER**

1  services are required for eligibility.  So I'm just

2  not . . .

3          MS. ROSENSTEIN:  Well, for example, Your

4  Honor, the United States it says any grant.  Let's

5  just say, and I'm just supposing, that after all of

6  this time in custody, Mr. Jarvis has learned a great

7  deal about dealing with inmates and perhaps wants to

8  begin a program for rehabilitating inmates and he

9  would need a grant for that.

10         It's unlikely that he will need any of

11  those things.  But I don't see any reason to deny

12  him those just because in his -- you know, 20 years

13  before, he sold pot.  By that time, it might be

14  decriminalized.  I don't know.

15         THE COURT:  Is there any other comment?

16         PROBATION OFFICER GALAZ:  No, Your Honor.

17  I've never encountered this in my time as a

18  probation officer here.  We leave that to the

19  Court's discretion.

20         THE COURT:  All right.  I will then

21  exercise my discretion by not requiring that

22  Mr. Jarvis be denied federal benefits.

23         MS. ROSENSTEIN:  Thank you very much, Your

24  Honor.

25         THE COURT:  Based on what I've heard here

eef4bf39-4584-4fc4-9754-bf446dabb27f

Page 36

1    today, it doesn't sound to me like in any event

2    Mr. Jarvis would be denied the federal benefits that

3    most of us are accustomed to thinking of when we

4    think of future or federal benefits involving people

5    who are around the age of 70 or older.

6              And moreover, to the extent that the

7    government is willing to engage Mr. Jarvis in the

8    hypothetical, I don't see where there's a downside

9    to that.  So I will affirmatively state that my

10   order will not deny Mr. Jarvis federal benefits.

11             MS. ROSENSTEIN:  Thank you.

12             MS. NEAL-POST:  Let me --

13             THE COURT:  Yes.  Were you going to say

14   something else?

15             MS. NEAL-POST:  Judge, if I could for a

16   moment, I'd like to suggest something that might be

17   easier for the Court.  If Mr. Braun and I put

18   together an order on the unsealing with the docket

19   numbers in the 1600 entry docket, I think it would

20   be clearer for everyone.

21             THE COURT:  I would appreciate that,

22   actually.  That way, we all know exactly what we're

23   talking about.

24             MS. NEAL-POST:  Mr. Braun and I will take

25   care of that.

Page 37

1            MR. BRAUN:  That's fine.

2            THE COURT:  All right.  So I'll expect

3    something from you all with respect to the request

4    that certain documents be unsealed.

5            Let me ask counsel:  Is there any reason

6    that sentence should not be imposed as I've stated

7    it?

8            MR. BRAUN:  No, Your Honor.

9            THE COURT:  Ms. Rosenstein?

10            MS. ROSENSTEIN:  No, ma'am.  Thank you

11    very much.

12            THE COURT:  The Court will order sentence

13    imposed as stated.  So if there's nothing further to

14    come before the Court, we'll be in recess.

15            (Court in recess at 11:47 a.m.)

16

17

18

19

20

21

22

23

24

25

**PAUL BACA, OFFICIAL COURT REPORTER**

Page 38

1

2

3                    REPORTER'S CERTIFICATE

4              I, Paul Baca, Official Court Reporter for

5    the US District Court, District of New Mexico, do

6    hereby certify that I reported the foregoing

7    proceedings in stenographic shorthand and that the

8    foregoing pages are a true and correct transcript of

9    those proceedings and was reduced to printed form

10   under my direct supervision.

11             I FURTHER CERTIFY that I am neither

12   employed by nor related to any of the parties or

13   attorneys in this case and that I have no interest

14   in the final disposition of this case.

15

16

17          _____
             PAUL BACA
18           NM Certified Court Reporter No. 112
             License Expires:  12/31/09
19

20

21

22

23

24

25

eef4bf39-4584-4fc4-9754-bf446dabb27f