IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,
    Plaintiff/Respondent,

v.                  No. 05-CR-1849-JH

DANA JARVIS,
    Defendant/Movant.

## REPLY TO GOVERNMENT'S RESPONSE TO DANA JARVIS'S MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582

Dana Jarvis, by and through counsel of record, Scott M. Davidson, hereby replies to the Government's response to his motion for reduction of sentence pursuant to 18 U.S.C. § 3582. *See also* U. S. Const. Amend. V & VI; U.S. Sentencing Guidelines § 1B1.10; U.S. Sentencing Guidelines Amendments 782 & 788.

The Government's opposition to Mr. Jarvis's motion is based on faulty reasoning that has been decisively repudiated by the United States Supreme Court in *Freeman v. United States*, 564 U.S. 522, 534 (2011) (holding that "the district court has authority to entertain § 3582(c)(2) motions when sentences are imposed in light of the Guidelines, even if the defendant enters into an 11(c)(1)(C) agreement").

In addition to being contrary to *Freeman*, the Government's position has been rejected by two circuit courts of appeals. It has been recognized in *United States v. Epps*, 707 F.3d 337 (D.C. Cir. Feb. 12, 2013), and in *United States v. Davis*, 825 F.3d 1014 (9th Cir. June 13, 2016), that there is no common ground between the plurality opinion in *Freeman* and the concurring opinion by Justice Sotomayor. When there is no common ground in reasoning between two parts of a fractured Supreme Court opinion, only the specific result of the Court is binding on lower courts. *See Davis*, 825 F.3d at 1022.

The Government's position is shaky, because it relies on a very brief circuit court opinion in which the questions before this Court were not addressed. In *United States v. Graham*, 704 F.3d 1275 (10th Cir. 2013), the brief decision upon which the Government's position rests, the court never addressed *Epps*, much less *Davis*. Both of these well-reasoned opinions were published after the brief *Graham* decision. Whereas the *Epps* and *Davis* courts both looked very closely at the question of how to interpret and apply a deeply fractured Supreme Court opinion---such as *Freeman*---the *Graham* decision gave that subject short shrift, blithely assuming that the district court properly applied *Marks v. United States*, 430 U.S. 188 (1977).

When there is a fractured opinion, with no majority opinion, the question is whether the plurality or the concurrence expresses the holding of the Court. Nearly forty years ago, the Court articulated a rule for guidance in deciphering the holding of fractured opinions of the Supreme Court. In *Marks*, the Court

2

stated that "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those [m]embers who concurred in the judgment on the narrowest grounds." 430 U.S. at 193 (internal quotation marks omitted).  Although the *Graham* court speedily agreed with the lower court's conclusion that the Sotomayor concurrence in *Freeman* represents "the narrowest grounds of decision and represents the Court's holding," 704 F.3d at 1278, there is no analysis or discussion of this point.  That there is little analysis to back this up is partially explained by the fact that the defendant had no attorney representing him on appeal.  *See* 704 F.3d at 1277 ("Because [Graham] argues without the aid of counsel, we have read his pleadings liberally.").

The Tenth Circuit's decision in *Graham* is easily distinguishable.  First, the result in *Graham* was based at least in part on the law of the case doctrine, insofar as the panel felt constrained by a ruling from 2008, years before the Supreme Court's 2011 opinion in *Freeman*.  *See Graham*, 704 F.3d at 1278 (seeing "no reason to depart from prior ruling," which preceded *Freeman* by three years).  The court in *Graham* expressly stated that "the 'law of the case' doctrine requires" the conclusion that "Graham's sentence is not based on any Guideline range." 704 F.3d at 1278.  Second, whereas Graham's sentence was not based on any guideline range, the examples below show that Mr. Jarvis's sentence reflects a specific guideline calculation and a departure from that range "for justifiable reasons." Doc. 1572 (Sent. Tr.) at 24, lines 21-25.

3

There is nothing anywhere in the terse *Graham* decision that would suggest that the question of how to apply *Marks* was ever properly briefed or addressed by the parties. *See* 704 F.3d at 1275-79. The Supreme Court itself has acknowledged that the *Marks* inquiry at time has "baffled and divided the lower courts that have considered it." *Nichols v. United States*, 511 U.S. 738, 746 (1994). *See also Grutter v. Bollinger*, 539 U.S. 306, 325 (observing that the *Marks* test "is more easily stated than applied").

In contrast to the nuanced and detailed analysis provided by the *Epps* and *Davis* courts, *see Davis*, 825 F.3d at 1020-22; *Epps*, 707 F.3d at 350-51, the *Graham* court does not compare or even motion two competing models of how to apply *Marks---viz.*, the "reasoning" approach and the "results" approach. Under the reasoning-based approach, "one opinion can be meaningfully regarded as 'narrower' than another . . . only when one opinion is a logical subset of other, broader opinions. In essence, the narrowest opinion must represent a common denominator of the Court's reasoning; it must embody a position implicitly approved by at least five Justices who support the judgment." *Davis*, 825 F.3d at 1020 (quoting *King v. Palmer*, 950 F.2d 771, 781 (D.C. Cir. 1991) (*en banc*)). Under this analysis, *Marks* applies "only when 'the concurrence posits a narrow test to which the plurality must necessarily agree as a logical consequence of its own, broader position." *Davis*, 825 F.3d at 1020 (quoting *Davis*, 707 F.3d at 348 (emphasis omitted) (quoting *King*, 950 F.2d at 782)). This is the approach embraced by both the D.C. and Ninth Circuits after carefully looking at the

difficult question of how to apply *Marks* when the Court is so deeply divided that the concurring opinion does not express a view that is a logical subset of the broader plurality opinion. *See Davis*, 825 F.3d at 1021-22 ("A fractured Supreme Court decision should only bind the federal courts of appeal when a majority of the Justices agree upon a single underlying rationale and one opinion can reasonably be described as a logical subset of the other. When no single rationale commands a majority of the Court, only the specific result is binding on lower federal courts."). *See also Epps*, 707 F.3d at 350.

Applying this approach to the deeply divided pronouncements from the Court in *Freeman*, the Ninth Circuit observed that "there was no common denominator in *Freeman* 'because the plurality and concurring opinions do not share common reasoning whereby one analysis is a logical subset of the other.'" *Davis*, 825 F.3d at 1022 (quoting *Epps*, 707 F.3d at 350 (internal quotation marks and citation omitted)). The *Davis* court proceeded to give specific examples in support of its conclusion, in contrast to the cursory treatment by the *Graham* court. The *Davis* court considered a specific fact pattern to show the relationship between the plurality and concurring opinions:

> [T]he parties may state in the plea agreement that a particular range applies and agree to a sentence at the bottom of that range, but the district court may not agree that the range determined by the parties applies, finding for example that the career offender range is applicable instead, but notwithstanding this finding accept the plea because it is to a term that is acceptable to the court for reasons unrelated to the guideline range determined by the parties.

*Davis*, 825 F.3d at 1023. Under this scenario, reasoned the Ninth Circuit,

"Justice Sotomayor would allow a sentence reduction . . . because the agreement explicitly 'call[s] for the defendant to be sentenced within a particular Guidelines sentencing range.'" *Davis*, 825 F.3d at 1023 (quoting *Freeman*, 564 U.S. at 538 (Sotomayor, J., concurring in the judgment)).  But the plurality, in the same set of circumstances, "'would find [the movant] ineligible because the range that the parties agreed to played no role in the court's determination that this was an appropriate sentence, despite the fact that the court imposed the agreed-upon term of imprisonment.'" *Davis*, 825 F.3d at 1023 (quoting *Epps*, 707 F.3d at 350 n.8).  Whereas the concurrence focuses on the parties' intent, the plurality focuses on the judge's intent.  The reasoning of the concurring opinion is not a logical subset of the reasoning of the plurality opinion; they are contrary under this scenario.

To take another example where one opinion does not neatly fit within the rationale of the other, both the *Epps* and *Davis* courts considered the following:

> The sentencing court . . . might consider and reject the guideline range used by the parties, not because the court finds that a different guidelines range (such as the career offender range) applies, but because, having considered the applicable guidelines range, the court rejects it as a matter of policy and selects its sentence without regard to it.

*Davis*, 825 F.3d at 1023 (quoting *Epps*, 707 F.3d at 350 n.8).  Under this example, concluded the *Davis* court, "if the court decides 'for reasons unrelated to the guidelines range to impose the sentence the parties agreed upon,' the defendant would be eligible for a reduction under Justice Sotomayor's approach but not

6

under the plurality's." 825 F.3d at 1023 (quoting *Epps*, 707 F.3d at 350 n.8). Again, one focuses on the intent of the judge, while the other focuses on the intent of the parties.

The conclusion of the *Davis* court is inescapable: "These examples make clear that the plurality and concurring opinions cannot be explained by a diagram in which a circle representing the reasoning of Justice Sotomayor's opinion sits neatly within a circle representing the reasoning of the plurality opinion. Because both opinions would allow sentence reductions in situations where the other would not, Justice Sotomayor's concurrence is not the 'narrowest grounds' envisioned by *Marks*." 825 F.3d at 1023-24.

Furthermore, the plurality "explicitly rejected the concurrence's reasoning, in particular its underlying premise that a sentence imposed under a Rule 11(c)(1)(C) agreement is 'based on" the parties' agreement, not the Guidelines." 825 F.3d at 1022.

The Government does not address this. *Graham* does not address it. But this Court must address it. And the logic of the reasoning employed in the careful and nuanced opinions in *Davis* and *Epps* cannot be denied. Applying *Marks* mechanically to a situation that the *Marks* court did not contemplate---*viz.*, where the plurality and concurring opinions conflict and do not share a common denominator of reasoning---is not how this Court should address the question presented in Mr. Jarvis's case. A far more rational and sensible approach is presented by the *Davis* and *Epps* courts.

7

Mr. Jarvis's case is like *Davis* insofar as both involved a calculation of the base offense level under the Guidelines on the basis of the quantity of controlled substances for which the defendant was directly responsible. *Compare* 825 F.3d at 1027 (noting base offense level 34 was based on amount of crack cocaine for which defendant had admitted direct responsibility) *with* PSR at 39, ¶ 155 (calculating base offense level) *and* Doc. 1564 (court adopting amended PSR). Also, in both cases, the record in the district court showed application of other provisions of the U.S. Sentencing Guidelines prior to arriving at the sentence imposed. *Compare* 825 F.3d at 1027 (referring to application of increase under § 2D1.2 and reduction under § 3E1.1) *with* PSR at 40, ¶ 156 (adding two levels for overseeing transfer of bulk cash to launder drug proceed) *and* PSR at 41, ¶ 162 (calculating total offense level of 39).

In Mr. Jarvis's case, as noted at length in his motion, there are abundant references to the Sentencing Guidelines and how it applies to Mr. Jarvis's case in the plea agreement, plea hearing, sentencing hearing, and elsewhere in the record of the proceedings in this Court leading up to his guilty plea and sentence. Although the Government chose not to address these in its 5-page response to Mr. Jarvis's 23-page motion, please consider the following twenty references to the Guidelines:

1.  PSR at 39, ¶ 154 (applying 2008 edition of Guidelines),
2.  PSR at 39, ¶ 155 (calculating base offense level to be 36),

3. PSR at 40, ¶ 156 (applying U.S. Sentencing Guidelines § 2S1.1(b)(1)(B), specific offense characteristic for offense of overseeing transport of bulk cash for the organization and laundering drug proceeds, contrary to 18 U.S.C. § 1956),

4. PSR at 40, ¶ 163 (adding four levels to the offense level under U.S. Sentencing Guidelines § 3B1.1 (organizer/leader enhancement)),

5. PSR at 41, ¶ 162 (deducting three levels for acceptance of responsibility under U.S. Sentencing Guidelines § 3E1.1),

6. PSR at 41, ¶ 162 (calculating total offense level to be 39),

7. PSR at 42, ¶ 168 (observing that Mr. Jarvis had an extremely low criminal history score of 1, and placing him in criminal history category I, pursuant to U.S. Sentencing Guidelines Ch. 5, Part 1),

8. Second Addendum to PSR at 11, Response No. 57 (stating that base offense level is 36),

9. Second Addendum to PSR at 12, Response No. 59 (stating that base offense level is 36, adjusted offense level is 42, and total offense level is 39),

10. Second Addendum to PSR at 14, Response No. 73 (stating that total offense level is 39, resulting in a guideline imprisonment range of 262-327 months),

11. Doc. 1564 (Court's adoption of amended PSR),

12. Doc. 1564 at 2 (observing that "the Court has considered the sentencing guidelines"),

13. Doc. 1572 (Sent. Tr.) at 7, lines 14-20 (defense counsel Judith Rosenstein referred to the parties' agreement that the (base) offense level under the Sentencing Guidelines Drug Quantity Table, *see* U.S. Sentencing Guidelines § 2D1.1, was level 36),

14. Doc. 1572 (Sent. Tr.) at 9, lines 11-16 (observing that 168-month sentence is based on guidelines),

15. Doc. 1572 (Sent. Tr.) at 24, lines 21-25 (the Court "accept[ing] the plea agreement which includes a specific sentence of 168 months, as the Court is satisfied that the agreed sentence departs [from the Guideline sentencing range] for justifiable reasons"),

16. Doc. 1572 (Sent. Tr.) at 24, lines 21-25 (the Court further stating that the sentence for Mr. Jarvis is based on the guideline calculation of total offense level 39, criminal history category I, resulting in an advisory sentencing guideline range of 262-327 months of imprisonment),

17. Doc. 1587 at 1 ("The Court has considered the United States Sentencing Guidelines and, in arriving at the sentence for this Defendant, has taken account of the Guidelines and their sentencing goals.  Specifically, the Court has considered the sentencing range determined by application of the Guidelines and believes that the sentence imposed fully reflects both the Guidelines and each of the factors embodied in 18 U.S.C. § 3553(a)."),

18. Statement of Reasons at 1, ¶ III (stating that the Court determined the total offense level to be 39),

10

19. Statement of Reasons at 2, ¶ IV.B (noting that sentence was based on the quantity of marijuana involved, concluding that "a four level increase is warranted" under U.S. Sentencing Guidelines § 3B1.1), and

20. Statement of Reasons at 2, ¶ IV.B (observing that sentence is within an advisory guideline range that is more than 24 months).

Under *Freeman*, as applied in light of the persuasive reasoning in *Epps* and *Davis*, Mr. Jarvis is eligible for relief under § 3582(c)(2).

The Government's suggestion that the applicable guideline sentencing range under the amended guidelines is higher than the sentence that Mr. Jarvis received ignores the fact that the sentence he received reflects a substantial departure for "justifiable reasons" from the Guideline sentencing range that was calculated by and agreed to by the parties and the Court prior to the Court's acceptance of the plea agreement and imposition of sentence. *See* Doc. 1572 (Sent. Tr.) at 24, lines 21-25. The Government's simplistic reasoning was rejected by five Justices (who disagreed on much else). *See Freeman passim*. Under the plurality, an 11(c)(1)(C) sentence that departs from the Guidelines range will not preclude relief under § 3582, and under Justice Sotomayor's concurrence, an 11(c)(1)(C) plea is not necessarily a bar to relief under § 3582. The Court should not follow the repudiated reasoning underlying the Government's opposition to Mr. Jarvis's motion.

For these reasons, and the reasons in the motion that were not addressed by the Government in its response, Mr. Jarvis respectfully requests an order reducing his sentence to a sentence of 134 months, or other appropriate relief.

Respectfully submitted,

<u>Electronically filed</u>
Scott M. Davidson
JustAppeals.Net
The Appellate Law Office of Scott M.
        Davidson, Ph.D., Esq.
1011 Lomas Boulevard NW
Albuquerque, NM 87102
505.255.9084 (ph)
505.213.7212 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of September 2016, I filed the foregoing reply electronically through the CM/ECF system, which caused counsel for the Government to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

<u>Electronically filed</u>
Scott M. Davidson
